# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CORP GROUP BANKING S.A., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-10969 (JKS)<br><br>(Joint Administration Requested) |

## DECLARATION OF CRISTOBAL CERDA MENESES, THE DEBTORS' CHIEF EXECUTIVE OFFICER, IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY RELIEF

I, Cristobal Cerda Meneses, hereby declare under penalty of perjury:

1.  I am the Chief Executive Officer of the debtors in the above-captioned chapter 11 cases (collectively, the "***Debtors***"). I have served as Chief Executive Officer since 2019 and I am generally familiar with the Debtors' day-to-day operations, financial affairs, and books and records.

2.  Prior to being named Chief Executive Officer of the Debtors, I previously served as Chief Financial Officer of the Debtors from October 2010 to July 2018. My experience prior to my employment by the Debtors was centered mainly in Investment Banking services. I hold a master's degree in Social Sciences from The University of Chicago and a master's degree in Finance and an undergraduate degree in Industrial Engineering, both from Universidad de Chile.

3.  I submit this declaration (this "***Declaration***") to provide an overview of the Debtors and the circumstances giving rise to these chapter 11 cases (the "***Chapter 11 Cases***") as

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's foreign tax identification number, are: Corp Group Banking S.A. (900-8); Compañia Inmobiliaria y de Inversiones Saga SpA (600-0); Inversiones CG Financial Chile Dos SpA (808-2); CG Financial Chile SpA (343-5); and CG Financial Colombia S.A.S. (144-5). The Debtors' mailing address is Rosario Norte N°660, 22nd Floor, Las Condes, Santiago, Chile.

well as to support the Debtors' chapter 11 petitions and the First Day Motions (defined below). Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, information supplied to me by other members of the Debtors' management and the Debtors' advisors, or my experience concerning the Debtors' and their financial condition. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## **OVERVIEW**[2]

4. The Debtors are subsidiaries of a conglomerate based in Chile, known as Corp Group ("***Corp Group***").[3] They are headquartered in Santiago, Chile and own, directly and indirectly, approximately 27.2% of the common equity of Itaú Corpbanca ("***Itaú Corpbanca***"). Itaú Corpbanca is a publicly traded Chilean bank (and a Securities and Exchange Commission registrant) controlled by Itaú Unibanco S.A. and its affiliates (collectively, "***Itaú***"). The Debtors also own, directly and indirectly, approximately 10.3% of the common equity of Itaú Corpbanca Colombia S.A. ("***Itaú Corpbanca Colombia***" and, together with Itaú Corpbanca, the "***Bank***"), a Colombian bank subsidiary of Itaú Corpbanca.

5. The Debtors' most significant assets are shares of the Bank and their revenue comes almost exclusively from dividends paid by the Bank. The Debtors have limited trade obligations arising from their operations.

---

[2] Capitalized terms used but not defined in this Overview section have the meanings ascribed to such terms in the subsequent sections of this Declaration.

[3] Corp Group has several other operations and businesses. These other operations are unaffected by the commencement of these Chapter 11 Cases, and Corp Group expects them to continue in the ordinary course without disruption.

28291889.2

2

6. The Debtors owe approximately $1.3 billion of secured obligations to Itaú and approximately $60 million of secured obligations to other banks. Corp Group Banking S.A. ("*CGB*"), one of the Debtors in the Chapter 11 Cases, also has substantial unsecured indebtedness. In 2013, it issued $500 million of New York law 6.750% notes due 2023 (the "*144A Notes*," and the holders thereof, the "*Noteholders*"). CGB is the sole obligor on the 144A Notes and there is no recourse to any other Debtor. The 144A Notes remain outstanding and are in default.

7. Over the past several years, the share price of Itaú Corpbanca has decreased dramatically and CGB has received far smaller dividend payments than expected when CGB issued the 144A Notes and the Debtors incurred their obligations to Itaú. Based on the current financial condition of the Bank, the Debtors are unable to repay their obligations in full and have filed these Chapter 11 Cases to liquidate and distribute their assets to their creditors in an orderly manner.

8. Beginning in the third quarter of 2020, the Debtors urged their two primary creditor constituencies—Itaú and an ad hoc group of Noteholders (the "*Ad Hoc Group*")—to engage in discussions aimed at achieving a consensual resolution of the Debtors. But while Itaú has participated in difficult negotiations with the Debtors for several months, the Ad Hoc Group has declined to meaningfully engage with the Debtors. Over the past several weeks, the Debtors have had increasingly productive discussions with Itaú on the terms of a transaction to be implemented through chapter 11 proceedings. In the days preceding the Initial Petition Date, rumors of a potential transaction began to leak into the Chilean press.

9. On June 25, 2021 (the "*Initial Petition Date*"), certain of the Debtors commenced chapter 11 proceedings in this Court to protect the value of the Debtors' estates and to ensure

28291889.2

that their creditors would be treated fairly and in an orderly manner. On June 29, 2021 (the "**Second Petition Date**"), the remaining Debtors commenced chapter 11 proceedings in this Court. The Debtors have requested that all of their cases be jointly administered.

10. To further familiarize the Court with the Debtors and the requested "first day relief" (the Debtors' motions seeking such relief, the "**First Day Motions**"), the remainder of this Declaration is divided into three sections: <u>Section I</u> provides an overview of the Debtors' business and capital structure. <u>Section II</u> describes the events leading up to the filing of the Chapter 11 Cases. And <u>Section III</u> affirms and incorporates the facts that support the relief requested in the First Day Motions. In that regard, I have reviewed the Debtors' petitions and First Day Motions, or otherwise have had their contents explained to me, and it is my belief that the relief sought therein is essential to ensure an orderly resolution of the Debtors' business and, in turn, successfully maximize the value of the Debtors' estates.

### I. HISTORY OF THE DEBTORS' BUSINESS

11. The Debtors are controlled by Corp Group, a private conglomerate. The Debtors' primary asset—and the focus of their operations—is their ownership interest in Itaú Corpbanca. Itaú Corpbanca, the fifth largest private bank in Chile, is the result of several merger and acquisition transactions which can be traced back to the creation of Banco de Concepción in 1871. In 1995, Banco de Concepción was acquired by INFISA (a predecessor to Corp Group) and was rebranded in 1997 to the name "Corpbanca." In 2011, Corpbanca formed Banco Corpbanca Colombia S.A. after acquiring Banco Santander Colombia. At this time, Corpbanca was a public company in which CGB held a controlling stake. In February 2013, CGB issued the 144A Notes.

12. In January 2014, CGB (and certain affiliates) agreed to convey to Itaú (by way of a merger between Corpbanca and Banco Itaú Chile) a controlling interest in Corpbanca and

28291889.2

4

Banco Corpbanca Colombia S.A. At that time (as discussed below), CGB entered into the Itaú Corpbanca Credit Agreement with Itaú. The merger of Corpbanca with Banco Itaú Chile was agreed in January 2014 and closed in April 2016, after a lengthy process to receive regulatory approvals. In connection with the merger, Corpbanca, the surviving entity in the merger, was renamed "Itaú Corpbanca", Banco Corpbanca Colombia was renamed "Itaú Corpbanca Colombia S.A.", and each came under Itaú's control.

13. Itaú Corpbanca remains a publicly traded company ("*sociedad anónima*") in both Chile and (through ADRs) in the United States. 39.22% of Itaú Corpbanca is owned by Itaú, approximately 27.2% is owned by the Debtors, and the remainder is publicly held. Debtors CGB and Compania Inmobiliaria y de Inversiones Saga SpA ("*Saga*"), certain of their non-Debtor affiliates, and Itaú have entered into a Shareholders Agreement dated as of April 1, 2016 (the "*Shareholders Agreement*") with respect to the Debtors' and Itaú's respective interests in Itaú Corpbanca.

14. As set forth in the corporate structure chart attached as **Exhibit A**:

- CGB is directly owned by Corpgroup Interhold SpA ("*CG Interhold*").[4]

- CGB is the sole owner, directly or indirectly, of Debtors (i) Inversiones CG Financial Chile Dos SpA, (i) CG Financial Chile SpA and (iii) CG Financial Colombia S.A.S., which directly and indirectly own the majority of the Debtors' equity interest in Itaú Corpbanca Colombia.

- CGB also owns approximately 43% of Saga, which owns a small percentage of the Debtors' equity interest in Itaú Corpbanca. An affiliated non-Debtor Corp Group entity, Inversiones Gasa Limitada ("*Gasa'*), owns the remainder of Saga.

---

[4] One share of CGB is owned by an affiliate of Interhold, Corp Group Financial Chile B.V. Sucursal en Chile.

28291889.2

**II.    THE DEBTORS' ASSETS AND CAPITAL STRUCTURE**

15.    The Debtors' assets are composed of the following:

- 27.2% minority ownership stake in Itaú Corpbanca;

- 10.3% minority ownership stake, held directly and indirectly, in Itaú Corpbanca Colombia;

- Approximately $13 million in unencumbered cash held by CGB;

- $403 million in intercompany payables owed to Saga by other non-Debtor Corp Group entities (the "***Saga Intercompany Payables***"); and

- CGB's direct and indirect equity interests in the other Debtors and Fondo de Inversion Privado Corp Life, a non-Debtor.

16.    A portion of CGB's Itaú Corpbanca shares—comprising approximately 6.7% of Itaú Corpbanca—are unencumbered. The remainder are pledged to Itaú and other South American banks.

17.    The bulk of the Saga Intercompany Payables are composed of a $281 million payable owed to Saga by Corp Group Inversiones Limitada, an indirect parent of CGB, and a $109 million payable owed to Saga by Corp Group Financial S.A., also an indirect parent of CGB. The Saga Intercompany Payables are documented as Acknowledgements of Debt made by the obligors thereunder, and do not have a scheduled maturity date.

18.    As of the Petition Date, the Debtors' capital structure consists of the following debt obligations:

| Indebtedness | Approximate Outstanding Amount |
|---|---|
| CGB Unsecured Notes | $543 million |
| Itaú Chile Obligations | $843 million |
| Itaú Colombia Obligations | $417 million |
| Other Secured Obligations | $60 million |

28291889.2

*CGB Unsecured Notes*

19. In 2013, CGB issued $500,000,000 of 6.750% Notes due 2023 under the Indenture dated as of February 5, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "*Indenture*"). The 144A Notes are unsecured. CGB is the sole obligor under the 144A Notes and has been in default on its obligations under the 144A Notes since October 2020. The 144A Notes have a scheduled maturity date of March 15, 2023. As of June 24, 2021, there was approximately $543,031,250 of outstanding 144A Notes, including accrued and unpaid interest.

*Itaú Corpbanca Obligations*

20. On January 29, 2014, non-Debtor CG Interhold, as borrower, entered into the Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "*Itaú Corpbanca Credit Agreement*") with Itaú, as lender, the guarantors party thereto and Banco Itaú Chile, as administrative agent. CGB and its Debtor affiliate, Saga, have each guaranteed the repayment in full of the loans under the Itaú Corpbanca Credit Agreement (the "*Itaú Corpbanca Loans*"), and CGB has pledged 84,693,464,489 shares of Itaú Corpbanca—approximately 16.5% of Itaú Corpbanca—to Itaú to secure its guarantee. The Itaú Corpbanca Loans had a scheduled maturity date of April 9, 2021, but have not been repaid. As of June 24, 2021, there was approximately $842,841,810 outstanding under the Itaú Corpbanca Credit Agreement, including accrued and unpaid interest.

*Itaú Corpbanca Colombia Obligations*

21. On October 28, 2013, non-Debtor CG Interhold, as borrower, entered into the Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "*Itaú Corpbanca Colombia Credit Agreement*") with Itaú, as lender, the guarantors party

thereto and Banco Itaú Chile, as administrative agent. CGB has pledged its direct interest in Itaú Corpbanca Colombia to secure obligations under the Itaú Corpbanca Colombia Credit Agreement and guaranteed approximately $200 million of the obligations thereunder. Other Debtors (including CG Financial Colombia S.A.S., which directly holds 8.3% of Itaú Corpbanca Colombia) are guarantors of the full amount of the Itaú Corpbanca Colombia Credit Agreement and have pledged their interests in Itaú Corpbanca Colombia to secure their obligations thereunder. The loans under the Itaú Corpbanca Colombia Credit Agreement (the "***Itaú Corpbanca Colombia Loans***" and, together with the Itaú Corpbanca Loans, the "***Itaú Loans***") have a scheduled maturity date of January 31, 2022. As of June 24, 2021, there was approximately $416,961,182 outstanding under the Itaú Corpbanca Colombia Credit Agreement, including accrued and unpaid interest.

22. Pursuant to the Amended and Restated Transaction Agreement among CG Interhold, Gasa, Itaú Corpbanca and Itaú dated January 20, 2017 (the "***Transaction Agreement***") and certain other ancillary agreements, in January 2022, Itaú Corpbanca is obligated to purchase (and the Debtors are obligated to sell) the Debtors' equity interests in Itaú Corpbanca Colombia for an agreed amount equal to the amount due under the Itaú Corpbanca Colombia Credit Agreement (plus any tax that may arise in connection with the transaction); and under the Itaú Corpbanca Colombia Credit Agreement, the Debtors will be obligated to use such proceeds to repay the Itaú Colombia Loans in full (collectively, the "***Colombia Transactions***"). Put differently, if the Debtors consummate the Colombia Transactions, all obligations under the Itaú Corpbanca Colombia Credit Agreement will be satisfied in full and Itaú will have no deficiency claim in connection therewith against any Debtor.

*Other Secured Obligations*

23. The Debtors have pledged shares of Itaú Corpbanca with a value of approximately $60 million to certain other banks and private creditors to secure indebtedness of CG Interhold and other non-Debtor Corp Group affiliates (the "**Other Secured Obligations**"). Of this $60 million, CGB has pledged $46 million and Saga has pledged $14 million. These pledges are so-called "non-recourse" pledges, with no accompanying direct obligation or guarantee. CGB expects to satisfy these claims in full by returning the collateral to the applicable secured party, or by providing alternative treatment with the secured party's consent.

*Intercompany Obligations*

24. CGB owes an approximately $72 million net intercompany payable to its non-Debtor parent, CG Interhold, and an approximately $10 million intercompany payable to its subsidiary Saga. (together, the "**Intercompany Obligations**"). The Intercompany Obligations do not have a scheduled maturity date.

### III. KEY EVENTS LEADING TO THE CHAPTER 11 FILINGS

**A. Itaú Corpbanca's Declining Financial Performance Results in Substantially Smaller Dividend Payments to CGB Than Had Been Projected**

25. The Debtors' most significant assets are their shares in the Bank, and their primary source of revenue is dividends declared and paid by the Bank. Since 2017, Itaú Corpbanca's financial performance has declined, dividends have significantly decreased, and its share price has fallen substantially. From 2013 to 2016, annual dividends received by CGB from Itaú Corpbanca averaged 66.7 CLP billion (or $107 million). By contrast, from 2017 to 2020, annual dividends received by CGB from Itaú Corpbanca averaged 13.4 CLP billion (or $18 million), a drop of approximately 80%. As a result, since 2017, CGB's cash flow has often been insufficient to service its debt, and CGB has made scheduled payments to Itaú and the

Noteholders through a mix of dividend proceeds, share sale proceeds, and loans and contributions from non-Debtor affiliates within Corp Group. As a result, given the Bank's near-term prospects, in the second half of 2020, the Debtors commenced preliminary restructuring discussions with Itaú and the Ad Hoc Group.

### A. CGB Defaults Under the 144A Notes and Itaú Loans

26. In March 2020, CGB failed to pay interest when due on the 144A Notes, triggering a default thereunder that it then cured by making the interest payment within the applicable 30-day grace period. In September 2020, CGB again failed to pay interest when due on the 144A Notes, triggering a default thereunder which became an Event of Default (as defined in the Indenture) as it remained uncured after the applicable grace period expired on October 15, 2020. CGB also failed to make the interest payment on the 144A Notes due on March 15, 2021, and as of the Petition Date, CGB remains in default under the 144A Notes. Furthermore, on April 9, 2021, CGB failed to make payment of principal (and accrued and unpaid interest) under the Itaú Corpbanca Credit Agreement. On April 19, 2021, Itaú declared a payment default under the Itaú Corpbanca Credit Agreement, and a corresponding cross-default under the Itaú Corpbanca Colombia Credit Agreement. Both Itaú Loans remain in default as of the Petition Date.

### B. Negotiations with Key Stakeholders

27. Beginning in the third quarter of 2020, the Debtors initiated separate restructuring discussions with their two key creditor constituencies: Itaú and the Ad Hoc Group.

28. In October 2020, Itaú signed a confidentiality agreement with CGB, and the Debtors provided Itaú with an initial restructuring proposal. In the months since, the Debtors and Itaú have engaged in extensive, arm's-length negotiations regarding the terms of a potential resolution of the Debtors, which negotiations are ongoing.

29. By contrast, the Debtors have so far been unable to make significant progress toward a consensual transaction with their Noteholders. Through informal discussions with legal advisors to, and members of, the Ad Hoc Group, the Debtors and their advisors were repeatedly informed that the Ad Hoc Group was not prepared to execute a confidentiality agreement to receive information regarding the Debtors' financial condition, let alone negotiate a consensual transaction on terms acceptable to the Debtors. The Debtors will continue during the Chapter 11 Cases to seek agreement with the Noteholders; but because the Debtors believe that the Noteholders' demands substantially exceed their legal entitlements, the Debtors are prepared to solicit and seek confirmation of a chapter 11 plan without full Noteholder support, if necessary.

### C. Appointment of Independent Director

30. On April 29, 2021, CGB appointed Roberto Guerrero Del Río to serve as an independent director. Mr. Guerrero is the founding partner of Guerrero Olivos, a prominent law firm in Chile. Before that, he was general counsel of the Central Bank of Chile between 1975-1979; advisor to the Monetary Council and the Ministers of Finance and Economy of Chile between 1975-1979; General Coordinator of the restructuring of the Chilean foreign debt between 1977-1979; and the Deputy Executive Secretary of the Foreign Investment Committee of Chile between 1975-1979. He has been a member of the Chilean Bar Association since 1965 and is a listed arbitrator at the Arbitration and Mediation Center of Santiago. Mr. Guerrero has approved the filing of the Chapter 11 Cases.

### D. Capital Increase of Itaú Corpbanca

31. On June 10, 2021, Itaú Corpbanca announced that at a shareholders meeting scheduled for July 13, 2021 (the "***Extraordinary Meeting***"), Itaú Corpbanca would be seeking approval to (a) increase the capital of Itaú Corpbanca by up to CLP$830,000,000,000 (approximately USD$1,131,000,000) through the sale of additional common shares of Itaú

Corpbanca (which existing holders will be entitled to purchase through preemptive subscription rights) (the "*Capital Increase*"). In its announcement, Itaú Corpbanca stated that the Capital Increase is intended to support future growth of Itaú Corpbanca and to bring its capitalization indexes in line with other banks in Chile, in accordance with Basel III standards.

32. In connection with the announcement, on June 10, 2021, in accordance with the Shareholders Agreement, CGB and Saga (along with certain of their non-Debtor affiliates) entered into a letter agreement with Itaú to, among other things, vote their respective Itaú Corpbanca shares at the July 13 shareholders meeting in favor of the proposed Capital Increase, subject to certain conditions on the terms of the Capital Increase (the "*Capital Increase Support Agreement*"). However, the Debtors are not, at this time, asking for authority to vote their Itaú Corpbanca shares at the Extraordinary Meeting or otherwise perform their obligations under the Capital Increase Support Agreement.

## IV. FIRST DAY MOTIONS

33. Contemporaneously herewith, the Debtors have filed a number of First Day Motions seeking orders granting various forms of relief intended to facilitate the efficient administration of these Chapter 11 Cases. The First Day Motions include the following:

**Administrative and Procedural Pleadings**

- *Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases.*

- *Debtors' Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent.*

- *Debtors' Motion for Entry of an Order (I) Restating and Enforcing Protections of 11 U.S.C. §§ 105(a), 362, 365, 525, and 541(c) and (II) Granting Related Relief.*

**Operational Motions**

- *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Maintenance and Use of Prepetition Bank Accounts, (II) Authorizing Continued Use of Existing Checks and Business Forms, (III) Waiving the Requirements of Section 345(b) of the Bankruptcy Code, and (IV) Granting Related Relief.*

34. I am familiar with the substance contained in each First Day Motion, and I believe that the relief sought in each First Day Motion (a) is necessary to minimize disruption due to the commencement of the Chapter 11 Cases and to permit the Debtors to administer the Chapter 11 Cases smoothly, (b) constitutes a critical element in the Debtors achieving their goals in this chapter 11 process, and (c) best serves the Debtors' estates and their stakeholders' interests. I have reviewed each First Day Motion, and the facts and descriptions of the relief set forth therein are true and correct to the best of my information and belief with appropriate reliance on corporate officers and advisors and are incorporated herein in their entirety by reference. If asked to testify as to the facts supporting each of the First Day Motions, I would testify as to such facts.

35. I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request that all of the relief requested in the First Day Motions be granted, together with such other and further relief as is just and proper.

28291889.2

13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 30, 2021  /s/ *Cristobal Cerda Meneses*
Cristobal Cerda Meneses

28291889.2

# EXHIBIT A

# SIMPLIFIED CORP GROUP CORPORATE STRUCTURE



* Remaining 56.8% of SAGA owned by a Corp Group affiliate, Inversiones Gasa Ltda.

28291889.2