**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CORP GROUP BANKING S.A., *et al.*, | Case No. 21-10969 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Docket Ref. No. 978** |

**MBI SERVICIOS FINANCIEROS LIMITADA'S**
**OPPOSITION TO MOTION TO ENFORCE CONFIRMATION ORDER**

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
jody.barillare@morganlewis.com

and

Glenn E. Siegel (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
101 Park Ave.
New York, NY 10178
Telephone: (212) 309-6000
Email:   glenn.siegel@morganlewis.com
             joshua.dorchak@morganlewis.com

*Counsel for Respondent*
*MBI Servicios Financieros Limitada*

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's foreign tax identification number, are: Corp Group Banking S.A. (900-8); Compañia Inmobiliaria y de Inversiones Saga SpA (600-0); Inversiones CG Financial Chile Dos SpA (808-2); CG Financial Chile SpA (343-5); and CG Financial Colombia S.A.S. (144-5).  The Debtors' mailing address is Rosario Norte N°660, 22nd Floor, Las Condes, Santiago, Chile.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

    I.    THE *QUERELLA CRIMINAL* IS NOT PROHIBITED BY THE PLAN OR THE
CONFIRMATION ORDER................................................................................................ 8

       A.   The *Querella Criminal* Is Not an "Estate Cause of Action."........................................... 8

       B.   The *Querella Criminal* Is a "Direct Cause of Action."................................................... 9

       C.   The *Querella Criminal* Is Not "in Connection with" an Estate Cause of Action. ......... 10

    II.   SANCTIONS ARE CLEARLY UNJUSTIFIED IN THIS DISPUTE. ............................. 12

       A.   MBI Cannot Be Sanctioned for Something It Has Not Done. ....................................... 12

       B.   There Is Good Faith and "Fair Ground for Doubt" in MBI's Conduct.......................... 14

    III.    THE COURT SHOULD CONSIDER PERMITTING THE CHILEAN COURT TO
RESOLVE THE CHILEAN LAW ISSUE AT THE CENTER OF THIS DISPUTE. ............. 16

CONCLUSION...................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Coffin v. Malvern Fed. Sav. Bank*,
   90 F.3d 851 (3d Cir. 1996)................................................................................13

*Nat. Conversion Corp. v. Cedar Bldg. Corp.*,
   298 N.Y.S.2d 499 (N.Y. 1969) .........................................................................11

*In re Res. Tech. Corp.*,
   No. 08 C 4040, 2009 WL 1873529 (D. Ill. June 29, 2009) ..............................13

*Ronnen v. Ajax Elec. Motor Corp.*,
   648 N.Y.S.2d 422 (N.Y. 1996) .........................................................................11

*Sunbelt Rentals, Inc. v. Love*,
   No. 20-17611, 2021 WL 82370 (D.N.J. Jan. 11, 2021).....................................11

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019)......................................................................................15

*In re Thomas*,
   626 B.R. 804 (Bankr. E.D. Pa. 2021) ..........................................................14, 15

*United States v. Bryan*,
   339 U.S. 323 (1950)..........................................................................................13

*United States v. Johnson*,
   736 F.2d 358 (6th Cir. 1984) ............................................................................13

*Wash. Mut., Inc. v. XL Specialty Ins. Co. (In re Wash. Mut., Inc.)*,
   No. 12-50422 (MFW), 2012 WL 4755209 (Bankr. D. Del. Oct. 4, 2012) ..............16

**Statutes**

Chilean Criminal Code Art. 471 No. 2 ........................................................................16

Chilean Civil Code Art. 1707 ................................................................................1, 16

MBI Servicios Financieros Limitada ("MBI") hereby respectfully submits this brief, supported by the accompanying *Declaration of German Guerrero* (**Exhibit A**) (the "Guerrero Declaration") and the *Declaration of Professor German Ovalle* (**Exhibit B**) (the "Ovalle Declaration"), in opposition to the *Motion to Enforce Order Confirming the Seventh Amended Joint Plan of Liquidation of Corp Group Banking S.A. and Its Debtor Affiliates* [Dkt No. 978] (the "Motion") filed by Álvaro Saieh Bendeck and others (the "Movants") in the above-captioned chapter 11 cases of Corp Group Banking S.A., et al. (the "Debtors").[2]

## PRELIMINARY STATEMENT

1.      This Court will likely recall the compromise that facilitated plan confirmation in these cases in June 2022 whereby (a) "Estate Causes of Action" were released, (b) "Direct Causes of Action," including under Chilean law, were preserved, and (c) whether a given "Cause of Action" was "Estate" or "Direct" was deferred.   In January 2023, MBI commenced a private criminal proceeding in Chile, requesting that a Public Prosecutor investigate alleged crimes under Chilean Criminal Code Art. 471 No. 2 (the "*Querella Criminal*").  MBI believes in good faith that this is a Chilean law Direct Cause of Action and thus permissible under the Confirmation Order. Movants, the objects of that investigation, unsurprisingly disagree.  They argue that the *Querella Criminal* is prohibited by the Confirmation Order as a proceeding "in connection with" the damages claim that the UCC once proposed to pursue on behalf of the Debtors based on Chilean Civil Code Art. 1707 (the "Civil Claim").  Movants apparently attempted to improve their odds of prevailing on this matter of law by casting MBI as contemptuous and requesting that MBI be sanctioned for things it has done in good faith and even things (*e.g.*, seeking compensation) it has not done.  The Motion is misguided on every level and should be denied.

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1

2.      MBI has numerous reasons for its good faith conclusion that the *Querella Criminal* is a "Chilean law Direct Cause of Action" that was not released and does not violate the Confirmation Order.  Among many other things, it is a criminal matter, which will be pursued (or not) in the discretion of a Public Prosecutor.  It was commenced by MBI in its individual capacity and any compensation (if MBI should ever request and obtain it) would go to MBI alone, as a victim of crime.  As of today, however, MBI has not requested, and <u>cannot</u> recover, any damages. The *Querella Criminal* will never have any effect on the Debtors.  These facts and others destroy any alleged "equivalence" between the *Querella Criminal* and the Civil Claim.

3.      Movants practically concede that the *Querella Criminal* is not an Estate Cause of Action.  Instead, they argue that the *Querella Criminal* is a proceeding "in connection with" an Estate Cause of Action.  By this Movants do not mean a proceeding that advances an Estate Cause of Action or involves an Estate Cause of Action.  Citing the breadth of the term "in connection with," Movants argue that the Confirmation Order prohibits any claim that has same <u>underlying facts</u> as any Estate Cause of Action.  This is overreaching.  The Plan prohibits claims in connection with Estate Causes of Action, not "Estate Facts" – sensibly enough, since the same facts can give rise to different claims, including direct and derivative claims.  More to the point, however, the Confirmation Order cannot be read to preserve Direct Causes of Action against Movants (which the Debtors had no right to release) in Paragraph 9 and then in Paragraph 11 enjoin them solely because they are "in connection with" the Estate Causes of Action against Movants that the Debtors had the right to release and <u>did</u> release.  The Confirmation Order cannot have been intended to include any such *Gotcha!* clauses.

4.      Movants attempt to strengthen the supposed "connection" between the *Querella Criminal* and the Civil Claim by accusing MBI of "a blatant attempt to extort additional funds"

from Movants in Chile after recovering as a creditor under the Plan. This argument fails as a matter of law. Any recovery by MBI in Chile would be as an individual victim of a crime, not as a creditor of the Debtors. This argument also fails as a matter of fact. Contrary to Movants' accusations, which are based on a single newspaper article that MBI did not endorse, <u>MBI has not sought compensation, cannot currently seek compensation, will not have the option of seeking compensation if Movants are not indicted, might not have the option of seeking compensation even if Movants are convicted, and even if offered the option someday might never seek compensation, in the *Querella Criminal*</u>. Movants' redundant damages argument is a false alarm.

5.    Movants also use this redundant damages argument to enhance their request for sanctions. Movants have not remotely met their burden on this point, because MBI has acted in good faith and, in any event, there is certainly fair ground for doubt that the *Querella Criminal* violates the Confirmation Order. In fact, all of Movants' allegations of bad faith (*e.g.*, that MBI is seeking to "collect" from Movants) are false. To the extent Movants allege that MBI is <u>going to</u> do bad things, this Court does not recognize "anticipatory contempt."

6.    Finally, although this Court certainly has jurisdiction over this dispute and thoroughly understands its Confirmation Order, the Motion hinges on a matter of Chilean law. If this Court finds the dueling experts' submissions on nature of the *Querella Criminal* to be insufficiently helpful, this Court should consider abstaining from ruling on the Motion, to permit Movants to ask the Due Process Judge in Chile to resolve this essential question.

7.    For the reasons summarized above and discussed in detail below, if this Court sees fit to decide the Motion, it should be denied in its entirety, and in any event, the Motion should be denied to the extent it seeks sanctions.

## BACKGROUND

8.      One major compromise that smoothed the path to confirmation in these contentious

cases was reached on or about June 1, 2022 (the "Compromise"), whereby the Debtors and the

Official Committee and Itaú Unibanco S.A. agreed, in relevant part, that (a) Estate Causes of

Action would be prohibited, (b) Direct Causes of Action would be permitted (for creditors that

opted out), and (c) the parties reserved rights on which were which. *See, e.g.*, *Plan Supplement*

*including Settlement Term Sheet* [Dkt No. 770]; *Confirmation Hr'g Tr.* [Dkt No. 829], at 92:1-11

(The Court: "These complicated cases have been contentious. . . .  The settlement and compromise

play a role in resolving the committee's standing motion and claim objections and the various

confirmation objections.")

9.      As a result of the Compromise, the Plan and the Confirmation Order emphatically

permit opt-out creditors (like MBI) to pursue Direct Causes of Action, as follows:

> **For the avoidance of doubt, (a) no Opt-Out Creditor shall be**
> **deemed to have granted the releases set forth in this Article XI.E**
> **of the Plan, including the releases of Chilean law Direct Causes**
> **of Action, (b) the releases granted by the Debtors set forth in**
> **Article XI.D of the Plan shall not be deemed to release any**
> **Chilean law Direct Causes of Action and (c) all Persons' and**
> **Entities' rights are reserved with respect to whether any**
> **particular Cause of Action is a Direct Cause of Action or an**
> **Estate Cause of Action.**

Plan [Dkt No. 825-1], Art. XI.E; Confirmation Order [Dkt No. 825] ¶ 9 (emphasis in originals).

10.     The Plan and the Confirmation Order also prohibit all persons from pursuing Estate

Causes of Action, as follows:

> Except as otherwise expressly provided in the Plan . . . , all Entities
> who have held, hold, or may hold Causes of Action that have been
> released pursuant to Article XI.D or Article XI.E of the Plan, . . . are
> permanently enjoined, from and after the Effective Date, from
> taking any of the following actions against . . . the Released
> Parties . . . in any jurisdiction or forum, whether in the U.S., Chile,
> or elsewhere: (1) commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action; . . . . **Further, all Entities (other than, solely with respect to the Litigation Trust Claims, the Litigation Trust) are permanently enjoined, from and after the Effective Date, from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Estate Causes of Action.**

Plan, Art. XI.F; Confirmation Order ¶ 11 (emphasis added).

11.     The Motion is a dispute foreshadowed by clause (c) of the Compromise.  In order to resolve this dispute, the following definitions are essential:

- "**Estate Cause of Action**" means any Cause of Action that (a) is property of the Debtors, the Debtors' Estates or the Wind Down Estates, (b) has been asserted by or that could have been asserted by or on behalf of the Debtors, the Debtors' Estates or the Wind Down Estates (including by the Debtors on behalf of any Holder of any Claim against, or Equity Interest in, a Debtor, individually or collectively) or (c) any Holder of any Claim, Equity Interest, or Cause of Action could have asserted on behalf of the Debtors.  Plan, Art. I.B.1.69.

- "**Direct Cause of Action**" means any cause of action that is not an Estate Cause of Action.  Plan, Art. I.B.1.57.

- "**Cause of Action**" means any action, proceeding, agreement, claim, Challenge, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. . . .  Plan, Art. I.B.1.17.

12.     Shortly after the Compromise was reached, the confirmation hearing was held, the Plan was confirmed, and the Court entered the Confirmation Order on June 16, 2022.

13.     The preservation of Chilean law Direct Causes of Action was a crucial component of the Compromise for MBI and the other UCC members, just as the release of Estate Causes of

Action was presumably crucial to the other parties in interest.   Guerrero Declaration ¶ 3.   In January 2023, MBI commenced the *Querella Criminal* only after consulting with Chilean counsel and concluding that the *Querella Criminal* is a Chilean law Direct Causes of Action preserved by the Compromise, the Plan, and the Confirmation Order.  *See id.* ¶ 4.

14.     MBI understands that the Public Prosecutor, under the supervision of a Due Process Judge, will decide whether to proceed to bring charges against Movants, but also that if MBI withdraws the *Querella Criminal*, the Public Prosecutor is likely to abandon the investigation into Movants' alleged crimes.  *See id.* ¶ 5.

15.     As a private criminal complainant (a "*querellante*"), MBI does not seek any compensation or mention any civil cause of action whereby MBI could recover compensation in the *Querella Criminal*.  *See id.* ¶ 6.  MBI has not commenced any claim for damages against any of the Movants in the Chilean court.  *See id.* ¶ 7.

16.     Numerous *querellantes* besides MBI have filed more than a dozen *querellas criminales* against Movants.  *See id.* ¶ 9.  In each of these cases, the Due Process Judge has reviewed the allegations and authorized the Public Prosecutor to proceed with the investigation. *See id.* ¶ 10.  In at least one of these cases, the Due Process Judge has authorized the Public Prosecutor's request to seize relevant information from third parties.  *See id.* ¶ 10.  Movants have not filed a motion to dismiss any of these cases.  *See id.* ¶ 10.

17.     There have been numerous articles in the Chilean press about these proceedings collectively, including a newspaper article in which Movants' litigation counsel criticized the *querellantes* and a subsequent newspaper article (in April 2023) in which the *querellantes*' litigation counsel, Carlos Cortés Guzmán, criticized Movants and expressed confidence in these cases.  *See id.* ¶ 9.  (Movants exhibited the latter, but not the former.  *See* Motion, Ex. B [Dkt No.

978-3], at 66.)   Mr. Cortés did not mention MBI in that interview and his comments do not represent MBI's position.  *See* Guerrero Declaration ¶ 8.

18.     In August 2023, Movants filed the Motion.

## **ARGUMENT**

19.     The Motion (¶ 1) opens with a conclusory pronouncement:  "The Querella unquestionably advances an Estate Cause of Action belonging only to the Debtors and is therefore barred by this Court's Injunction."  This pronouncement is not only questionable, it is dead wrong.  MBI's right as a Chilean company to ask the Public Prosecutor to investigate a crime does not "belong" to the Debtors at all, much less "only" to them.  The Movants never even argue this point, beyond one sentence in a footnote, because they know it is a lost cause.  Instead, Movants argue that, even if the *Querella Criminal* is a Direct Cause of Action, the Confirmation Order expressly preserves it but then enjoins it as being "in connection with" a released Estate Cause of Action.  That cannot be right.  The Compromise preserved something for MBI, not nothing.

20.     Movants' request for sanctions is an attempt to bias this Court against MBI in order to enhance their likelihood of success.  The request should fail with the rest of the Motion.  In any event, Movants fall far short of the high burden for contempt or sanctions.  Movants' three alleged bases for bad faith (e.g., that MBI is seeking compensation) are all false.  As Mr. Guerrero's Declaration makes clear, MBI acted in good faith, in consultation with counsel, and as Prof. Ovalle's Declaration makes clear, there is very reasonable basis for MBI's conduct in this matter.  Even if the Court sees any merit in Movants' legal position, still the Court should not sanction MBI for holding a different position.

## I.     THE *QUERELLA CRIMINAL* IS NOT PROHIBITED BY THE PLAN OR THE CONFIRMATION ORDER.

21.     Movants' argument that the *Querella Criminal* is an "Estate Cause of Action" ignores the definition of that term and is easily disproved.  Movants' argument that the *Querella Criminal* is a proceeding "in connection with" an Estate Cause of Action ignores the definition of "Cause of Action" and proves too much.  Because the Confirmation Order cannot reasonably be construed as barring the *Querella Criminal*, the Motion should be denied.

### A.     The *Querella Criminal* Is Not an "Estate Cause of Action."

22.     Movants spend precisely one sentence (in *Motion* ¶ 54, n.7) arguing that MBI's *Querella Criminal* asserts an "Estate Cause of Action."  Without quoting the definition, Movants assert:  "The Querella seeks remedies for . . . quintessential estate claims the recovery from which would have been due to the estate (rather than to any particular creditor) . . . ."  The simple rebuttal is that the *Querella Criminal* seeks no "recovery" at all, only a Public Prosecutor's investigation.  *See* Guerrero Declaration ¶¶ 6–7; Ovalle Declaration ¶¶ 7, 9.  If MBI were able to seek and to obtain a recovery at some later point, it would be solely for the benefit of MBI, as a crime victim.  *See Declaration of Carlos Künsemüller* (the "Künsemüller Declaration") [Dkt No. 978-5] ¶ 19; Ovalle Declaration ¶ 8.  Movants' and MBI's experts agree on these points.  *See* Künsemüller Declaration ¶¶ 18–22; Ovalle Declaration ¶ 7.  The *Querella Criminal* does not assert an Estate Cause of Action.

23.     To answer the question that Movants avoided, MBI's *Querella Criminal* does not meet any of the three potential elements in the definition of "Estate Cause of Action."  MBI filed the *Querella Criminal* in its own right, as the victim of a crime.  *See* Ovalle Declaration ¶ 11.  This is not a right that the Debtors owned, or could assert for themselves, or that others could assert for the Debtors.  *See id*.

24.     The *Querella Criminal* is not even similar to an Estate Cause of Action (such as the Civil Claim), for several reasons, as MBI's expert explains in detail.  *See* Ovalle Declaration ¶¶ 5–11.  First and foremost, the *Querella Criminal* is a criminal matter, in which:

- A Public Prosecutor, <u>not</u> the allegedly injured party (the "*querellante*"), is the plaintiff and decides whether to pursue, settle, or abandon the litigation.

- The alleged injuries are crimes, <u>not</u> contractual or tortious.

- The standard of proof to establish liability is beyond reasonable doubt, <u>not</u> preponderance of evidence.

- Compensation arising from the crime can only be demanded from the accused after the proceeding has progressed beyond the investigation stage, not from the commencement of the proceedings.

Ovalle Declaration ¶¶ 5–6.  Further, unlike any civil claim, as Movants' expert admits, no compensation may be sought as of the filing on the complaint, and compensation may never become available.  *See* Künsemüller Declaration ¶ 22.  And finally, if there ever were any compensation, as Movants' expert admits, it would be due to the "causal link" between the alleged crime and the *querellante* "victim's financial loss."  *See* Künsemüller Declaration ¶ 18; Ovalle Declaration ¶ 11.

25.     In short, the *Querella Criminal* is not – and is not even akin to – an Estate Cause of Action.

**B.     The *Querella Criminal* Is a "Direct Cause of Action."**

26.     The Plan (Art. I.B.1.57) defines "Direct Cause of Action" as "any Cause of Action that is not an Estate Cause of Action."  As was just demonstrated, the *Querella Criminal* is not an Estate Cause of Action.  Therefore, the *Querella Criminal* is a Direct Cause of Action – specifically, a Chilean law Direct Cause of Action.  *See* Art. I.B.1.57.

27.     The Plan (Art. XI.E) and the Confirmation Order (¶ 9) explicitly and emphatically provide that "**<u>the releases [of Estate Causes of Action] granted by the Debtors set forth in</u>**

**Article XI.D of the Plan shall not be deemed to release any Chilean law Direct Causes of Action**." This provision reflects the terms of the Compromise whereby Estate Causes of Action would be enjoined and Direct Causes of action would be preserved. *See, e.g.*, *Plan Supplement Exhibit F (Amended SP Settlement Term Sheet)* [Dkt No. 770-1] at 2–3.

28.     Thus, pursuant to the Plan and Confirmation Order, the *Querella Criminal* has not been released but rather has been preserved – at least for creditors, like MBI, that opted out of the Plan releases. *See* Plan (Art. XI.E); Confirmation Order ¶ 9.

C.      **The *Querella Criminal* Is Not "in Connection with" an Estate Cause of Action.**

29.     To get around the problem that the *Querella Criminal* is not an Estate Cause of Action – that is, not a cause of action released under Article XI.D of the Plan – Movants cite the Confirmation Order as enjoining not only Estate Causes of Action but also proceedings "in connection with" Estate Causes of Action. Then they assert, "There can be no question that" the *Querella Criminal* is "in connection with . . . Estate Causes of Action" – specifically, the Civil Claim. *See* Motion ¶ 55. This argument fails mainly because the Confirmation Order cannot reasonably be interpreted as enjoining claims that were <u>not</u> owned or controlled by the Debtors and were expressly <u>not</u> released, solely because those claims are arguably "in connection with" claims that <u>were</u> owned and controlled by the Debtors and <u>were</u> released.[3]

30.     One basic flaw in Movants' argument is that they attempt to "connect" the *Querella Criminal* to the Civil Action using common underlying <u>facts</u>. Granted, the *Querella Criminal* is a proceeding in connection with a fact pattern that could also underlie the Civil Claim. But the Plan and the Confirmation Order do not prohibit a proceeding "in connection with <u>the facts</u>

---

[3] The complete phrase used in the Injunction is "on account of or in connection with or with respect to any Estate Causes of Action." The discussion above uses "in connection with," the broadest of these three expressions, by synecdoche for the entire phrase; the arguments apply to the other two expressions to the same or a greater degree.

<u>underlying</u>> any Estate Cause of Action."  The Plan and the Confirmation Order prohibit a proceeding in connection with an Estate Cause of Action, and "Cause of Action" is defined as an "action, proceeding, agreement, claim," etc. – in other words, <u>as an exercise of rights, not as a set of facts</u>.  This makes sense because the Plan releases certain rights; the Plan does not purport to release "Estate Facts" – the expression doesn't even make sense.  Because the *Querella Criminal* is not "in connection with" any released action, proceeding, agreement, claim, etc. that is or could be asserted by or on behalf of the Debtors, the *Querella Criminal* is not prohibited by the Plan and Confirmation Order.

31.    Another basic flaw in Movants' argument is that it creates an untenable internal inconsistency in the Plan and Confirmation Order.  As was demonstrated above, the *Querella Criminal* is not an Estate Cause of Action and thus is a Direct Cause of Action.  Paragraph 9 of the Confirmation Order expressly exempts Direct Causes of Action from the Plan releases.  As Movants would have it, Paragraph 11 of the Confirmation Order enjoins even a Direct Cause of Action if it is "in connection with" an Estate Cause of Action.  That cannot be correct, especially since any Direct Cause of Action is arguably connected to any Estate Cause of Action against the same defendant.  Movants' reading would permit the Debtors to release claims that they do not own or control (Direct Claims), simply because those claims are "in connection with" claims that the Debtors did own or control (Estate Claims).  That is plainly unfair to any creditor that opted out of the Plan releases.

32.    The Confirmation Order cannot be read to incidentally enjoin the Direct Causes of Action that it expressly preserves.  *See Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *16 (D.N.J. Jan. 11, 2021) (rejecting "an overly broad interpretation of 'in connection with'" because it "would conflict with other, explicit portions of the definition.  It would be

contradictory to include language <u>limiting</u> the definition . . . , only to then include language that effectively <u>eliminates</u> that limitation . . . ."); *see also, e.g.*, *Nat. Conversion Corp. v. Cedar Bldg. Corp.*, 298 N.Y.S.2d 499, 502 (N.Y. 1969) ("All parts of an agreement are to be reconciled, if possible, in order to avoid inconsistency.").

33.    In short, Movants' "in connection with" argument proves too much.  The Direct Causes of Action expressly preserved by the Compromise, the Plan, and the Confirmation Order were not an empty set.  *See, e.g.*, *Ronnen v. Ajax Elec. Motor Corp.,* 648 N.Y.S.2d 422, 424 (N.Y. 1996) ("We have long and consistently ruled against any construction which would render a contractual provision meaningless or without force or effect . . . ." (citations omitted)). The Confirmation Order's provision enjoining proceedings "in connection with any Estate Cause of Action" should be read to mean proceedings in which any Estate Cause of Acton is asserted – which does not include the *Querella Criminal*.

## II.    SANCTIONS ARE CLEARLY UNJUSTIFIED IN THIS DISPUTE.

34.    Because, as demonstrated above, the *Querella Criminal* is neither an Estate Cause of Action nor a proceeding in connection with an Estate Cause of Action, MBI has not violated the Confirmation Order.  But even if this Court were to find some merit in Movants' legal points, sanctions are not remotely justified in this dispute.

### A.    MBI Cannot Be Sanctioned for Something It Has Not Done.

35.    Movants do not seriously argue that MBI violated the Confirmation Order simply by asking the Public Prosecutor to investigate Movants' alleged crimes.  And Movants accept that the investigation could continue even if MBI withdrew the *Querella Criminal*.  *See* Motion ¶ 61; Künsemüller Declaration ¶ 10.  This Motion is about money – that is, the purportedly redundant compensation that MBI might receive.  When arguing that the *Querella Criminal* is like the Civil Claim, Movants say:  "MBI Servicios is using the Querella (alleging crimes) just as plaintiffs use

civil complaints under American law: to bring damages for monetary relief from harms allegedly suffered." Motion ¶ 56. When arguing that MBI deserves to be sanctioned, Movants say: "MBI Servicios is aware of the Confirmation Order, but brazenly defied it by seeking additional settlement payment from the Movants through the Querella." Motion ¶ 64.

36.     These are losing arguments. It should be undisputed that MBI is not seeking monetary compensation from Movants in the *Querella Criminal* or elsewhere. *See* Guerrero Declaration ¶¶ 6–7. It is also undisputed that MBI cannot seek monetary compensation in the *Querella Criminal* at this time. *See* Künsemüller Declaration ¶ 19; Ovalle Declaration ¶ 9. In the *Querella Criminal*, if the Public Prosecutor declines to proceed, or proceeds but does not indict, or proceeds and indicts but does not convict, or proceeds and indicts and convicts under a "Simplified" procedure – in any of these scenarios, MBI will never even have the <u>option</u> to seek compensation in the *Querella Criminal*. *See* Künsemüller Declaration ¶¶ 4-11; Ovalle Declaration ¶¶ 9-11. And even if MBI ever does have that option, MBI may decline to exercise it.

37.     Movants' purported evidence of MBI's determination to "extort" further funds from Movants is a series of false assumptions based on a newspaper article. *See generally* Motion, Ex. B [Dkt No. 978-3]. Although the reporter notes that MBI is one of the *querellantes* represented by Attorney Carlos Cortés Guzmán, Mr. Cortés does not mention MBI in the article. *See* Guerrero Declaration ¶ 8. So Movants' assertion that this article "confirmed . . . that MBI Servicios will seek to obtain moneys from the Movants" is false. *See* Motion ¶ 56. This article was a matter of public relations, not pleading: a response to a prior newspaper article in which Movants' counsel attacked Mr. Cortés's clients. *See* Guerrero Declaration ¶ 9. In any event, Mr. Cortés's comments do not represent MBI's position. Guerrero Declaration ¶ 8.

38.    Since MBI is not seeking compensation, MBI cannot be sanctioned for seeking compensation.  The Supreme Court confirmed long ago that "there is, in our jurisprudence, no doctrine of 'anticipatory contempt.'"  *United States v. Bryan*, 339 U.S. 323, 341 (1950); see *United States v. Johnson*, 736 F.2d 358, 360 (6th Cir. 1984) ("[W]e have found no case in which anticipatory contempt has been practiced or approved").  This rule applies to bankruptcy court orders:  "[A]s best as the Court can determine, there is no such thing as anticipatory contempt." *In re Res. Tech. Corp.*, No. 08 C 4040, 2009 WL 1873529 (D. Ill. June 29, 2009) (concerning alleged failure to comply with bankruptcy court order that had not yet been entered).  The related rule against advisory opinions specifically applies to the question of discharged claims. *See Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853–54 (3d Cir. 1996) (court's finding that creditor would be free to exercise its state law remedies after discharge was improper advisory opinion).

39.    Movants correctly cite the burden for holding a creditor in contempt of a bankruptcy court's discharge injunction:  "(1) [A] discharge order has been entered (discharging the debt); (2) the defendant had notice of the discharge order; and (3) collection efforts continued nevertheless." *In re Thomas*, 626 B.R. 804, 815 (Bankr. E.D. Pa. 2021) (cited in Motion ¶ 63). Here, MBI has not engaged in any collection efforts. *See* Guerrero Declaration ¶¶ 6–7.  Again, Movants' bid for sanctions based on MBI allegedly seeking a double recovery fails. *See Thomas*, 626 B.R. at 815.

**B.    There Is Good Faith and "Fair Ground for Doubt" in MBI's Conduct.**

40.    There is no legitimate basis for sanctions in anything that MBI has done, even in the unlikely event that this Court were to find that the *Querella Criminal* is or could someday become barred by the Confirmation Order.

41.    First, MBI has acted in good faith.  The Plan and the Confirmation Order, reflecting the Compromise, expressly and emphatically preserve Direct Causes of Action, including

"**<u>Chilean law Direct Causes of Action</u>**."  Plan Art. X.E; Order ¶ 9 (emphasis in original).  MBI

commenced the *Querella Criminal* only after consulting with Chilean counsel and concluding that

the *Querella Criminal* is a "Chilean law Direct Cause of Action" preserved by the Confirmation

Order.  Guerrero Declaration ¶ 4.  That MBI had at least a reasonable basis for reaching this

conclusion is demonstrated in Section I above.  MBI would not have commenced the *Querella*

*Criminal* if it believed that it was an Estate Cause of Action.  *Id.*  Predictably, Movants disagree,

but that is not evidence of MBI's bad faith any more than it is evidence of Movants' bad faith –

especially when the Plan expressly did <u>not</u> resolve disputes of this sort.  *See* Plan Art. X.E; Order

¶ 9 ("[A]ll Persons' and Entities' rights are reserved with respect to whether any particular Cause

of Action is a Direct Cause of Action or an Estate Cause of Action.")

42.    Movants' purported evidence of MBI's bad faith consists of:  (i) MBI

"brazenly . . . seeking additional settlement payments," Motion ¶ 64 – which MBI undisputedly is

not doing, Guerrero Declaration ¶ 4; (ii) MBI's lawyer allegedly "ignoring" things, Motion ¶ 65 –

which MBI does not endorse, Guerrero Declaration ¶ 8; and (iii) MBI allegedly "influenc[ing]"

other creditors to file "copycat querellas," Motion ¶ 66 – which is just speculation.  In other words,

there is no evidence of bad faith.

43.    "A court may hold a creditor in civil contempt for violating a discharge order where

there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the

discharge order."  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019).  Movants correctly cite this

standard, Motion ¶ 63, and proceed to assert that "there can be no doubt" that MBI violated the

Confirmation Order, Motion ¶ 64.  But the Guerrero Declaration and the Ovalle Declaration show

at a minimum that there is such doubt; that reasonable minds can differ whether the *Querella*

*Criminal* violates the Confirmation Order; that is, that MBI's view on this point is not "objectively

unreasonable." *See Thomas*, 626 B.R. at 815.

44.     In summary, even if this Court were to find that MBI has misinterpreted the

Confirmation Order, sanctions would not remotely be justified. *See id.*

## III.    THE COURT SHOULD CONSIDER PERMITTING THE CHILEAN COURT TO RESOLVE THE CHILEAN LAW ISSUE AT THE CENTER OF THIS DISPUTE.

45.     This Court clearly has jurisdiction over the Confirmation Order, the Plan and this

dispute.  But this Court also has the authority to abstain from deciding this dispute, as is expressly

acknowledged in the Plan (Art. X.F) and the Confirmation Order (¶ 11(a) (". . . unless the

Bankruptcy Court declines to exercise such jurisdiction")).  Abstention from deciding the Motion

in favor of the Chilean court would be an appropriate exercise of this Court's discretion because it

would put the most difficult issue before the judge best positioned to decide it.

46.     The tough question in this dispute is not what the Plan says.  The tough question is

what the *Querella Criminal* is.  The parties disagree whether this proceeding commenced under

Chilean Criminal Code Art. 471 No. 2 is (or someday may become) equivalent to, or in connection

with, a civil case asserting claims under Chilean Civil Code Article 1707.  Movants and its Chilean

criminal law professor expert say Yes.  Künsemüller Declaration ¶¶ 12-22.  MBI and its Chilean

criminal law professor say No.  Ovalle Declaration ¶¶ 5-11.  The person best equipped to resolve

this dispute is surely the Due Process Judge overseeing the *Querella Criminal*.  *See* Ovalle

Declaration ¶ 13.

47.     Once the tough question of Chilean law is resolved, the Due Process Judge can

readily decide whether the *Querella Criminal* violates the Confirmation Order.  "[S]tate courts are

qualified to interpret the language of bankruptcy plans and orders and routinely engage in such

interpretation." *Wash. Mut., Inc. v. XL Specialty Ins. Co. (In re Wash. Mut., Inc.)*, No. 12-50422

(MFW), 2012 WL 4755209, at *12–13 (Bankr. D. Del. Oct. 4, 2012) (quoting *In re Kmart Corp.*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004)).  An additional benefit is that the Due Process Judge has jurisdiction over all of the numerous *querellas criminales* pending against Movants and over the *querellantes* that filed them.

48.    While MBI will have no complaint if the Court sees fit to decide the Motion, MBI respectfully submits that the Court should consider abstaining in favor of the Due Process Judge overseeing the *Querella Criminal* in Chile.  *See* Ovalle Declaration ¶ 13.[4]

---

[4] MBI reserves the right to respond at a later date to the joinder to the Motion filed by the Debtors [Dkt No. 991] four hours before MBI's deadline to file these opposition papers.

## <u>CONCLUSION</u>

For the foregoing reasons, MBI respectfully requests that, if the Court chooses to decide the Motion, it should be denied in its entirety, and in any event, it should be denied to the extent it seeks a finding of contempt or the imposition of sanctions.

Dated:  September 22, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
jody.barillare@morganlewis.com

and

Glenn E. Siegel (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
101 Park Ave.
New York, NY 10178
Telephone: (212) 309-6000
Email:   glenn.siegel@morganlewis.com
           joshua.dorchak@morganlewis.com


*Counsel for Respondent*
*MBI Servicios Financieros Limitada*
