**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CORP GROUP BANKING S.A., *et al.*,[1] | Case No. 21-10969 (JKS) |
| Debtor. |  |

## MOVANTS' REPLY TO MBI SERVICIOS FINANCIEROS LIMITADA'S OBJECTION TO MOVANTS' MOTION TO ENFORCE ORDER CONFIRMING THE SEVENTH AMENDED JOINT PLAN OF LIQUIDATION OF CORP GROUP BANKING S.A. AND ITS DEBTOR AFFILIATES

Date: October 12, 2023

Laura Davis Jones
PACHULSKI STANG ZIEHL
& JONES LLP
919 North Market Street
Wilmington, Delaware 19801
Tel: 302-778-6401
ljones@pszjlaw.com

Philippe Z. Selendy
David S. Flugman
Lauren J. Zimmerman
(all admitted *pro hac vice*)
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, New York  10104
Tel: 212-390-9000
pselendy@selendygay.com
dflugman@selendygay.com
lzimmerman@selendygay.com

*Attorneys for Álvaro Saieh Bendeck,*
*Jorge Andrés Saieh Guzmán, María*
*Catalina Saieh Guzmán, Pilar*
*Dañoebeitía Estades, and Andrés*
*Winter Salgado*

---

[1] The last four digits of the Debtor's foreign tax identification number are 900-8.  The Debtor's mailing address is Rosario Norte N°660, 22nd Floor, Las Condes, Santiago, Chile.  The chapter 11 cases of certain affiliates of the Debtor were closed effective as of April 28, 2023.  *See* Case No. 21-10969, Docket No. 974.

# **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................4

I.     MBI SERVICIOS' QUERELLA VIOLATES THE INJUNCTION ...................................4

     A.     The Querella Advances An Estate Cause Of Action ..................................4

          1.     The Querella Alleges Generalized Harm To All Creditors ........................5

          2.     The Querella's Quasi-Criminal Nature Does Not Change The Result ........................................................................................9

     B.     In Any Event, The Querella Is In Connection With An Estate Cause Of Action..................................................................................11

II.     WHETHER THE QUERELLA IS ENJOINED BY THE PLAN AND CONFIRMATION ORDER IS A QUESTION OF U.S. LAW.........................................13

III.     MOVANTS RESPECTFULLY REQUEST THE COURT TO DIRECT MBI SERVICIOS TO WITHDRAW THE QUERELLA AND IMPOSE SANCTIONS ON MBI SERVICIOS.....................................................................................14

CONCLUSION...................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ASHINC Corp.*,
    683 F. App'x 131 (3d Cir. 2017) ............................................................................................7

*In re Avianca Holdings S.A.*,
    648 B.R. 358 (Bankr. S.D.N.Y. Jan. 27, 2023) ......................................................14

*In re Emoral, Inc.*,
    740 F.3d 875 (3d Cir. 2014)..............................................................................6, 12

*Sunbelt Rentals, Inc. v. Love*,
    2021 WL 82370 (D.N.J. Jan. 11, 2021) ................................................................13

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007) .....................................16

Álvaro Saieh Bendeck, Jorge Andrés Saieh Guzmán, María Catalina Saieh Guzmán, Pilar Dañoebeitía Estades, and Andrés Winter Salgado (together, the "Movants") hereby respectfully submit this Reply to the objection of MBI Servicios Financieros Limitada ("MBI Servicios") [Dkt. No. 992] (the "Objection") to Movants' Motion to Enforce Order Confirming the Seventh Amended Joint Plan of Liquidation of Corp Group Banking S.A. and its Debtor Affiliates [Dkt. No. 978] (the "Motion").[2]  In support of this Reply, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      MBI Servicios does not deny that it has attacked these Chapter 11 proceedings by claiming in Chile that they are part of a "criminal plan," or that it filed a Querella in Chile against Movants, all of whom were released from Estate Causes of Action as part of the monetary settlement that led to plan confirmation in these cases and ratable payments to creditors like MBI Servicios.  Nor does MBI Servicios contest that the Querella is identical in substance to the motion that the Unsecured Creditors' Committee (the "UCC") sought to bring against Movants on behalf of the Estate and that was the core of the claims settled as part of the Plan.  MBI Servicios nonetheless hopes to avoid the consequences of its clear contempt for this Court and its orders by characterizing the Querella as a Direct Cause of Action exempt from the releases granted in exchange for settlement of the UCC's proposed claims—and by telling this Court that it should defer to a Chilean judge (presumably the same judge to whom MBI Servicios denigrated the legitimacy of these proceedings) to decide the issue.

2.      This Court can and should decide the Motion and grant the relief sought therein. The issue presented here is a straightforward one about the interpretation of the language of this

---

[2] Terms not defined herein have the same definition as in the Motion.

Court's own Injunction.  That language enjoins third parties, including creditors like MBI Servicios, from asserting Estate Causes of Action, or even actions that are "in connection with" Estate Causes of Action.  The Querella—which on its face describes purported damages felt by all creditors similarly situated to MBI Servicios— falls squarely within the language of the Injunction. Notably, the remaining Debtor agrees in its joinder to the Motion that the Querella proceedings constitute Estate Causes of Action that were released under the Plan.  Dkt. No. 991.

3.      ***First***, MBI Servicios has violated the Injunction by filing the Querella, which easily falls within the definition of an "Estate Cause of Action," but at minimum is an action brought "in connection with an Estate Cause of Action."  As Movants described in the Motion, a querella is an instrument filed by a private party, known as the *querellante*, which initiates a criminal proceeding in which the *querellante* can seek civil damages (*e.g.*, within the criminal proceeding without filing a separate action).  MBI Servicios argues that because it filed the Querella in its "individual capacity," and because the Querella involves a criminal proceeding, it cannot be an Estate Cause of Action.  Objection ¶ 2.  MBI Servicios is wrong: the Querella asserts claims based on generalized harms against creditors—claims the Debtors could have asserted, but chose to settle—and they are therefore Estate Causes of Action.  *See* Section I.A.1-2, *infra*.  Furthermore, nothing in the Plan's definition of Estate Cause of Action turns on whether a claim is characterized as criminal or civil under Chilean law.  *See* Section I.A.2, *infra*.  Nor does it matter that MBI Servicios has not ***yet*** sought damages in the Querella proceeding; MBI Servicios conspicuously ***does not deny*** that it will seek them in the future, and statements given to the Chilean authorities by individuals associated with MBI Servicios make clear that it intends to do so.  *See id.*; Declaration of José Tomás Eyzaguirre Cordova ("Eyzaguirre Decl.") Ex. A.  Indeed, the basic premise of MBI Servicios' argument is that if the Querella fails at the "investigation stage," Dkt. No. 992-2 ("Ovalle Decl.")

¶ 5, "compensation may never become available," Objection ¶ 24.  This is semantics.  Any time a party brings a legal action seeking damages, the claim may fail, leaving the party without compensation for the alleged injury; the risk of failure does not change the nature of the action to one in which damages are not sought.

4.      **Second**, this Court is the proper forum to resolve the question of whether the filing of the Querella violates the Injunction.  This Court authorized the Plan and issued the Injunction, and MBI Servicios is wrong to suggest that this Court should defer to a foreign court to interpret this Court's own orders.  The Motion presents a straightforward issue that requires interpretation of the Plan, not the nuances of Chilean law: whether MBI Servicios "commence[d]," or is "continuing[,] … any action or other proceeding of any kind on account of or in connection with or with respect to any Estate Causes of Action."  Dkt. No. 825 ("Confirmation Order") ¶ 11; *see* Dkt. No. 815 ("Plan") at Art. XI.F.  This Court can and should decide that question.  *See* Section II, *infra*.

5.      **Finally**, MBI Servicios' argument that it should not be sanctioned also falls flat.  Movants requested that this Court hold MBI Servicios in civil contempt and award Movants attorneys' fees and costs with respect to the Motion and the defense of the Querella in Chile.  Motion ¶¶ 63-67.  The purpose of these sanctions is to remedy MBI Servicios' breach of the Confirmation Order and to ensure compliance with any order to withdraw the Querella.

6.      Sanctions are appropriate here because they are the only way to ensure that MBI Servicios complies with such an order.  MBI Servicios has attacked this Court in the proceedings arising from the filing of the Querella, and it no doubt will continue to do so unless it is sanctioned by this Court.  MBI Servicios has made a clear choice to use Chilean process because, as is common in any bankruptcy proceeding, it did not fully recover on its claim in these proceedings, and

its purported reliance on advice from *Chilean* counsel to interpret provisions of a bankruptcy plan

issued by this Court should not save it from being sanctioned.  *See* Section III, *infra*.

7.      MBI Servicios' Objection should be denied in its entirety, and this Court should

grant the Motion and the relief sought therein.

## ARGUMENT

### I.      MBI SERVICIOS' QUERELLA VIOLATES THE INJUNCTION

#### A.      The Querella Advances An Estate Cause Of Action

8.      As Movants demonstrated in the Motion, the Querella improperly asserts a released

Estate Cause of Action because it challenges the propriety of intercompany transactions that pur-

portedly deprived Debtor CGB of assets, allegedly harming its creditors—the very same claim that

the SP Settlement resolved.  Motion ¶ 9.[3]

9.      In the SP Settlement, which was a crucial part of the compromise that resulted in

the adoption of the Plan, the Debtors released the right to "***directly or indirectly encourage or***

***facilitate*** any claims against any released person ***by any governmental entity***."  Dkt. 770-1 at 5

(emphasis added).  The Confirmation Order then enjoined any Entity from "commencing … ***any***

***action or other proceeding of any kind*** on account of or in connection with or with respect to any

[Estate] Causes of Action."  Confirmation Order ¶ 11 (emphasis added).  "Estate Cause of Action"

is defined in the Plan to mean

> any Cause of Action that (a) is property of the Debtors, the Debtors' Estates or the
> Wind Down Estates, (b) has been asserted by or that could have been asserted by
> or on behalf of the Debtors, the Debtors' Estates or the Wind Down Estates (in-
> cluding by the Debtors on behalf of any Holder of any Claim against… a Debtor,

---

[3] MBI Servicios asserts that Movants "never even argue" that the Querella constitutes an Estate
Cause of Action.  Objection ¶ 19.  MBI Servicios is wrong.  *See* Motion ¶ 54 n.7 ("The Querella
also asserts released Estate Causes of Action.").  Movants argued that the Court need not reach the
question of whether the Querella constitutes an Estate Cause of Action, because it is undoubtedly
an action "in connection with" an Estate Cause of Action.  *Id.*

individually or collectively) or (c) any Holder of any Claim, Equity Interest, or Cause of Action could have asserted on behalf of the Debtors.

Plan at Art. I.B. § 1.69. And the Confirmation Order further provides that Estate Causes of Action include claims "based on, relating to, or in any manner arising from … the Debtors, … intercompany transactions, … the CGB Unsecured Notes … [or] *fraudulent transfer, or other avoidance claim* pursuant to chapter 5 of the Bankruptcy Code or other applicable federal, state or foreign (**including Chilean**) law." Confirmation Order ¶ 8 (emphasis added); *see* Plan at Art. XI.E.

10.     The Querella is squarely within the scope of those released Estate claims: it is an effort to "facilitate" the filing of a "fraudulent transfer or other avoidance claim." As Movants noted in the Motion, these are essentially the same claims that the UCC—of which MBI Servicios was one of three members—sought to assert **on behalf of the Debtors**—*i.e.*, as "Estate Causes of Action." *See* Dkt. No. 392.[4]

11.     In attempting to avoid the implications of this language, MBI Servicios argues that the Querella constitutes a Direct Cause of Action, not an Estate Cause of Action, for two reasons: *first*, because "it filed the Querella in its own right," and *second*, because the Querella initiates a criminal, not civil, proceeding. Objection ¶ 23. MBI Servicios is wrong on both counts.

### 1.     The Querella Alleges Generalized Harm To All Creditors

12.     MBI Servicios argues that it filed the Querella in its "individual capacity," and thus, any recovery it may obtain would only benefit it. Objection ¶ 2. But even a cursory review of the Querella—attached as Exhibit A to the Declaration of David S. Flugman, Dkt. No. 978-3 ("Flugman Decl.")—shows that it is **not** simply a limited complaint focusing on facts unique to

---

[4] MBI Servicios asserts that Movants do not show that the Querella fulfills any of the "three potential elements in the definition of 'Estate Cause of Action.'" Objection ¶ 23. Again, this is false: Movants pointed out that by proposing to file essentially the same claims on behalf of the Debtors, the UCC conceded that the claims were "Estate Causes of Action." Motion ¶ 9.

MBI Servicios and its affiliates.  The Querella challenges allegedly improper intercompany transactions that stripped the *Debtor* entities of their assets and describes purported *derivative* harms to all holders of relevant financial instruments.  *See, e.g.*, Querella ¶ 38 (alleging that "the stripping of CGB's assets" "was done to the detriment of the bondholders.  That is, of the CGB 13/23 Bond creditors.").

13.    The Querella does not allege (and MBI Servicios could not claim) that it suffered direct harm from any purportedly unlawful transactions between MBI Servicios and Movants, because other creditors share the same interest proportionate to their ratable share of their bondholdings.  *See In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).  In other words, any purported harm to MBI Servicios from conduct alleged in the Querella is derivative of harm to CGB, arising from MBI Servicios' status as a creditor of CGB.  Any resulting damages would be proportionate to its holdings of the Class 7B Bonds in the same way that other holders would suffer damages.  Importantly, compensating this class of creditors for their proportionate losses is *precisely what the Plan already accomplishes through the SP Settlement and the Litigation Trust*, which distributes settlement funds to members of Class 7B ratably in proportion to their bondholdings in exchange for releasing claims against the Movants.  *See* Dkt. No. 770-1 at 5; Plan at Art. I.B. § 1.179.

14.    Significantly, the remaining Debtor concurs: it joined the Motion, agreeing that the Querella asserts impermissible Estate Causes of Action.  Dkt. No. 991.  As the Debtor points out, the Querella is predicated on generalized claims of wrongdoing and seeks to vindicate the claims of creditors as a whole.  *Id.* ¶ 1.  As such, it is a quintessential cause of action belonging to the Estate.  *Id.* ¶ 4 ("MBI was an active participant in the Debtors' chapter 11 cases, and its conduct during the Court-supervised proceedings further illustrates that MBI *acknowledges* that these claims are Estate Causes of Action *which have been released by Court order*.").

6

15.    MBI Servicios attempts to introduce extrinsic evidence about the Plan's meaning, with its declarant German Guerrero claiming that "MBI Servicios and the other UCC members considered the preservation of 'Direct Causes of Action' … to be a crucial component of the Compromise." Dkt. No. 992-1 ("Guerrero Decl.") ¶ 3.  Because the Plan's language is unambiguous, the Court need not consider this extrinsic evidence.  *See In re ASHINC Corp.*, 683 F. App'x 131, 141 (3d Cir. 2017).[5]  However, in the event the Court does consider extrinsic evidence about the negotiation of the Plan, the attached declaration of Jorge Andrés Saieh Guzmán, who negotiated the Plan terms on behalf of the Movants, makes clear that the full release of all Estate Causes of Action—including the fraudulent transfer and Chilean law "simulated contract" claims that the UCC sought to bring in this Court—was a key issue in all the negotiations between the Debtors and the UCC and there was no carve out or intention to carve out an exception for querellas in Chile.  Declaration of Jorge Andrés Saieh Guzmán ("Saieh Declaration") ¶ 7.  Any such carve out would have been a non-starter for Movants.  *Id.*  Mr. Guerrero does not dispute this, nor does he claim that he (or MBI Servicios) understood a querella to fall within the definition of "Direct Cause of Action" at the time that the compromise was being negotiated.  *See* Guerrero Decl. ¶¶ 3-4 (asserting that MBI Servicios later consulted with Chilean counsel to come to the view that a querella was not an Estate Cause of Action).

16.    Relatedly, MBI Servicios is wrong that the Querella could never have been brought by the Debtors on behalf of the Estate.  *See* Objection ¶ 23.  MBI Servicios relies on the declaration of its expert, who asserts that the Querella could not be asserted by the Debtors or "anyone other

---

[5] The Plan provides that "to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is inapplicable," New York law governs interpretation of the Plan.  Plan at Art. XII.K. *In re ASHINC* applies New York law.

than MBI" because "any compensation that MBI might obtain from a *Sentence* Compensation Claim would be due to a 'causal link between the entry into the simulated contract and the victim's [that is, MBI's] financial loss.'"  Ovalle Decl. ¶ 10.[6]

17.    MBI Servicios' expert's assertion is misleading.  Any claim brought by MBI Servicios is unique to MBI Servicios in the sense that it will be limited by MBI Servicios' loss.  But that does not make such a claim a Direct Cause of Action.  Otherwise, MBI Servicios could bring any claim it wanted, including a civil fraudulent transfer action against Movants, so long as its damages would be limited to its individual losses.  That would render the SP Settlement and the Injunction a nullity.  In fact, as discussed above, MBI Servicios' claim is derivative of the Debtors' claim on behalf of the Estate, and MBI Servicios presents no evidence that the Debtors could not have filed the Querella as victims under the same "causal link" as MBI Servicios now asserts, based on the same alleged crime as MBI Servicios, on behalf of *all* bondholders.  Indeed, the fact that numerous other *querellantes* have filed nearly identical querellas is further evidence that MBI Servicios' claim is not unique to MBI and could have been brought by all the other bondholders. Motion ¶ 66; Objection ¶ 47.

18.    With this Court's approval, the Debtors chose to settle those claims instead, through the SP Settlement with Movants, which expressly released the Estate's right to "directly or indirectly encourage or facilitate any claims against any released person by any governmental entity,"

---

[6] MBI Servicios' expert also asserts that the simulated contract crime's low penalty and "simplified" procedure "DOES NOT allow civil action for compensation."  Ovalle Decl. ¶ 7.  This is wrong.  As stated by Carlos Künsemüller, a former Justice of the Criminal Chamber of Chile's Supreme Court, under the language of Chile's Criminal Procedure code, "it is obvious that such civil action can be filed during the special criminal proceeding."  Künsemüller Supplemental Declaration ("Künsemüller Supp. Decl.") ¶ 19.

such as a querella.  Dkt. No. 770-1 at 5; *see* Dkt. No. 978-5 ("<u>Künsemüller Decl.</u>") ¶¶ 5-6 (explaining the initiation of the Querella by a *querellante* and "active" participation in the proceedings).  The UCC approved the SP Settlement, and then supported confirmation of the Plan.  *See* Dkt. No. 770-1; Dkt. No. 796 ("<u>Winter Decl.</u>") ¶ 20.

### 2.     The Querella's Quasi-Criminal Nature Does Not Change The Result

19.     MBI Servicios next argues that the Querella is not an Estate Cause of Action because, under Chilean law, the Querella initiates a "criminal" proceeding in which (i) the prosecutor, not a party, "decides whether to pursue, settle, or abandon the litigation"; (ii) the conduct alleged is criminal, not tortious; (iii) damages are only available after the initial investigation stage; and (iv) the standard of proof is "beyond [a] reasonable doubt."  Objection at ¶¶ 23-24.  This argument should be rejected.

20.     *First*, the fact that, following initiation by a private party, a querella is investigated and pursued by a prosecutor is irrelevant.  MBI Servicios' expert's statement that the prosecutor "is the plaintiff," Ovalle Decl. ¶ 5, is incorrect: Chile's Constitution establishes "the responsibilities of the Public Prosecutor's office, as a procedural actor," and none of them include acting as a plaintiff in a criminal investigation.  Künsemüller Supp. Decl. ¶¶ 9-10.  Movants do not seek to interfere with the prosecutor's independent authority to investigate claims if he sees fit to do so; rather, Movants ask only that this Court prevent MBI Servicios from weaponizing the prosecutorial function to pursue a claim that was settled in and enjoined by this Court.[7]  If MBI Servicios is

---

[7] If MBI Servicios withdraws the Querella and the Public Prosecutor does not abandon the investigation, MBI Servicios may continue to cooperate with the Public Prosecutor in the investigation—a process Movants do not challenge.

ordered to withdraw the Querella, as Movants request, the Chilean authorities can continue to pursue their investigation if they deem appropriate, but MBI Servicios will not be permitted to recover damages—*e.g.*, more than its ratable portion of the settlement payments to which it already is entitled under the Plan.[8]

21.    *Second*, the classification of the Querella as bringing "criminal" or "tortious" claims is similarly irrelevant under the Plan.  Regardless of the technical classification of the claims under Chilean law, MBI Servicios concedes that damages are available for a *querellante*, just as they would be in a civil tort case.  Objection ¶ 24 ("Compensation … can … be demanded from the accused after the proceeding has progressed beyond the investigation stage….").

22.    *Third*, it is also irrelevant that MBI Servicios has not *yet* sought damages.  *Id.* ¶ 4. Conspicuously, while it makes much of this fact in its Objection, MBI Servicios ***has not denied that it intends to seek damages when the opportunity arises.***  Indeed, statements made by MBI's officers to authorities in the Chilean criminal proceedings make clear that MBI Servicios will do just that.  MBI Servicios' Commercial Director, Jorge Ignació del Puerto Vergara, testified that MBI Servicios did not "waive civil actions arising out of the crime of simulated contract." Eyzaguirre Decl. Ex. A at 9.  MBI Servicios' Fixed Income Manager, Guillermo Andrés Kautz Rodriguez, testified that the Chapter 11 proceedings "have no effect in Chile" and that MBI Servicios "did not waive criminal or civil actions."  *Id.* at 16.  Francisco Contreras Hormazabal, MBI Servicios' Deputy Manager of International Fixed Income, testified similarly.  *Id.* at 24.  These

---

[8] Indeed, MBI Servicios' assertion that if it withdraws the Querella, "the Public Prosecutor is likely to abandon the investigation," Objection ¶ 14, further supports Movants' argument that the investigation was initiated by and hinges almost entirely on MBI Servicios' pursuit of its claims against Movants.

statements by MBI Servicios' officers are consistent with those of its lawyer, Carlos Cortés Guzmán, who has stated publicly that MBI Servicios is "looking to recover the money that was paid." *See* Flugman Decl. Ex. B.[9]  As discussed further below, these statements are reason enough for the Court to require MBI Servicios to withdraw the Querella now, as they demonstrate that MBI Servicios intends to pursue damages and thereby continue violating the Injunction.

23.     *Fourth*, MBI Servicios' assertion that the applicable standard of proof for the Querella is proof "beyond [a] reasonable doubt" is irrelevant.  Objection ¶ 24.  Nothing in the Plan's definition of "Estate Cause of Action" says anything about burden of proof, or any other procedural issues of Chilean law.  What matters is that MBI Servicios is using the Querella as a mechanism to seek civil damages for claims released under the Plan.

### B.    In Any Event, The Querella Is In Connection With An Estate Cause Of Action

24.     Even if the Querella does not fall within the definition of an Estate Cause of Action, it is unquestionably an action brought "in connection with" an Estate Cause of Action, and thus is barred by the Injunction.  MBI Servicios attempts to read the broad language of the Injunction, which prohibits any claims brought "in connection with" Estate Causes of Action, out of the Plan, claiming that reading this language according to its plain meaning would lead to an "inconsistency," because it would mean that "Direct Causes of Action" would be enjoined even though they are expressly preserved elsewhere in the Plan.  Objection ¶¶ 31-32.  MBI Servicios' premise for this inconsistency—that "any Direct Cause of Action is arguably connected to any Estate Cause

---

[9] Here again, MBI Servicios tries to misdirect the Court—denying that Mr. Cortés was speaking on its behalf in this interview, Objection ¶ 37, but not denying that Mr. Cortés is its lawyer and agent authorized to speak on its behalf.  Notably, nothing in Mr. Cortés's interview suggests he is only speaking on behalf of a subset of *querellantes* rather than on behalf of all his clients—including MBI Servicios.

of Action against the same defendant"—is false.  *Id.* ¶ 31.  As in any bankruptcy, there may be claims that are "specific" and "personal" to the creditor where "other creditors generally have no interest in that claim."  *In re Emoral*, 740 F.3d at 879 (quoting *Bd. of Trustees of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 170 (3d Cir. 2002)).  For example, if MBI Servicios were alleging claims arising out of a transaction directly between MBI Servicios and Movants, it is possible that the claim would not be an Estate Cause of Action.  But that is not the situation here.  *See* Querella ¶ 38 (alleging "detriment [to] the bondholders").

25.     Furthermore, to the extent MBI Servicios had concerns about the scope of the Injunction, it had the opportunity to raise them in this proceeding—through a proposed amendment or objection.  Moreover, during settlement negotiations between the Debtors and the UCC, MBI Servicios could have advocated for the specification that the Querella constitutes a "Direct Cause of Action"—particularly because it is clear that MBI Servicios intended to file the Querella all along.  *See* Eyzaguirre Decl. Ex. A.  Instead, MBI Servicios chose to collaterally attack the legitimacy of the Plan in another jurisdiction by filing the Querella and by characterizing these proceedings as illegitimate and part of a "criminal plan."  Querella ¶ 64.  That is manifestly improper.

26.     MBI Servicios also argues that a claim is not "in connection with" an Estate Cause of Action solely because it shares the same "underlying facts."  Objection ¶ 30.  This is a straw man argument.  Movants showed that the Querella is at least "in connection with" Estate Causes of Action not only because it shares the same underlying facts (as MBI Servicios concedes, *id.*) but because it concerns the *same claim*—essentially, a fraudulent transfer claim based on pre-petition intercompany transactions—a claim that the UCC previously proposed to bring on behalf of the Estate.  *See* Künsemüller Decl. ¶ 21 (noting that "the basis of the motion and private criminal

complaints is essentially the same: fraudulent, simulated contracts"); Motion ¶ 55 (comparing Querella and UCC Draft Adversary Complaint).[10]

## II.    WHETHER THE QUERELLA IS ENJOINED BY THE PLAN AND CONFIRMATION ORDER IS A QUESTION OF U.S. LAW

27.    MBI Servicios argues that the issue the Motion presents is a "tough question of Chilean law"—whether the Querella "is (or someday may become) equivalent to, or in connection with, a civil case asserting claims under Chilean Civil Code." Objection ¶¶ 45-48. It thus invites the Court to abstain from deciding the question. The Court should reject that misguided proposal.

28.    This Court is plainly the proper forum to interpret its own orders and order appropriate relief. Nothing in the Plan or Confirmation Order turns on whether Chile (or any other jurisdiction) characterizes a proceeding as "civil" or "criminal." The Motion presents a straightforward issue that requires interpretation of the Plan, not the nuances of Chilean law: whether MBI Servicios "commence[d]," or is "continuing[,] … any action or other proceeding of any kind on account of or in connection with or with respect to any [Estate] Causes of Action." Confirmation Order ¶ 11; *see* Plan at Art. XI.F.

29.    This Court authorized the Plan and issued the Injunction, and MBI Servicios is wrong to suggest that it should defer to a foreign court to interpret its own orders. This is even more true here, where, as described below, MBI Servicios has poisoned the Chilean proceedings against this Court's orders by claiming that this proceeding was part of a "criminal plan" and

---

[10] *Sunbelt Rentals, Inc. v. Love*, 2021 WL 82370, at *15-16 (D.N.J. Jan. 11, 2021), on which MBI Servicios relies, is inapposite. The decision notes that the phrase "in connection with" has a "broad" sweep, but decided the plaintiff advanced an "overly broad" interpretation of the phrase because its interpretation conflicted with other parts of the definition. *Id.* Here, it is MBI Servicios which advances an interpretation that is in conflict with the plain language of the Injunction: it would have the Court effectively delete the phrase "in connection with" from "in connection with … an Estate Cause of Action," so that the Injunction only applied to bringing "Estate Causes of Action."

claiming that the Chapter 11 proceeding "has no effect" in Chile. *See* Section III, *infra*. For example, Arturo Claro Montes, one of MBI Servicios' founding partners, testified that Chapter 11 proceedings "have no effect in Chile. There are no proceedings … before [Chile's] Supreme Court to recognize a foreign judgment; and there has been no hearing in Chile to enforce such cross-border liquidation proceeding." Eyzaguirre Decl. Ex. A. at 21.

30.     MBI Servicios' gambit is transparent: if this Court defers to the Querella process, MBI Servicios will get what it wants, and the Injunction will continue to be violated—because the entire purpose of the Injunction is to prevent further litigation of released claims like those advanced in the Querella.[11]

### III.     MOVANTS RESPECTFULLY REQUEST THE COURT TO DIRECT MBI SERVICIOS TO WITHDRAW THE QUERELLA AND IMPOSE SANCTIONS ON MBI SERVICIOS

31.     Movants respectfully request that the Court hold MBI Servicios in civil contempt in order to remedy its violation of this Court's orders and to ensure its compliance with a directive to withdraw the Querella. Motion ¶ 14. Here, the coercive effect of a contempt order is itself a basis to impose such an order, as it is the only way that the Court can ensure that MBI Servicios complies with an order enforcing the Injunction and directing MBI Servicios to withdraw the Querella. *See In re Avianca Holdings S.A.*, 648 B.R. 358, 363-64 (Bankr. S.D.N.Y. Jan. 27, 2023) (in determining appropriate sanction, considering, *inter alia*, "the probable effectiveness of the sanction in bringing about compliance," and finding proposed sanctions of "giving Foreign Plaintiffs

---

[11] While MBI Servicios criticizes Movants for not moving to dismiss the Querella, Objection ¶ 16, there is no such procedural mechanism to do so. Indeed, MBI Servicios does not cite any provision under Chilean law that would allow the Due Process Judge to dismiss the Querella based on a motion from Movants. *See* Künsemüller Supp. Decl. ¶¶ 2-6 (confirming that the grounds to dismiss a querella are narrow and do not include breach of a foreign judgment). Moreover, forcing Movants to move to dismiss the claims in Chile would undermine the purpose of the Injunction, which is intended to prevent MBI Servicios from initiating such claims in the first place.

thirty days to discontinue their actions and then disallowing the Foreign Litigation Proofs of Claims … likely to be effective in abating [the] harm (at least to the extent of avoiding a double recovery)").  Movants also respectfully request that the Court award Movants attorneys' fees and costs associated not only with this Motion and proceedings before this Court, but also in connection with defending against the Querella in Chile.

32.    MBI Servicios argues that it should not be subject to sanctions for two reasons. *First*, MBI Servicios notes that it has not yet actually sought damages and cannot be held in "anticipatory" contempt.  Objection ¶¶ 5, 38.  But there is nothing anticipatory about MBI Servicios' flagrant and continuing contempt for these proceedings.  By initiating the Querella proceedings— through which it may seek damages if successful—MBI Servicios has already "commenc[ed] … an[] action or other proceeding of any kind on account of or in connection with or with respect to any [Estate] Causes of Action."  Confirmation Order ¶ 11.  When the criminal tribunal confirmed that MBI Servicios' Querella complied with the formal requirements, the tribunal sent it to the Public Prosecutor's Office, which commenced an investigation.  *See* Künsemüller Decl. ¶¶ 8-9; Ovalle Decl. ¶ 5.  Movants have already been prejudiced by MBI Servicios' violation of the Injunction because they must now defend themselves in a criminal investigation against claims that were already resolved in the SP Settlement in this Court.[12]  The fact that MBI Servicios has not yet filed its civil claim for damages—which all agree it has not yet had the opportunity to do (and which MBI does not deny it intends to do if able)—is beside the point.

---

[12] Sanctions will not interfere with any Chilean government investigation or proceeding.  As MBI Servicios' own expert concedes, the Public Prosecutor ultimately decides whether to pursue the investigation.  Ovalle Decl. ¶ 5.  For that reason, even if MBI Servicios is forced to withdraw its Querella, the investigation may continue if the prosecutor determines the claims have potential merit.

33. Furthermore, MBI Servicios **offers no explanation or excuse** in its Objection for using the Querella as an impermissible collateral attack on the Plan. *See* Motion ¶¶ 12-13, 57. Although it has participated in these proceedings as a member of the UCC and the Litigation Trust Committee, MBI Servicios has attacked the integrity of this Court's proceedings, claiming they are part of a "criminal plan" by Movants to "invoke debtor insolvency" after emptying the Debtors of assets. *See* Querella ¶ 64. And in fact, it has doubled down: in declarations presented to the Chilean prosecutor, senior executives at MBI Servicios have claimed that these Chapter 11 proceedings "have no effect in Chile." Eyzaguirre Decl. Ex. A. at 21. Unless the Court sanctions MBI Servicios, its attacks on these proceedings will continue.

34. *Second*, MBI Servicios argues that sanctions are not proper because it relied in good faith on advice from Chilean counsel that the Querella was a "Chilean law Direct Cause of Action" preserved by the Plan. Objection ¶ 41; Guerrero Decl. ¶ 4. However, as discussed above, the proper interpretation of the Plan and the Injunction issued by *this Court* is a question for *this Court* to adjudicate and enforce. MBI Servicios' claimed reliance on *Chilean* counsel concerning the meaning of "Direct Cause of Action" in a plan of liquidation confirmed by a U.S. bankruptcy court should be rejected out of hand.[13]

35. Finally, in an attempt to avoid responsibility, MBI Servicios attempts to distance itself from its Chilean counsel Carlos Cortés, who has boasted publicly that MBI Servicios is ignoring the rulings of this Court. Objection ¶ 17; *see* Flugman Decl. Ex. B. But as discussed in Section I.A.2, *supra*, Mr. Cortés's statements are consistent with statements by MBI Servicios'

---

[13] By relying on its "consult[ations] with Chilean counsel" as a defense for its conduct, MBI Servicios arguably waived the attorney-client privilege over all of its communications with counsel about filing the Querella. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), *as amended* (Oct. 12, 2007). Movants reserve all rights in connection with this waiver.

own executives about their intention in filing the Querella.  Those executives have testified that MBI Servicios did not "waive civil actions arising out of the crime of simulated contract," meaning that MBI Servicios believes it is entitled to and will eventually seek compensation.  Eyzaguirre Decl. Ex. A at 9.  MBI Servicios cannot escape from its lawyer's clear admissions that what MBI Servicios is truly seeking in Chile is compensation in addition to what it will receive under the Plan.

## **<u>CONCLUSION</u>**

For all the reasons stated above and in the Motion, Movants respectfully request that this

Court enforce the Injunction against MBI Servicios and enter the order attached as Exhibit 1 to the

Motion.

Dated:   Wilmington, Delaware           Respectfully submitted,
         October 12, 2023

                                      PACHULSKI STANG ZIEHL & JONES LLP

                By:   */s/ Laura Davis Jones*
                        Laura Davis Jones (DE Bar No. 2436)
                        919 North Market Street
                        Wilmington, Delaware 19801
                        Tel: 302-778-6401
                        ljones@pszjlaw.com

                        --and--

                        Philippe Z. Selendy
                        David S. Flugman
                        Lauren J. Zimmerman
                        SELENDY GAY ELSBERG PLLC
                        1290 Avenue of the Americas
                        New York, New York 10104
                        Tel: 212-390-9000
                        pselendy@selendygay.com
                        dflugman@selendygay.com
                        lzimmerman@selendygay.com

                        *Attorneys for Álvaro Saieh Bendeck, Jorge*
                        *Andrés Saieh Guzmán, María Catalina Saieh*
                        *Guzmán, Pilar Dañoebeitía Estades, and Andrés*
                        *Winter Salgado*