# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CORP GROUP BANKING S.A., *et al.*,[1] | Case No. 21-10969 (JKS) |
| Debtor. |  |

## MOTION TO ENFORCE ORDER CONFIRMING THE SEVENTH AMENDED JOINT PLAN OF LIQUIDATION OF CORP GROUP BANKING S.A. AND ITS DEBTOR AFFILIATES

Date:  June 10, 2024

Laura Davis Jones
Peter J. Keane
PACHULSKI STANG ZIEHL
& JONES LLP
919 North Market Street
Wilmington, Delaware 19801
Tel: 302-778-6401
ljones@pszjlaw.com

Philippe Z. Selendy
David S. Flugman
Lauren J. Zimmerman
(all admitted *pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
Tel: 212-390-9000
pselendy@selendygay.com
dflugman@selendygay.com
lzimmerman@selendygay.com

*Attorneys for Álvaro Saieh Bendeck, Jorge Andrés Saieh Guzmán, María Catalina Saieh Guzmán, and Pilar Dañoebeitía Estades*

---

[1] The last four digits of the Debtor's foreign tax identification number are 900-8.  The Debtor's mailing address is Rosario Norte N°660, 22nd Floor, Las Condes, Santiago, Chile.  The chapter 11 cases of certain affiliates of the Debtor were closed effective as of April 28, 2023.  *See* Case No. 21-10969, Docket No. 974.

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ....................................................................................1

JURISDICTION ........................................................................................................4

BACKGROUND .......................................................................................................5

    A.    The Debtors Settle Claims with the Unsecured Creditors Committee ...................5

    B.    A Group of 74 Unsecured Creditors Files Substantively Identical
        *Querellas* Against Movants in Chile.....................................................................8

    C.    Movants File a Motion to Enforce the Plan Against MBI Servicios ......................9

    D.    The Court Grants the Motion to Enforce the Plan; MBI Servicios
        Withdraws its *Querella* ....................................................................................11

    E.    Despite the Court's October 2023 Order, the Remaining Querellantes
        Continue Violating this Court's Orders ...............................................................12

    F.    Movants Ask the Litigation Trustee to Suspend Payments to Certain Class
        7B *Querellantes* ..............................................................................................13

RELIEF REQUESTED...............................................................................................15

BASIS FOR RELIEF .................................................................................................16

I.    THE COURT HAS THE AUTHORITY TO ORDER THE LITIGATION
    TRUSTEE TO EXERCISE ITS POWER TO SUSPEND PAYMENTS TO THE
    REMAINING QUERELLANTES................................................................................16

    A.    The Remaining Querellantes Are in Violation of the Plan and this Court's
        Orders.............................................................................................................16

    B.    The Court Retained Specific Authority Under the Plan To Enforce The
        Plan's Injunction .............................................................................................19

    C.    The Court Has Broad Authority to Fashion Equitable Relief..............................21

    D.    The Litigation Trustee Has the Power to Withhold Payments to the
        Remaining Querellantes....................................................................................23

NOTICE..................................................................................................................25

CONCLUSION.........................................................................................................26

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arctic Glacier Int'l, Inc.,*
   901 F.3d 162 (3d Cir. 2018)............................................................................17, 18

*In re Christ Hosp.*,
   502 B.R. 158 (Bankr. D.N.J. 2013), *aff'd,* 2014 WL 4613316 (D.N.J. Sept. 12,
   2014) ...............................................................................................................5

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
   Corp. v. Chinery,*
   330 F.3d 548 (3d Cir. 2003).........................................................................21, 23

*In re Essar Steel Minn., LLC,*
   47 F.4th 193 (3d Cir. 2022) .............................................................................4, 20

*In re Karpe,*
   84 B.R. 926 (Bankr. M.D. Pa. 1988) ....................................................................21

*In re Lear Corp.*,
   2012 WL 443951 (Bankr. S.D.N.Y. Feb. 10, 2012)..............................................20

*In re Szotek*,
   886 F.2d 1405 (3d Cir. 1989)...........................................................................18

*Traveler's Indem. Co. v. Bailey,*
   557 U.S. 137 (2009).............................................................................17, 18, 20

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012)..............................................................................19

**Statutes and Rules**

11 U.S.C §§ 101-1532 .........................................................................................5

11 U.S.C § 105(a) ...............................................................................4, 15, 19, 20

11 U.S.C. §524.....................................................................................4, 15, 20

11 U.S.C. § 1123(a)(4)..........................................................................................18

11 U.S.C. § 1129(b)(2) .........................................................................................18

11 U.S.C. §1141................................................................................4, 15, 20

11 U.S.C. § 1142 ...................................................................................................19

11 U.S.C. § 1327 ...................................................................................................18

28 U.S.C. § 157 ...............................................................................................4, 20

28 U.S.C. § 1334 ............................................................................................4, 20

28 U.S.C. § 1408 .....................................................................................................4

28 U.S.C. § 1409 .....................................................................................................4

Fed. R. Bankr. P. 3020(d) .................................................................................5, 15

Fed. R. Bankr. P. 7001(7) ......................................................................................5

**Other Authorities**

MORATORIUM, Black's Law Dictionary (11th ed. 2019) ......................................24

Álvaro Saieh Bendeck, Jorge Andrés Saieh Guzmán, María Catalina Saieh Guzmán, and Pilar Dañoebeitía Estades (together, "Movants") hereby seek entry of an order, substantially in the form attached hereto as Exhibit 1, directing the Litigation Trustee to suspend and hold in escrow payments under the Plan due to the Remaining Querellantes,[2] who are advancing legal proceedings commenced by their filing of *querellas* against Movants in Chile, in violation of this Court's Confirmation Order and in a manner inconsistent with this Court's October 30, 2023 order.  *See* Dkt. No. 978-3, Flugman Decl. Ex. A.  In support of this motion, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.        On October 30, 2023, this Court entered an order (the "October 2023 Order", Dkt. 1013) enforcing the Order ("the "Confirmation Order", Dkt. 825) Confirming the *Seventh Amended Joint Plan of Liquidation of Corp Group Banking S.A. and its Debtor Affiliates* (the "Plan")[3] and directing MBI Servicios Financieros Limitada ("MBI Servicios") to withdraw the *querella* it had filed against Movants in Chile.

2.        In granting Movants' motion, the Court found that MBI Servicios' *querella* violated the Plan and the Confirmation Order because the claims asserted against Movants in MBI Servicios' *querella* belonged to the Estate and constituted Estate Causes of Action that were settled in connection with the Plan and the Confirmation Order.  October 2023 Order at 2.

---

[2] The Remaining Querellantes are (i) Juan Carlos Petersen Widmer, (ii) Marisol Burgos Concha, (iii) Cristian Pablo Pinto Marinovich, (iv) Juan Carlos Tali-Hamideh Bitar, (v) Inversiones GV S.A., (vi) Trayenko Investments LP, (vii) Zermat Business Inc., (viii) CB Investments SpA, and (ix) Exportadora Los Lirios S.A.

[3] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

3.      After the Court issued its October 2023 Order, MBI Servicios complied by withdrawing its *querella*.

4.      Soon thereafter, Movants wrote to the other 73 unsecured creditors that had filed copycat *querellas* in Chile (the "Class 7B Querellantes") attaching a copy of the October 2023 Order and putting them on notice that their respective *querellas*—which were nearly identical in substance and sought the same relief as the one MBI Servicios filed—likewise violated the Confirmation Order because, like MBI Servicios, these creditors sought to obtain more than their ratable share of distributions from the litigation trust established under the Plan (the "Litigation Trust").   Movants, therefore, requested that each of the 73 Class 7B Querellantes voluntarily withdraw its *querella* to avoid further unnecessary burdens on the Court.   Most of the Class 7B Querellantes complied and withdrew their *querellas*.

5.      But the Remaining Querellantes, all of whom are represented by the same law firm that represented MBI Servicios, have continued to press their claims against Movants in blatant violation of this Court's orders (of which they unquestionably are aware).   Some filed a new *querella* after this Court issued the October 2023 Order.   *See* Declaration of David S. Flugman ("2024 Flugman Decl.") Ex. A.  Others purported to withdraw their *querellas* while simultaneously reserving the right to pursue damages claims against Movants in the event their withdrawn *querellas* nonetheless lead to a criminal conviction against any of Movants.   *See* 2024 Flugman Decl. Ex. B-G.  And another creditor withdrew its *querella* but subsequently filed an expert report with the Chilean Public Prosecutor's Office seeking to establish the amount of damages allegedly suffered by the Class 7B Querellantes.   *See* 2024 Flugman Decl. Ex. H.

6.      Each of these actions by the Remaining Querellantes' constitutes a transparent and knowing attempt to continue pursuing the same claims this Court ruled were Estate Causes of

Action settled and released under the Plan.  And each of these actions violates this Court's Injunction in the same way that MBI Servicios' *querella* did.

7.    By continuing to pursue these released Estate Causes of Action, the Remaining Querellantes seek to undermine the finality of the Plan and this Court's orders and to obtain greater recoveries for themselves than other similarly-situated Class 7B creditors.  This self-made two-tiered system of recovery is fundamentally unfair to other Class 7B creditors who have been complying with the Plan since its inception, as well as those creditors who brought themselves into compliance with the Plan by withdrawing their wrongly-filed *querellas*.  The Remaining Querellantes' conduct is particularly egregious given that they are the direct beneficiaries of the payments Movant Jorge Andrés Saieh Guzmán has made and will continue to make over the next three years under the SP Short Term Note as part of the SP Settlement—the Plan settlement of the claims which are the subject of the *querellas*.  The proceeds of these settlement payments are distributed by Steven D. Sass LLC, the Court-appointed trustee of the Litigation Trust (the "Litigation Trustee").

8.    On March 8, 2024, Movants sent a letter to the Litigation Trustee requesting that it exercise its authority under the Litigation Trust Agreement to suspend further Plan distributions to the Remaining Querellantes until such time as they are in full compliance with the Court's Confirmation and October 2023 Orders.  Movants chose to approach the Litigation Trustee in the first instance in an effort to pursue what they believed was the most efficient approach, both in terms of time and cost, to resolve this dispute.  *See* 2024 Flugman Decl." Decl. Ex. I.

9.    On April 28, 2024, counsel for the Litigation Trustee responded, declining to suspend the relevant payments because it was uncertain that it had the power to do so under the Litigation Trust Agreement.  However, counsel for the Litigation Trustee advised Movants that it

did not object to Movants seeking Court authorization for such relief and that it would take no position on the merits of any such request.  *See* 2024 Flugman Decl. Ex. J.

10.     Movants, therefore, seek relief from this Court in the form of an order directing the Litigation Trustee to exercise its authority under the Litigation Trust Agreement to take all necessary steps to suspend distributions from the Litigation Trust to the Remaining Querellantes and hold in escrow further distributions owing to them unless and until they (i) dismiss their respective *querellas* with prejudice, (ii) withdraw any related reservation of rights, (iii) cease all participation in the proceedings against Movants unless required by Chilean authorities, and (iv) certify to the Litigation Trustee and Movants their full compliance with the Confirmation and October 2023 Orders.  Movants further request that the order authorize and direct the Litigation Trustee to suspend and hold in escrow Litigation Trust distributions to any additional creditor engaging in similar conduct as described herein.

11.     The relief requested is necessary to remedy ongoing harm to Movants, protect this Court's jurisdiction and authority over the instant Chapter 11 case, and ensure the fair treatment of all creditors under the Plan.

## **JURISDICTION**

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  *See In re Essar Steel Minn., LLC*, 47 F.4th 193, 199 (3d Cir. 2022) (holding that the bankruptcy court "interpret[ing] the discharge injunction order in its own plan and confirmation order" constitutes a core proceeding).

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are sections 105(a), 524(a), and 1141(d) of Title 11 of the United

States Code, 11 U.S.C §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and Rule 3020(d) of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").[4]

## BACKGROUND

### A.    The Debtors Settle Claims with the Unsecured Creditors Committee

14.    Shortly after its appointment by the United States Trustee, the Official Committee

of Unsecured Creditors (the "<u>UCC</u>") sought and obtained authority from this Court to conduct an

examination of the Debtors and certain non-debtor affiliates.  Through this investigation, the UCC

identified potential causes of action that the estates could pursue against several of the Debtors'

directors and officers, as well as various non-Debtor affiliated entities—including entities owned

and controlled by Movants—relating to certain prepetition intercompany transactions.  *See* Dkt.

No. 392 ¶¶ 1-2, 25.

15.    On December 23, 2021, the UCC moved this Court for entry of an order authorizing

the UCC "to investigate, negotiate, prosecute, and settle certain claims and causes of action on

behalf of the Debtors' estates and granting related relief."  *See id.*  In its motion (the "<u>Claims</u>

<u>Motion</u>"), the UCC alleged that in the years prior to the bankruptcy filings, Movants orchestrated

a series of transactions whereby assets were transferred from the Debtors to non-Debtor entities

within Corp Group, a conglomerate based in the Republic of Chile, for the benefit of Movants and

to the detriment of the Debtors' creditors.  In particular, the UCC alleged that Movants caused

Debtor Corp Group Banking, S.A. ("<u>CGB</u>") to issue $500 million in unsecured notes, the proceeds

---

[4] This motion complies with the requirements of Bankruptcy Rule 7001, which generally requires that requests for injunctive relief be brought by adversary proceeding, because this motion seeks to enforce a pre-existing injunction provided for in a Chapter 11 plan.  *See* Fed. R. Bankr. P. 7001(7); *In re Christ Hosp.*, 502 B.R. 158, 183 n.32 (Bankr. D.N.J. 2013), *aff'd,* 2014 WL 4613316 (D.N.J. Sept. 12, 2014) (holding proceeding via adversary proceeding was not required to enforce Chapter 11 confirmation order).

of which were purportedly used to support other Corp Group entities rather than to benefit CGB itself. The UCC further alleged that Movants caused the Debtors to sell their interests in certain operating subsidiaries in exchange for receivables that could not be collected. *Id*. ¶¶ 27-4.

16.     The claims the UCC sought to assert against Movants included, among others, actual and constructive fraudulent transfer claims under the Bankruptcy Code and Chilean law, as well as claims for "simulated contracts" under Chilean law—the Chilean law equivalent of a fraudulent transfer claim.

17.     Before this Court issued a ruling on the UCC's Claims Motion, the Debtors negotiated a settlement of all claims that could have been asserted on behalf of the Debtors' estates in exchange for a substantial contribution from Movants (the "SP Settlement"). *See* Dkt. No. 770-1, at 5. Specifically, in exchange for full releases for all Movants, Jorge Andrés Saieh Guzmán agreed to issue an unsecured note (the SP Short Term Note) in the amount of $4 million to the Litigation Trust formed under the Chapter 11 plan for the benefit of the Debtors' unsecured creditors. *See* Dkt. No.802 (specifying payment of $1.5 million to the Litigation Trust within 60 days of the Plan's Effective Date, *i.e.*, July 14, 2022, and the remaining $2.5 million in five equal installments of $500,000 on the yearly anniversary of the Effective Date).

18.     As a result of the SP Settlement, the UCC withdrew its Claims Motion, and on June 16, 2022, this Court entered the Confirmation Order confirming the Plan. *See* Dkt. No. 825. The Confirmation Order incorporated the SP Settlement and approved it as a "good faith compromise and settlement" of all claims that could have been asserted by or on behalf of the Debtors, including all claims that had been investigated and raised by the UCC. *See* Dkt. No. 825 ¶ 31. The Plan and Confirmation Order further provided that upon the Effective Date, Movants and all other settling parties would be fully released by the Debtors, their estates, and their creditors from any and all

claims, causes of action, or liabilities relating to the settled matters, including any avoidance or other claims belonging to the estates.  *See* Plan Art. XI.E (emphasis added); Confirmation Order ¶ 8.

19.     To effectuate the release of all Estate Causes of Action,[5] the Plan and Confirmation Order expressly enjoined "all Entities who have held, hold, or may hold causes of action that have been released [from] ***commencing or continuing in any manner any action or proceeding of any kind***" to prosecute those claims against any released party, which included Movants, "whether in the U.S., Chile, or elsewhere".  *See* Plan Art. XI.F (emphasis added); Confirmation Order ¶ 11 (emphasis added).  The enjoined claims expressly included, among other things, all claims "based on, relating to, or in any manner arising from . . . [the Debtors'] intercompany transactions, . . . the CGB Unsecured Notes, . . . [and] any fraudulent transfer or avoidance claim under any applicable federal, state or foreign (including Chilean) law."  *See* Plan Art. XI.E.

20.     In addition, the Debtors agreed not to "***directly or indirectly encourage or facilitate any claims against any released person by any governmental entity or other third party***," in exchange for consideration from Movants that would be distributed solely to CGB's unsecured creditors.  *See* Affiliated Entity Settlement Term Sheet, Dkt. 770-1 at 5 (emphasis added), Plan at Art. I.B § 1.171 (defining "Settling Parties") (citing Dkt. No. 770-1); *id*. at Art. V.W(i) (emphasis added); Confirmation Order ¶ 31 (emphasis added).

21.     The Court's Confirmation Order, therefore, released all the Class 7B creditors' fraudulent transfer claims against CGB and Movants, including those of the Remaining Querellantes, in exchange for funds they would receive under the Plan.

---

[5] "Estate Causes of Action" include any Cause of Action that was the property of the Debtors or the Debtors' Estates or that could be brought on behalf of the Debtors or the Debtors' Estates. *See* Plan at Art. I.B. § 1.69.

22.    To date, Mr. Saieh has met all his obligations under the SP Settlement, including by timely paying to the Litigation Trust for purposes of the distribution of Plan payments to the Class 7B creditors: (i) $1.5 million as the initial principal payment under the SP Settlement on or about September 9, 2022, and (ii) $500,000, representing the annual amount due under the SP Settlement on July 14, 2023.  *See* Dkt. No. 1017.  The next annual payment of $500,000 is due on July 14, 2024.

**B.    A Group of 74 Unsecured Creditors Files Substantively Identical *Querellas* Against Movants in Chile**

23.    Beginning in January 2023—less than six months after this Court confirmed the Plan enjoining all parties from pursuing the settled and released Estate Causes of Action in any proceeding—74 Class 7B Querellantes—including MBI Servicios and the Remaining Querellantes—filed a series of substantively identical complaints known as "*querellas*" against Movants in Chile.  *See* Dkt. No. 978 ¶ 66 & n.9.

24.    A *querella* is a procedural mechanism under Chilean law that allows a party to bring potential criminal charges to the attention of the Public Prosecutor's Office and seek a criminal investigation into the alleged wrongdoing.  *See* Dkt. No. 978-5, Künsemüller Decl. ¶ 4.  Although styled as a criminal action, a *querella* also allows the complaining party—known as the *querellante*—to assert a claim for monetary damages as a "victim" of the alleged crime.  Such damages claims can be asserted within the same criminal proceeding initiated by the filing of the *querella*, without the need to file a separate civil action.  If and when a *querellante* withdraws its *querella*, the Public Prosecutor's Office has the option to end its investigation or to continue the process independently.  *See* Dkt. No. 978-5, Künsemüller Decl. ¶ 4.

25.    Each of the *querellas* filed by the 74 Class 7B Querellantes alleged that Movants defrauded CGB's unsecured noteholders by stripping CGB of assets for the benefit of Movants

8

and other non-Debtor affiliates, leaving CGB unable to satisfy its obligations to its unsecured creditors. Specifically, the *querellas* alleged that Movants and certain other CGB affiliates had committed the crime of "fraud by means of simulated contracts" under Chilean law, the alleged "simulated contracts" being the same related-party transactions and asset transfers that were the subject of the UCC's proposed claims and which were settled and released under the SP Settlement.

26.     Accordingly, by filing the *querellas*, the Class 7B Querellantes sought to obtain additional monetary recoveries arising from the same transactions that were the subject of the claims they settled and released under the Plan.[6] *See* Dkt. No. 1013 at 2.

### C.     Movants File a Motion to Enforce the Plan Against MBI Servicios

27.     On August 23, 2023, Movants filed a motion (the "Motion") asking this Court to enforce the terms of the Confirmation Order against MBI Servicios. MBI Servicios is a Class 7B creditor, served on the UCC, and continues to serve on the oversight committee of the Litigation Trust established under the Plan to make distributions to holders of Class 7B claims (including MBI Servicios itself). *See* Dkt. No. 802 at 34.

28.     The Motion argued that MBI Servicios' *querella* violated the express terms of the Plan, which broadly enjoined any entity, including creditors, from commencing or continuing any action or proceeding "on account of or in connection with or with respect to any Estate Causes of Action," a term that was defined to include all claims that had been settled and released under the

---

[6] Indeed, in an April 16, 2023 interview—ten months after this Court entered the Confirmation Order—MBI Servicios' Chilean counsel, Carlos Cortes—the same lawyer that represents the Remaining Querellantes—boasted that his clients were seeking money through their *querella*. Mr. Cortes commented that he would seek to "recover the money that was paid" in the transactions among the Corp Group entities, by bringing the very same claims this Court classified as Estate Causes of Action settled and released under the Plan. *See* Dkt. No. 978-3, Flugman Decl. Ex. B.

SP Settlement.  *See* Plan Art. XI.F; Confirmation Order ¶ 11.  Movants contended that the claims asserted in MBI Servicios' *querella* arose from the same facts, transactions, and alleged misconduct that had been investigated by the UCC and which had formed the basis of the claims that the UCC sought authority to pursue in its Claims Motion before the claims were ultimately settled under the Plan.

29.    Movants further argued that by filing the *querella*, MBI Servicios was attempting to circumvent the Plan by seeking to obtain greater recoveries for itself than it was entitled to as a Class 7B creditor under the Plan.  Movants asserted that the filing of the *querella* was a clear violation of the Confirmation Order and threatened to undermine the finality of the Plan and the integrity of the Chapter 11 process.

30.    Movants sought entry of an order (1) enforcing the injunction and release provisions of the Plan against MBI Servicios; (2) declaring that the claims asserted in its *querella* were barred and released under the Plan; (3) directing MBI Servicios to withdraw its *querella* and to provide evidence of the withdrawal to this Court; and (4) finding MBI Servicios in contempt and imposing sanctions in the form of Movants' attorneys' fees and costs for being forced to file the Motion.

31.    Movants filed the Motion against MBI Servicios because it has appeared before this Court, served on the UCC, and is a member of the Litigation Trust Committee, making its conduct the most egregious violation of this Court's orders.  Moreover, obtaining a ruling on the merits against MBI Servicios was the most efficient way for Movants to obtain relief for the Class 7B Querellantes' unlawful conduct.  Rather than attempt to serve and bring before the Court 74 different creditors located in Chile, Movants' singular Motion against MBI Servicios laid out how

MBI Servicios' *querella* violated the Plan, but because all 74 *querellas* are substantively identical, the same arguments and conclusions applied to all of them.

> ### D.    The Court Grants the Motion to Enforce the Plan; MBI Servicios Withdraws its *Querella*

32.    On October 17, 2023, this Court held a hearing on the Motion. After considering the parties' written submissions and oral arguments, the Court issued a ruling from the bench granting the Motion in full.

33.    The Court found that the factual allegations and legal claims asserted in MBI Servicios' *querella* were substantially identical to and arose from the same operative facts as the claims that had been investigated and pursued by the UCC in its Claims Motion prior to the SP Settlement. *See* Dkt. No. 1013; Dkt. No. 1010 at 50.

34.    The Court further determined that the alleged harms for which MBI Servicios sought recovery—namely, the alleged stripping of value from the Debtors through related-party asset transfers—were "generalized" and "derivative" harms that were shared by all CGB's unsecured creditors. *See* Dkt. No. 1013 at 2; Dkt. No. 1010 at 49. The Court concluded that the claims belonged to the Debtors' estates—not to individual creditors—and had been released under the Plan. The Court therefore found that by filing its *querella*, MBI Servicios had violated the express terms of the Confirmation Order. *Id.*

35.    On October 30, 2023, the Court entered the October 2023 Order granting Movants' Motion in its entirety and directing MBI Servicios to, among other things, withdraw its *querella* by October 31, 2023, and pay Movants' reasonable fees and expenses incurred in connection with the Motion. MBI Servicios complied with both orders.

### E.    Despite the Court's October 2023 Order, the Remaining Querellantes Continue Violating this Court's Orders

36.    On November 27, 2023, Movants sent letters to the remaining 73 Class 7B Querellantes—each of whom is a beneficiary of the SP Settlement—providing them a copy of the Court's October 2023 Order and requesting that they withdraw their *querellas* in accordance with the October 2023 Order to avoid the need to pursue further relief from this Court.  As Movants explained, the reasoning of the Court's October 2023 Order applied with equal force to all 74 Class 7B Querellantes, as they all filed substantially identical *querellas*, alleging and asserting the same facts and Estate Causes of Action settled under the Plan and the Confirmation Order.

37.    The majority of the remaining Class 7B Querellantes voluntarily withdrew their *querellas*.

38.    The Remaining Querellantes, however, have continued to pursue actions in Chile in violation of this Court's Orders.  They fall generally into three categories:

a.  Two *querellantes* filed a new *querella* and have not withdrawn it:  **Juan Carlos Petersen Widmer** and **Marisol Burgos Concha** filed a new *querella* against Movants on January 26, 2024—three months after the Court issued the October 2023 Order—and have refused to withdraw it.  Mr. Peterson's January 26, 2024 *querella* is the second he has filed against Movants; while Ms. Burgos's January 26, 2024 *querella* is her first.  *See* 2024 Flugman Decl. Ex. A.

b.  Six *querellantes* have withdrawn their *querellas* subject to a reservation of rights:  Six other Class 7B Querellantes—two individuals (**Cristian Pablo Pinto Marinovich** and **Juan Carlos Tali-Hamideh Bitar**) and four entities (**Inversiones GV S.A.**, **Trayenko Investments LP**, **Zermat Business Inc.**, and **CB Investments SpA**)—purported to withdraw their *querellas* in December 2023, but their withdrawal was illusory as they expressly reserved, through the Chilean Public Prosecutor's Office, the right to pursue monetary claims against Movants in the event of a criminal conviction stemming from the filing of their *querellas*.  *See* 2024 Flugman Decl. Ex. B-G.

c.  One *querellante* withdrew its *querella* but continues advancing its monetary claim:  One Class 7B Querellante, **Exportadora Los Lirios S.A.**, withdrew its *querella* but commissioned an expert witness to draft an "expert report" that purports to establish the damages allegedly suffered by the Class 7B creditors.  On January 26, 2024, Exportadora Los Lirios S.A. filed that report with the Chilean Public

12

Prosecutor's Office in support of the Office's prosecution of the settled Estate Causes of Action. *See* 2024 Flugman Decl. Ex. H.

39. Each of the Remaining Querellantes is represented by Mr. Cortes, the same attorney who represents MBI Servicios, meaning that even apart from having received notification from Movants, they are undoubtedly aware and understand the import of this Court's October 2023 Order but are affirmatively choosing to ignore it. Indeed, Remaining Querellantes Juan Carlos Peterson Widmer and Marisol Burgos Concha have granted a power of attorney to Mr. Cortes, specifically authorizing him to collect money damages on their behalf. *See* 2024 Flugman Decl. Ex. K-L.

### F.    Movants Ask the Litigation Trustee to Suspend Payments to Certain Class 7B *Querellantes*

40. On March 8, 2024, Movants, through counsel, sent a letter to the Litigation Trustee, requesting that it exercise its authority under the Litigation Trust Agreement to suspend any distributions from the Litigation Trust to the Remaining Querellantes to the extent that they continue to be in violation of the Plan and this Court's orders. *See* 2024 Flugman Decl. Ex. I.

41. In their letter, Movants explained that by filing and refusing to fully withdraw their *querellas* and continuing to act in the associated criminal proceedings, the Remaining Querellantes are continuing to pursue the exact same Estate Causes of Action against Movants that were settled, released, and enjoined under the Plan and which the Court has ruled is a violation of the Confirmation Order.

42. Movants asserted that as an officer of the Court, and as the administrator of the Litigation Trust approved by the Court, the Litigation Trustee's mandate includes ensuring that the Litigation Trust's funds are distributed only to creditors who are in compliance with the Court's orders. Litigation Trust Agreement § 3.03(l). To that end, Movants explained that it would be fundamentally unfair and contrary to the intent and purpose of the Plan for the Remaining

Querellantes to share ratably in the proceeds of the SP Settlement while simultaneously seeking to undermine and circumvent the releases granted therein. *See* 2024 Flugman Decl. Ex. I.

43.     Movants sought relief from the Litigation Trustee in the first instance because doing so presented the most expedient and resource-efficient approach for addressing the Remaining Querellantes' continuing violations of the Plan and this Court's orders. The only other means of relief available to Movants—initiating adversary proceedings against each of the Remaining Querellantes—would require Movants to expend considerable time and resources drafting motions and attempting service of process on each of the Remaining Querellantes in Chile while simultaneously defending against the criminal prosecutions they have initiated and are advancing against Movants in violation of the Plan and this Court's orders. Movants thus requested that the Litigation Trustee suspend Litigation Trust distributions to the Remaining Querellantes in the interest of judicial and economic efficiency and in recognition of the Trustee's own fiduciary obligations to the Trust's beneficiaries. The Remaining Querellantes should not be allowed to benefit from the Litigation Trust established and approved by this Court while at the same time flouting this Court's orders.

44.     In response to Movant's March 8, 2024 letter, on April 28, 2024, the Litigation Trustee, through its counsel, communicated to Movants' counsel that it did not believe it had the power under the Litigation Trust Agreement to suspend, of its own accord, payments to the Remaining Querellantes, but that it did not oppose the merits of Movants' request and would fulfill such request if ordered to do so by the Court. *See* 2024 Flugman Decl. Ex. J. Movants therefore

seek relief from the Court to enforce the Injunction and the Plan as approved by the Confirmation Order.[7]

## **RELIEF REQUESTED**

45.     By this motion, Movants seek entry of an order pursuant to Bankruptcy Code Sections 105(a), 524, 1141, and Bankruptcy Rule 3020(d), enforcing the Plan and the Confirmation Order against the Remaining Querellantes by:

a.      Declaring that the Litigation Trustee has the authority under the Litigation Trust Agreement to suspend distributions from the Litigation Trust to (i) Juan Carlos Petersen Widmer, (ii) Marisol Burgos Concha, (iii) Cristian Pablo Pinto Marinovich, (iv) Juan Carlos Tali-Hamideh Bitar, (v) Inversiones GV S.A., (vi) Trayenko Investments LP, (vii) Zermat Business Inc., (viii) CB Investments SpA, and (ix) Exportadora Los Lirios S.A.;

b.      Directing the Litigation Trustee to take all necessary steps to suspend and hold in escrow any further distributions from the Litigation Trust to (i) Juan Carlos Petersen Widmer, (ii) Marisol Burgos Concha, (iii) Cristian Pablo Pinto Marinovich, (iv) Juan Carlos Tali-Hamideh Bitar, (v) Inversiones GV S.A., (vi) Trayenko Investments LP, (vii) Zermat Business Inc., (viii) CB Investments SpA, and (ix) Exportadora Los Lirios S.A. unless and until they (a) dismiss their respective *querellas* with prejudice, (b) withdraw any reservation of rights related thereto, (c) cease all participation in the proceedings against Movants unless otherwise required by Chilean authorities, and (d) certify to the Litigation Trustee that they have fully complied with the Confirmation and October 2023 orders; and

c.      Directing the Litigation Trustee to take all necessary steps to suspend and hold in escrow any further distributions from the Litigation Trust to any additional creditor who engages in behavior similar to that described in this Motion.[8]

---

[7] Movants reserve the right to bring further action against any Remaining Querellante or individual creditor who fails to withdraw their *querella* or their reservation of rights, or in any way continues to act in the proceedings commenced pursuant to the filing of their *querella*, even if the Court grants the relief sought herein.

[8] For the avoidance of doubt, Movants' request for relief is not meant to include instances in which the Chilean Public Prosecutor's Office or any other government agency, by their own initiative,

**BASIS FOR RELIEF**

I.     **THE COURT HAS THE AUTHORITY TO ORDER THE LITIGATION TRUSTEE TO EXERCISE ITS POWER TO SUSPEND PAYMENTS TO THE REMAINING QUERELLANTES**

46.     Suspending payments to the Remaining Querellantes is necessary to enforce the equitable post-confirmation administration of the Plan.  The plain language of the Plan and the Litigation Trust Agreement, as well as the Court's specific authority to enforce the Plan's Injunction and broad power to fashion equitable relief, establish that the Court has the authority to direct the Litigation Trustee to exercise its power to withhold payments to the Remaining Querellantes.

A.     **The Remaining Querellantes Are in Violation of the Plan and this Court's Orders**

47.     The Remaining Querellantes' conduct is in direct violation of the Plan and this Court's orders.   As this Court previously held, "a *querella* against Movants…filed in Chile…violates the Injunction within the Plan and approved in the Confirmation Order" by asserting "generalized harm against all bondholders" and "derivative harms to all holders of relevant financing instruments" that "belong to the Estate and are Estate Causes of Action that were settled against the Movants."  October 2023 Order at 2.

48.     Like MBI Servicios' *querella*, the factual allegations and legal claims asserted in the Remaining Querellantes' *querellas* are substantially identical to and arise from the same operative facts as the claims that had been investigated and pursued by the UCC in its Claims Motion prior to the SP Settlement. *See* Dkt. No. 1013.  The Plan and Confirmation Order broadly prohibit not only the commencement but also the "***continu[ation] in any manner***" of any action

---

require the Remaining Querellantes to cooperate with their authority or to take any other action or omission that would breach Chilean or any other law.

on account of the released and settled Estate Causes of Action.  *See* Plan Art. XI.F (emphasis added); Confirmation Order ¶ 11 (emphasis added).  In addition, the Debtors agreed not to "***directly or indirectly encourage or facilitate any claims against any released person by any governmental entity or other third party***," in exchange for consideration from Movants that would be distributed solely to CGB's unsecured creditors.  *See* Affiliated Entity Settlement Term Sheet, Dkt. 770-1 at 5 (emphasis added), Plan at Art. I.B § 1.171 (defining "Settling Parties") (citing Dkt. No. 770-1); *id*. At Art. V.W(i) (emphasis added); Confirmation Order ¶ 31 (emphasis added).  Accordingly, the Remaining Querellantes' decisions to file *querellas* and affirmatively contribute, even after their withdrawal, to the governmental prosecutions stemming from their *querellas* are direct violations of the Plan and the Confirmation Order.

49.    The Remaining Querellantes are bound by the discharge and injunction provisions of the Plan and Confirmation Order.  "When a bankruptcy court enters a confirmation order, it renders a final judgment." *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018).  That order then becomes "*res judicata* to the parties and those in privity with them," *Traveler's Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009), "as to all issues decided or which could have been decided at the hearing on confirmation," *In re Arctic Glacier*, 901 F.3d at 166. "So long as [the Remaining Querellantes] or those in privity with them were parties to the [CGB] bankruptcy proceeding and were given a fair chance to challenge" the Plan, "they cannot challenge it now by resisting enforcement" of the Confirmation Order.  *Travelers Indem. Co.*, 557 U.S. at 153; *see also In re Arctic Glacier*, 901 F.3d at 168–69 (holding that when potential creditors receive due process in the form of notice that they must assert any existing claims, they "are bound by the Plan, including its releases, and its res judicata effect.").

50.     Accordingly, by (i) filing and failing to withdraw their *querellas*, (ii) withdrawing their *querellas* while reserving their rights to collect additional compensation from Movants' criminal prosecution, which they initiated, and (iii) submitting an expert report to aid the Chilean Public Prosecutor's Office in calculating and obtaining monetary damages from Movants, the Remaining Querellantes have demonstrated that they are continuing their *querellas* against Movants, directly and indirectly encouraging and facilitating claims against Movants by a governmental entity, and seeking additional compensation outside of and in direct violation of this Court's orders.

51.     Movants have suffered and continue to suffer substantial harm as a direct result of the Remaining Querellantes' unlawful conduct.  The purpose of a Plan is, among other things, to create finality of judgment so that the Debtors may continue to operate their business without the fear and cost of litigating new, unanticipated actions.  11 U.S.C. § 1129(b)(2) (setting a condition that a confirmation "plan be fair and equitable with respect to a class" so that "each holder of a claim" receives "on account of such claim property of a value…equal to the allowed amount of such claim"); *see also In re Szotek*, 886 F.2d 1405, 1408 (3d Cir. 1989) (recognizing the "policy of finality" that confirmation of a debtor's plan provides "to both the debtor and the creditors," and that under § 1327 a "confirmation order is *res judicata* as to all issues decided or which could be decided at the hearing on confirmation").  The Bankruptcy Code also requires that a plan "provide the same treatment for each claim or interest of a particular class."  11 U.S.C. § 1123(a)(4)*; see also In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012) (noting that "[f]ederal caselaw construing this provision of the Code has interpreted equal treatment to mean that: (1) all class members must be subject to the same process for claim satisfaction; (2) all class members' claims must be of 'equal value' through the application of the same pro rata distribution

18

or payment percentage procedures to all claims; and (3) all class members must give up the same degree of consideration for their distribution under the plan.") (internal citations omitted).

52.     The Remaining Querellantes have frustrated both these requirements.  First, the Remaining Querellantes' conduct has impaired the finality guaranteed under the Plan and which Movants bargained for as part of the SP Settlement.  Second, by seeking additional compensation outside the Plan through their *querellas*, the Remaining Querellantes are attempting to obtain more favorable treatment than other creditors in their class.

53.     Movants respectfully request, and submit that the equitable post-confirmation administration of the Plan requires, that the Court put an end to this unlawful conduct by ordering the Litigation Trustee to exercise its authority to issue a moratorium on the Remaining Querellantes' Litigation Trust distributions.[9]

### B.     The Court Retained Specific Authority Under the Plan To Enforce The Plan's Injunction

54.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court retains jurisdiction "over all matters arising out of, and related to, the Chapter 11 Cases and the Plan." Confirmation Order at 25.  The Plan similarly provides that this Court retains jurisdiction to "issue and enforce injunctions, enter and implement other orders or take ***such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan***" and to "enforce the terms and condition of the Plan and the Confirmation Order."  Plan at Art. X.A.viii-ix (emphasis added).

---

[9] For the avoidance of doubt, Movants do not seek to encumber distribution of funds held by the Estate that are subject to potential distribution by the Plan Administrator; rather, Movants' request for relief is limited solely to those funds owing under the SP Short Term Note and subject to distribution to Class 7B creditors pursuant to the SP Settlement.

55.     A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce the discharge and injunction provisions of its plan and confirmation order." *In re Essar Steel Minn.*, LLC, 47 F.4th 193, 201 (3d Cir. 2022) (quotations omitted); *see also* 28 U.S.C. §§ 157, 1334 (by operation of referral under § 157, providing the bankruptcy courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); 11 U.S.C. § 105(a) (entitling bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Chapter 11]").  This is particularly so where, as here, the bankruptcy court "explicitly retained jurisdiction to enforce its injunctions." *Travelers Indem. Co.*, 557 U.S. at 151; *see also In re Lear Corp.*, 2012 WL 443951, at *5 (Bankr. S.D.N.Y. Feb. 10, 2012).

56.     Moreover, in its October 2023 Order, the Court specifically held that it "has jurisdiction to consider" how to enforce the Plan's Injunction against collateral claims made through the *querella* process, "pursuant to 28 U.S.C. §§ 157 and 1334[.]"  October 2023 Order at 1.  The Court further held that because the "*querella* against Movants that MBI Servicios filed in Chile [] violate[d] the Injunction within the Plan and approved in the Conformation Order", the relief Movants requested in their Motion—that the Court enforce the Plan's Injunction—was "in the best interests of the Debtors, their estates, their creditors, and other parties in interest[.]"  *See* October 2023 Order at 1-2.

57.     So too here.  As discussed in Section II.A, *supra*, the Remaining Querellantes' filings and prosecution of their *querellas* is identical to MBI Servicios' conduct, which the Court ruled to be violative of the Plan.  Enforcing the Plan's Injunction against the Remaining Querellantes is, therefore, "in the best interests of the Debtors, their estates, their creditors, and other parties in interest." *Id.*  The Court has (and indeed, has already exercised) explicit authority

under the Plan to take any action necessary or appropriate to restrain the *querellas*' clear and ongoing interference with the Plan's enforcement. *See* 7th Amended Plan art. X § A(vii); (viii). Movants respectfully submit that the Court's directing of the Litigation Trustee to suspend any further SP Settlement distributions to the Remaining Querellantes constitutes an appropriate use of the Court's power to enforce the Injunction and is necessary to maintain the legitimacy of the Plan and these Chapter 11 proceedings.

### C.    The Court Has Broad Authority to Fashion Equitable Relief

58.    In addition to the Court's specific powers to enforce the Injunction within the Plan, the Court has broad power to fashion the equitable relief of its choosing: here, the withholding of Litigation Trust distributions to the Remaining Querellantes until they cease their unlawful conduct. Such an order will ensure the equitable distribution of the Litigation Trust Assets and is the most efficient and effective way for the Court to ensure compliance with the Plan and its orders.

59.    "The Supreme Court has long recognized that bankruptcy courts are equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings." *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567 (3d Cir. 2003). "Equity eschews mechanical rules; it depends on flexibility," and "there is inherent in the Court of Equity a jurisdiction" to "give effect to the policy of the legislature." *Id.* at 568. Bankruptcy courts thus have "the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the Bankrupt's estate." *In re Karpe*, 84 B.R. 926, 933 (Bankr. M.D. Pa. 1988). Indeed, the discretionary, equitable nature of bankruptcy courts is made clear "by the Code itself." *Chinery*, 330 F.3d at 567 (citing 11 U.S.C. § 105(a) for the proposition that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and that no provision "shall be construed to preclude the court from, sua sponte, taking any

action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

60.    It would be both unjust and unfair for the Remaining Querellantes to share in the proceeds of the SP Settlement while simultaneously violating the Plan and this Court's orders. Absent intervention from the Court, the Remaining Querellantes will continue to undermine the reorganization process and the SP Settlement, creating a two-tiered system wherein some creditors can extract greater recoveries for themselves through improper foreign litigation and force debtors to twice pay the cost of resolving creditor claims.  As discussed in Section II.A, *supra*, this conduct is an affront to core principles of bankruptcy law and a bad-faith collateral attack on the legitimacy of the Court's Plan and this Court's orders.

61.    Additionally, suspending the Litigation Trust distributions to the Remaining Querellantes is the most equitable and efficient way to enforce the Injunction as it would eliminate the Remaining Querellantes' opportunity for double recovery for their released claims or incentivize them to seek leave of the Court to amend its prior orders, rather than shift the burden to Movants who would have to expend considerable time, effort, and resources to enforce the Plan through the initiation of multiple adversary proceedings involving foreign parties.  *See* Section I.F, *supra*.  Suspending Litigation Trust distributions to the Remaining Querellantes will also serve to deter future violations of the Plan and this Court's orders by communicating that creditors cannot circumvent the Plan or its finality without penalty.

62.    Movants have every intent of continuing to comply with the Plan and this Court's orders.  Under the proposed moratorium, Mr. Saieh would continue to make payments to the Trustee as required by the Plan, and the Litigation Trustee will hold in escrow those distributions due to the Remaining Querellantes under the SP Settlement until such time as they are all fully

compliant with the Plan and at no cost to the Litigation Trust or the Estate. Movants respectfully request that the Court utilize its specific and/or broad authority to grant Movants' requested relief, as it is both necessary and appropriate to protect the Court's jurisdiction and enforce the Plan and this Court's orders. *Chinery*, 330 F.3d at 567 (citing 11 U.S.C. § 105(a)).

### D.    The Litigation Trustee Has the Power to Withhold Payments to the Remaining Querellantes

63.    The relief Movants seek from the Court is fully consistent with the construction of the Litigation Trust and the purposes of the Plan. The Plan and the Litigation Trust Agreement provide the Litigation Trustee with broad enforcement power to ensure the equitable administration of the Litigation Trust, including by withholding Litigation Trust distributions through a moratorium. *See* Litigation Trust Agreement § 3.03(l). The Remaining Querellantes' unlawful conduct calls for such action.

64.    The Litigation Trustee is a fiduciary who owes duties to the unsecured CGB creditors, including all Class 7B creditors, and "is vested with all powers and authorities set forth in the Plan and th[e Litigation Trust] Agreement." Litigation Trust Agreement § 3.02. The Plan states that "[a]ll distributions from the Litigation Trust [must] be made by the Litigation Trustee in accordance with the Litigation Trust Agreement." 7th Amended Plan art. VII § H. And, the Litigation Trust Agreement, in turn, grants the Litigation Trustee the "authority" to "protect and enforce the rights to the Litigation Trust Assets"[10] by "***any method reasonably deemed appropriate***, including, without limitation, by judicial proceedings or pursuant to any applicable

---

[10] The Litigation Trust Assets are "the Litigation Trust Claims, the Litigation Trust Funding Amount, the Related Party Settlement Consideration and any recoveries from Litigation Trust Claims." *See* Litigation Trust Agreement § 1.01. *See also* Article I.B.1.112 of the Plan. Notably, the Litigation Trust Agreement states that only the Litigation Trustee … shall have authority to [] prosecute … the Litigation Trust Claims." *Id.*

bankruptcy, insolvency, **moratorium**, or similar law or general principles of equity." Litigation Trust Agreement § 3.03(l) (emphasis added); *see* MORATORIUM, Black's Law Dictionary (11th ed. 2019) (defining moratorium as "[a]n authorized postponement…in the deadline for paying a debt or performing an obligation"). Accordingly, the Litigation Trustee has the authority to suspend or postpone Litigation Trust distributions to the Remaining Querellantes to protect and enforce the rights to the Litigation Trust Assets.

65.    As discussed in Section II.A *supra*, the Remaining Querellantes' conduct undermines the equitable administration of the Litigation Trust Assets by (i) independently prosecuting the unsecured creditor claims they released and settled pursuant to the SP Settlement, *see* Settlement Trust Agreement § 3.06 ( "only the Litigation Trustee … shall have authority to [] prosecute … the Litigation Trust Claims."); (ii) seeking to extract greater recoveries for themselves at the expense of the other creditors who also released their claims pursuant to the SP Settlement and whose rights are currently being enforced by the Litigation Trustee, and (iii) attempting to force Movants to pay twice for previously settled claims. The Remaining Querellantes should not be permitted to use the Chilean legal process to disrupt the SP Settlement and the Litigation Trust created to administer its terms, which this Court held to be "fair and equitable and in the best interests of the Estates." Confirmation Order at 6.

66.    Instituting a moratorium on the Remaining Querellantes' Litigation Trust distributions unless and until they cease violating the Plan and this Court's orders is a "reasonable and appropriate method of protecting and enforcing the rights to the Litigation Trust Assets" because it will ensure that all of the Class 7B creditors who agreed to release and settle their claims against Movants pursuant to the SP Settlement are receiving an equal share in the Estate's recovery as contemplated by the Litigation Trust Agreement and these Chapter 11 proceedings. A

moratorium on these payments will further ensure that the Litigation Trustee, and only the Litigation Trustee, is responsible for enforcing the Litigation Trust Claims, including the Class 7B creditor claims. To allow otherwise is to make a mockery of the Plan, the Litigation Trust Agreement, and all the parties who are abiding by their terms. Moreover, suspending the Remaining Querellantes' Litigation Trust distributions comes at no cost to the Litigation Trust or its beneficiaries, including the Remaining Querellantes, who will receive all their remaining payments once they cease their violative conduct or obtain redress from the Court.

67. This Court has both the specific authority under the Plan and the broad equitable powers to order the Litigation Trustee to fulfill its fiduciary duties and suspend distributions to the Remaining Querellantes—and any other creditors who engage in the same conduct—until they cease their violations of the Plan and this Court's orders. Doing so is not only within the Litigation Trustee's powers, but also is a proper use of this Court's equitable discretion to ensure the integrity of the Plan, the SP Settlement that made it possible, and the equal treatment of all creditors bound by their terms. This Court should exercise its authority to direct the Litigation Trustee to utilize its power to institute a moratorium on distributions to the Remaining Querellantes in order to uphold this Court's rulings, prevent an unfair double recovery at the expense of other creditors, avoid rendering the Plan and SP Settlement meaningless, and protect the legitimacy of these proceedings and the Court's orders.

## <u>NOTICE</u>

68. Notice of this Motion will be provided to the following parties, or their counsel if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Liquidating Trust; (c) the Remaining Querellantes; and (d) all persons who have requested notice pursuant to Bankruptcy Rule 2002. Movants respectfully submit that no further notice of this Motion is required.

## CONCLUSION

69.    For all these reasons, Movants respectfully request that this Court enforce the Plan

and this Court's orders and enter the order attached as Exhibit 1 hereto.

Dated:    Wilmington, Delaware
          June 10, 2024

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By:    /s/        *Laura Davis Jones*
       Laura Davis Jones (DE Bar No. 2436)
       Peter J. Keane (DE Bar No. 5503)
       919 North Market Street, 17th Floor
       P.O. Box 8705
       Wilmington, Delaware 19801
       Tel: 302-778-6401
       ljones@pszjlaw.com
       pkeane@pszjlaw.com
       --and--

       Philippe Z. Selendy
       David S. Flugman
       Lauren J. Zimmerman
       SELENDY GAY PLLC
       1290 Avenue of the Americas
       New York, New York 10104
       Tel: 212-390-9000
       pselendy@selendygay.com
       dflugman@selendygay.com
       lzimmerman@selendygay.com

       *Attorneys for Álvaro Saieh Bendeck, Jorge*
       *Andrés Saieh Guzmán, María Catalina Saieh*
       *Guzmán and Pilar Dañoebeitía Estades*