**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CORP GROUP BANKING S.A., *et al.*,[1] | Case No. 21-10969 (JKS) |
| Debtor. | |

## <u>DECLARATION OF DAVID S. FLUGMAN IN SUPPORT OF MOTION TO ENFORCE ORDER CONFIRMING THE SEVENTH AMENDED JOINT PLAN OF LIQUIDATION OF CORP GROUP BANKING S.A. AND ITS DEBTOR AFFILIATES</u>

I, David S. Flugman, do hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1.      I am a member of the law firm Selendy Gay PLLC and counsel for Álvaro Saieh Bendeck, Jorge Andrés Saieh Guzmán, María Catalina Saieh Guzmán, and Pilar Dañoebeitía Estades (together, "<u>Movants</u>").  I submit this Declaration in support of Movants' June 10, 2024 motion, filed contemporaneously herewith, to enforce this Court's Confirmation Order and direct the Litigation Trustee to suspend and hold in escrow payments under the Plan due to the Remaining Querellantes.[2]

---

[1] The last four digits of the Debtor's foreign tax identification number are 900-8. The Debtor's mailing address is Rosario Norte N°660, 22nd Floor, Las Condes, Santiago, Chile. The chapter 11 cases of certain affiliates of the Debtor were closed effective as of April 28, 2023. *See* Case No. 21-10969, Docket No. 974.

[2] The Remaining Querellantes are (i) Juan Carlos Petersen Widmer, (ii) Marisol Burgos Concha, (iii) Cristian Pablo Pinto Marinovich, (iv) Juan Carlos Tali-Hamideh Bitar, (v) Inversiones GV S.A., (vi) Trayenko Investments LP, (vii) Zermat Business Inc., (viii) CB Investments SpA, and (ix) Exportadora Los Lirios S.A.

2.    Attached as <u>Exhibit A</u> is a translated version of a true and correct copy of a Chilean instrument known as a *querella* filed by Juan Carlos Petersen Widmer and Marisol Burgos Concha on January 26, 2024.  A true and correct copy of the original Spanish version is attached as <u>Exhibit A-1</u>.

3.    Attached as <u>Exhibit B</u> is a brief filed by Cristian Pablo Pinto Marinovich with the 4th Due Process Judge of Santiago on December 5, 2023, purporting to withdraw his *querella* but reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as <u>Exhibit B-1</u>.

4.    Attached as <u>Exhibit C</u> is a brief filed by Trayenko Investments LP with the 4th Due Process Judge of Santiago on December 29, 2023, purporting to withdraw its *querella* but reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as <u>Exhibit C-1</u>.

5.    Attached as <u>Exhibit D</u> is a brief filed by Zermat Business Inc. with the 4th Due Process Judge of Santiago on December 7, 2023, purporting to withdraw its *querella* but reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as <u>Exhibit D-1</u>.

6.    Attached as <u>Exhibit E</u> is a brief filed by CB Investments SpA with the 4th Due Process Judge of Santiago on December 11, 2023, purporting to withdraw its *querella* but reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as <u>Exhibit E-1</u>.

7.    Attached as <u>Exhibit F</u> is a brief filed by Inversiones GV S.A. with the 4th Due Process Judge of Santiago on December 12, 2023, purporting to withdraw its *querella* but

reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as Exhibit F-1.

8.      Attached as Exhibit G is a brief filed by Juan Carlos Tali-Hamideh Bitar with the 4th Due Process Judge of Santiago on December 12, 2023, purporting to withdraw its *querella* but reserving the right to continue acting in the criminal proceedings launched against Movants.  A true and correct copy of the original Spanish version is attached as Exhibit G-1.

9.      Attached as Exhibit H is an "expert report" filed by Exportadora Los Lirios S.A. with the Chilean Public Prosecutor's Office on January 26, 2024.  A true and correct copy of the original Spanish version is attached as Exhibit H-1.

10.     Attached as Exhibit I is a true and correct copy of a letter I sent to Ms. Rachel Jaffe Mauceri of Robinson & Cole LLP, dated March 8, 2024.

11.     Attached as Exhibit J is a true and correct copy of email communications between Ms. Rachel Jaffe Mauceri, Ms. Laura Davis Jones, Mr. David Zylberberg, Mr. Chip Cummins, and myself from March 8, 2024, to April 28, 2024.

12.     Attached as Exhibit K is a power of attorney granted by Juan Carlos Peterson Widmer to attorneys Carlos Cortes and Sergio Rodriguez Oro on January 20, 2023, specifically authorizing them to collect money damages on his behalf.  A true and correct copy of the original Spanish version is attached as Exhibit K-1.

13.     Attached as Exhibit L is a power of attorney granted by Marisol Burgos Concha to attorneys Carlos Cortes and Sergio Rodriguez Oro on July 3, 2023, specifically authorizing them to collect money damages on her behalf.  A true and correct copy of the original Spanish version is attached as Exhibit L-1.

Dated:          New York, New York
                June 10, 2024

_/s/_          _David S. Flugman_

David S. Flugman

# Exhibit A

**IN THE MAIN:** criminal complaint for the crimes indicated;
**IN THE FIRST ADDENDUM:** submits legal capacities;
**IN THE SECOND ADDENDUM:** requests indicated proceedings;
**IN THIRD ADDENDUM:** be it taken into account; and
**IN THE FOURTH ADDENDUM:** be it taken into account.

### DUE PROCESS JUDGE OF SANTIAGO (4TH)

**CARLOS CORTÉS GUZMÁN**, National identity No. 10068803-4, attorney at law, with domicile in Av. Apoquindo No. 3721, of 33, commune of Las Condes, acting as legal representative and in representation of (i) **JUAN CARLOS PETERSEN WIDMER**, identity card No. 12919209-7; and (ii) **MARISOL BURGOS CONCHA**, identity card No. 5746.892-0; both with domicile for these purposes in Av. Apoquindo 3721, Office No. 33, Las Condes, hereinafter indistinctly "the plaintiff" or "my clients," in the judicial folder **RIT No. 379-2023**, to Your Honor I respectfully say:

That, in accordance with the provisions of sections 111 et seq. of the Code of Criminal Procedure, I hereby file a criminal complaint for crime against public order against **ÁLVARO JOSÉ SAIEH BENDECK**, identity card No. 5911895-1; **JORGE ANDRÉS SAIEH GUZMÁN**, identity card No. 8311093-7; **MARÍA CATALINA SAIEH GUZMÁN**, identity card No. 15385612-5; **CRISTÓBAL ALEJANDRO CERDA MENESES**, identity card No. 13689592-3; and **MARÍA PILAR DAÑOBEITIA ESTADES**, identity card No. 8668195-1; all domiciled in Calle Rosario Norte No. 660, 23rd floor, commune of Las Condes, Santiago, and against all those who are responsible, be it as perpetrators, aiders and/or abettors, for the repeated crime of granting a simulated contract, provided for and sanctioned in section 471 No. 2 of the Criminal Code, without prejudice to the legal qualification that is ultimately assigned of the facts, either by the Court and/or the Public Prosecutor's Office; all in accordance with the facts and legal records that I hereinafter present:

### I.- <u>THE FACTS</u>.

**BACKGROUND**.

**Grupo CGB and Affiliates.**

1.   CorpBanca is a financial institution that dates back to 1871, when it began its operation under the name Banco de Concepción. During its history the bank has been controlled by various institutions and persons, including CORFO and SONAMI. In 1995 a group of investors, led by the defendant, through the company INFISA (currently Grupo CGB and Affiliates) takes control of the bank's ownership.

2.   The controller group by 2020 had a presence -in addition to the banking industry- in retail businesses, with companies such as SMU, OK Market and Construmart, among others; in the real estate business with malls and strip centers; and in the communications business with presence in newspapers of national circulation and radios.

3.  The group "CGB and Affiliates" consists of its parent company -Corp Group Banking S. A., hereinafter CGB- a direct subsidiary, of which it owns 100%, the company Inversiones CG Financial Chile Dos SpA (ICGF-Chile2) and two indirect subsidiaries, also 100% controlled through it, CG Financial Chile SpA (CGF-Chile) and CG Financial Colombia SAS (CGF-Colombia). Consequently, CGB parent controls 100% of its three subsidiaries (its "Subsidiaries").

4.  CGB is the largest company within CGB and Subsidiaries: as of September 2020, it individually owned 93% of the consolidated accounting assets of CGB and Subsidiaries.

5.  CGB and its Affiliates are investment companies, whose main asset at the year 2020 - corresponding to 94% of the consolidated total- are financial investments and specifically in shares of companies that they do not control ("Related"). <u>Therefore, the income streams of their business are mainly dividends from such investments in Related companies.</u> Depending on the company in question, CGB and Affiliates own between 10% and 43% of their Related companies. The largest of these investments in 2020 was in Itaú CorpBanca Bank (hereinafter ITCB), which amounted to 26.6% of the capital of that bank and represents in itself 71% of the total consolidated assets of CGB and Subsidiaries.

6.  One aspect that can be noted regarding the assets of CGB and Affiliates is that they hold a very significant part of the shares in the joint companies that are a part of their assets. Specifically, $488.759 million of the $663.131 million invested in Itau CorpBanca shares are pledged (i.e. 74% of such shares). Likewise, CGB and its subsidiary CGF-Colombia have pledged 100% of the $61.532 million they have invested in shares of the Itau CorpBanca Colombia bank. CGB and Affiliates have given these pledges as collateral for loans granted by third creditors to Related companies. <u>The main current liability corresponds to the bond that CGB placed on the international market in 2013: $14.320 million corresponding to accrued and unpaid interest and $393.563 million corresponding to the principal of the bond, which together represents 83% of the total current liability of $492.386 million.</u> All this according to values by 31.DIC.2021.

**About the related companies: "Compañía Inmobiliaria y de Inversiones SAGA SpA", "Inversiones GASA Limitada," "SMU S.A." and "Copesa S.A."**

7.  The Compañía Inmobiliaria y de Inversiones SAGA SpA, henceforth interchangeably SAGA, TIN 88,202,600-0, is a related CGB company.

8.  With regard to SAGA's business activities, the information that can be extracted from public records is limited: it is understood that SAGA is an investment company; from CGB's financial statements it is known the total of its accounting assets and equities, as well as its profit for the year and the debt that CGB has with it; from ITCB's financial statements its investment in the Bank is known; and from the SEC reports it is noted that, like CGB, it has used part of its assets to guarantee obligations of Related companies to third creditors. SAGA's shares -at least in public documents- do not appear pledged. There is no background for the regulations applied in its accounting -for example, whether it follows IFRS- and it is not known whether its balance sheet is audited or not.

9. It is important to note that in the financial statements of 31.DIC.2018 of ITAU Corpbanca and Affiliates, it is declared a decrease of 50.92% of the company's share percentage in the aforementioned Bank, going from having 4.0824% to 2.0036% of the shares. In 2019 it remains the same, making reference to the company as part of the "Saieh Family." Subsequently, in the year 2020 by means of an essential event -New acquisitions of Itaú Unibanco Holding S.A.- Itaú Unibanco Holding S.A. announced that through its subsidiary ITB Holding Brasil Participações Ltda., acquired from Compañía Inmobiliaria y de Inversiones SAGA SpA (SAGA), the amount of 5,558,780,153 shares of Itaú Corpbanca, for a total purchase amount of $33,138,103,833. As a result of this acquisition, Itaú Unibanco increased its shareholding in Itaú Corpbanca by approximately 1.08%. Thus, by 2020 SAGA was in possession of only 0.92% of the shares of the Banco ITCB.

10. The financial statements of 31.DEC.2021 again reflect a decrease in the number of shares held by SAGA in the aforementioned Bank, since at the end of the year it only held 0.48% of the shares of the bank.

11. Thus, in short, for the correct understanding of the crime that is the subject of the present complaint, the aforementioned company SAGA was gradually decreasing its participation in the Banco Itau Corpbanca: 2017 y 2018, 4.0824%; 2019, 2.0036%; 2020, 0.92%; and, finally, 2021, 0.48%.

12. Besides, the company "Inversiones GASA Limitada," hereinafter GASA, TIN 76034463-K, is an investment and financial intermediation company, which is controlled by Corpgroup Inversiones Holding Ltda., TIN 96953290-5.

13. It was constituted by a public deed dated July 31st, 2008, granted by the Notary Public Mr. José Musalem Saffie. The respective extract is registered in the Commercial Registry of the Conservator of Real Estate of Santiago for 2008 on page 43609, number 29994 and was published in the Official Gazette of September 20th, 2008. The company has undergone a number of changes, the last being the one in a public deed dated 29 August 2018, before the Notary Public Mr. Iván Torrealba Acevedo, the extract of which was entered in the Register of Commerce of the Conservator of Real Estate of Santiago for 2018 at page 74948, number 38490 and published in the Official Gazette of 8 October 2018.

14. SMU S.A., TIN 76012676-4, is an open joint-stock company, incorporated on 22 February 2008, the main purpose of which is to invest on its own or on behalf of third parties in movable and immovable tangible property, the administration of said property, the provision of management services, and the organization and administration of companies and consultancies in financial, commercial, economic, organizational, tax, legal and marketing matters. The Society has its domicile and main offices in Calle Cerro el Plomo 5680, 10th floor, commune of Las Condes, in the city of Santiago de Chile. SMU is registered with No. 1076 in the Securities Register of the Commission for the Financial Market (Former Superintendence of Securities and Insurance of Chile).

15. The SMU Group is controlled by the following companies: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., CorpGroup Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Retail Holding S.A. and Inversiones Épsilon II S.A. with a total participation of 53.38%, at the end of this period. At 30 June 2018, the main shareholder of the SMU Group is the Saieh family with a 46.91% stake, through the investments it holds in the following companies: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Retail Holding S.A. and Inversiones Épsilon II S.A.

16. Consorcio Periodístico de Chile S. A. (Copesa SA) is part of the Grupo Copesa, which according to its website is controlled by the defendant Saieh Bendeck. In fact, according to public information, "Grupo Copesa is a media group controlled by the Chilean businessman Alvaro Saieh Bendeck in conjunction with his spouse and children, who have 100% of their property."

**Issue of Note called CGB 13/23 6.75.**

17. Corp Group Banking S. A. issued in May 2013 a bond (ISIN USP31925AD54 and named Corp Grp Banking 13/23) for the amount of US $500,000,000, with an interest of 6.750% due on March 15, 2023. Interest would be paid in March and September of each year. There was established the possibility to redeem bonds on the date March 15, 2018.

18. The banks Deutsche Bank Securities and Goldman, Sachs & Co were appointed as bond managers. At the time, all the documents of the issue were published on the website of the Luxembourg Stock Exchange. Likewise, it was indicated that all the information could be requested from CGB, domiciled in Rosario Norte 660 23rd floor, Las Condes, Santiago, through the attention of María Pilar Dañobeitía Estades.

19. It was specifically noted that the issuer of the bond -CGB- is a closed joint-stock company, organized under the laws of the Republic of Chile. It was added that all principal directors and executives reside in Chile.

20. Covenants are obligations not to do and in this case are agreed for the issuer of the bonds and their Restricted Subsidiaries.

21. These obligations are divided into four groups:
    a. Payment limitations
    b. Dividend distribution limitations
    c. Limitations on encumbrances
    d. Limitations on operations with subsidiaries

22. Each has some exceptions that are listed in the bond bases.

23. For payment limitations:
    a. No dividends or distributions may be paid in respect of Shares of Corp Group or its Restricted Subsidiaries, except for a few exceptions (x3).

    b.   It is not possible to buy or acquire (in any way) Capital Shares of Corp Group or its Restricted Subsidiaries

    c.   No subordinated debt may be paid nor an additional debt may be incurred, nor restricted payments may be made, nor encumbrance or related party transactions may be created, prior to any scheduled final maturity of any debt, prior to the scheduled repayment or scheduled payment of amortization fund, as the case may be.

24. For dividend distribution restrictions: No dividends can be distributed to its shareholders for amounts less than 30% of the annual profits, that is, not all profits may be reinvested.

25. For limitations on encumbrances: Corp Group and its Restricted Subsidiaries may not encumber their assets (or their interest, income or profits) in whole or in part, whether already acquired or later, without rigorously establishing that the bonds are secured prior to or equal or proportionate to such debt.

26. With regard to limitations on transactions with Affiliates:

    a.   No related transactions (purchase or sale or lease, etc.) are permitted for the benefit of any affiliate of Corp Group unless:

    b.   The terms of such an operation are more favorable to Corp Group than to third parties.

    c.   The operation involving payments of more than US $10 million, must be approved by the members of the Board of Directors of Corp Group; and

    d.   For operations involving payments of more than US $20 million require a favorable opinion on equity by an independent financial advisor.

27. The above requirements will not apply to certain situations mentioned in the bond itself.

**Investments in the CGB 13/23 Bond.**

28. My clients invested in the bond referred to above.

29. According to the background that, in due course, will be provided to the Public Prosecutor's Office, the amounts invested by each are:

    (i)   Juan Carlos Petersen Wiedmer, the sum of US $1,320,000; and

    (ii)   Marisol Burgos Concha, the sum of US $250,000.

30. In short, the total investments of my clients in the "CGB 13/23" Bond amount to the sum of US $1,570,000.

**ACTS THAT CONSTITUTE AN OFFENSE.**

31. Corp Group Banking S. A. issued in May 2013 a bond (ISIN USP31925AD54 and named Corp Grp Banking 13/23) for the amount of US $500,000,000, with an interest of 6.750% due on March 15, 2023. Interest would be paid in March and September of each year. There was established the possibility to redeem bonds on the date March 15, 2018. The aforementioned bond was called Bono 13/23 6,75.

32. Covenants or obligations not to do were established, including so-called payment limitations: "No dividends or distributions may be paid in respect of Shares of Corp Group or its Restricted Subsidiaries, except for a few exceptions; Shares of Capital of Corp Group or its Restricted Subsidiaries may not be purchased or acquired (in any way); No subordinated debt may be paid nor an additional debt may be incurred, no restricted payments may be made, no encumbrance or related party transactions may be created, prior to any scheduled final maturity of any debt, prior to the scheduled repayment or scheduled payment of amortization fund, as the case may be."

33. Likewise, limitations of operations were established with the Affiliates: "No related transactions are allowed (neither purchase nor sale nor lease, etc.), for the benefit of any affiliate of Corp Group, unless: The terms of such an operation are more favorable for Corp Group than for third parties; the operations involving payments of more than US $10 million, must be approved by the members of the Board of Directors of Corp Group; and the operations involving payments of more than US $20 million require a favorable opinion on equity by an independent financial advisor."

34. Between the years 2015 and 2020 the defendants ordered that CGB execute with its related INTERHOLD, SAGA and GASA a series of subscription and sale contracts for shares of FINANCIAL CHILE DOS and SAGA, all of which are simulated, since the real purpose of the controller was to take the liquidity (money) from CGB and in no case to acquire the aforementioned shares. Then these resources -already part of the SAGA assets- were arranged by the defendant for his benefit or that of one of the companies of his family. It was the conclusion of a series of share transfer contracts for a total amount of approximately $164,735,000,000. It meant an emptying of the CGB patrimony made to the detriment of the bondholders. That is, of the creditors of the CGB 13/23 Bond. In conclusion, the issuer of the bond was relinquishing its entire cash assets.

35. As a result of these transactions, CGB emptied its cash assets, undergoing a property damage resulting from the acquisition of shares at a purchase price higher than the economic value that such investment entailed.

36. In this regard, in the research folder we find the statement of Alejandro Zavala Destefani, Assistant Accounting Manager of CGB since 2011, who points out the following:

"... Also in 2014, I remember seeing the first time the use of the mechanism allowed by the bond, in the sense of investing in certain financial assets such as the purchase of shares of banks. ...

... Already in 2016, the merger of Banco Corp Banca and Itaú Chile finally materialized, but the market situation still did not allow the restriction of the bond to be released, so CorpGroup Banking S.A., began to acquire shares of the Compañía Inmobiliaria y de Inversiones SAGA SpA, a related company that held shares of Banco Itaú Corp Banca within its assets, which I understand maintains compliance with the restriction, since although it buys shares of a company, the latter holds shares of the bank, a situation that was allowed.

... since the minimum of shares required by the bond had been reached, Corp Group Banking S.A. was prevented from selling, so the Compañia Inmobiliaria y de Inversiones SAGA SpA was used…

... All of this triggered various operations of buying and selling shares of the Compañia Inmobiliaria y de Inversiones SAGA SpA, by Corp Group Banking S.A. to justify the transfer of funds to Corp Group Interhold SpA, related to the dividends retained by the custodian, were not considered a breach of the bond restrictions. ...

The operations commented, I remember, were repeated until 2020, when it was the last time dividends were received from the bank, before entering the process of Chapter 11 of the United States."

37. Also, there is the statement of Fabián Salinas Díaz, Head of Accounting of the Holding Corp Group, who points out the following:

"Regarding the sale of shares that Corp Group Banking made to GASA for SAGA shares, I can indicate that I remember that they may have started in 2016, and having received the sales contracts and registered them in Banking accounting, increasing the investment in SAGA against the bank, and in GASA in turn, receiving money in the account of the bank and lowering the SAGA investment.

Then, those monies entered in the GASA account, went to SAGA as a capital increase, which also was made by Corp Group Banking as a shareholder of SAGA. After making some payments pertaining to their obligations, money was transferred to Corp Group Inversiones Limitada, a company that in turn transferred money downstream to Corp Group Financial SpA, and this to Corp Group Inversiones Limitada CPA and this to Interhold, being the latter who made the respective payments pertaining to its obligations, mainly in the payment of the Itaú Nassau line, which was guaranteed with shares of the Bank and which owned Banking and SAGA.

These operations were completed every time SAGA share purchases and capital increases were made."

38. As indicated by these witnesses, the subscription and/or purchase of shares would have been made between 2014 and 2020, being called a *mechanism* by the aforementioned executives.

39. The operations (or the mechanism) involve a set of companies, all related to Corp Group Holding, such as Corp Group Banking S.A. (CGB), Compañia Inmobiliaria y de Inversiones SAGA SpA (SAGA), Inversiones GASA Limitada (GASA), Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) and Corp Group Interhold SpA (INTERHOLD).

40. Specific relationships are as follows:

   a.   CorpGroup Interhold SpA (Interhold) is the majority shareholder of Corp Group Banking. S.A. (CGB).

b.     CorpGroup Holding Inversiones Limitada Sociedad en Comandita por Acciones (CGHIL) is the majority shareholder of INTERHOLD.

c.     CorpGroup Financial S.A. (CGF) is the CGHIL controller.

d.     Inversiones GASA Limitada (GASA) is the sole shareholder of Compañía de Inversiones SAGA SpA (SAGA).

e.     CorpGroup Inversiones Limitada (INVERSIONES) is the majority shareholder of FINANCIAL and GASA.

f.     CGHI is the majority shareholder of INVESTMENTS.

g.     Mr. Álvaro Saieh Bendeck is the president and controlling person of CGHI and director of CGF.

41. CG FINANCIAL CHILE DOS SPA SHARE PURCHASE TRANSACTIONS.

a.     TRANSACTION Nº. I.- SALE DATED 12 March 2015.

        i)     NOTE 11 of the intermediate consolidated Financial Statements of CorpGroup Banking S.A., for the periods of six months up to 30 June 2015 and 2014, with the report of independent auditors Deloitte Auditores and Consultores Limitada, states:

        ii)     According to the contract of sale and transfer of shares, CGB buys 24,484,877,154 shares of INVERSIONES CG FINANCIAL CHILE DOS SpA, owned by CorpGroup Interhold Limitada Investments, for a price of $36,362,000,000, which the buyer would pay by 31 March 2015 in cash, declaring the seller to have received them in full agreement.

        iii)     Purchase corresponds to 24.56% of CG Financial Chile Dos SpA to Investments Corpgroup Interhold, shares of underlying assets Corpbanca Colombia with pledge, bond and solidarity debt in favor of Itau for financing of Investments Corpgroup Interhold.

b.     TRANSACTION Nº. II - SALE DATED 09 APRIL 2015.

        i)     According to the sale and transfer of shares contract, CGB buys 416,899,653 shares of INVERSIONES CG FINANCIAL CHILE DOS SpA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $600,000,000 which the buyer pays on that act in cash, the seller declaring to receive the sum in full agreement.

        ii)     Purchase corresponds to 3.95% of CG Financial Chile Dos SpA to Investments Corpgroup Interhold, shares of underlying assets Corpbanca Colombia with pledge, bond and solidarity debt in favor of Itau for financing of Investments Corpgroup Interhold.

c.     TRANSACTION Nº. III.- SALE DATED 31 July 2015.

i) According to the contract of sale and transfer of shares, CGB buys 24,282,498,681 shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $38,200,000,000 which the buyer pays on that act in cash, the seller declaring to receive them in full agreement.

iii) Purchase corresponds to 24.4% of CG Financial Chile Dos SpA to Inversiones Corpgroup Interhold Limitada, shares of underlying assets Corpbanca Colombia with pledge, bond and solidarity debt in favor of Itau for financing of Inversiones Corpgroup Interhold.

d. TRANSACTION Nº. IV.- SALE DATED 01 November 2015.

i) According to the contract of sale and transfer of shares, CGB buys shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $14,430,000,000 that the buyer pays in cash on that act, the seller declaring to receive them in full agreement.

ii) Purchase corresponds to 9.78% of CG Financial Chile Dos SpA to Inversiones Corpgroup Interhold Limitada, shares of underlying assets Corpbanca Colombia with pledge, bond and solidarity debt in favor of Itau for financing of Inversiones Corpgroup Interhold.

iii) With regard to this operation, the contract and/or document containing the transfer of shares has not been seen in the research folder, the information having been obtained from the company's Financial Statements, which state that it was carried out during the 3Q, thus the date indicated corresponds to the beginning of the fourth quarter.

e. TRANSACTION Nº. V - SALE DATED 16 March 2016.

i) According to the contract of sale and transfer of shares, CGB buys 16,206,938,723 shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $26,141,676,000, which the buyer pays on that act in cash, the seller declaring to receive them in full agreement.

ii) Purchase corresponds to 17.22% of CG Financial Chile Dos SpA (reaching 100%) to Investments Corpgroup Interhold, shares of underlying assets Corpbanca Colombia with pledge, bond and solidarity debt in favor of Itau for financing of Investments Corpgroup Interhold.

f. SUMMARY OF FINANCIAL DOS SHARES OPERATIONS

g. During the period March 2015 to March 2016, CORP GROUP BANKING S.A. acquires shares of the related company CG FINANCIAL CHILE DOS SPA, totaling $115,733,676,000, as follows:

| Nº. | DETAIL | DATE | Nº. SHARES | SECURITIES |
|---|---|---|---|---|
| | PURCHASE SHARES INV CG FINANCIAL CHILE DOS SPA | | | |
| I | Inversiones Corpgroup Interhold Limitada | 12 March 2015 | 24,484,877,154 | 36,362,000,000 |
| II | Inversiones Corpgroup Interhold Limitada | 09 APRIL 2015 | 416,899,653 | 600,000,000 |
| III | Inversiones Corpgroup Interhold Limitada | 31 JULY 2015 | 22,282,498,681 | 38,200,000,000 |
| IV | Inversiones Corpgroup Interhold Limitada | 01 NOVEMBER 2015 | | 14,430,000,000 |
| V | Inversiones Corpgroup Interhold Limitada | 16 MARCH 2016 | 16,206,938,723 | 26,141,676,000 |
| | TOTAL | | | 115,733,676,000 |

42. Transaction or operations consisting of subscription of shares of SAGA SpA.

a. TRANSACTION Nº. VI    SUBSCRIPTION DATED 11 April 2016. TITLE Nº. 9.

i) According to the share subscription contract, CGB subscribes 720,762,604 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $1,841,832,001 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Cuenta Corriente EERR," that is, no effective income of money is recorded through Bank accounts.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca US $" for the amount of $1,841,832,001. The origin of the funds available to carry out the transaction in the bank checking account, corresponds to an income that is recorded as "Recibe 3,000,000 USD COMP" for the amount of $7.257.668.400, registered with date 15 March 2016.

b. TRANSACTION Nº. VII SUBSCRIPTION DATED 11 April 2016. TITLE Nº. 8.

i) According to the share subscription contract, CGB subscribes 2,363,628,387 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $6,040,000,380 that the subscriber pays in cash.

ii)  Accountably, the transaction is recorded in SAGA in the accounting account "Cuenta Corriente EERR," that is, no effective income of money is recorded through Bank accounts.

iii)  Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $6,040,000,380. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "Liquida Pacto a 3 días TA" for the amount of $6,601,518,000, registered with date 11 April 2016.

c.  TRANSACTION Nº. VIII SUBSCRIPTION DATED 06 June 2016. TITLE Nº. 10.

i)  According to the share subscription contract, CGB subscribes 15,667,199,683 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $40,035,858,666 that the subscriber pays in cash.

ii)  Accountably, the transaction is recorded in SAGA in the accounting account "Obligación Banco Estado Pesos," whereby a credit granted by BECH to SAGA is paid for the amount of $40,000,000,000. Now with the product of the BECH credit, it is registered a credit granted by SAGA to SMU with note "PTMO USD A SMU S.A." for the amount of $37,000,000,000.

iii)  Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Estado $" for the amount of $40,035,858,666. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "VENTA DE ACCIONES DE CONF" for the amount of $40,572,107,438.

d.  TRANSACTION Nº. IX SUBSCRIPTION DATED 13 JUNE 2016. TITLE Nº. 11.

i)  According to the share subscription contract, CGB subscribes 352,196,261 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $900,000,001 that the subscriber pays in cash.

ii)  Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $900,000,001. Now, with the amount available as a result of this income, there is registered a disbursement for "TRASPASO A GASA" for the amount of $900,000,000.-

iii)  Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $900,000,001. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an

income recorded as "LIQUIDA PACTO A 3 DÍAS TA" for the amount of $950,209,000.

e.   TRANSACTION Nº. X SUBSCRIPTION DATED 01 July 2016. TITLE Nº. 12.

  i)   According to the share subscription contract, CGB subscribes 23,479,751 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $60,000,001 that the subscriber pays in cash.

  ii)   Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with a bank checking account income for the amount of $60,000,001. Now, with the amount available as a result of this income, there is a register for "TO A INV A GASA" for the amount of $118,000,000.

  iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $60,000,001. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is registered as "Liquida Pacto a 3 días TA" for the amount of $950,209,000 (same as previous transaction).

f.   TRANSACTION Nº. XI SUBSCRIPTION DATE 25 July 2016. TITLE Nº. 13.

  i)   According to the share subscription contract, CGB subscribes 5,098,147,058 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 11 April 2016, worth $2.5553934 each, so the value of the shares subscribed amounts to the sum of $13,027,771,344 that the subscriber pays in cash.

  ii)   Accountably the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $13,027,771,344. Now, with the amount available resulting of this income, it is registered a disbursement with the note "TO A INV GASA LTDA." for the amount of $13,027,000,000.

  iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $13,027,771,344. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "CRÉDITO SANTANDER" for the amount of $19,125,893,200.

g.   TRANSACTION Nº. XII SUBSCRIPTION DATED 01 AUGUST 2016. TITLE Nº. 20.

  i)   According to the share subscription contract, CGB subscribes 2,389,486,164 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the

value of the subscribed shares amounts to the sum of $5,900,000,000 that the subscriber
pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $5,900,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $5,900,000,000.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $5,900,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is registered as "Crédito Santander" for the amount of $19,125,893,200 (same as in the previous case).

h.   TRANSACTION Nº. XIII SUBSCRIPTION DATED 27 OCTOBER 2016. TITLE Nº. 18.

i) According to the share subscription contract, CGB subscribes 6,863,968,363 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $16,948,168,170 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with a bank checking account income for the amount of $16,948,168,170 Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $16,948,000,000.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $16,948,168,170. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA TASA" for the amount of $60,004,600,000.

i.   TRANSACTION Nº. XIV SUBSCRIPTION DATED 09 NOVEMBER 2016. TITLE Nº. 14.

i) According to the share subscription contract, CGB subscribes 2,024,988,274 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $4,999,999,999 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $5,000,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $6,010,000,000.

iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $5,000,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA TASA" for the amount of $13,701,141,666.

j.    TRANSACTION Nº. XV SUBSCRIPTION DATED 28 NOVEMBER 2016. TITLE Nº. 21.

i)    According to the share subscription contract, CGB subscribes 3,239,981,239 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $8,000,000,000 that the subscriber pays in cash.

ii)    Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $8,000,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $8,000,000,000.

iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $8,000,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 3 DIAS TASA" for the amount of $18,754,687,500.

k.    TRANSACTION Nº. XVI SUBSCRIPTION DATED 13 DECEMBER 2016. TITLE Nº. 22.

i)    According to the share subscription contract, CGB subscribes 809,995,310 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $2,000,000,001 that the subscriber pays in cash.

ii)    Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $2,000,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note     "TO                    CG INVERSIONES LTDA." for the amount of $2,000,000,000.

iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $2,000,000,001. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA TASA" for the amount of $10,800,900,000.

l.    TRANSACTION Nº. XVII OF DATE 16 DECEMBER 2016. TITLE Nº. 23.

   i)    According to the share subscription contract, CGB subscribes 2,429,985,929 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $6,000,000,000 that the subscriber pays in cash.

   ii)    Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $6,000,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $6,000,000,000.

   iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $6,000,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA TASA" for the amount of $8,800,733,333.

m.    TRANSACTION Nº. XVIII SUBSCRIPTION DATED 29 DECEMBER 2016. TITLE Nº. 25.

   i)    According to the share subscription contract, CGB subscribes 1,073,243,785 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 27 July 2016, worth $2.4691501 each, so the value of the shares subscribed amounts to the sum of $2,649,999,999 that the subscriber pays in cash.

   ii)    Accountably, the transaction is recorded in SAGA in the accounting account "Banco Corpbanca 01 $" with income in the bank checking account for the amount of $2,650,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note"TO CG INVERSIONES LTDA." for the amount of $2,650,000,000.

   iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca 01 $" for the amount of $2,650,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA TASA" for the amount of $2,800,700,000.

n.    TRANSACTION Nº. XIX SUBSCRIPTION DATED 13 FEBRUARY 2018. TITLE Nº. 30.

   i)    According to the share subscription contract, CGB subscribes 628,098,004 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 13 February 2018, worth $2.198391 each, so the value of the shares subscribed amounts to the sum of $1,380,804,999 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Cuenta Corriente por Cobrar EERR Corrientes," that is, no effective income of money is recorded through Bank accounts.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca USD 01" for the amount of $1,380,804,999. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "INGRESO DIVISA OPCION CAL" for the amount of
$3,522,040,210.

o. TRANSACTION Nº. XX SUBSCRIPTION DATED 15 FEBRUARY 2018.

i) According to the share subscription contract, CGB subscribes 461,392,901 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 13 February 2018, worth $2.198391 each, so the value of the shares subscribed amounts to the sum of $1,014,322,001 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Cuenta Corriente por Cobrar EERR Corrientes," that is, no effective income of money is recorded through Bank accounts.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca USD 01" for the amount of $1,014,322,001. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "INGRESO DIVISA OPCION CAL" for the amount of $2,732,675,200.

p. TRANSACTION Nº. XXI DATED 19 FEBRUARY 2018. TITLE Nº. 32.

i) According to the share subscription contract, CGB subscribes 472,169,191 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 13 February 2018, worth $2.198391 each, so the value of the shares subscribed amounts to the sum of $1,038,012,500 that the subscriber pays in cash.

ii) Accountably, the transaction is recorded in SAGA in the accounting account "Cuenta Corriente por Cobrar EERR Corrientes," that is, no effective income of money is recorded through Bank accounts.

iii) Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca USD 01" for the amount of $1,038,012,500. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "INGRESO DIVISA OPCION CAL" for the amount of $2,732,675,200 (same as in the previous case).

q. TRANSACTION Nº. XXII SUBSCRIPTION DATED 13 APRIL 2018. TITLE Nº. 41.

i)  According to the share subscription contract, CGB subscribes 4,076,860,267 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 13 February 2018, worth $2.198391 each, so the value of the shares subscribed amounts to the sum of $8,962,532,919 that the subscriber pays in cash.

ii)  Accountably, the transaction is recorded in SAGA in the accounting account "Banco Itau- Corpbanca Pesos 01" with an income in the bank checking account for the amount of $8,400,000,000 dated 13 April 2018 and $562.532.917 dated 20 April 2018. However, with the amount available as a result of this income, there is registered a disbursement with the note "TO CG INVERSIONES LTDA." for the amount of $8,400,000,000 dated 13 April 2018 and $565,000,000 dated 20 April 2018.

iii)  Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 02" for the amount of $8,400,000,000 dated 13 April 2018 and $562,532,917 dated 20 April 2018. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is registered as "BTG PACTUAL CHILE S.A PESOS" for the amount of $9,000,000,000.

r.  TRANSACTION Nº. XXIII SUBSCRIPTION DATED 01 April 2019. TITLE Nº. 46.

i)  According to the share subscription contract, CGB subscribes 1,005,064,520 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting dated 01 April 2019, worth $1.989922 each, so the value of the shares subscribed amounts to the sum of $2,000,000,000 that the subscriber pays in cash.

ii)  Accountably, the transaction is recorded in SAGA in the accounting account "Banco Itau- Corpbanca Pesos 01" with an income in the bank checking account for the amount of $2,000,000,000.Thus, with the amount available as a result of this income, there is registered an income with the note "TO CG INVERSIONES LTDA." for the amount of $2,000,000,000.

iii)  Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 01" for the amount of $2,000,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 3 DIAS TASA 0,20" for the amount of $12,002,400,000.

43. During the period April 2016 to April 2019, CORP GROUP BANKING S.A. subscribes a total of 49,700,647,691 shares of the related company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, totaling $122,799,302,981. The operation mentioned above is according to the following detail:

| N°. OP | DATE | N°. SHARES | $ SUBSCRIPTION AMOUNT | DESTINATION IN SAGA | $ AMOUNT WITH DESTINATION IN SAGA |
|---|---|---|---|---|---|
| VI | 11 APRIL 2016 | 720,762,604 | 1,841,832,001 | NO CASH INCOME | 0 |
| VII | 11 APRIL 2016 | 2,363,628,387 | 6,040,000,380 | NO CASH INCOME | 0 |
| VIII | 06 JUNE 2016 | 15,667,199,683 | 40,035,858,666 | LOAN USD TO SMU S.A. | 37,000,000,000 |
| IX | 13 JUNE 2016 | 352,196,261 | 900,000,001 | TRANSFER TO GASA | 900,000,000 |
| X | 01 JULY 2016 | 23,479,751 | 60,000,001 | TO A INV GASA LTDA. | 118,000,000 |
| XI | 25 JULY 2016 | 5,098,147,058 | 13,027,771,344 | TO A INV GASA LTDA. | 13,027,000,000 |
| XII | 01 AUGUST 2016 | 2,389,486,164 | 5,900,000,000 | TO CG INVERSIONES LTDA. | 5,900,000,000 |
| XIII | 27 OCTOBER 2016 | 6,863,968,363 | 16,948,168,170 | TO CG INVERSIONES LTDA. | 16,948,000,000 |
| XIV | 09 NOVEMBER 2016 | 2,024,988,274 | 4,999,999,999 | TO CG INVERSIONES LTDA. | 6,010,000,000 |
| XV | 28 NOVEMBER 2016 | 3,239,981,239 | 8,000,000,000 | TO CG INVERSIONES LTDA. | 8,000,000,000 |
| XVI | 13 DECEMBER 2016 | 809,995,310 | 2,000,000,001 | TO CG INVERSIONES LTDA. | 2,000,000,000 |
| XVII | 16 DECEMBER 2016 | 2,429,985,929 | 6,000,000,000 | TO CG INVERSIONES LTDA. | 6,000,000,000 |
| XVIII | 29 DECEMBER 2016 | 1,073,243,785 | 2,649,999,999 | TO CG INVERSIONES LTDA. | 2,650,000,000 |
| XIX | 13 FEBRUARY 2018 | 628,098,004 | 1,380,804,999 | NO CASH INCOME | 0 |
| XX | 15 FEBRUARY 2018 | 461,392,901 | 1,014,322,001 | NO CASH INCOME | 0 |
| XXI | 19 FEBRUARY 2018 | 472,169,191 | 1,038,012,500 | NO CASH INCOME | 0 |
| XXII | 13 APRIL 2018 | 4,076,860,267 | 8,962,532,919 | TO CG Inversiones LTDA. | 8,400,000,000 |
| | | | | TO CG Inversiones LTDA. | 565,000,000 |
| XXIII | 01 APRIL 2019 | 1,005,064,520 | 2,000,000,000 | TO CorpGroup Inversiones Ltda. | 2,000,000,000 |
| TOTALS | | 49,700,647,691 | 122,799,302,981 | | 109,518,000,000 |

44. Detail of sales transactions with GASA LIMITADA:

a.    TRANSACTION Nº. XXIV SALE DATED 22 SEPTEMBER 2017. TITLE Nº. 28.

i)    According to the contract of sale and transfer of shares, CGB buys 5,077,050,166 shares of SAGA, to the seller Inversiones GASA Ltda., worth $2.198391 each, so the value of the shares purchased amounts to the sum of $11,161,341,391 which the buyer pays in cash.

ii)    Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca Pesos 01" with income in the bank checking account for the amount of $11,161,341,391. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CORP GROUP INVERSIÓN" for the amount of $11,950,000,000.

iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account   "Banco Corpbanca Pesos 01" for the amount of $11,161,341,391. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "LIQUIDA PACTO 1 DIA AL 0,2" for the amount of $11,750,705,000.

b.    TRANSACTION Nº. XXV SALE DATED 09 APRIL 2019. TITLE Nº. 50.

i)    According to the contract of purchase and transfer of shares, CGB buys 533,094,262 shares of SAGA, from the seller CorpGroup Interhold SpA, worth $1.989922 each, thus the value of the shares purchased amounts to the sum of $1,060,816,000 which the subscriber pays in cash.

ii)    The accounting records of the company CorpGroup Interhold SpA were not available to verify the income and the destination of the funds.

iii)    Accountably, the transaction is accounted for in CGB in the accounting account "Investments in related companies" for the amount of $1,060,816,000. These shares are transferred on the same day and for the same value to Inversiones GASA Ltda. In this case there is no movement of funds.

c.    TRANSACTION Nº. XXVI SALE DATED 19 MARCH 2020. TITLE Nº. 53.

i)    According to the contract of sale and transfer of shares, CGB buys 381,250,453 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.757374 each, thus the value of the shares purchased amounts to the sum of $670,000,000 that the buyer pays in cash.

ii)    Accountably, the transaction is recorded in GASA in the accounting account "Banco

Corpbanca Pesos 01," with an income in the bank checking account for the amount of 670,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO GRUPO COPESA S.A" for the amount of $850,000,000.

iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 01" for the amount of $670,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "DIVIDENDO RECIBIDO DE ITAU CORPBANCA" for the amount of $12,741,289,932.

d.   TRANSACTION Nº. XXVII SALE DATED 24 SEPTEMBER 2020. TITLE Nº. 54

i)   According to the contract of sale and transfer of shares, CGB buys 706,363,318 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.72715874 each, thus the value of the shares purchased amounts to the sum of $1,220,000,000 which the buyer pays in cash.

ii)   Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca Pesos 01," with an income in the bank checking account for the amount of $1,220,000,000. Now, with the amount available as a result of this income, there is a disbursement with the note "TO CORPGROUP INVERSIONES LIMITADA" for the amount of $1,220,000,000.

iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 01" for the amount of $1,220,000,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "DIVIDENDO RECIBIDO DE ITAU CORPBANCA" for the amount of $12,741,289,932 (same as in the previous case).

e.   TRANSACTION Nº. XXVIII SALE DATED 25 MARCH 2020. TITLE Nº. 55

i)   According to the contract of sale and transfer of shares, CGB buys 11,996,410,362 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.749577 each, thus the value of the shares purchased amounts to the sum of $20,988,647,011 which the buyer pays in cash.

ii)   Accountably, the transaction is recorded in GASA in the accounting account "Cuenta Corriente por Cobrar EERR Corrientes" for the amount of $20,988,647,011; that is, no effective income of money is recorded through Bank accounts.

iii)   Accountably, the transaction is recorded in CGB from the accounting account "Depósito en Tránsito" for the amount of $20,988,647,011. The origin of this corresponds the transaction with note "RECIBE DIVIDENDO DE ITAU" for the amount of $20,988,647,011.

f.    TRANSACTION Nº. XXIX SALE DATED 26 MARCH 2020. TITLE Nº. 56

    i)    According to the contract of sale and transfer of shares, CGB buys 283,154,177 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.765822 each, so the value of the shares purchased amounts to the sum of $500,000,000 that the buyer pays in cash.

    ii)    Accountably, the transaction is recorded in GASA in the accounting account "Banco Itau- Corpbanca Pesos 01" with an income in the bank checking account for the amount of $500,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CORP GROUP INVERSIONES LIMITED" for the amount of $500,000,000.

    iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 01" for the amount of $500,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is registered as "PACTO" for the amount of $11,000,000 000 dated 23 March 2020,

g.    TRANSACTION Nº. XXX SALE DATED 27 MARCH 2020. TITLE Nº. 58

    i)    According to the contract of sale and transfer of shares, CGB buys 4,278,635,828 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.758609 each, thus the value of the purchased shares amounts to the sum of $7,524,450,000 which the buyer pays in cash.

    ii)    Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca USD 01" with an income in the bank checking account for the amount of $7,524,450,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CORP GROUP INVERSIÓN" for the amount of $7,524,450,000.

    iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Itau-Corpbanca USD 01" for the amount of $7,524,450,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "COMPRA USD BECH" for the amount of $7,583,300,000.

h.    TRANSACTION Nº. XXXI SALE DATED 27 MARCH 2020. TITLE Nº. 57.

    i)    According to the contract of sale and transfer of shares, CGB buys 1,370,400,806 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.758609 each, thus the value of the shares purchased amounts to the sum of $2,410,000,000 which the buyer pays in cash.

    ii)    Accountably, the transaction is recorded in GASA in the accounting account

"Banco Itau- Corpbanca Pesos 01" with an income in the bank checking account for the amount of $2,410,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CORP GROUP INVERSIONES LIMITADA" for the amount of $2,410,000,000.

iii)    Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Corpbanca Pesos 01" for the amount of $2,410,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is registered as "PACTO" for the amount of $11,000,000,000 dated 23 March 2020.

i.    TRANSACTION Nº. XXXII SALE DATED 30 MARCH 2020. TITLE Nº. 59.

i)    According to the sale and transfer of shares contract, CGB buys 199,455,688 shares of SAGA, to the seller Inversiones GASA Ltda., worth $1.754775 each, so the value of the purchased shares amounts to the sum of $350,000,000 which the buyer pays in cash.

ii)    Accountably, the transaction is recorded in GASA in the accounting account "Cuenta Corriente por Pagar EERR Corrientes" for the amount of $350,000,000. That is, no effective income of money is recorded through Bank accounts.

iii)    Accountably, the transaction is recorded in CGB with charge to the accounting account "Banco Itau-Corpbanca Pesos 01" for the amount of $350,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "PACTO" for the amount of $11,000,000,000 dated 23 March 2020.

j.    TRANSACTION Nº. XXXIII SALE DATED 02 APRIL 2020. TITLE Nº. 60.

i)    According to the contract of sale and transfer of shares, CGB buys 88,572,259 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.761273 each, thus the value of the purchased shares amounts to the sum of $156,000,000 that the buyer pays in cash.

ii)    Accountably, the transaction is recorded in GASA in the accounting account "Cuenta Corriente por Pagar EERR Corrientes" for the amount of $156,000,000. That is, no effective income of money is recorded through Bank accounts.

iii)    Accountably, the transaction is then recorded in CGB with charge to the accounting account "Banco Itau-Corpbanca Pesos 01" for the amount of $156,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "TRANSFERENCIA DE DOLARES" for the amount of $155,841,000 dated 02 April 2020.

k.   TRANSACTION Nº. XXXIV SALE DATED 09 APRIL 2020. TITLE Nº. 61

    i)   According to the contract of sale and transfer of shares, CGB buys 830,098,980 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.765172 each, thus the value of the shares purchased amounts to the sum of $1,465,268,000 which the buyer pays in cash.

    iii)   Accountably, the transaction is recorded in GASA in the accounting account "Cuenta Corriente por Pagar EERR Corrientes" for the amount of $1,465,268,000. That is, no effective income of money is recorded through Bank accounts.

    iv)   Accountably the transaction is recorded in CGB with charge to the accounting account "Banco Itau-Corpbanca USD 01" for the amount of $1,465,268,000. The origin of the funds available in the bank checking account to carry out the transaction, corresponds to an income that is recorded as "TRANSFERENCIA DE DOLARES" for the amount of $6.754.022.414 dated 02 April 2020.

l.   TRANSACTION Nº. XXXV SALE DATED 19 MAY 2020. TITLE N° 62

    i)   According to the contract of sale and transfer of shares, CGB buys 977,471,934 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.739180 each, thus the value of the purchased shares amounts to the sum of $1,700,000,000 which the buyer pays in cash.

    ii)   Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca Pesos 01" with income in the bank checking account for the amount of $1,700,000,000. Now, with the amount available as a result of this income, there is registered a disbursement with the note "TO CORP GROUP INVERSIONES LIMITADA" for the amount of $1,449,000,000 and "TO GRUPO COPESA S.A." for the amount of 250,000,000.

    iii)   Accountably, the transaction is recorded in CGB with a disbursement from the accounting account "Banco Itau-Corpbanca Pesos 01" for the amount of $1,700,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "DEVOLUCIÓN CON REAJUSTES PPUA" for the amount of $1,698,425,061.

m.   TRANSACTION Nº. XXXVI SALE DATED 26 JUNE 2020. TITLE Nº. 63.

    i)   According to the contract of sale and transfer of shares, CGB buys 813,405,522 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.777711 each, thus the value of the shares purchased amounts to the sum of $1,446,000,000 which the buyer pays in cash.

    ii)   Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca Pesos 01" with income in the bank checking account for the

amount of $1,700,000,000. Now, with the amount available as a result of this income, there are disbursements with the note "TO CORP GROUP INVERSIONES LIMITADA" for the amount of $1,296,000,000 and "TO GRUPO COPESA S.A." for the amount of 150,000,000.

iii)    Accountably, the transaction is then recorded in CGB with a disbursement from the accounting account "Banco Itau-Corpbanca Pesos 01" for the amount of $1,446,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "DEVOLUCIÓN PARCIAL PPUA (50%) AT 2020" for the amount of $2,571,276,301 dated 25 June 2020.

n.    TRANSACTION Nº. XXXVII SALE DATED 21 JULY 2020. TITLE Nº. 64.

1.    According to the contract of sale and transfer of shares, CGB buys 1,433,295,569 shares of SAGA, from the seller Inversiones GASA Ltda., worth $1.786993 each, thus the value of the purchased shares amounts to the sum of $2,560,000,000 which the buyer pays in cash.

2.    Accountably, the transaction is recorded in GASA in the accounting account "Banco Corpbanca Pesos 01," with an income in the bank checking account for the amount of $2,560,000,000. Now, with the amount available as a result of this income, there are  registered disbursements with the note "TO CORP GROUP INVERSIONES LIMITED" for the sum of $2,560,000,000.

3.    Accountably, the transaction is then recorded in CGB with a disbursement from the accounting account "Banco Itau-Corpbanca Pesos 01" for the amount of $2,560,000,000. The origin of the funds available in the bank checking account to carry out the transaction corresponds to an income that is recorded as "DEVOLUCIÓN PPUA (50%) AT 2020" for the amount of $2,568,740,527 dated 13 July 2020.

45. During the period September 2017 to October 2020, the company CORP GROUP BANKING S.A. buys from other related companies (mainly Inversiones GASA Limitada) a total of 28,968,658,324 shares of the related company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, for a total of $53,212,522,402 according to the following detail:

| Nº. | SELLER | BUYER | DATE | NUMBER OF SHARES | AMOUNT $ | P P SH |
|---|---|---|---|---|---|---|
| XXIV | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 22 SEPTEMBER 2017 | 5,077,050,166 | 11,161,341,391 | 2.20 |
| XXV | CORPGROUP INTERHOLD SPA | CORP. GROUP BANKING SPA | 09 APRIL 2019 | 533,094,262 | 1,060,816,000 | 1.99 |
| XXVI | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 19 MARCH 2020 | 381,250,453 | 670,000,000 | 1.76 |
| XXVII | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 24 MARCH 2020 | 706,362,318 | 1,220,000,000 | 1.73 |

| XXVIII | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 25 MARCH 2020 | 11,996,410,362 | 20,988,647,011 | 1.75 |
| XXIX | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 26 MARCH 2020 | 283,154,177 | 500,000,000 | 1.77 |
| XXX | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 27 MARCH 2020 | 4,278,635,828 | 7,524,450,000 | 1.76 |
| XXXI | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 27 MARCH 2020 | 1,370,400,806 | 2,410,000,000 | 1.76 |
| XXXII | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 30 MARCH 2020 | 199,455,688 | 350,000,000 | 1.75 |
| XXXIII | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 02 APRIL 2020 | 88,572,259 | 156,000,000 | 1.76 |
| XXXIV | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 09 APRIL 2020 | 830,098,980 | 1,465,268,000 | 1.77 |
| XXXV | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 19 MAY 2020 | 977,471,934 | 1,700,000,000 | 1.74 |
| XXXVI | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 26 JUNE 2020 | 813,405,522 | 1,446,000,000 | 1.78 |
| XXXVII | INVERSIONES GASA LIMITADA | CORP. GROUP BANKING SPA | 21 JULY 2020 | 1,433,295,569 | 2,560,000,000 | 1.79 |
| | TOTAL | | | 28,968,658,324 | 53,212,522,402 | |

**46.    TRANSFERS TO INTERHOLD, SAGA, SMU SA AND COPESA SA., AMONG OTHERS.**

47.    According to the background in the research folder, the CGB monies were transferred according to the following detail:

| N°. OP | DATE | AMOUNT OF OPERATION | DESTINATION | AMOUNT $ |
|---|---|---|---|---|
| I | 12 MARCH 2015 | 36,362,000,000 | NO DATA | |
| II | 09 APRIL 2015 | 600,000,000 | NO DATA | |
| III | 31 JULY 2015 | 38,200,000,000 | NO DATA | |
| IV | 01 NOVEMBER 2015 | 14,430,000,000 | NO DATA | |
| V | 31 MARCH 2016 | 26,141,676,000 | NO DATA | |
| VI | 11 APRIL 2016 | 1,841,832,001 | NO CASH INCOME | 0 |
| VII | 11 APRIL 2016 | 6,040,000,380 | NO CASH INCOME | 0 |
| VIII | 06 JUNE 2016 | 40,035,858,666 | LOAN USD TO SMU S.A. | 37,000,000,000 |
| IX | 13 JUNE 2016 | 900,000,001 | TRANSFER TO GASA | 900,000,000 |
| X | 01 JULY 2016 | 60,000,001 | TO A INV GASA LTDA. | 118,000,000 |
| XI | 25 JULY 2016 | 13,027,771,344 | TO A INV GASA LTDA. | 13,027,000,000 |
| XII | 01 AUGUST 2016 | 5,900,000,000 | TO CG INVERSIONES LTDA. | 5,900,000,000 |
| XIII | 27 OCTOBER 2016 | 16,948,168,170 | TO CG INVERSIONES LTDA. | 16,948,000,000 |
| XIV | 09 NOVEMBER 2016 | 4,999,999,999 | TO CG INVERSIONES LTDA. | 6,010,000,000 |
| XV | 28 | 8,000,000,000 | TO CG INVERSIONES LTDA. | 8,000,000,000 |

| | | | | |
|---|---|---|---|---|
| | NOVEMBER 2016 | | | |
| XVI | 13 DECEMBER 2016 | 2,000,000,001 | TO CG INVERSIONES LTDA. | 2,000,000,000 |
| XVII | 16 DECEMBER 2016 | 6,000,000,000 | TO CG INVERSIONES LTDA. | 6,000,000,000 |
| XVIII | 29 DECEMBER 2016 | 2,649,999,999 | TO CG INVERSIONES LTDA. | 2,650,000,000 |
| XIX | 13 FEBRUARY 2018 | 1,380,804,999 | NO CASH INCOME | 0 |
| XX | 15 FEBRUARY 2018 | 1,014,322,001 | NO CASH INCOME | 0 |
| XXI | 19 FEBRUARY 2018 | 1,038,012,500 | NO CASH INCOME | 0 |
| XXII | 13 APRIL 2018 | 8,962,532,919 | TO CG Inversiones LTDA. | 8,400,000,000 |
| | | | TO CG Inversiones LTDA. | 565,000,000 |
| XXIII | 01 APRIL 2019 | 2,000,000,000 | TO CorpGroup Inversiones Ltda. | 2,000,000,000 |
| XXIV | 22 SEPTEMBER 2017 | 11,161,341,391 | TO CORPGROUP INVERSION | 11,950,000,000 |
| XXV | 09 APRIL 2019 | 1,060,816,000 | NO DATA | 0 |
| XXVI | 19 MARCH 2020 | 670,000,000 | TO GRUPO COPESA S.A. | 850,000,000 |
| XXVII | 24 MARCH 2020 | 1,220,000,000 | TO CORPGROUP INVERSION | 1,220,000,000 |
| XXVIII | 25 MARCH 2020 | 20,988,647,011 | CHECKING ACCOUNT RECEIVABLE EERR | 20,988,647,011 |
| XXIX | 26 MARCH 2020 | 500,000,000 | TO CORPGROUP INVERSION | 500,000,000 |
| XXX | 27 MARCH 2020 | 7,524,450,000 | TO CORPGROUP INVERSION | 7,524,450,000 |
| XXXI | 27 MARCH 2020 | 2,410,000,000 | TO CORPGROUP INVERSION | 2,410,000,000 |
| XXXII | 30 MARCH 2020 | 350,000,000 | CHECKING ACCOUNT PAYABLE EERR | 350,000,000 |
| XXXIII | 02 APRIL 2020 | 156,000,000 | CHECKING ACCOUNT PAYABLE EERR | 156,000,000 |
| XXXIV | 09 APRIL 2020 | 1,465,268,000 | CHECKING ACCOUNT PAYABLE EERR | 1,465,000,000 |
| XXXV | 19 MAY 2020 | 1,700,000,000 | TO CORPGROUP INV, LTDA. | 1,449,000,000 |
| | | | TO GRUPO COPESA S.A. | 250,000,000 |
| XXXVI | 26 JUNE 2020 | 1,446,000,000 | TO CORPGROUP INV. LTDA. | 1,296,000,000 |
| | | | TO GRUPO COPESA S.A. | 150,000,000 |
| XXXVII | 21 JULY 2020 | 2,560,000,000 | TO CORPGROUP INV. LTDA. | 2,560,000,000 |

48. YEAR 2015.

   a. From the background in the research folder, it is not possible to determine with certainty the final destination of the monies transferred to INTERHOLD in 2015.

   b. Without prejudice to this, a study was carried out on the existence of transfers of resources between companies of the Grupo Saieh made during the years 2015 and 2016 and, in particular, resources entered into SMU SA in 2015.

   c. As referred to in the Financial Statements of 31 December 2016 of SMU SA, the company Inversiones SAMS SpA lent US$ 55,913,620 to SMU, "debt obtained in November 2015, is expressed in USD and accrues an annual fixed rate of 11.6% subordinated in principal and interest to the syndicated credits due in June 2020, without guarantees."

   d. Inversiones SAMS SpA, TIN 76.483.633-2, has been from 2017 onwards one of SMU's largest shareholders, with 19.19% in 2017, 23.23% of SMU SA shares in September 2018 and 23.34% in March 2020.

   e. Inversiones SAMS SpA increased its ownership from 700,262,114 shares in the year 2017 to 1,347,798,788 shares of SMU on 09 April 2020.

49. AÑO 2016.

   a. On the other hand, there is a background that allows to determine part of the destination of the monies transferred to SAGA (subscription of shares).

   b. Indeed, according to the above mentioned background, a loan to SMU S.A. for the sum of $37,000,000 dated 06 June 2016 is recorded in SAGA's accounting. According to the observed value of the dollar at that day ($683.27), its equivalent in United States dollars amounts to the sum of USD $54,151,360.36.

   c. In this regard, according to the "Updated Prospectus of Issuance of Payment Shares of SMU SA", dated January 18, 2017, addressed to Carlos Pavez Tolosa, Superintendent of Securities and Insurance, the following is indicated:

   "On 31 May 2016, the Company subscribed, in favor of the Compañía Inmobiliaria e Inversiones SAGA SpA, a company related to the Company's controller, a promissory note for the amount of USD $53,602,213.63, in order to partially provide funds to the Company to serve its obligation to pay the ordinary amortization of the series A bonds, issued by SMU SA, under the bond line registered on 26 May 2011 in the Securities Register of the SVS, under No. 667, in the amount of capital of 2,000,000 of Development Units, due 1 June 2016. The maturity of the credit subscribed by the Company shall be in a single instalment payable on 26 December 2018 and for interest, the principal due shall accrue a fixed interest rate equal to 11.6% per annum."

d. Also, in the Financial Statements of SMU of 31 December 2017, there is indicated the following related debt payable to related companies:

**b. Accounts payable to related entities**

| | | | | | Current | | Non-Current | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| TIN | Company | Relationship | Country | Currency | 12.31.2017 M$ | 12.31.2016 M$ | 12.31.2017 M$ | 12.31.2016 M$ |
| 65.034.895-8 | Fundación Descúbreme | Related to Controller | Chile | CLP | 8,921 | 17,814 | - | - |
| 76.001.408-7 | Retail Holding S.A (1)(7) | Common Controller | Chile | UF | - | 3,175,529 | - | 16,821,619 |
| 76.002.124-5 | SR Inmobiliaria SA | Common Controller | Chile | UF | 57,058 | - | - | - |
| 76.025.301-4 | Gestora Omega Ltda. Holding y CPA (1) (7) | Shareholder/ Common Shareholder | Chile | UF | - | 203,886 | - | 1,081,480 |
| 76.054.952-5 | Corp Group Inversiones Ltda. (2) | Common Controller | Chile | UF | - | 13,361,000 | - | - |
| 76.058.352-9 | Vivo Corp SpA | Common Controller | Chile | CLP | 181,257 | 143,598 | - | - |
| 76.063.653-3 | Unired S.A | Affiliate | Chile | CLP | 2,954,745 | - | - | - |
| 76.086.272-K | Unicard S.A (8) | Affiliate | Chile | CLP | 24,008 | - | - | - |
| 76.094.904-3 | Funky Films S. A. | Related to Controller | Chile | CLP | 63,272 | 33,844 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S. A. | Related to Controller | Chile | CLP | 3,787 | - | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S. A. | Common Controller | Chile | CLP | 2,411 | 14,256 | - | - |
| 76.170.725-6 | Copesa S. A. | Common Controller | Chile | CLP | 17,898 | - | - | - |
| 76.199.415-8 | Retail Holding III S.p.A. (3) (7) | Common Controller | Chile | UF | - | 295,598 | - | 1,492,470 |
| 76.483.633-2 | Inversiones SAMS SpA (4) (7) | Common Controller | Chile | USD | - | - | - | 55,913,620 |
| 88.202.600-0 | Cía. Inmobiliaria y de Inversiones SAGA (6) (7) | Common Controller | Chile | UF | - | 162,523 | - | 886,143 |
| 88.202.600-0 | Cía. Inmobiliaria y de Inversiones SAGA SpA (5) (7) | Common Controller | Chile | USD | - | 4,787 | - | 2,878,502 |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Common Controller | Chile | CLP | 24,621 | 26,068 | - | - |
| 96.763.040-3 | Inmobiliaria Río Lluta S.A. | Common Controller | Chile | CLP | 19,009 | - | - | - |
| | Total | | | | 3,356,987 | 17,438,903 | - | 79,053,834 |

(1)  This debt originated in September 2014 from the transfer of certain syndicated credits. It is expressed in UF (indexation unit) and accrues an annual interest of 90-day TAB UF + 1.60%. Percentages paid quarterly, annual amortization due in June 2020, no warranties. This debt was settled during the second quarter of 2017.

(2)  The debt is expressed in UF and accrues annual interest of 10.60%, paid quarterly, due in September 2016 and May 2017, deferrable for one additional year. Debt payable without warranties. This debt was settled during the second quarter of 2017.

(3)  Debt acquired in December 2013. It was part of a syndicated credit. It is expressed in UF and accrues an annual interest of 90-day TAB UF + 1.60 of M$467,776, and the balance of M$1,320,292 is expressed in UF and accrues a fixed annual rate of 4.81%. Interests paid quarterly and annual amortizations according to the table of the syndicated credit due in June 2020. No warranties.

(4)  Debt acquired in November 2015. It is expressed in USD and accrues an annual interest rate of 11.6%, subordinated in principal and interest to the syndicated credit due in June 2020. No warranties.

(5)  Debt acquired in May 2016. It is expressed in USD and accrues an annual interest rate 11.6%, paid semi-annually, due in December 2018. Prepayable debt. No warranties.

(6)  This debt originated in February 2015 from the transfer of certain bank amounts of the syndicated credit. It is expressed in UF and accrues an annual interest of 90-day TAB UF + 1.60%. Percentages paid quarterly. Amortization is subordinated to Banco Bice credit due in June 2020, without warranties.

(7)  Settled in January 2017.

(8)  Dated May 03, 2017. SMU Corp S.A. changed its company name to Unicard S.A.

e.   The document states: "As of 31 December 2017, all loans with related companies are already paid with funds from the capital increase".

f.   In this regard, the following is indicated on page 139 of the Financial Statements of 31 December 2017:

"d. Capital increase.
As at 31 December 2016:

At the Extraordinary Shareholders' Meeting held on December 30, 2015, it was agreed to increase the capital of the Company by the sum of M$230,000,000, reaching a capital of M$1,217,072,711 by issuing 2,486,486,486 shares of the same and only series, without nominal value. Likewise, the capital increase approved by the Extraordinary Shareholders Meeting dated October 2, 2013, later ratified by the Extraordinary Shareholders Meeting dated April 30, 2014 amounting to $111,333,333,333, is hereby abolished, in view that the 622,300,722 shares representing this capital increase at the date of the Board had neither been subscribed nor paid by the shareholders. During the year 2016, there was neither subscription nor payment of shares of said capital increase.

As at 31 December 2017

On January 24, 2017, at the Santiago Stock Exchange, 1,150,000,000 company payment shares were placed. The total demand amounted to a price of $113 per share, through the mechanism called auction of a Book of Orders. The total amount of the placement of shares reached the sum of M$129,950,000.

On November 16, 2017, on the Santiago Stock Exchange, Stock Exchange, through the mechanism called auction of a Book of Orders, a total of 575,000,000 payment shares of the Company were placed at a price of $165 per share. The total amount of the placement of shares reached the sum of M$94,875,000.

As of December 31, 2017 there is a balance of 761,486,486 shares to be placed on the market of the capital increase authorized at the Extraordinary Shareholders' Meeting
carried out on 30 December 2015."

g.    In turn, the Financial Statements of 30 June 2018 indicate the following:

"On January 29, 2015, the Rendic family sold Corp Group Holding Inversiones Limitada ("Corp Group"), an entity related to the current controller, all its stake in SMU S.A., equivalent to 13.88%. Under the said disposal, Corp Group, together with other vehicles controlled by Corp Group, reached on that date 78.59% of the shares issued by SMU.

At the Shareholders' Meeting held on December 30, 2015, it was agreed to increase the capital of the Company by the sum of M$230,000,000, through the issuance of 2,486,486,486 shares of the same and only series. On January 24, 2017, 1,150,000,000 payment shares were placed, raising M$129,950,000; later on November 16, 2017, 575,000,000 shares were placed, raising M$94,875,000 and finally on January 22, 2018, 400,000,000 payment shares of the Company were placed, raising M$74,000,000, all through the mechanism called auction of a book of orders at the Santiago Stock Exchange.

Given the above and due to the waiver of all the preferential subscription rights associated with the capital increases expressed at the Extraordinary Shareholders' Meeting on 02 December 2016, the controlling group's share in SMU decreased.

h.    The Financial Statements as at 30 June 2018 reflect the payment of obligations to related undertakings:

**b. Accounts payable to related entities**

| | | | | | Current | | Non-Current | |
|---|---|---|---|---|---|---|---|---|
| TIN | Company | Relationship | Country | Currency | 06.30.2018 Not Audited | 12.31.2017 | 06.30.2018 Not Audited | 12.31.2017 |
| | | | | | M$ | M$ | M$ | M$ |
| 65.034.895-8 | Fundación Descúbreme | Related to Controller | Chile | CLP | 2,977 | 8,921 | - | - |
| 76.002.124-5 | SR Inmobiliaria SA | Common Controller | Chile | UF | 2,608 | 57,058 | - | - |
| 76.058.352-9 | Vivo Corp SpA (2) | Common Controller | Chile | CLP | 106,576 | 181,257 | - | - |
| 76.063.653-3 | Unired S.A. | Affiliate | Chile | CLP | 2,380,886 | 2,954,745 | - | - |
| 76.086.272-K | Unicard S.A. () | Affiliate | Chile | CLP | 25,245 | 24,008 | - | - |
| 76.094.904-3 | Funky Films S.A. | Related to Controller | Chile | CLP | - | 63,272 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S. A. | Related to Controller | Chile | CLP | 2,416 | 3,787 | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S. A. | Common Controller | Chile | CLP | 749 | 2,411 | - | - |
| 76.170.725-6 | Copesa S. A. | Common Controller | Chile | CLP | - | 17,898 | - | - |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Common Controller | Chile | CLP | 3,466 | 24,621 | - | - |
| 96.763.040-3 | Inmobiliaria Rio Lluta S.A. | Common Controller | Chile | CLP | 19,271 | 19,009 | - | - |
| | | | | | | | - | - |
| | Total | | | | 2,544,194 | 3,356,987 | - | - |

(1) Dated May 03, 2017, SMU Corp S.A. changed its company name to Unicard SA.
(2) Dated July 28, 2017, Vivo Corp SpA changed its company name to Vivo Corp SA.

 

i. As can be seen, obligations to the following companies do not appear (therefore they were paid):

(i) 76,199,415-8 Retail Holding III S.p.A.

ii) 76,483,633-2 Inversiones SAMS SpA

iii) 88.202.600-0 Cía. Inmobiliaria y de Inversiones SAGA SpA

j. With regard to the revision of the SAGA general ledger of 2017, it is verified that on 09 September 2016 there is an accounting entry whose note or detail is "CESION DE DEUDA DE SMU PO y un", by which income is recorded (charge) to the account "Banco Corpbanca US$" for the sum of $29,691,257,750 and a subscription to the account "Cuenta Corriente EERR M/E."

k. There is no further information on the details and conditions of this transfer operation, or of the companies appearing there.

**SUMMARY OF OPERATIONS PART OF THE MECHANISM FOR DISPOSING OF CGB MONIES.**

50. During the period 2015 to 2020, CORP GROUP BANKING S.A. subscribed shares of the related company INVERSIONES CG FINANCIAL CHILE DOS SpA, totaling $115,733,676,000.

51. During the period 2015 to 2020, CORP GROUP BANKING S.A. subscribed a total of 49,700,647,691 shares of the related company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SpA, totaling $122,799,302,981.

52. During the period 2015 to 2020, the company CORP GROUP BANKING S.A. acquired a total of 28,968,658,324 shares of the related company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SpA, totaling $53,212,522,402 which were owned by GASA INVERSIONES LIMITED.

53. In total, there are thirty-seven (37) simulated operations according to the following detail:

| N° OP | DETAIL | DATE | N°. SHARES | SECURITIES |
|---|---|---|---|---|
| **PURCHASE SHARES INV CG FINANCIAL CHILE DOS SPA** | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 12 March 2015 | 24,484,877,154 | $36,362,000,000 |
| II | Inversiones Corpgroup Interhold Limitada | 09 APRIL 2015 | 416,899,653 | $600,000,000 |
| III | Inversiones Corpgroup Interhold Limitada | 31 JULY 2015 | 22,282,498,681 | $38,200,000.000 |
| IV | Inversiones Corpgroup Interhold Limitada | 01 NOVEMBER 2015 | | $14,430,000,000 |
| V | Inversiones Corpgroup Interhold Limitada | 16 MARCH 2016 | 16,206,938,723 | $26,141,676,000 |
| | **SUBTOTAL** | | | $115,733,676,000 |
| **SUBSCRIPTION OF SAGA SHARES** | | | | |
| VI | Subscription of Shares SAGA | 11 APRIL 2016 | 720,762,604 | $1,841,832,001 |
| VII | Subscription of Shares SAGA | 11 APRIL 2016 | 2,363,628,387 | $6,040,000,380 |
| VII | Subscription of Shares SAGA | 06 JUNE 2016 | 15,667,199,683 | $40,035,858,666 |
| IX | Subscription of Shares SAGA | 13 JUNE 2016 | 352,196,261 | $900,000,001 |
| X | Subscription of Shares SAGA | 01 JULY 2016 | 23,479,751 | $60,000,001 |
| XI | Subscription of Shares SAGA | 25 JULY 2016 | 5,098,147,058 | $13,027,771,344 |
| XII | Subscription of Shares SAGA | 01 AUGUST 2016 | 2,389,486,164 | $5,900,000,000 |
| XIII | Subscription of Shares SAGA | 27 OCTOBER 2016 | 6,863,968,363 | $16,948,168,170 |
| XIV | Subscription of Shares SAGA | 09 NOVEMBER 2016 | 2,024,988,274 | $4,999,999,999 |
| XV | Subscription of Shares SAGA | 28 NOVEMBER 2016 | 3,239,981,239 | $8,000,000,000 |
| XVI | Subscription of Shares SAGA | 13 DECEMBER 2016 | 809,995,310 | $2,000,000,001 |
| XVII | Subscription of Shares SAGA | 16 DECEMBER 2016 | 2,429,985,929 | $6,000,000,000 |
| XVIII | Subscription of Shares SAGA | 29 DECEMBER 2016 | 1,073,243,785 | $2,649,999,999 |
| XIX | Subscription of Shares SAGA | 13 FEBRUARY 2018 | 628,098,004 | $1,380,804,999 |
| XX | Subscription of Shares SAGA | 15 FEBRUARY 2018 | 461,392,901 | $1,014,322,001 |
| XXI | Subscription of Shares SAGA | 19 FEBRUARY 2018 | 472,169,191 | $1,038,012,500 |
| XXII | Subscription of Shares SAGA | 13 APRIL 2018 | 4,076,860,267 | $8,962,532,919 |
| XXIII | Subscription of Shares SAGA | 01 APRIL 2019 | 1,005,064,520 | $2,000,000,000 |
| | **SUBTOTAL** | | **49.700.647.691** | $122,799,302,981 |
| **PURCHASE OF SAGA SHARES** | | | | |
| XXIV | INVERSIONES GASA LIMITADA | 22 SEPTEMBER 2017 | 5,077,050,166 | $11,161,341,391 |
| XXV | CORPGROUP INTERHOLD SPA | 09 APRIL 2019 | 533,094,262 | $1,060,816,000 |
| XXVI | INVERSIONES GASA LIMITADA | 19 MARCH 2020 | 381,250,453 | $670,000,000 |

| XXVII | INVERSIONES GASA LIMITADA | 24 MARCH 2020 | 706,362,318 | $1,220,000,000 |
|-------|---------------------------|---------------|-------------|----------------|
| XXVIII | INVERSIONES GASA LIMITADA | 25 MARCH 2020 | 11,996,410,362 | $20,988,647,011 |
| XXIX | INVERSIONES GASA LIMITADA | 26 MARCH 2020 | 283,154,177 | $500,000,000 |
| XXX | INVERSIONES GASA LIMITADA | 27 MARCH 2020 | 4,278,635,828 | $7,524,450,000 |
| XXXI | INVERSIONES GASA LIMITADA | 27 MARCH 2020 | 1,370,400,806 | $2,410,000,000 |
| XXXII | INVERSIONES GASA LIMITADA | 30 MARCH 2020 | 199,455,688 | $350,000,000 |

| XXXIII | INVERSIONES GASA LIMITADA | 02 APRIL 2020 | 88,572,259 | $156,000,000 |
| XXXIV | INVERSIONES GASA LIMITADA | 09 APRIL 2020 | 830,098,980 | $1,465,268,000 |
| XXXV | INVERSIONES GASA LIMITADA | 19 MAY 2020 | 977,471,934 | $1,700,000,000 |
| XXXVI | INVERSIONES GASA LIMITADA | 26 JUNE 2020 | 813,405,522 | $1,446,000,000 |
| XXXVII | INVERSIONES GASA LIMITADA | 21 JULY 2020 | 1,433,295,569 | $2,560,000,000 |
| | **SUBTOTAL** | | **28,968,658,324** | **$53,212,522,402** |
| | **TOTAL** | | | **$291,745,501,383** |

54.    In short,

a.    CGB issued the so-called 13/23 Bond under certain covenants or obligations not to do.

b.    The recognition by the executives Messrs Zavala Destefani and Salinas Díaz is effective in terms of the fact that thirty-seven (37) operations -part of a mechanism- were carried out from the beginning of the issuance of the CGB Bond 13/23 6.75 and until 2020, which were aimed at disposing of almost all of the CGB monies.

c.    According to the background that exists in the research folder, operations were carried out between related companies from 2015 to 2020, for a total sum of $291,745,501,383.

d.    These operations were aimed at the acquisition of shares of FINANCIAL CHILE DOS and SAGA by CGB.

55.    The aforementioned resources (CGB monies) were transferred to the following companies:

| INITIAL RECIPIENT | AMOUNT | % OF TOTAL |
|---|---|---|
| SMU | $37,000,000,000 | 12.68 |
| COPESA | $1,250,000,000 | 0.43 |
| INVERSIONES | $87,382,450,000 | 29.95 |
| GASA | $14.045.000.000 | 4.81 |
| RELATED COMPANIES | $22,959,647,011 | 7.87 |
| UNKNOWN | $129,108,404,372 | 44.25 |

**Damage to investors.**

56.    In this respect, and with regard to the elements of the type in question, the production of the damage -which is precisely due to the stripping of assets that irrevocably prevented the compliance with the obligation assumed by CGB at the time of its maturity- has precisely the background of the transactions carried out by CGB (since its aggregate amounts committed about 40% of its accounting assets) that had the intent of transferring the company's cash to its related companies, to the detriment of the holders of the bonds (stripping of assets).

57.     Without prejudice to the fact that it will be the investigation of the Office of the Public Prosecutor that will determine with complete precision the amount of the damage, we must bear in mind that at least it reaches the sum of USD $1,570,000.0, which is equivalent on the day 26 January 2024 to the sum of $1,430,222,900 (according to observed value of the dollar at that day).

58.     Thus, the aforementioned criminal plan, started in 2015 with the execution of the simulated contracts, and continued consistently until 2020, emptying CGB's assets.

59.     According to the observed value of the dollar at the last banking business day of each year, between 2015 and 2020, the amounts involved are equivalent to the sum of US $425,992,555. The bond 13/23 6.75 issued by CGB amounted to the sum of US $500,000,000. Therefore, the money obtained through these thirty-seven (37) operations, as part of the mechanism of acquiring shares of the related companies FINANCIAL and SAGA, corresponded to 85.19% of the capital of Bond 13/23 6.75.

**Punishable authorship.**

60.     As for the active subject of the crime in question, it is possible to affirm that the formulation and structure of the illicit tell us that anyone could be the author of it, without the necessity of exhibiting any particular characteristics that allow it to be construed as such.

61.     In this respect, and taking into account that the simulated contract requires an agreement between the contracting parties of the act granted to the detriment of third parties, those who convened to its execution will be considered co-perpetrators of the crime stipulated in section 471 Nº. 2 of the Criminal Code.

62.     The defendant has participated as author according to section 15 Nº. 1 of the Criminal Code.

63.     The defendant is the controller of the Grupo CGB and its Affiliates. According to section 97 of the Securities Market Law, it is the one who directly or through other natural or legal persons, participates of the property and has the power to perform some of the behaviors indicated by the norm and, in particular, to decisively influence the administration of the CGB and SAGA companies.

64.     Information on control relationships between companies is obtained from data submitted by the defendant to the SEC on the following dates:

    a.  November 27, 2020, where it indicates: "Interhold is the majority shareholder of CGB. CGHIL is the majority shareholder of Interhold. CGF is the person who controls (owner of) CGHIL. Gasa is the majority shareholder of Saga. CGI is the majority shareholder of CGF and Gasa. CGHIL is the majority shareholder of CGI. Mr. Saieh Bendeck is the founder of the Corp group and could be regarded as the person controlling CGHI and CGF."; and

b. The report dated 1 April 2016, indicating a control structure almost identical to that illustrated in the figure and specifying that GASA is the only shareholder of SAGA at that time. Specifically, in this case it is indicated that: "Interhold is the majority shareholder of CGB. CGHIL is the shareholder of Interhold. CGF is the controlling person (owner) of CGHIL. Gasa is the only shareholder of Saga. CGI is the majority shareholder of CGF and Gasa. CGHI is the majority shareholder of CGI. Mr. Saieh Bendeck is chairman of the board and who controls CGHI, and is director of CGF. The rest of the complainants are in the investment and securities business."

65. In the same issue of the bond, the following was noted: "Our majority shareholders, headed by Mr. Álvaro Saieh Bendeck, have more than 20 years of experience in the financial industry in Chile. Mr. Saieh, who, together with other members of his family, controls approximately 59.4% of CorpBanca's outstanding common shares (including the shares we own), holds ordinary shares with sufficient power under Chilean law, to substantially approve all CorpBanca corporate shares subject to shareholder approval, including dividend distribution, and to elect most of the 9 board members. Once CorpBanca's pending preferential right offer is completed, we expect Mr. Saieh and his family in CorpBanca to dilute (or reduce) their stake to approximately 53.0% (assuming subscription of all rights offered)."

66. It is no less important a point about the participation of the various executives -mainly directors and general managers- different from the defendant. At this point, the figure of the defendant Ms. María del Pilar Dañobeitía Estades becomes particularly relevant since she held, at the time of development of the events, the position of "Chief Executive Officer" (CEO) in the companies that were part of the contracts of subscription and sale of shares that are constitutive of the aforementioned crimes. Without prejudice to the foregoing, it is borne in mind that the investigation of the Office of the Public Prosecutor will be the one to determine who are the ones that most agreed with their will to approve the various simulated acts or contracts that have been referred to.

67. The doctrine states that there is no problem in determining criminal responsibility for actions in the case of collegiate bodies. It is no longer the causation or execution of the crime itself -for example, who signed the simulated contract or who drafted it- but to determine who is the *competent subject* for the criminally relevant fact. Thus, the criminal legal competence for the act may be of one person or of several persons, either vertical or horizontal. All those who act in an objectively criminal context are the *competent* subjects for the crime; the perpetrator, according to the *principle of competence*, being the one who has the specific duties and this gives rise to their criminal responsibility.

68. There is no doubt that the controller of the economic group has a relevant function, regardless of its closeness to the act. In short, the defendant may well not have participated in the directory sessions, as well as not having signed any of the contracts, but they do not cease to have the preferential competence for the fact. Whoever is on the cusp, who has a higher degree of duties, who has the duty to prevent the commission of crimes by CGB and its Affiliates, is the controller who is criminally responsible for the competencies inherent to the position. As the word itself denotes it -*controller*- the fullness of the organization's dominance is found in the defendant.

69.    I reiterate, it will be the subject of the investigation of the Office of the Public Prosecutor to determine who were the subordinates who participated in the events, whether they be family or not, who materially carried out the various criminal behaviors. Also, in what manner and under what circumstances the controller himself intervened in the criminal conduct of the subordinates.

## II. <u>ABOUT THE LAW.</u>

### Crime of granting a simulated contract.

70.    The facts described above constitute repeated offenses of a simulated contract, provided for and sanctioned in section 471 No. 2 of the Criminal Code. The aforementioned rule punishes with the penalty of minor imprisonment or relegation in its minimum grades or a fine of 11 to 20 monthly tax units to: "The one that grants a simulated contract to the detriment of another."

71.    Criminal conduct is not about simulating the conclusion of a legal act, but actually granting one, but whose content does not reveal the true will of the interveners, who have not thought or wanted to realize the fact or agreement described therein. In this sense, we are in the presence of a simulated contract insofar as there is disagreement between the will declared and manifested by the contractors, on the one hand and, on the other hand, the actual will of those who attend the event.

72.    In this respect, Etcheberry understands that a simulated contract is "one that contains a statement of non-real will, made consciously and in agreement between the contractors, to produce the appearance of a legal act that does not exist or is different from the one that has been actually carried out."

73.    According to the above, the concept of simulated business in its classical formulation comprises two general hypotheses; that which consists of the conclusion of a contract that does not actually exist; and that which alleges a relation to an act that is different from the one that was actually concluded. In this respect, Francisco Ferrara defines it as "the one who has an appearance contrary to reality, either because it does not exist at all or because it is different from how it appears." In those terms, there will be absolute simulation "if the parties agree to celebrate only the appearance of an act that they do not actually want and which, consequently, will have no legal existence between them, or relative, if they decide to hold an act or business whose appearance is only false as to its nature, its terms or contents, or the persons involved."

74.    The type of this offense simply requires that a simulated contract be awarded, i.e. that a simulated contract be established or stipulated, thereby causing damages to another person, which must be of a patrimonial nature. Therefore, a contract must be pretended and thus cause patrimonial damage.

75.    Whether the simulation is absolute or relative is indifferent (Rivacoba and Rivacoba, Quintano Ripollés and Bustos Ramírez). It is the same in one case or the other, since the law only requires that it be a simulated contract; and, if it causes damage, it is appropriate to the criminal type.

76.    For the purpose of estimating the configuration of the crime provided for in section 471 Nº. 2 in the light of the background –if it is being understood that the purchases of shares deal with transactions actually made- the criminality is based on the discrepancy between the real and declared will in the intentional sphere of those who took part in the event. In this scenario, we will face a simulated act when the parties to a bilateral business, in agreement with each other, dictate a regulation of interests different from the one they intend to observe in their relations. It is not a question that a party would like to become the owner of the shares, but simply that the sum of money indicated as their price is available. It is not the payment for a good, but merely a way to move wealth from one owner to another.

77.    Similarly, there is in this case a discordance between the declared and the real will from the perspective of one of the requirements of the legal act: the lawful cause. Indeed, the relative simulation could also be about this element of the legal act; the one that, while it alleges a relation with the motive of the contractors, it should not be forgotten that it is in turn the measure with which it is determined whether an act has a lawful cause or not. An act that appears to have a lawful cause, in circumstances where the real intention underlying it is nothing more than to circumvent the right of third parties, constitutes a simulated act in the light of section 471 Nº. 2 of the Criminal Code.

78.    The offenses of awarding a simulated contract are found to be *fait accompli*. According to national doctrine, the sanctioned conduct is the granting of the contract, and for this it is sufficient for the contracting parties to extend and subscribe it; it is understood that this happens when it meets the formalities inherent in the nature of the apparently concluded pact. In this regard, it should be noted that, while the term "contract" requires us to understand, in the light of the notions of civil law, a bilateral legal act aimed at the creation of personal rights or obligations, the penal legislator does not specifically define the effect of the legal act of the simulation in question, so that those agreements that are generally concluded to the detriment of third parties (bilateral legal acts intended to modify, create or extinguish rights or obligations) could be included in that material object. This is absolutely logical if we consider that what is relevant to the criminal type in analysis is precisely the damage caused when granting the act in question.

79.    Additionally, the type in question indicates that with the granting of the mendacious act, a damage must be generated to another person. According to the majority doctrine, the formulation of the crime of simulated contract as a form of scam (such as improper scam - since not all elements of the scam would be present in this event- or deception fraud) requires consideration of the element of damage as part of the criminal type in question; the consummation of the fact depends on the causing of a damage to a third party. Under this perspective, the granting of a simulated contract to the detriment of another one constitutes a crime that attacks the assets, the simulation being a mere commissive modality of the required asset affectation. In this regard, ETCHEBERRY and GARRIDO MONTT have pronounced themselves, unequivocally stating that for the configuration of the criminal type in analysis, the production of an asset damage is required.

80.    This is supported by the systematic placing of the crime of simulated contract, since it is included in Title XI of the Second Book: Crimes and Simple Crimes against Property.

In this regard, although it is not property that is precisely the good that is affected in property fraud, but property understood as legal universality, it is in this section that are inserted the crimes of fraud that our Code regulates. This is relevant, since the crimes for which the protection of property as a legal good is underlying, require the causing of a damage to the victim in order to consider them accomplished.

81.   With regard to the delimitations of causal damage, our jurisprudence has ruled that it would be detrimental, in the light of 471 Nº. 2 of the Criminal Code, the affectation of the general pledge of creditors. Thus, in relation to the assumption that a debtor -in particular with the person who subscribes to the respective act-, outside the hypothesis regulated in the type of punishable insolvency of 466 of the Criminal Code, enters into simulated contracts in order to remove assets from his estate, and thus make it impossible to satisfy and enforce creditors' claims, our jurisprudence estimates that the crime of simulated contract of 471 Nº. 2 of the Criminal Code does occur. By way of reference, the Supreme Court, in Judgment Rol 657-2002, dated 09 July 2003, stated that "the damage, an element of the type of this criminal figure, is the effect that emanates precisely from the mendacious contract itself and that in the present case it occurred, since this contract frustrated the exercise of the general pledge right that the plaintiff had to achieve the fulfillment of the sentence that condemned the employer to satisfy an employment benefit owed by it."

82.   For its part, the damaged part of the offense may also be any person; the victim must not have a specific quality, but (and for the purposes of its legitimacy as the party offended by the crime) only be a holder of the asset that is affected by the granting of the simulated contract. In this regard, and as a clear conclusion of the structure of the crime and the notion of simulation, the co-grantor of the simulated contract cannot be the victim of this crime, but only third parties outside the signed act can be.

83.   Regarding the subjective type of the crime, the configuration of the simulated contract is only compatible with the direct fraud of the active subject, on the understanding that the simulation clearly requires an agreement between those who intervene in the act.

**COMPETENCE**.

84.   The simulated contracts were planned, decided, approved and executed at the domicile of the Grupo CGB and Affiliates, located in Rosario Norte Street Nº. 660, 23rd floor, Las Condes, Santiago.

85.   In accordance with the general rules of the Organic Code of Courts (section 14 et seq.), this Court is competent to hear all pre-trial proceedings arising from the oral proceedings, since the place is within its jurisdiction.

**THEREFORE**, in accordance with the provisions of section 111 et seq. of the Criminal Procedure Code, section 471 Nº. 2 of the Criminal Code; and relevant criminal norms, I ASK YOUR HONOR to have as presented a criminal complaint against **ÁLVARO JOSÉ SAIEH BENDECK**, **JORGE ANDRÉS SAIEH GUZMÁN**, **MARÍA CATALINA SAIEH GUZMÁN**, **CRISTÓBAL ALEJANDRO CERDA MENESES** and **MARÍA PILAR DAÑOBEITIA ESTADES**, already individualized; and against all those who are responsible as co-authors, aides and abettors; for the commission of repeated crimes of granting a simulated contract, in the degree of accomplished and as perpetrators, of section 471 Nº. 2 of the Criminal Code, and without prejudice to the legal qualification that the facts ultimately receive, all according to the background of fact and law that have been presented, declare it admissible and refer the it to the Office of the Public Prosecutor, in order to provide for the initiation of the investigation, formalize it, prosecute and in short, to be sentenced to the maximum of the penalties established by the law.

**FIRST ADDENDUM:** I beg Your Honor to receive the following documents:

- Digital copy of public deed granted on July 03, 2023 by Mrs. **MARISOL BURGOS CONCHA**, in the Notary of Santiago of Mr. Patricio Raby Benavente; and

- Digital copy of public deed granted on January 20, 2023 before Gonzalo Layseca, Consul of Chile in Belgium, which attests to my capacity to act on behalf of Mr. **JUAN CARLOS PETERSEN WIDMER**.

**SECOND ADDENDUM:** In accordance with section 113 of the Criminal Procedure Code, I am requesting that the Office of the Public Prosecutor provide for the following investigative proceedings:

1. An order be issued for the BRIDEC of the Chilean Investigation Police to investigate, so that it proceeds to collect all the background, documentaries and witnesses, on the punishable act and its authorship; and

2. It is ordered that the BRIDEC require the voluntary delivery by SMU SA, Retail Holding III SpA, Inversiones SAMS SpA, COPESA SA, Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) and Corp Group Interhold SpA (INTERHOLD), of the following background:

(i) Financial Statements for the years 2015 to 2021;
(ii) General Balance sheet at 31 December of the years 2015 to 2021;
(iii) General ledgers and accounting journals of the years 2015 to 2021;
(iv) Audits for the years 2015 to 2021; and
(v) Statements of bank accounts for the years 2015 to 2021.

**THIRD ADDENDUM**: Your Honor, please keep in mind, according to instructions to this effect expressed by my clients, that on behalf of my clients I waive the exercise of civil actions for damages for the facts that justify this complaint. In short, public criminal proceedings have been brought without claim to compensation.

Without prejudice to this, this waiver is partial, since it relates solely and exclusively to the companies CG Financial Chile Dos SpA, Compañía Inmobiliaria y de Inversiones Saga SpA, CG Financial Chile SpA, and Corp Group Banking S.A., and

their executives, that is, all those who directly or indirectly went before the Bankruptcy Court of the District of Delaware, United States of America, to request the approval of a proceeding according to Chapter XI by that jurisdiction.

**FOURTH ADDENDUM:** I request Your Honor to bear in mind that, in my capacity as a qualified lawyer for the exercise of the profession, I personally assume sponsorship and power of attorney in this investigation.

CARLOS
CORTES
GUZMAN

Digitally signed
by CARLOS
CORTES
GUZMAN
Date: 26
JANUARY
2024
17:55:37 - 03'00'

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Querella



Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit A- 1

**EN LO PRINCIPAL:** querella criminal por delitos que indica;
**EN EL PRIMER OTROSÍ:** acompaña personerías;
**EN EL SEGUNDO OTROSÍ:** solicita diligencias que indica;
**EN EL TERCER OTROSÍ:** se tenga presente; y
**EN EL CUARTO OTROSÍ:** se tenga presente.

### JUEZ DE GARANTÍA DE SANTIAGO (4º)

**CARLOS CORTÉS GUZMÁN,** Run Nº 10068803-4, abogado, con domicilio en Avda. Apoquindo Nº 3721, of. 33, comuna de Las Condes, actuando como mandatario judicial y en representación de (i) **JUAN CARLOS PETERSEN WIDMER**, cédula de identidad Nº 12.919.209-7; y (ii) **MARISOL BURGOS CONCHA**, cédula de identidad Nº 5746.892-0; ambos con domicilio para estos efectos en Avda. Apoquindo 3721, Oficina Nº 33, Las Condes, en adelante indistintamente "la querellante" o "mis representados", en la carpeta judicial **RIT Nº 379-2023**, a SS. respetuosamente digo:

Que, de conformidad a lo dispuesto por los artículos 111 y siguientes del Código Procesal Penal, vengo en interponer querella criminal de acción pública en contra de **ÁLVARO JOSÉ SAIEH BENDECK**, cédula de identidad Nº5.911.895-1; **JORGE ANDRÉS SAIEH GUZMÁN**, cédula de identidad Nº8.311.093-7; **MARÍA CATALINA SAIEH GUZMÁN**, cédula de identidad Nº15.385.612-5; **CRISTÓBAL ALEJANDRO CERDA MENESES**, cédula de identidad Nº13.689.592-3; y **MARÍA PILAR DAÑOBEITIA ESTADES**, cédula de identidad Nº 8.668.195-1; todos domiciliados en calle Rosario Norte Nº660, piso 23, comuna de Las Condes, Santiago, y en contra de todos aquellos que resulten responsables, sea en calidad de autores, cómplices o encubridores, del delito reiterado de otorgamiento de contrato simulado, previsto y sancionado en el artículo 471 Nº2 del Código Penal, sin perjuicio de la calificación jurídica que en definitiva se haga de los hechos, ya sea por parte del Tribunal y/o el Ministerio Público; todo ello de acuerdo a los antecedentes de hecho y de derecho que me permito pasar a exponer:

### I.- ACERCA DE LOS HECHOS.

**ANTECEDENTES.**

**Grupo CGB y Filiales.**

1. CorpBanca es una institución financiera que remonta su historia a 1871, año en que inició su operación con el nombre de Banco de Concepción. Durante su trayectoria el banco ha sido controlado por diversas instituciones y personas, entre ellos CORFO y SONAMI. En 1995 un grupo de inversionistas, liderados por el querellado, a través de la compañía INFISA (actualmente Grupo CGB y Filiales) toma el control de la propiedad del banco.

2. El grupo controlador al año 2020 poseía presencia –además de la industria bancaria- en los negocios de retail, con empresas tales como SMU, OK Market y Construmart, entre otros; en el negocio inmobiliario con malls y strip centers; y en el negocio de las comunicaciones con presencia en diarios de circulación nacional y radios.

3. El grupo "CGB y Filiales" está compuesto por su matriz -Corp Group Banking S. A., en adelante CGB-, una filial directa, de la que posee el 100%, la sociedad Inversiones CG Financial Chile Dos SpA (ICGF-Chile2) y, dos filiales indirectas, también controladas en un 100% a través de ésta, CG Financial Chile SpA (CGF-Chile) y CG Financial Colombia SAS (CGF-Colombia). En consecuencia, CGB matriz controla el 100% de sus tres filiales (sus "Filiales").

4. CGB es la sociedad de mayor tamaño dentro de CGB y Filiales: a septiembre de 2020 poseía individualmente el 93% de los activos contables consolidados de CGB y Filiales.

5. CGB y sus Filiales son sociedades de inversión, cuyo principal activo al año 2020 -correspondiente al 94% del total consolidado- son inversiones financieras y específicamente en acciones de sociedades que no controlan ("Coligadas"). <u>Por tanto, los flujos de ingresos de su negocio son principalmente dividendos provenientes de dichas inversiones en sociedades coligadas.</u> Dependiendo de la sociedad en cuestión, CGB y Filiales posee entre 10% y 43% de sus Coligadas. La mayor de estas inversiones al año 2020 era en el Banco Itaú CorpBanca (en adelante ITCB), la cual ascendía al 26,6% del capital de dicho banco y representa por si sola el 71% del total de activos consolidados de CGB y Filiales.

6. Un aspecto que cabe hacer notar relativo a los activos de CGB y Filiales es que mantienen prendadas una parte muy significativa de las acciones en las sociedades coligadas que forman parre de su patrimonio. Específicamente, $488.759 millones de los $663.131 millones invertidos en acciones de Itau CorpBanca están prendadas (esto es, un 74% de dichas acciones). Asimismo, CGB y su filial CGF-Colombia tienen prendados el 100% de los $61.532 millones que tiene invertidos en acciones del banco Itau CorpBanca Colombia. CGB y Filiales han dado estas prendas como garantía de créditos otorgados por terceros acreedores a Relacionadas. <u>El principal pasivo exigible corresponde al bono que CGB colocó en el mercado internacional en 2013: $14.320.- millones correspondientes a intereses devengados y no pagados y $393.563.- millones correspondientes al capital del bono, lo que sumado representa un 83% del pasivo exigible total de $492.386.- millones.</u> Todo esto de acuerdo a valores al 31.DIC.2021.

**Acerca de las sociedades relacionadas: "Compañía Inmobiliaria y de Inversiones SAGA SpA", "Inversiones GASA Limitada", "SMU S.A." y "Copesa S.A.".**

7. La Compañía Inmobiliaria y de Inversiones SAGA SpA, en adelante indistintamente SAGA, Rut Nº 88.202.600-0, es una sociedad relacionada de CGB.

8. Respecto a las actividades empresariales de SAGA, es limitada la información que se puede extraer de los registros públicos: de su nombre se entiende que SAGA es una sociedad de inversiones; de los EEFF de CGB se conoce el total de su activo y patrimonio contables, así como su utilidad del ejercicio y la deuda que CGB tiene con ella; de los EEFF de ITCB se conocen sus inversiones en dichoBanco; y de los reportes de la SEC se observa que, al igual que CGB, ha garantizado parte de sus activos para caucionar obligaciones de Relacionadas con terceros acreedores. Las acciones de SAGA -al menos en documentos públicos- no aparecen prendadas. No hay antecedentes respecto de la normativa aplicada en su contabilidad –por ejemplo si se ciñe o no a IFRS- y no se conoce si su balance es auditado o no.

9.  Resulta importante destacar que en el EEFF al 31.DIC.2018 de ITAU Corpbanca y Filiales, se da cuenta de una disminución del 50,92% del porcentaje accionario de la compañía en el referido Banco, pasando de tener el 4,0824 % al 2,0036 % de las acciones. En el año 2019 se mantiene igual, refiriéndose a la compañía como parte de la "Familia Saieh". Posteriormente, en el año 2020 mediante hecho esencial – Nuevas adquisiciones de Itaú Unibanco Holding S.A.- Itaú Unibanco Holding S.A. anunció que por intermedio de su filial ITB Holding Brasil Participações Ltda., adquirió de Compañía Inmobiliaria y de Inversiones Saga SpA (SAGA), la cantidad de 5.558.780.153.- de acciones de Itaú Corpbanca, por un monto total de compra de $33.138.103.833.- Como consecuencia de esta adquisición, Itaú Unibanco aumentó su participación accionaria en Itaú Corpbanca en un 1,08% aproximadamente. De este modo, al año 2020 SAGA sólo quedó con un 0,92% de las acciones del Banco ITCB.

10. En el EEFF al 31.DIC.2021 nuevamente se refleja una disminución del número de acciones de SAGA en el referido Banco, ya que al término del ejercicio sólo le quedaba el 0,48% de las acciones del banco.

11. Así y en definitiva, para la correcta comprensión del delito que es materia de la presente querella, la referida compañía SAGA fue disminuyendo progresivamente su participación en el Banco Itau Corpbanca: 2017 y 2018 un 4,0824%; año 2019 un 2,0036%; año 2020 un 0,92%; y, por último, año 2021 con un 0,48%.

12. Por su parte la sociedad "Inversiones GASA Limitada", en adelante indistintamente GASA, Rut Nº 76.034.463-K, es una sociedad de inversiones e intermediación financiera, la cual es controlada por Corpgroup Holding Inversiones Ltda., R.U.T. N°96.953.290-5.

13. Fue constituida por escritura pública de fecha 31 de julio de 2008, otorgada ante el Notario Público señor José Musalem Saffie. El extracto respectivo está inscrito en el Registro de Comercio del Conservador de Bienes Raíces de Santiago del año 2008 a fojas 43.609, número 29.994 y se publicó en el Diario Oficial con fecha 20 de septiembre de 2008. La sociedad ha sufrido diferentes modificaciones siendo la última la que consta en escritura pública de fecha 29 de agosto de 2018, otorgada ante el Notario Público señor Iván Torrealba Acevedo, cuyo extracto se inscribió en el Registro de Comercio del Conservador de Bienes Raíces de Santiago del año 2018 a fojas 74.948, número 38.490 y se publicó en el Diario Oficial con fecha 8 de octubre de 2018.

14. SMU S.A., RUT 76.012.676-4, es una sociedad anónima abierta, constituida el 22 de febrero de 2008, cuyo objeto principal es la inversión por sí o por cuenta de terceros en bienes corporales muebles e inmuebles, administración de dichos bienes, prestación de servicios de gestión, y organización y administración de empresa y asesorías en materias financieras, comerciales, económicas, organizacionales, tributarias, legales y de marketing. La Sociedad tiene su domicilio y oficinas principales en calle Cerro el Plomo 5680, piso 10, comuna de Las Condes, en la ciudad de Santiago de Chile. SMU se encuentra inscrita con el N° 1.076 en el registro de Valores de la Comisión para el Mercado Financiero (Ex Superintendencia de Valores y Seguros de Chile).

15. El Grupo SMU es controlado por las siguientes sociedades: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., CorpGroup Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon , Retail Holding S.A. e Inversiones Épsilon II S.A. con una participación total del 53,38%, al cierre de este periodo. Al 30 de junio de 2018, el principal accionista del Grupo SMU, es la familia Saieh con un 46,91% de participación, a través de las inversiones que ésta posee en las siguientes sociedades: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Retail Holding S.A. e Inversiones Épsilon II S.A.

16. Consorcio Periodístico de Chile S. A. (Copesa SA) es parte del Grupo Copesa, el que de acuerdo a su página web es controlado por el querellado Saieh Bendeck.  En efecto, de acuerdo a información pública "Grupo Copesa es un grupo de medios de comunicación controlado por el empresario chileno Sr. Alvaro Saieh Bendeck en conjunto con su cónyuge e hijos, quienes cuentan con el 100% de su propiedad".

**Emisión de Bono (Note) denominado CGB 13/23 6,75.**

17. Corp Group Banking S. A. emitió en mayo de 2013 un bono (ISIN USP31925AD54 y nombre Corp Grp Banking 13/23) por la suma de US$ 500.000.000.-, con un interés del 6,750% con vencimiento para el día 15 de marzo de 2023. Los intereses se pagarían en marzo y septiembre de cada año. Se estableció la posibilidad de rescatar los bonos  con fecha 15 de marzo de 2018.

18. Fueron nombrados administradores del bono los bancos Deutsche Bank Securities y Goldman, Sachs & Co. En su momento todos los documentos de la emisión fueron publicados en la página web de la Bolsa de Valores de Luxemburgo.  Asimismo, se indicó que toda la información podía ser solicitada a CGB, con domicilio en Rosario Norte 660 piso 23, Las Condes, Santiago, mediante la atención de María Pilar Dañobeitía Estades.

19. Se señaló específicamente que el emisor del bono -CGB- es una sociedad anónima cerrada, organizada bajo las leyes de la República de Chile. Se agregó que todo los directores y ejecutivos principales residen en Chile.

20. Los covenants son obligaciones de no hacer y en este caso se pactan para el emisor de los bonos y sus Subsidiarias Restringidas.

21. Estas obligaciones se dividen en cuatro grupos:
    a. Limitaciones de pago
    b. Limitaciones de distribución de dividendos
    c. Limitaciones de gravámenes
    d. Limitaciones de operaciones con filiales

22. Cada una tienen algunas excepciones que están listadas en las bases de los bonos.

23. Respecto a las limitaciones de pago:
    a. No se puede pagar dividendos o hacer distribuciones respecto a las Acciones de Corp Group o sus Subsidiarias Restringidas, salvo algunas excepciones (x3).

b. No se puede comprar o adquirir (de cualquier modo) Acciones de Capital de Corp Group o de sus Subsidiarias Restringidas

c. No se puede pagar deuda subordinada o incurrir en una deuda adicional, ni realizar pagos restringido, ni crear gravámenes, ni transacciones con partes relacionadas, antes de cualquier vencimiento final programado de cualquier deuda, antes del reembolso programado o pago programado de fondo de amortización, según sea el caso.

24. Respecto de las restricciones de distribución de dividendos: No se puede distribuir dividendos a sus accionistas por un monto menor al 30% de las utilidades anuales, es decir no se puede reinvertir todas las utilidades.

25. Respecto de las limitaciones a los gravámenes: No puede Corp Group ni sus Subsidiarias Restringidas, gravar sus bienes (ni sus intereses, rentas o beneficios) total o parcialmente, ya sean adquiridos actual o posteriormente, sin que se establezca rigurosamente que los bonos están garantizados con anterioridad de dicha deuda gravada o de forma igual o proporcional a la misma.

26. Respecto de las limitaciones de operaciones con los Afiliados:

a. No se permite celebrar ningunas operaciones relacionadas (ni compra ni venta ni arrendamiento, etc.), en beneficio de cualquier afiliado de Corp Group, a menos que:

b. Los términos de dicha operación sea mas favorable para Corp Group que para terceros

c. La operación implique pagos de más de US$10.- millones, deberá ser aprobado por los miembros del Consejo de Administración de Corp Group; y

d. La operación implique pagos de más de US$20.- millones, deberá darse una opinión favorable en cuanto a la equidad por parte de un asesor financiero independiente.

27. Los requisitos anteriores no se aplicarán ciertas situaciones mencionadas en el bono mismo.

**Inversiones en el Bono CGB 13/23.**

28. Mis representados invirtieron en el bono referido más arriba.

29. De acuerdo a los antecedentes que, en su oportunidad, se aportarán al Ministerio Público, los montos invertidos por cada uno son:

(i) Juan Carlos Petersen Wiedmer, la suma de US$ 1.320.000.-; y

(ii) Marisol Burgos Concha, la suma de US$ 250.000.-.

30. En definitiva, las inversiones totales de mis representados en el Bono "CGB 13/23" ascienden a la suma de US$ 1.570.000.-.

**HECHOS CONSTITUTIVOS DE DELITO.**

31. Corp Group Banking S. A. emitió en mayo de 2013 un bono (ISIN USP31925AD54 y nombre Corp Grp Banking 13/23) por la suma de US$ 500.000.000.-, con un interés del 6,750% con vencimiento para el día 15 de marzo de 2023. Los intereses se pagarían en marzo y septiembre de cada año. Se estableció la posibilidad de rescatar los bonos con fecha 15 de marzo de 2018. El referido bono se denominó Bono 13/23 6,75.

32. Se establecieron covenants u obligaciones de no hacer, entre las que se encuentran las denominadas limitaciones de pago: "No se puede pagar dividendos o hacer distribuciones respecto a las Acciones de Corp Group o sus Subsidiarias Restringidas, salvo algunas excepciones; No se puede comprar o adquirir (de cualquier modo) Acciones de Capital de Corp Group o de sus Subsidiarias Restringidas; No se puede pagar deuda subordinada o incurrir en una deuda adicional, ni realizar pagos restringido, ni crear gravámenes, ni transacciones con partes relacionadas, antes de cualquier vencimiento final programado de cualquier deuda, antes del reembolso programado o pago programado de fondo de amortización, según sea el caso".

33. Asimismo, se establecieron limitaciones de operaciones con los Afiliados: "No se permite celebrar ningunas operaciones relacionadas (ni compra ni venta ni arrendamiento, etc.), en beneficio de cualquier afiliado de Corp Group, a menos que: Los términos de dicha operación sea mas favorable para Corp Group que para terceros; La operación implique pagos de más de US$10.- millones, deberá ser aprobado por los miembros del Consejo de Administración de Corp Group; y La operación implique pagos de más de US$20.- millones, deberá darse una opinión favorable en cuanto a la equidad por parte de un asesor financiero independiente".

34. Entre los años 2015 y 2020 los querellados dispusieron que CGB ejecutara con sus relacionadas INTERHOLD, SAGA y GASA una serie de contratos de suscripción y compraventa de acciones de FINANCIAL CHILE DOS y SAGA, todos los cuales son simulados, ya que la real voluntad del controlador fue sacar la liquidez (dinero) de CGB y en ningún caso adquirir las referidas acciones. Luego dichos recursos -ya una vez en el patrimonio de SAGA- fueron dispuestos por el querellado en su beneficio o de alguna de las sociedades de su familia. Se trató de la celebración de una serie de contratos de traspasos de acciones por un monto total aproximado a los $164.735.000.000.-. Significó un vaciamiento del patrimonio de CGB realizado en perjuicio de los bonistas. Es decir, de los acreedores del Bono CGB 13/23. En conclusión, el emisor del bono fue despojándose de toda su caja.

35. Como resultado de dichas transacciones, CGB vació su caja, sufriendo un daño patrimonial derivado de la adquisición de acciones a un precio de compra superior al valor económico que dicha inversión representa para ésta.

36. Sobre el particular, en la carpeta de investigación nos encontramos con la declaración de Alejandro Zavala Destefani, Subgerente de Contabilidad desde el año 2011 de CGB, quien señala lo siguiente:

"… También en el año 2014, recuerdo haber visto primera vez el empleo del mecanismo que permitía el bono, en el sentido de invertir en ciertos activos financieros como lo es la compra de acciones de bancos. …
… Ya en el año 2016, finalmente se concreta la fusión del Banco Corp Banca e Itaú Chile, pero la situación de mercado aún no permitía liberar la restricción del bono, por ello, fue que CorpGroup Banking S.A., empezó a adquirir acciones de la Compañía Inmobiliaria y de Inversiones SAGA SpA., sociedad relacionada que dentro de su patrimonio mantenía acciones de Banco Itaú Corp Banca, lo que entiendo mantiene el cumplimiento de la restricción, ya que si bien compra acciones de una sociedad, esta última es tenedora acciones del banco, situación que estaba permitida.

… ya que como se había llegado al mínimo de acciones de requeridos por el bono, Corp Group Banking S.A., se encontraba impedido de vender, por eso se recurrió a la Compañía Inmobiliaria y de Inversiones SAGA SpA….

… Todo esto, desencadenó realizar diversas operaciones de compra y venta de acciones de la Compañía Inmobiliaria y de Inversiones SAGA SpA, por parte de Corp Group Banking S.A. para justificar el traspaso de fondos hacia Corp Group Internold SpA., relacionados con los dividendos retenidos por el custodio, no fueran considerados un incumplimiento de las restricciones del bono. ….

Estas operaciones comentadas, recuerdo que se repitieron hasta el año 2020, momento en que fue la última vez que se recibió dividendos del banco, antes de entrar al proceso de Chapter 11, de Estados Unidos"

37. Asimismo, se encuentra la declaración de Fabián Salinas Díaz, Jefe de Contabilidad del Holding Corp Group, quien señala lo siguiente:

"Respecto a la compraventa de acciones que hizo Corp Group Banking a GASA por acciones de SAGA, puedo indicar que recuerdo que pudieron haber empezado en el año 2016, y haber recibido los contratos de compraventa y haberlos registrado en la contabilidad Banking, aumentando la inversión en SAGA contra banco, y en GASA a su vez, recibiendo plata en cuenta banco y rebajando la inversión SAGA.

Luego, esos dineros alojados en la cuenta de GASA, fueron a parar a SAGA por concepto de aumento de capital, que también realizó Corp Group Banking como accionista de SAGA. Luego de realizar algunos pagos propios a sus obligaciones, se realizaron traspaso de dinero a Corp Group Inversiones Limitada, sociedad que a su vez traspasó dineros aguas abajo a Corp Group Financial SpA, y esta a Corp Group Inversiones Limitada CPA y esta a Interhold, siendo esta última quien realizó los respectivos pagos a sus obligaciones, principalmente en el pago de la línea del Itaú Nassau, la cual se encontraba garantizada con acciones del Banco y que eran dueños Banking y SAGA.

Estos operaciones se llevaron a acabo cada vez que se realizaban las compraventas de acciones de SAGA y aumentos de capital de la misma."

38. De acuerdo a lo señalado por dichos testigos, las operaciones de suscripción y/o compra de acciones se habrían desarrollado entre los años 2014 a 2020, siendo denominadas como un *mecanismo* por parte de los referidos ejecutivos.

39. Las operaciones (o el mecanismo) involucra a un conjunto de sociedades, todas ellas relacionadas con Corp Group Holding, tales como Corp Group Banking S.A. (CGB), Compañía Inmobiliaria y de Inversiones SAGA SpA (SAGA), Inversiones GASA Limitada (GASA), Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) y Corp Group Interhold SpA (INTERHOLD).

40. Las relaciones específicas son las siguientes:

a. CorpGroup Interhold SpA (Interhold) es el accionista mayoritario de Corp Group Banking S.A. (CGB).

b. CorpGroup Holding Inversiones Limitada Sociedad en Comandita por Acciones (CGHIL) es el accionista mayoritario de INTERHOLD.

c. CorpGroup Financial S.A. (CGF) es la controladora de CGHIL.

d. Inversiones GASA Limitada (GASA) es el único accionista de Compañía de Inversiones SAGA SpA (SAGA).

e. CorpGroup Inversiones Limitada (INVERSIONES) es el accionista mayoritario de FINANCIAL y GASA.

f. CGHI es el accionista mayoritario de INVERSIONES.

g. El Sr. Álvaro Saieh Bendeck es el presidente y persona controladora de CGHI y director de CGF.

41. TRANSACCIONES DE COMPRA DE ACCIONES DE CG FINANCIAL CHILE DOS SPA.

a. OPERACIÓN Nª I.- COMPRAVENTA DE FECHA 12/03/2015.

i) En la NOTA 11 de los Estados Financieros consolidados intermedios de CorpGroup Banking S.A., por los periodos de seis meses al 30 de junio de 2015 y 2014, con informe de auditores independientes Deloitte Auditores y Consultores Limitada, se informa lo siguiente:

ii) Según contrato de compraventa y traspaso de acciones, CGB compra 24.484.877.154 acciones de INVERSIONES CG FINANCIAL CHILE DOS SpA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $36.362.000.000.- que el comprador pagaría a más tardar el 31/3/2015 en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

iii) Compra corresponde a un 24,56% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

b. OPERACIÓN Nº II.- COMPRAVENTA DE FECHA 09/04/2015.

i) Según contrato de compraventa y traspaso de acciones, CGB compra 416.899.653 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $600.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

ii) Compra corresponde a un 3,95% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

c. OPERACIÓN Nº III.- COMPRAVENTA DE FECHA 31/07/2015.

i) Según contrato de compraventa y traspaso de acciones, CGB compra 24.282.498.681 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $38.200.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

ii) Compra corresponde a un 24,4% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold Limitada, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

d.  OPERACIÓN Nº IV.- COMPRAVENTA DE FECHA 01/11/2015.

i) Según contrato de compraventa y traspaso de acciones, CGB compra acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $14.430.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

ii) Compra corresponde a un 9,78% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold Limitada, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

iii) Respecto de esta operación no se ha tenido a la vista en la carpeta de investigación el contrato y/o documento en que conste la cesión de acciones, siendo la información obtenida de los EEFF de la compañía, en los cuales se da cuenta que se realizó la misma durante el 3Q, por lo que la fecha indicada corresponde al inicio del cuarto trimestre.

e.  OPERACIÓN Nº V.- COMPRAVENTA DE FECHA 16/03/2016.

i) Según contrato de compraventa y traspaso de acciones, CGB compra 16.206.938.723 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $26.141.676.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

ii) Compra corresponde a un 17,22% de CG Financial Chile Dos SpA (alcanza 100%) a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

f.  RESUMEN DE LAS OPERACIONES ACCIONES FINANCIAL DOS

g.  Durante el periodo marzo de 2015 a marzo de 2016, la sociedad CORP GROUP BANKING S.A., adquiere acciones de la sociedad relacionada CG FINANCIAL CHILE DOS SPA, por un total de $115.733.676.000.-, según el siguiente detalle:

| N° | DETALLE | FECHA | N°. ACCIONES | VALORES |
|---|---|---|---|---|
| **COMPRA ACC INV CG FINANCIAL CHILE DOS SPA** | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 12-03-2015 | 24.484.877.154 | 36.362.000.000 |
| II | Inversiones Corpgroup Interhold Limitada | 09-04-2015 | 416.899.653 | 600.000.000 |
| III | Inversiones Corpgroup Interhold Limitada | 31-07-2015 | 22.282.498.681 | 38.200.000.000 |
| IV | Inversiones Corpgroup Interhold Limitada | 01-11-2015 | | 14.430.000.000 |
| V | Inversiones Corpgroup Interhold Limitada | 16-03-2016 | 16.206.938.723 | 26.141.676.000 |
| | **TOTAL** | | | **115.733.676.000** |

42. Transacción o operaciones consistentes en la suscripción e acciones de SAGA SpA.

a.  OPERACIÓN Nº VI    SUSCRIPCIÓN DE FECHA 11/04/2016. TITULO N° 9.

i)  Según contrato de suscripción de acciones, CGB suscribe 720.762.604 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.841.832.001.- que el suscriptor paga al contado y en dinero en efectivo.

ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente EERR", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca US$" por la suma de $1.841.832.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "Recibe 3.000.000 USD COMP" por la suma de $7.257.668.400.-, registrado con fecha 15/03/2016.

b.  OPERACIÓN Nº VII SUSCRIPCIÓN DE FECHA 11/04/2016. TITULO N°8.

i)  Según contrato de suscripción de acciones, CGB suscribe 2.363.628.387 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $6.040.000.380.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente EERR", es decir no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $6.040.000.380.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "Liquida Pacto a 3 días TA" por la suma de $6.601.518.000.-, registrado con fecha 11/04/2016.

c.   OPERACIÓN Nº VIII SUSCRIPCIÓN DE FECHA 06/06/2016. TITULO N°10.

i) Según contrato de suscripción de acciones, CGB suscribe 15.667.199.683 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $40.035.858.666.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Obligación Banco Estado Pesos", mediante lo cual se paga un crédito otorgado por BECH a SAGA por la suma de $40.000.000.000.- Ahora bien con el producto del crédito BECH, se registra crédito otorgado por SAGA a SMU con glosa "PTMO USD A SMU S.A." por la suma de $37.000.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Estado $" por la suma de $40.035.858.666.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "VENTA ACCIONES DE CONF" por la suma de $40.572.107.438.

d.   OPERACIÓN Nº IX SUSCRIPCIÓN DE FECHA 13/06/2016. TITULO N°11.

i) Según contrato de suscripción de acciones, CGB suscribe 352.196.261 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2,5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $900.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $900.000.001.-Ahora bien, con el monto disponible producto de este ingreso, se registra egreso por "TRASPASO A GASA" por la suma de $900.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $900.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un

ingreso que se registra como "LIQUIDA PACTO A 3 DÍAS TA" por la suma de $950.209.000.

e. OPERACIÓN Nº X SUSCRIPCIÓN DE FECHA 01/07/2016. TITULO N°12.

i) Según contrato de suscripción de acciones, CGB suscribe 23.479.751 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2,5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $60.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $60.000.001.-Ahora bien, con el monto disponible producto de este ingreso, se registra egreso por "TO A INV A GASA" por la suma de $118.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $60.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "Liquida Pacto a 3 días TA" por la suma de $950.209.000. (mismo de la transacción anterior)

f. OPERACIÓN Nº XI SUSCRIPCIÓN DE FECHA 25/07/2016. TITULO N°13.

i) Según contrato de suscripción de acciones, CGB suscribe 5.098.147.058 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $13.027.771.344.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $13.027.771.344.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO A INV GASA LTDA." por la suma de $13.027.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $13.027.771.344.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "CRÉDITO SANTANDER" por la suma de $19.125.893.200.-

g. OPERACIÓN N XII SUSCRIPCIÓN DE FECHA 01/08/2016. TITULO N°20.

i) Según contrato de suscripción de acciones, CGB suscribe 2.389.486.164 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el

valor de las acciones suscritas asciende a la suma de $5.900.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $5.900.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CG INVERSIONES LTDA." por la suma de $5.900.000.000.-

iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $5.900.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "Crédito Santander" por la suma de $19.125.893.200.- (mismo que el caso anterior).

h.    OPERACIÓN Nº XIII SUSCRIPCIÓN DE FECHA 27/10/2016. TITULO N°18.

i)    Según contrato de suscripción de acciones, CGB suscribe 6.863.968.363 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $16.948.168.170.- que el suscriptor paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $16.948.168.170.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CG INVERSIONES LTDA." por la suma de $16.948.000.000.-

iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $16.948.168.170.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA TASA" por la suma de $60.004.600.000.-

i.    OPERACIÓN Nº XIV SUSCRIPCIÓN DE FECHA 09/11/2016. TITULO N°14.

i)    Según contrato de suscripción de acciones, CGB suscribe 2.024.988.274 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $4.999.999.999.- que el suscriptor paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $5.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CG INVERSIONES LTDA." por la suma de $6.010.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 \$" por la suma de \$5.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA TASA" por la suma de \$13.701.141.666.-

j.   OPERACIÓN Nº XV SUSCRIPCIÓN DE FECHA 28/11/2016. TITULO N°21.

i)   Según contrato de suscripción de acciones, CGB suscribe 3.239.981.239 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de \$2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de \$8.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 \$" con ingreso en la cuenta corriente bancaria por la suma de \$8.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CG INVERSIONES LTDA." por la suma de \$8.000.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 \$" por la suma de \$8.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 3 DIAS TASA" por la suma de \$18.754.687.500.-

k.   OPERACIÓN Nº XVI SUSCRIPCIÓN DE FECHA 13/12/2016. TITULO N°22.

i)   Según contrato de suscripción de acciones, CGB suscribe 809.995.310 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de \$2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de \$2.000.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 \$" con ingreso en la cuenta corriente bancaria por la suma de \$2.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO CG INVERSIONES LTDA." por la suma de \$2.000.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 \$" por la suma de \$2.000.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA TASA" por la suma de \$10.800.900.000.-

l.  OPERACIÓN Nº XVII SUSCRIPCIÓN DE FECHA 16/12/2016. TITULO N°23.

  i)  Según contrato de suscripción de acciones, CGB suscribe 2.429.985.929 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $6.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

  ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $6.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO CG INVERSIONES LTDA." por la suma de $6.000.000.000.-

  iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $6.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA TASA" por la suma de $8.800.733.333.-

m.  OPERACIÓN Nº XVIII SUSCRIPCIÓN DE FECHA 29/12/2016. TITULO N°25.

  i)  Según contrato de suscripción de acciones, CGB suscribe 1.073.243.785 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $2.649.999.999.- que el suscriptor paga al contado y en dinero en efectivo.

  ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $2.650.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO CG INVERSIONES LTDA." por la suma de $2.650.000.000.-

  iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $2.650.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA TASA" por la suma de $2.800.700.000.-

n.  OPERACIÓN Nº XIX SUSCRIPCIÓN DE FECHA 13/02/2018. TITULO N°30.

  i)  Según contrato de suscripción de acciones, CGB suscribe 628.098.004 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.380.804.999.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.380.804.999.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "INGRESO DIVISA OPCION CAL" por la suma de $3.522.040.210.-

o. **OPERACIÓN Nº XX SUSCRIPCIÓN DE FECHA 15/02/2018.**

i) Según contrato de suscripción de acciones, CGB suscribe 461.392.901 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.014.322.001.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.014.322.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "INGRESO DIVISA OPCION CAL" por la suma de $2.732.675.200.-

p. **OPERACIÓN Nº XXI SUSCRIPCIÓN DE FECHA 19/02/2018. TITULO N°32.**

i) Según contrato de suscripción de acciones, CGB suscribe 472.169.191 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.038.012.500.- que el suscriptor paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.038.012.500.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "INGRESO DIVISA OPCION CAL" por la suma de $2.732.675.200.- (misma del caso anterior)

q. **OPERACIÓN Nº XXII SUSCRIPCIÓN DE FECHA 13/04/2018. TITULO N°41.**

i)  Según contrato de suscripción de acciones, CGB suscribe 4.076.860.267 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $8.962.532.919.- que el suscriptor paga al contado y en dinero en efectivo.

ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Itau-Corpbanca Pesos 01 con ingreso en la cuenta corriente bancaria por la suma de $8.400.000.000.- con fecha 13/04/2018 y $562.532.917.- con fecha 20/04/2018. Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO CG INVERSIONES LTDA." por la suma de $8.400.000.000.- con fecha 13/04/2018 y $565.000.000.- con fecha 20/04/2018.

iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 02" por la suma de $8.400.000.000.- con fecha 13/04/2018 y $562.532.917.- con fecha 20/04/2018. El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "BTG PACTUAL CHILE S.A PESOS" por la suma de $9.000.000.000.-

r.   OPERACIÓN Nº XXIII SUSCRIPCIÓN DE FECHA 01/04/2019. TITULO N°46.

i)  Según contrato de suscripción de acciones, CGB suscribe 1.005.064.520 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 01/04/2019, por el valor de $1,989922 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $2.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

ii)  Contablemente la operación se registra en SAGA en la cuenta contable "Banco Itau-Corpbanca Pesos 01 con ingreso en la cuenta corriente bancaria por la suma de $2.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO CG INVERSIONES LTDA." por la suma de $2.000.000.000.-

iii)  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $2.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 3 DIAS TASA 0,20" por la suma de $12.002.400.000.-

43.  Durante el periodo abril de 2016 a abril de 2019, la sociedad CORP GROUP BANKING S.A., suscribe un total de 49.700.647.691 acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, por un total de $122.799.302.981.- Lo anterior de acuerdo al siguiente detalle:

| N° OP | FECHA | N°. ACCIONES | MONTO $ SUSCRIPCIÓN | DESTINO EN SAGA | MONTO $ DESTINO SAGA |
|---|---|---|---|---|---|

| VI | 11-04-2016 | 720.762.604 | 1.841.832.001 | SIN INGRESO EFECTIVO | 0 |
|---|---|---|---|---|---|
| VII | 11-04-2016 | 2.363.628.387 | 6.040.000.380 | SIN INGRESO EFECTIVO | 0 |
| VIII | 06-06-2016 | 15.667.199.683 | 40.035.858.666 | PTMO USD A SMU S.A. | 37.000.000.000 |
| IX | 13-06-2016 | 352.196.261 | 900.000.001 | TRASPASO A GASA | 900.000.000 |
| X | 01-07-2016 | 23.479.751 | 60.000.001 | TO A INV GASA LTDA. | 118.000.000 |
| XI | 25-07-2016 | 5.098.147.058 | 13.027.771.344 | TO A INV GASA LTDA. | 13.027.000.000 |
| XII | 01-08-2016 | 2.389.486.164 | 5.900.000.000 | TO A CG INVERSIONES LTDA | 5.900.000.000 |
| XIII | 27-10-2016 | 6.863.968.363 | 16.948.168.170 | TO A CG INVERSIONES LTDA | 16.948.000.000 |
| XIV | 09-11-2016 | 2.024.988.274 | 4.999.999.999 | TO A CG INVERSIONES LTDA | 6.010.000.000 |
| XV | 28-11-2016 | 3.239.981.239 | 8.000.000.000 | TO A CG INVERSIONES LTDA | 8.000.000.000 |
| XVI | 13-12-2016 | 809.995.310 | 2.000.000.001 | TO A CG INVERSIONES LTDA | 2.000.000.000 |
| XVII | 16-12-2016 | 2.429.985.929 | 6.000.000.000 | TO A CG INVERSIONES LTDA | 6.000.000.000 |
| XVIII | 29-12-2016 | 1.073.243.785 | 2.649.999.999 | TO A CG INVERSIONES LTDA | 2.650.000.000 |
| XIX | 13-02-2018 | 628.098.004 | 1.380.804.999 | SIN INGRESO EFECTIVO | 0 |
| XX | 15-02-2018 | 461.392.901 | 1.014.322.001 | SIN INGRESO EFECTIVO | 0 |
| XXI | 19-02-2018 | 472.169.191 | 1.038.012.500 | SIN INGRESO EFECTIVO | 0 |
| XXII | 13-04-2018 | 4.076.860.267 | 8.962.532.919 | TO a CG Inversiones LTDA. | 8.400.000.000 |
| | | | | TO a CG Inversiones LTDA. | 565.000.000 |
| XXIII | 01-04-2019 | 1.005.064.520 | 2.000.000.000 | TO CorpGroup Inversiones Ltda. | 2.000.000.000 |
| **TOTALES** | | **49.700.647.691** | **122.799.302.981** | | **109.518.000.000** |

44. Detalle de las operaciones de compraventa con GASA LIMITADA:

   a. OPERACIÓN Nº XXIV COMPRAVENTA DE FECHA 22/09/2017. TITULO N°28.

   i) Según contrato de compraventa y traspaso de acciones, CGB compra 5.077.050.166 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $2,198391 cada una, por lo que el valor de las acciones compradas asciende a la suma de $11.161.341.391.- que el comprador paga al contado y en dinero en efectivo.

   ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $11.161.341.391.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CORP GROUP INVERSIÓN" por la suma de $11.950.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $11.161.341.391.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "LIQUIDA PACTO 1 DIA AL 0,2" por la suma de $11.750.705.000.-

b.    OPERACIÓN Nº XXV COMPRAVENTA DE FECHA 09/04/2019. TITULO N°50.

i) Según contrato de compraventa y traspaso de acciones, CGB compra 533.094.262 acciones de SAGA, al vendedor CorpGroup Interhold SpA, por el valor de $1,989922 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.060.816.000.- que el suscriptor paga al contado y en dinero en efectivo.

ii) No se dispuso de los registros contables de la sociedad CorpGroup Interhold SpA que permitiera verificar el ingreso y destino de los fondos.

iii) Contablemente la operación se registra en CGB con cargo a la cuenta contable "Inversiones en empresas relacionadas" por la suma de $1.060.816.000.- Estas acciones son traspasadas en el mismo día y por el mismo valor a Inversiones GASA Ltda. En este caso no se registra movimiento de fondos.

c.    OPERACIÓN Nº XXVI COMPRAVENTA DE FECHA 19/03/2020. TITULO N°53.

i) Según contrato de compraventa y traspaso de acciones, CGB compra 381.250.453 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,757374 cada una, por lo que el valor de las acciones compradas asciende a la suma de $670.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $670.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  "TO GRUPO COPESA S.A." por la suma de $850.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $670.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "DIVIDENDO RECIBIDO DE ITAU CORPBANCA" por la suma de $12.741.289.932.-

d.    OPERACIÓN Nº XXVII COMPRAVENTA DE FECHA 24/09/2020. TITULO N°54

i) Según contrato de compraventa y traspaso de acciones, CGB compra 706.363.318 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,72715874 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.220.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.220.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CORPGROUP INVERSIONES LIMITADA" por la suma de $1.220.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $1.220.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "DIVIDENDO RECIBIDO DE ITAU CORPBANCA" por la suma de $12.741.289.932.- (mismo del caso anterior)

e. OPERACIÓN Nº XXVIII COMPRAVENTA DE FECHA 25/03/2020. TITULO N°55

i) Según contrato de compraventa y traspaso de acciones, CGB compra 11.996.410.362 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,749577 cada una, por lo que el valor de las acciones compradas asciende a la suma de $20.988.647.011.- que el comprador paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", por la suma de $20.988.647.011.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii) Contablemente la operación se registra en CGB con cargo a  la cuenta contable "Depósito en Tránsito" por la suma de $20.988.647.011.- El origen de la operación corresponde la transacción con glosa "RECIBE DIVIDENDO DE ITAU" por la suma de $20.988.647.011.-

f. OPERACIÓN Nº XXIX COMPRAVENTA DE FECHA 26/03/2020. TITULO N°56

i) Según contrato de compraventa y traspaso de acciones, CGB compra 283.154.177 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,765822 cada una, por lo que el valor de las acciones compradas asciende a la suma de $500.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Itau-Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $500.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CORP GROUP INVERSIONES LIMITADA" por la suma de $500.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $500.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "PACTO" por la suma de $11.000.000.000.- de fecha 23/03/2020,

g. OPERACIÓN Nº XXX COMPRAVENTA DE FECHA 27/03/2020. TITULO N°58

   i) Según contrato de compraventa y traspaso de acciones, CGB compra 4.278.635.828 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,758609 cada una, por lo que el valor de las acciones compradas asciende a la suma de $7.524.450.000.- que el comprador paga al contado y en dinero en efectivo.

   ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca USD 01", con ingreso en la cuenta corriente bancaria por la suma de $7.524.450.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CORP GROUP INVERSIÓN" por la suma de $7.524.450.000.-

   iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca USD 01" por la suma de $7.524.450.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "COMPRA USD BECH" por la suma de $7.583.300.000.-

h. OPERACIÓN Nº XXXI COMPRAVENTA DE FECHA 27/03/2020. TITULO N°57.

   i) Según contrato de compraventa y traspaso de acciones, CGB compra 1.370.400.806 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,758609 cada una, por lo que el valor de las acciones compradas asciende a la suma de $2.410.000.000.- que el comprador paga al contado y en dinero en efectivo.

   ii) Contablemente la operación se registra en GASA en la cuenta contable "Banco Itau-Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $2.410.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es "TO CORP GROUP INVERSIONES LIMITADA" por la suma de $2.410.000.000.-

   iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $2.410.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "PACTO" por la suma de $11.000.000.000.- de fecha 23/03/2020.

i. OPERACIÓN Nº XXXII COMPRAVENTA DE FECHA 30/03/2020. TITULO N°59.

   i) Según contrato de compraventa y traspaso de acciones, CGB compra 199.455.688 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,754775 cada una, por lo que el valor de las acciones compradas asciende a la suma de $350.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $350.000.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii)  Contablemente la operación se registra en CGB con cargo a la cuenta contable "Banco Itau-Corpbanca  Pesos 01" por la suma de $350.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "PACTO" por la suma de $11.000.000.000.- de fecha 23/03/2020,

j.   OPERACIÓN Nº XXXIII COMPRAVENTA DE FECHA 02/04/2020. TITULO N°60.

i)    Según contrato de compraventa y traspaso de acciones, CGB compra 88.572.259 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,761273 cada una, por lo que el valor de las acciones compradas asciende a la suma de $156.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $156.000.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii)  Contablemente la operación se registra en CGB con cargo a la cuenta contable "Banco Itau-Corpbanca  Pesos 01" por la suma de $156.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "TRANSFERENCIA DE DOLARES" por la suma de $155.841.000.- de fecha 02/04/2020.

k.   OPERACIÓN Nº XXXIV COMPRAVENTA DE FECHA 09/04/2020. TITULO N°61

i)    Según contrato de compraventa y traspaso de acciones, CGB compra 830.098.980 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,765172 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.465.268.000.- que el comprador paga al contado y en dinero en efectivo.

ii)   Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $1.465.268.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

iii)  Contablemente la operación se registra en CGB con cargo a la cuenta contable "Banco Itau-Corpbanca USD 01" por la suma de $1.465.268.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "TRANSFERENCIA DE DOLARES" por la suma de $6.754.022.414.- de fecha 02/04/2020.

l.   OPERACIÓN Nº XXXV COMPRAVENTA DE FECHA 19/05/2020. TITULO N°62

i)    Según contrato de compraventa y traspaso de acciones, CGB compra 977.471.934 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,739180

cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.700.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii  Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.700.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registran egresos cuya glosa es "TO CORP GROUP INVERSINES LIMITADA" por la suma de $1.449.000.000.- y "TO GRUPO COPESA S.A." por la suma de 250.000.000.-

iii  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $1.700.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "DEVOLUCIÓN CON REAJUSTES PPUA" por la suma de $1.698.425.061.-

m.  OPERACIÓN Nº XXXVI COMPRAVENTA DE FECHA 26/06/2020. TITULO N°63.

i  Según contrato de compraventa y traspaso de acciones, CGB compra 813.405.522 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,777711 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.446.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii  Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.700.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registran egresos cuya glosa es "TO CORP GROUP INVERSINES LIMITADA" por la suma de $1.296.000.000.- y "TO GRUPO COPESA S.A." por la suma de 150.000.000.-

iii  Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $1.446.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "DEVOLUCIÓN PARCIAL PPUA (50%) AT 2020" por la suma de $2,571.276.301.- de fecha 25/06/2020.

n.  OPERACIÓN Nº XXXVII COMPRAVENTA DE FECHA 21/07/2020. TITULO N°64.

i  Según contrato de compraventa y traspaso de acciones, CGB compra 1.433.295.569 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,786993 cada una, por lo que el valor de las acciones compradas asciende a la suma de $2.560.000.000.- que el comprador paga al contado y en dinero en efectivo.

ii  Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $2.560.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se

registran egresos cuya glosa es "TO CORP GROUP INVERSINES LIMITADA" por la suma de $2.560.000.000.-

iii) Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $2.560.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como "DEVOLUCIÓN PPUA (50%) AT 2020" por la suma de $2.568.740.527.- de fecha 13/07/2020.

45. Durante el periodo septiembre de 2017 a octubre de 2020, la sociedad CORP GROUP BANKING S.A., compra a otras empresas relacionadas, (principalmente a Inversiones GASA Limitada), un total de 28.968.658.324 acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, por un total de $53.212.522.402.-, de acuerdo al siguiente detalle:

| N° | VENDEDOR | COMPRADOR | FECHA | N° ACCIONES | MONTO $ | P X ACC |
|---|---|---|---|---|---|---|
| XXIV | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 22-09-2017 | 5.077.050.166 | 11.161.341.391 | 2,20 |
| XXV | CORPGROUP INTERHOLD SPA | CORP.GROUP BANKING SPA | 09-04-2019 | 533.094.262 | 1.060.816.000 | 1,99 |
| XXVI | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 19-03-2020 | 381.250.453 | 670.000.000 | 1,76 |
| XXVII | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 24-03-2020 | 706.362.318 | 1.220.000.000 | 1,73 |
| XXVIII | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 25-03-2020 | 11.996.410.362 | 20.988.647.011 | 1,75 |
| XXIX | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 26-03-2020 | 283.154.177 | 500.000.000 | 1,77 |
| XXX | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 27-03-2020 | 4.278.635.828 | 7.524.450.000 | 1,76 |
| XXXI | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 27-03-2020 | 1.370.400.806 | 2.410.000.000 | 1,76 |
| XXXII | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 30-03-2020 | 199.455.688 | 350.000.000 | 1,75 |
| XXXIII | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 02-04-2020 | 88.572.259 | 156.000.000 | 1,76 |
| XXXIV | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 09-04-2020 | 830.098.980 | 1.465.268.000 | 1,77 |
| XXXV | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 19-05-2020 | 977.471.934 | 1.700.000.000 | 1,74 |
| XXXVI | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 26-06-2020 | 813.405.522 | 1.446.000.000 | 1,78 |
| XXXVII | INVERSIONES GASA LIMITADA | CORP.GROUP BANKING SPA | 21-07-2020 | 1.433.295.569 | 2.560.000.000 | 1,79 |
| | TOTAL | | | 28.968.658.324 | 53.212.522.402 | |

## 46. TRANSFERENCIAS A INTERHOLD, SAGA, SMU SA Y COPESA SA., ENTRE OTROS.

47. De acuerdo a los antecedentes de la carpeta de investigación, los dineros de CGB fueron transferidos de acuerdo al siguiente detalle:

| N° OP | FECHA | MONTO $ OPERACION | DESTINO | MONTO $ |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| I | 12-03-2015 | 36.362.000.000 | SIN INFO | |
| II | 09-04-2015 | 600.000.000 | SIN INFO | |
| III | 31-07-2015 | 38.200.000.000 | SIN INFO | |
| IV | 01-11-2015 | 14.430.000.000 | SIN INFO | |
| V | 31-03-2016 | 26.141.676.000 | SIN INFO | |
| VI | 11-04-2016 | 1.841.832.001 | SIN INGRESO EFECTIVO | 0 |
| VII | 11-04-2016 | 6.040.000.380 | SIN INGRESO EFECTIVO | 0 |
| VIII | 06-06-2016 | 40.035.858.666 | PTMO USD A SMU S.A. | 37.000.000.000 |
| IX | 13-06-2016 | 900.000.001 | TRASPASO A GASA | 900.000.000 |
| X | 01-07-2016 | 60.000.001 | TO A INV GASA LTDA. | 118.000.000 |
| XI | 25-07-2016 | 13.027.771.344 | TO A INV GASA LTDA. | 13.027.000.000 |
| XII | 01-08-2016 | 5.900.000.000 | TO A CG INVERSIONES LTDA | 5.900.000.000 |
| XIII | 27-10-2016 | 16.948.168.170 | TO A CG INVERSIONES LTDA | 16.948.000.000 |
| XIV | 09-11-2016 | 4.999.999.999 | TO A CG INVERSIONES LTDA | 6.010.000.000 |
| XV | 28-11-2016 | 8.000.000.000 | TO A CG INVERSIONES LTDA | 8.000.000.000 |
| XVI | 13-12-2016 | 2.000.000.001 | TO A CG INVERSIONES LTDA | 2.000.000.000 |
| XVII | 16-12-2016 | 6.000.000.000 | TO A CG INVERSIONES LTDA | 6.000.000.000 |
| XVIII | 29-12-2016 | 2.649.999.999 | TO A CG INVERSIONES LTDA | 2.650.000.000 |
| XIX | 13-02-2018 | 1.380.804.999 | SIN INGRESO EFECTIVO | 0 |
| XX | 15-02-2018 | 1.014.322.001 | SIN INGRESO EFECTIVO | 0 |
| XXI | 19-02-2018 | 1.038.012.500 | SIN INGRESO EFECTIVO | 0 |
| XXII | 13-04-2018 | 8.962.532.919 | TO a CG Inversiones LTDA. | 8.400.000.000 |
| | | | TO a CG Inversiones LTDA. | 565.000.000 |
| XXIII | 01-04-2019 | 2.000.000.000 | TO CorpGroup Inversiones Ltda. | 2.000.000.000 |
| XXIV | 22-09-2017 | 11.161.341.391 | TO CORPGROUP INVERSION | 11.950.000.000 |
| XXV | 09-04-2019 | 1.060.816.000 | SIN INFO | 0 |
| XXVI | 19-03-2020 | 670.000.000 | TO GRUPO COPESA S.A. | 850.000.000 |
| XXVII | 24-03-2020 | 1.220.000.000 | TO CORPGROUP INVERSION | 1.220.000.000 |
| XXVIII | 25-03-2020 | 20.988.647.011 | CTA CTE POR COBRAR EERR | 20.988.647.011 |
| XXIX | 26-03-2020 | 500.000.000 | TO CORPGROUP INVERSION | 500.000.000 |
| XXX | 27-03-2020 | 7.524.450.000 | TO CORPGROUP INVERSION | 7.524.450.000 |
| XXXI | 27-03-2020 | 2.410.000.000 | TO CORPGROUP INVERSION | 2.410.000.000 |
| XXXII | 30-03-2020 | 350.000.000 | CTA CTE POR PAGAR EERR | 350.000.000 |
| XXXIII | 02-04-2020 | 156.000.000 | CTA CTE POR PAGAR EERR | 156.000.000 |
| XXXIV | 09-04-2020 | 1.465.268.000 | CTA CTE POR PAGAR EERR | 1.465.000.000 |
| XXXV | 19-05-2020 | 1.700.000.000 | TO CORPGROUP INV, LTDA. | 1.449.000.000 |
| | | | TO GRUPO COPESA S.A. | 250.000.000 |
| XXXVI | 26-06-2020 | 1.446.000.000 | TO CORPGROUP INV. LTDA. | 1.296.000.000 |
| | | | TO GRUPO COPESA S.A. | 150.000.000 |
| XXXVII | 21-07-2020 | 2.560.000.000 | TO CORPGROUP INV. LTDA. | 2.560.000.000 |

48. AÑO 2015.

   a. De los antecedentes de la carpeta de investigación no es posible determinar con certeza el destino final de los dineros transferidos a INTERHOLD en el año 2015.

   b. Sin perjuicio de ello, se efectuó un estudio de la existencia de transferencias de recursos entre sociedades del Grupo Saieh realizadas durante los años 2015 y 2016 y, en especial, recursos ingresados en SMU SA en el año 2015.

   c. De acuerdo a lo referido en los EEFF al 31 de diciembre de 2016 de SMU SA la compañía Inversiones SAMS SpA prestó US$ 55.913.620 a SMU, "deuda obtenida en noviembre de 2015, está expresada en USD y devenga una tasa fija anual de 11,6% subordinado en capital e intereses al crédito sindicado con vencimiento en junio de 2020, sin garantías".

   d. Inversiones SAMS SpA, RUT Nº 76.483.633-2, ha sido desde 2017 en adelante uno de los mayores accionistas de SMU, con un 19,19% en el año 2017, en septiembre de 2018 un 23,23% de las acciones de SMU SA y a marzo de 2020 el 23,34%.

   e. Inversiones SAMS SpA aumentó su propiedad de 700.262.114 acciones en el año 2017 a 1.347.798.788 acciones de SMU el día 09 de abril de 2020.

49. AÑO 2016.

   a. Por otro lado, si existen antecedentes que permiten determinar parte del destino de los dineros transferidos a SAGA (suscripción de acciones).

   b. En efecto, de acuerdo a los antecedentes expuestos, se registra en la contabilidad de SAGA un préstamo a SMU S.A. por la suma de $ 37.000.000 con fecha 06 de junio de 2016. De acuerdo al valor del dólar observado de ese día ($ 683,27), su equivalente en dólares de los Estados Unidos asciende a la cantidad de USD $ 54.151.360,36.-.

   c. Sobre el particular -de acuerdo a "Prospecto de Actualizado Emisión de Acciones de pago SMU SA", de fecha 18 de enero de 2017- dirigido a don Carlos Pavez Tolosa, Superintendente de Valores y Seguros, se señala lo siguiente:

   "Con fecha 31 de mayo de 2016, la Sociedad suscribió, en favor de la Compañía Inmobiliaria e Inversiones SAGA SpA, una sociedad relacionada al controlador de la Compañía, un pagaré por la suma de USD $ 53.602.213,63.-, con el fin de proveer parcialmente de fondos a ésta para servir de su obligación de pago de la amortización ordinaria de los bonos serie A, emitidos por SMU SA, al amparo de la línea de bonos inscrita con fecha 26 de mayo de 2011 en el Registro de Valores de la SVS, bajo el Nº 667, por un monto de capital de 2.000.000 de Unidades de Fomento, con vencimiento 1 de junio de 2016. El vencimiento del crédito suscrito por la Sociedad será en una sola cuota pagadera con fecha 26 de diciembre de 2018 y en cuanto a los intereses, el capital adeudado devengará una tasa de interés fija equivalente al 11,6% anual".

d.   Asimismo en el Estados Financiero (EEFF) al 31 de Diciembre de 2017 de SMU se indica la siguiente deuda por pagar a empresa relacionadas:

### b.   Cuentas por pagar a entidades relacionadas

| Rut | Sociedad | Naturaleza de la relación | País | Moneda | Corrientes 31.12.2017 M$ | Corrientes 31.12.2016 M$ | No corrientes 31.12.2017 M$ | No corrientes 31.12.2016 M$ |
|---|---|---|---|---|---|---|---|---|
| 65.034.895-8 | Fundacion Descúbreme | Relacionada con Controlador | Chile | CLP | 8.921 | 17.814 | - | - |
| 76.001.408-7 | Retail Holding S.A. (1) (7) | Controlador Común | Chile | UF | - | 3.175.529 | - | 16.821.619 |
| 76.002.124-5 | SR Inmobiliaria S.A. | Controlador Común | Chile | UF | 57.058 | - | - | - |
| 76.025.301-4 | Gestora Omega Ltda. Holding y CPA (1) (7) | Accionista/ Socio Común | Chile | UF | - | 203.886 | - | 1.081.480 |
| 76.054.952-5 | Corp Group Inversiones Ltda. (2) | Controlador Común | Chile | UF | - | 13.361.000 | - | - |
| 76.058.352-9 | Vivo Corp SpA | Controlador Común | Chile | CLP | 181.257 | 143.598 | - | - |
| 76.063.653-3 | Unired S.A. | Asociada | Chile | CLP | 2.954.745 | - | - | - |
| 76.086.272-K | Unicard  S.A. (8) | Asociada | Chile | CLP | 24.008 | - | - | - |
| 76.094.904-5 | Funky Films S.A. | Relacionada con Controlador | Chile | CLP | 63.272 | 33.844 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S.A. | Controlador Común | Chile | CLP | 3.787 | - | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S.A. | Controlador Común | Chile | CLP | 2.411 | 14.256 | - | - |
| 76.170.725-6 | Copesa S.A. | Controlador Común | Chile | CLP | 17.898 | - | - | - |
| 76.199.415-8 | Retail Holding II S.pA. (3) (7) | Controlador Común | Chile | UF | - | 295.598 | - | 1.492.470 |
| 76.483.633-2 | Inversiones SAMS SpA (4) (7) | Controlador Común | Chile | USD | - | - | - | 55.913.620 |
| 88.202.600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (6) (7) | Controlador Común | Chile | UF | - | 162.523 | - | 866.143 |
| 88.202.600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (5) (7) | Controlador Común | Chile | USD | - | 4.787 | - | 2.878.502 |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Controlador Común | Chile | CLP | 24.621 | 26.068 | - | - |
| 96.763.040-3 | Inmobiliaria Rio Lluta S.A. | Controlador Común | Chile | CLP | 19.009 | - | - | - |
| | **Totales** | | | | 3.356.987 | 17.438.903 | - | 79.053.834 |

(1)  Esta deuda se origina a partir de septiembre de 2014, por el traspaso de algunos montos bancarios del crédito sindicado, está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60%, % pagados trimestralmente, amortización anual con vencimiento en junio de 2020, sin garantías.
(2)  La deuda está expresada en UF y devenga un interés anual de 10,60%, pagada trimestralmente, con vencimiento en septiembre 2016 y mayo 2017 prorrogables por un año adicional. Deuda prepagable y sin garantías. Esta deuda se canceló durante el segundo trimestre de 2017.
(3)  Deuda obtenida en diciembre de 2013 y que formó parte inicial del crédito sindicado, está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60 por M$467.776 y el saldo de M$1.320.292 está expresada en UF y devenga una tasa fija anual de 4,81%. Pago de intereses trimestrales y amortizaciones anuales según la tabla de desarrollo del crédito sindicado con vencimiento en junio de 2020. Sin garantías.
(4)  La deuda obtenida en noviembre de 2015, está expresada en USD y devenga una tasa fija anual de 11,6% subordinado en capital e intereses al crédito sindicado con vencimiento en junio de 2020. Sin garantías.
(5)  La deuda, obtenida en mayo de 2016,  está expresada en USD y devenga una tasa fija anual de 11,6%, pagada semestralmente con vencimiento en diciembre de 2018. Deuda prepagable. Sin garantías.
(6)  Esta deuda se origina a partir de febrero de 2015, por el traspaso de algunos montos bancarios del crédito sindicado,  está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60%, % pagados trimestralmente, amortización subordinada al crédito Banco Bice con vencimiento en junio de 2020, sin garantías.
(7)  Cancelados enero 2017.
(8)  Con fecha 03 de mayo de 2017, SMU Corp S.A., cambio su razón social a Unicard S.A.

e.   Se señala en dicho documento lo siguiente: "Al 31 de diciembre de 2017, todos los créditos con empresas relacionadas ya están pagados con los fondos provenientes del aumento de Capital".

f.   Al respecto, en la página 139 de los EEFF al 31 de diciembre de 2017 se indica lo siguiente:

"d. Aumento de capital.
Al 31 de diciembre de 2016:

En Junta Extraordinaria de Accionistas efectuada el 30 de diciembre de 2015, se acordó aumentar el capital de la Sociedad en la suma de M$230.000.000 llegando a un capital de M$1.217.072.711, mediante la emisión de 2.486.486.486 acciones de una misma y única serie, sin valor nominal. Asimismo se deja sin efecto el aumento de capital aprobado por la Junta Extraordinaria de Accionistas de fecha 2 de octubre de 2013, ratificado luego por la por la Junta Extraordinaria de Accionistas de fecha 30 de abril de 2014 ascendente a $111.333.333.333 habida consideración que las 622.300.722 acciones representativas de dicho aumento de capital a la fecha de la Junta no habían sido suscritas ni pagadas por los accionistas. Durante el año 2016, no hubo suscripción ni pago de acciones de dicho aumento de capital.

Al 31 de diciembre de 2017

Con fecha 24 de enero de 2017, en la Bolsa de Comercio de Santiago, se realizó la colocación de 1.150.000.000 acciones de pago de la sociedad. La demanda total ascendió a un precio de $113 por acción, a través del mecanismo denominado subasta de un Libro de Órdenes. El monto total de la colocación de acciones alcanzó la suma de M$129.950.000.

Con fecha 16 de noviembre de 2017, en la Bolsa de Comercio de Santiago, Bolsa de valores, por medio del mecanismo denominado subasta de un Libro de Órdenes, se colocaron un total de 575.000.000 acciones de pago de la Sociedad, a un precio de $165 por acción. El monto total de la colocación de acciones alcanzó la suma de M$94.875.000.

Al 31 de diciembre de 2017 existe un saldo de 761.486.486 acciones pendientes de colocar en el mercado del aumento de capital autorizado en la Junta Extraordinaria de Accionistas
efectuada el 30 de diciembre de 2015."

g. A su turno, en los EEFF al 30 de junio de 2018 se indica lo siguiente:

"El 29 de enero del año 2015, la familia Rendic vendió a Corp Group Holding Inversiones Limitada ("Corp Group"), entidad relacionada al actual controlador, toda su participación en SMU S.A., equivalente a un 13,88%. En virtud de dicha enajenación, Corp Group, conjuntamente con otros vehículos controlados por Corp Group, alcanzó en esa fecha el 78,59% de las acciones emitidas por SMU.

En Junta de Accionistas efectuada el 30 de diciembre de 2015, se acordó aumentar el capital de la Sociedad en la suma de M$ 230.000.000, mediante una emisión de 2.486.486.486 acciones de una misma y única serie. Con fecha 24 de enero de 2017, se realizó la colocación de 1.150.000.000 acciones de pago, recaudando M$129.950.000, posteriormente con fecha 16 de noviembre de 2017, se colocaron 575.000.000 acciones, recaudando M$94.875.000 y finalmente el 22 de enero de 2018 se colocaron 400.000.000 de acciones de pago de la Sociedad, recaudando M$74.000.000, todas a través del mecanismo denominado subasta de un libro de órdenes en la Bolsa de Comercio de Santiago, Bolsa de valores.

Dado lo anterior y debido a la renuncia de la totalidad de los derechos de suscripción preferente asociados a los aumentos de capital manifestados en Junta Extraordinaria de Accionistas realizada el 02 de diciembre de 2016, disminuyó la participación del grupo controlador en SMU".

h. En el EEFF al 30 de junio de 2018 se refleja el pago de las obligaciones para con empresas relacionadas:

**b.    Cuentas por pagar a entidades relacionadas**

| Rut | Sociedad | Naturaleza de la relación | País | Moneda | Corrientes | | No corrientes | |
|---|---|---|---|---|---|---|---|---|
| | | | | | 30.06.2018 No auditado M$ | 31.12.2017 M$ | 30.06.2018 No auditado M$ | 31.12.2017 M$ |
| 65.034.895-8 | Fundacion Descúbreme | Relacionada con Controlador | Chile | CLP | 2.977 | 8.921 | - | - |
| 76.002.124-5 | SR Inmobiliaria S.A. | Controlador Común | Chile | UF | 2.608 | 57.058 | - | - |
| 76.058.352-9 | Vivo Corp S.A. (2) | Controlador Común | Chile | CLP | 106.576 | 181.257 | - | - |
| 76.063.653-3 | Unired S.A. | Asociada | Chile | CLP | 2.380.886 | 2.954.745 | - | - |
| 76.086.272-K | Unicard  S.A. (1) | Asociada | Chile | CLP | 25.245 | 24.008 | - | - |
| 76.094.904-3 | Funky Films S.A. | Relacionada con Controlador | Chile | CLP | - | 63.272 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S.A. | Relacionada con Controlador | Chile | CLP | 2.416 | 3.787 | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S.A. | Controlador Común | Chile | CLP | 749 | 2.411 | - | - |
| 76.170.725-6 | Copesa S.A. | Controlador Común | Chile | CLP | - | 17.898 | - | - |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Controlador Común | Chile | CLP | 3.466 | 24.621 | - | - |
| 96.763.040-3 | Inmobiliaria Río Lluta S.A. | Controlador Común | Chile | CLP | 19.271 | 19.009 | - | - |
| | | Totales | | | 2.544.194 | 3.356.987 | - | - |

(1)  Con fecha 03 de mayo de 2017, SMU Corp S.A., cambio su razón social a Unicard S.A.
(2)  Con fecha 28 de julio de 20017, Vivo Corp SpA, cambio su razón social a Vivo Corp S.A.

i.    Como se puede apreciar, no aparecen (por ende fueron pagadas) las obligaciones para con las siguientes sociedades:

  i)    76.199.415-8 Retail Holding III S.p.A.
  ii)   76.483.633-2 Inversiones SAMS SpA
  iii)  88.202.600-0 Cía. Inmobiliaria y de Inversiones SAGA SpA

j.    Al respecto de la revisión practicada al Libro Mayor de SAGA del ejercicio comercial 2017, se verifica que con fecha 09/09/2016 se registra un asiento contable cuya glosa o detalle es "CESION DE DEUDA DE SMU PO y un ", mediante el cual se registra ingreso (cargo) a la cuenta "Banco Corpbanca US$" por la suma de $29.691.257.750.- y un abono a la cuenta "Cuenta Corriente EERR M/E".

k.    No se tiene mayor información sobre los detalles y condiciones de esta operación de cesión, ni de las sociedades que comparecen en ella.

**RESUMEN DE LAS OPERACIONES PARTE DEL MECANISMO PARA DISPONER DE LOS DINEROS DE CGB.**

50.  Durante el periodo 2015 a 2020 la sociedad CORP GROUP BANKING S.A., suscribió acciones de la sociedad relacionada INVERSIONES CG FINANCIAL CHILE DOS SpA, por un total de $115.733.676.000.-

51.  Durante el periodo 2015 a 2020 la sociedad CORP GROUP BANKING S.A., suscribió  un total de 49.700.647.691 acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SpA, por un total de $122.799.302.981.-

52.  Durante el periodo 2015 a 2020 la sociedad CORP GROUP BANKING S.A., adquiere un total de 28.968.658.324 acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SpA, por un total de $53.212.522.402.-, que eran propiedad de INVERSIONES GASA LIMITADA.

53.  En total se trata de treinta y siete (37) operaciones simuladas de acuerdo al siguiente detalle:

| N° OP | DETALLE | FECHA | N°. ACCIONES | VALORES |
|---|---|---|---|---|
| **COMPRA ACC INV CG FINANCIAL CHILE DOS SPA** | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 12-03-2015 | 24.484.877.154 | $36.362.000.000 |
| II | Inversiones Corpgroup Interhold Limitada | 09-04-2015 | 416.899.653 | $600.000.000 |
| III | Inversiones Corpgroup Interhold Limitada | 31-07-2015 | 22.282.498.681 | $38.200.000.000 |
| IV | Inversiones Corpgroup Interhold Limitada | 01-11-2015 | | $14.430.000.000 |
| V | Inversiones Corpgroup Interhold Limitada | 16-03-2016 | 16.206.938.723 | $26.141.676.000 |
| | **SUBTOTAL** | | | $115.733.676.000 |
| **SUSCRIPCION ACCIONES DE SAGA** | | | | |
| VI | Suscripción Acc. SAGA | 11-04-2016 | 720.762.604 | $1.841.832.001 |
| VII | Suscripción Acc. SAGA | 11-04-2016 | 2.363.628.387 | $6.040.000.380 |
| VII | Suscripción Acc. SAGA | 06-06-2016 | 15.667.199.683 | $40.035.858.666 |
| IX | Suscripción Acc. SAGA | 13-06-2016 | 352.196.261 | $900.000.001 |
| X | Suscripción Acc. SAGA | 01-07-2016 | 23.479.751 | $60.000.001 |
| XI | Suscripción Acc. SAGA | 25-07-2016 | 5.098.147.058 | $13.027.771.344 |
| XII | Suscripción Acc. SAGA | 01-08-2016 | 2.389.486.164 | $5.900.000.000 |
| XIII | Suscripción Acc. SAGA | 27-10-2016 | 6.863.968.363 | $16.948.168.170 |
| XIV | Suscripción Acc. SAGA | 09-11-2016 | 2.024.988.274 | $4.999.999.999 |
| XV | Suscripción Acc. SAGA | 28-11-2016 | 3.239.981.239 | $8.000.000.000 |
| XVI | Suscripción Acc. SAGA | 13-12-2016 | 809.995.310 | $2.000.000.001 |
| XVII | Suscripción Acc. SAGA | 16-12-2016 | 2.429.985.929 | $6.000.000.000 |
| XVIII | Suscripción Acc. SAGA | 29-12-2016 | 1.073.243.785 | $2.649.999.999 |
| XIX | Suscripción Acc. SAGA | 13-02-2018 | 628.098.004 | $1.380.804.999 |
| XX | Suscripción Acc. SAGA | 15-02-2018 | 461.392.901 | $1.014.322.001 |
| XXI | Suscripción Acc. SAGA | 19-02-2018 | 472.169.191 | $1.038.012.500 |
| XXII | Suscripción Acc. SAGA | 13-04-2018 | 4.076.860.267 | $8.962.532.919 |
| XXIII | Suscripción Acc. SAGA | 01-04-2019 | 1.005.064.520 | $2.000.000.000 |
| | **SUBTOTAL** | | **49.700.647.691** | $122.799.302.981 |
| **COMPRA ACCIONES DE SAGA** | | | | |
| XXIV | INVERSIONES GASA LIMITADA | 22-09-2017 | 5.077.050.166 | $11.161.341.391 |
| XXV | CORPGROUP INTERHOLD SPA | 09-04-2019 | 533.094.262 | $1.060.816.000 |
| XXVI | INVERSIONES GASA LIMITADA | 19-03-2020 | 381.250.453 | $670.000.000 |
| XXVII | INVERSIONES GASA LIMITADA | 24-03-2020 | 706.362.318 | $1.220.000.000 |
| XXVIII | INVERSIONES GASA LIMITADA | 25-03-2020 | 11.996.410.362 | $20.988.647.011 |
| XXIX | INVERSIONES GASA LIMITADA | 26-03-2020 | 283.154.177 | $500.000.000 |
| XXX | INVERSIONES GASA LIMITADA | 27-03-2020 | 4.278.635.828 | $7.524.450.000 |
| XXXI | INVERSIONES GASA LIMITADA | 27-03-2020 | 1.370.400.806 | $2.410.000.000 |
| XXXII | INVERSIONES GASA LIMITADA | 30-03-2020 | 199.455.688 | $350.000.000 |

| | | | | |
|---|---|---|---|---|
| XXXIII | INVERSIONES GASA LIMITADA | 02-04-2020 | 88.572.259 | $156.000.000 |
| XXXIV | INVERSIONES GASA LIMITADA | 09-04-2020 | 830.098.980 | $1.465.268.000 |
| XXXV | INVERSIONES GASA LIMITADA | 19-05-2020 | 977.471.934 | $1.700.000.000 |
| XXXVI | INVERSIONES GASA LIMITADA | 26-06-2020 | 813.405.522 | $1.446.000.000 |
| XXXVII | INVERSIONES GASA LIMITADA | 21-07-2020 | 1.433.295.569 | $2.560.000.000 |
| | **SUBTOTAL** | | **28.968.658.324** | **$53.212.522.402** |
| | **TOTAL** | | | **$291.745.501.383** |

54. En resumen,

   a. CGB emitió el denominado Bono 13/23 bajo ciertos covenants u obligaciones de no hacer.

   b. Es efectivo el reconocimiento de los ejecutivos Sres. Zavala Destefani y Salinas Díaz, en cuanto a que se realizaron treinta y siete (37) operaciones -parte de un mecanismo- desde el inicio de la emisión del Bono CGB 13/23 6,75 y hasta el año 2020, que tuvieron por objeto disponer de la casi totalidad de los dineros de CGB.

   c. De acuerdo a los antecedentes que obran en la carpeta de investigación, se realizaron operaciones entre sociedades relacionadas entre los años 2015 a 2020 ascendieron a un total de $ 291.745.501.383.-.

   d. Dichas operaciones tuvieron por objeto la adquisición de acciones de FINANCIAL CHILE DOS y SAGA por parte de CGB.

55. Los referidos recursos (dineros de CGB) fueron transferidos a las siguientes compañías:

| DESTINATARIO INICIAL RECURSOS | MONTO | % DEL TOTAL |
|---|---|---|
| SMU | $37.000.000.000 | 12,68 |
| COPESA | $1.250.000.000 | 0,43 |
| INVERSIONES | $87.382.450.000 | 29,95 |
| GASA | $14.045.000.000 | 4,81 |
| EMPRESAS RELACIONADA | $22.959.647.011 | 7,87 |
| DESCONOCIDO | $129.108.404.372 | 44,25 |

**Perjuicio para los inversionistas.**

56. En este sentido, y de cara a los elementos del tipo en cuestión, la producción del perjuicio - que pasa precisamente por el vaciamiento patrimonial que irrevocablemente impidió hacer efectiva la obligación asumida por CGB al momento de llegar su vencimiento-, tiene como

antecedente precisamente las transacciones efectuadas por CGB (puesto que sus montos sumados comprometieron alrededor de un 40% de su patrimonio contable) que tuvieron por finalidad trasladar la caja de la compañía a sus relacionadas, en perjuicio de los tenedores de los bonos (vaciamiento patrimonial).

57. Sin perjuicio que será la investigación del Ministerio Público la que deberá determinar con total precisión el monto del perjuicio, debemos hacer presente que al menos alcanza a la suma de USD$ 1.570.000,0.-, equivalente al día 26.ENE.2024 a la suma de $ 1.430.222.900.- (de acuerdo a dólar observado de ese día).

58. Así, el referido plan criminal, partió en el año 2015 con la ejecución de los contratos simulados, todo ello de manera consistente hasta el año 2020, vaciando patrimonialmente a CGB.

59. De acuerdo al valor el dólar observador al último día hábil bancario de cada año, entre los años 2015 a 2020, los montos involucrados ascienden a la suma de US$ 425.992.555.-.El Bono 13/23 6,75 emitido por CGB ascendió a la suma de US$ 500.000.000. Por ende, los dineros dispuestos mediante estas treinta y siete (37) operaciones, parte del mecanismo de adquirir acciones de las relacionadas FINANCIAL y SAGA, correspondió a un 85,19% del capital del Bono 13/23 6,75.

**Autoría punible.**

60. En cuanto al sujeto activo del delito en comento, es posible afirmar que la formulación y estructura del ilícito nos dicen que cualquier persona pude ser autor del mismo ; no debe exhibir características particulares que permita erigirlo en calidad de tal.

61. En este orden de ideas, y teniendo en consideración que el contrato simulado exige un acuerdo entre los contratantes del acto otorgado en perjuicio de terceros, quienes concurrieron a su celebración se considerará coautores del delito previsto en el artículo 471 N°2 del Código Penal.

62. A la querellada le ha cabido participación en calidad de autor del art. 15 Nº 1 del Código Penal.

63. El querellado es el controlador del Grupo CGB y Filiales. De acuerdo al art. 97 de la Ley de Mercado de Valores es quien directamente o a través de otras personas  naturales o jurídicas, participa en la propiedad y tiene el poder de realizar algunas de las conductas que señala la norma y, en especial, influir decisivamente en la administración de las sociedades CGB y SAGA.

64. La información sobre las relaciones de control entre las sociedades se obtiene de los datos presentados por el querellado a la SEC en las siguientes fechas:

    a. Del 27 de noviembre de 2020, donde indica: "Interhold es el accionista mayoritario de CGB. CGHIL es el accionista mayoritario de Interhold. CGF es la persona quien controla (dueño de) CGHIL. Gasa es el accionista mayoritario de Saga. CGI es el accionista mayoritario de CGF y Gasa. CGHIL es el accionista mayoritario de CGI. Don Saieh Bendeck es el fundador del grupo Corp y se podría considerar como la persona que controla CGHI y CGF."; y

b.    Reporte de fecha 1 de abril de 2016, en que indica una estructura de control casi idéntica a la ilustrada en la figura y especifican que GASA es la única accionista de SAGA en dicho momento. Específicamente, en este caso se indica que: "Interhold es el accionista mayoritario de CGB. CGHIL es el accionista de Interhold. CGF es la persona controladora (dueño) de CGHIL. Gasa es el único accionista de Saga. CGI es el accionista mayoritario de CGF y Gasa. CGHI es el accionista mayoritario de CGI. Don Saieh Bendeck es presidente del directorio y quien controla CGHI, y es director de CGF. El resto de los denunciantes están en el negocio de inversiones y valores."

65.    En la misma emisión del bono se señaló lo siguiente: "Nuestros accionistas mayoritarios, encabezados por don Álvaro Saieh Bendeck, tienen mas de 20 años de experiencia en la industria financiera en Chile. El Sr. Saieh, quien, junto con otros miembros de su familia, controla aproximadamente un 59.4% de las acciones ordinarias en circulación de CorpBanca (incluyendo las acciones que nosotros poseemos), posee acciones ordinarias con suficiente poder bajo la ley chilena, para aprobar sustancialmente todas las acciones corporativas de CorpBanca sujetas a la aprobación de accionistas, incluyendo la distribución de dividendos, y para elegir la mayoría de los 9 miembros del directorio. Una vez que se complete la oferta pendiente de derechos preferentes de CorpBanca, esperamos que las participaciones del Sr. Saieh y su familia en CorpBanca se diluya (o reduzca) a aproximadamente un 53.0% (asumiendo la suscripción de todos los derechos ofrecidos)."

66.    No es menor un punto sobre la participación de los diversos ejecutivos -principalmente directores y gerentes generales- diversos del querellado. En este punto cobra especial relevancia la figura de la querellada doña María del Pilar Dañobeitía Estades, quien ocupaba, al momento de ejecución de los hechos, el cargo de "Chief Executive Officer" (CFO) en las empresas que fueron parte de los contratos de suscripción y venta de acciones que son constitutivos del delito referido. Sin perjuicio de lo anterior, se hace presente que la investigación del Ministerio Público será la que deberá determinar quien más concurrió con su voluntad a aprobar los diversos actos o contratos simulados que se han referido.

67.    La doctrina establece que no existe problema alguno en determinar la responsabilidad penal frente a actuaciones de cuerpos colegiados. Ya no se trata de una causación o ejecución del delito mismo -por ejemplo, quien suscribió el contrato simulado o quien lo redactó- sino determinar quién es el *sujeto competente* por el hecho penalmente relevante. Así, la competencia jurídico penal por el hecho puede ser de una sola persona o de varias personas, ya sea vertical u horizontal. Todos los que actúan en un contexto objetivamente delictivo son los sujetos *competentes* por el delito, siendo el autor de acuerdo al *principio de competencia* quien tiene los deberes concretos y ello da lugar a su responsabilidad penal.

68.    No hay dudas que el controlador del grupo económico tiene una función relevante, con independencia de su cercanía con el acto. En definitiva, el querellado perfectamente puede no haber participado de las sesiones de directorio, así como tampoco suscrito alguno de los contratos, pero no por ello deja de tener la competencia preferente por el hecho. Quien se encuentra en la cúspide, quien tiene un mayor grado de deberes, quien tiene el deber de evitar la comisión de delitos por parte de CGB y sus Fliliales, es su controlador, quien es penalmente responsable por las competencias que detenta por su cargo. Como la palabra misma lo denota- *controlador*- se encuentra en el querellado la plenitud del *dominio de la organización*.

69. Reitero, será materia de la investigación del Ministerio Público determinar quienes fueron los subordinados que participaron en los hechos, sean ellos familiares o no, los que materialmente llevaron a cabo las diversas conductas delictivas. Asimismo, de qué modo y en qué circunstancias el propio controlador intervino en las conductas delictivas de los subordinados.

## II.- ACERCA DEL DERECHO.

### Delito de otorgamiento de contrato simulado.

70. Los hechos precedentemente descritos constituyen delitos reiterados de otorgamiento de contrato simulado, previsto y sancionado en el artículo 471 Nº 2 del Código Penal. La citada norma sanciona con la pena de presidio o relegación menores en sus grados mínimos o multa de 11 a 20 unidades tributarias mensuales a: "*El que otorgare en perjuicio de otro un contrato simulado*".

71. La conducta penal no consiste en aparentar la celebración de un acto jurídico, sino que realmente otorgar uno, pero cuyo contenido no revela la verdadera voluntad de los intervinientes, que no han pensado ni han querido realizar el hecho o acuerdo que en él se describe. En este sentido, estaremos en presencia de un contrato simulado en la medida en que exista disconformidad, por un lado, entre la voluntad declarada y manifestada por los contratantes, y, por el otro, la voluntad real de quienes concurren al acto.

72. En dicho tenor, Etcheberry entiende que contrato simulado es "aquel que contiene una declaración de voluntad no real, hecha en forma consciente y de acuerdo entre los contratantes, para producir la apariencia de un acto jurídico que no existe o es distinto del que realmente se ha llevado a cabo".

73. Según lo dicho, el concepto de negocio simulado en su formulación clásica comprende dos hipótesis generales; aquella que consiste en la celebración de un contrato que en realidad no existe; y aquella que dice relación con un acto que es distinto a aquel realmente celebrado. En este orden de ideas, Francisco Ferrara lo define como "el que tiene una apariencia contraria a la realidad o porque no existe en absoluto o porque es distinto de cómo aparece". En esos términos, habrá simulación absoluta "si las partes acuerdan celebrar sólo una apariencia de acto que en realidad no quieren y que, en consecuencia, no tendrá existencia jurídica entre ellas, o relativa, si deciden celebrar un acto o negocio cuya apariencia sólo es falsa en cuanto a su naturaleza, a sus términos o contenidos, o a las personas que intervienen".

74. El tipo de este delito exige simplemente que se otorgue, es decir, que se establezca o estipule, un contrato simulado, y que con ello se cause un perjuicio a persona, perjuicio que ha de ser de índole patrimonial. Por ende, se ha de fingir un contrato y con ello producir un perjuicio patrimonial.

75. Que la simulación sea absoluta o relativa resulta indiferente (Rivacoba y Rivacoba, Quintano Ripollés y Bustos Ramírez). Es igual en uno y otro caso, pues la ley sólo exige que se trate de un contrato simulado; y, si causa perjuicio, se tiene la adecuación al tipo.

76. Para efectos de estimarse configurado el delito previsto en el 471 N°2 a la luz de los antecedentes -ello, en el entendido que las compraventas de acciones tratan de transacciones efectivamente realizadas-, la tipicidad se funda en la discordancia entre la voluntad real y declarada en la esfera intencional de quienes concurrieron a la celebración del acto. En dicho escenario, estaremos frente a un acto simulado cuando las partes de un negocio bilateral, de acuerdo entre ellas dictan una regulación de intereses distinta de la que piensan observar en sus relaciones. No se trata que una parte quisiera pasar a dueño de las acciones, sino que simplemente se dispone de la suma de dinero que se indica como precio de ellas. No es el pago de un bien, sino que derechamente el modo de trasladar la riqueza desde un titular a otro.

77. En un sentido similar, existe en este caso una discordancia entre la voluntad declarada y la real desde la óptica de uno de los requisitos del acto jurídico: la causa lícita. En efecto, la simulación relativa también podría versar sobre este elemento del acto jurídico; el que, si bien dice relación con el móvil de los contratantes, no podemos olvidar que constituye a su vez la medida con el cual se determina si un acto tiene o no causa lícita. Un acto que aparenta tener causa lícita, en circunstancias que la verdadera intención que subyace al mismo no es otra que la de burlar el derecho de terceros, es constitutivo de un acto simulado a la luz del artículo 471 N°2 del Código Penal.

78. Los delitos de otorgamiento de contrato simulado se encuentran en grado de consumados. Conforme señala la doctrina nacional, la conducta sancionada es otorgar el contrato, y para ello es suficiente que los contratantes lo extiendan y suscriban; entendiéndose que así sucede cuando cumple con las formalidades inherentes a la naturaleza del pacto aparentemente celebrado. Al respecto, es preciso señalar que, si bien por la voz "contrato" debemos entender, al tenor de las nociones presentes en el derecho civil, un acto jurídico bilateral destinado a la creación de derechos personales u obligaciones, el legislador penal no define concretamente el efecto que ha de tener el acto jurídico de cuya simulación se trata, por lo que podrían incluirse en dicho objeto material las convenciones que en general sean celebradas en perjuicio de terceros (actos jurídicos bilaterales que tienen por objeto la modificación, creación o extinción derechos u obligaciones). Ello resulta de toda lógica si consideramos que lo relevante del tipo penal en análisis es precisamente el perjuicio irrogado con ocasión del otorgamiento del acto de que se trate.

79. Adicionalmente, el tipo en comento señala que con el otorgamiento del acto mendaz se debe generar perjuicio para otro. De acuerdo a la doctrina mayoritaria, la formulación del delito de contrato simulado como una forma de estafa (como estafa impropia -pues no todos los elementos de la estafa estarían presentes en este delito- o fraude por engaño) exige la consideración del elemento perjuicio como parte del tipo penal en comento; la consumación del hecho depende de la irrogación de perjuicio a un tercero. Bajo esta perspectiva, el otorgamiento de contrato simulado en perjuicio de otro se erige como un delito que atenta contra el patrimonio, constituyendo la simulación una mera modalidad comisiva de la afectación patrimonial exigida. Al respecto se han pronunciado ETCHEBERRY y GARRIDO MONTT, quienes afirmar inequívocamente que para la configuración del tipo penal en análisis se requiere la producción de un perjuicio patrimonial.

80. A ello abona la ubicación sistemática del delito de contrato simulado, pues se encuentra incluido en el título XI del Libro Segundo: Crímenes y Simples Delitos contra la Propiedad.

Al respecto, si bien no es la propiedad precisamente el bien que se afecta en las defraudaciones patrimoniales, sino el patrimonio, en tanto universalidad jurídica, es en este acápite que se encuentran insertos los delitos de defraudación que regula nuestro Código. Esto es relevante, pues los delitos respecto de los cuales subyace la protección del patrimonio como bien jurídico, exigen la irrogación de un perjuicio en la víctima para estimarlos consumados.

81. En cuanto a los deslindes del perjuicio de causa se trata, nuestra jurisprudencia se ha pronunciado al respecto afirmando que sería constitutiva de perjuicio, a la luz del 471 N°2 del Código Penal, la afectación del derecho de prenda general de los acreedores. Así, en relación al supuesto consistente en que un deudor -en concreto con quien suscribe el acto respectivo-, fuera de la hipótesis regulada en el tipo de insolvencia punible del 466 del Código Penal, celebra contratos simulados a fin de sustraer bienes de su patrimonio, y así imposibilitar la satisfacción y ejecución de acreencias de sus acreedores, nuestra jurisprudencia ha estimado que sí se configura el delito de contrato simulado del 471 N° 2 del Código Penal. A modo referencial, la Corte Suprema, el fallo Rol 657-2002, de fecha 09 de julio de 2003, afirmó que "el perjuicio, elemento del tipo de esta figura penal, es el efecto que emana precisamente del contrato mendaz mismo y que en el presente caso se produjo, ya que dicho contrato frustró el ejercicio del derecho de prenda general que tenía la acreedora querellante para lograr el cumplimiento de la sentencia que condenaba a la empleadora a satisfacer una prestación laboral adeudada por esta".

82. Por su parte, el sujeto pasivo del delito también puede ser cualquier persona; la víctima no debe revestir una cualidad específica, sino que (y para efectos de su legitimidad en tanto ofendida por el delito) únicamente ser titular del patrimonio que se ve afectado con ocasión del otorgamiento del contrato simulado. Al respecto, y como conclusión evidente de la estructura del delito y de la noción de simulación, el co-otorgante del contrato simulado no puede ser víctima de dicho delito, sino que solo lo pueden ser terceros ajenos al acto suscrito.

83. Respecto del tipo subjetivo del delito, la configuración del contrato simulado únicamente resulta compatible con el dolo directo del sujeto activo, ello en el entendido que la simulación a todas luces exige un acuerdo entre quienes intervienen en el acto.

## COMPETENCIA.

84. Los contratos simulados se planearon, decidieron, aprobaron y ejecutaron en el domicilio del Grupo CGB y Filiales, ubicado en calle Rosario Norte Nº 660, piso 23, Las Condes, Santiago.

85. De acuerdo a las reglas generales del Código Orgánico de Tribunales (art. 14 y siguientes), este Tribunal es competente para conocer de todas las gestiones previas a que diere lugar el procedimiento previo al juicio oral, dado que dicho lugar se encuentra dentro de su territorio jurisdiccional.

**POR TANTO**, de conformidad a lo dispuesto por los artículos 111 y siguientes del Código Procesal Penal, art. 471 Nº 2 del CP; y normas penales pertinentes;
**RUEGO A SS.** tener por interpuesta querella criminal en contra de **ÁLVARO JOSÉ SAIEH BENDECK**, **JORGE ANDRÉS SAIEH GUZMÁN**, **MARÍA CATALINA SAIEH GUZMÁN**, **CRISTÓBAL ALEJANDRO CERDA MENESES** y **MARÍA PILAR DAÑOBEITIA**

**ESTADES**, ya individualizados; y en contra de todos aquellos que resulten responsables a título de coautores, cómplices y encubridores; por la comisión de delitos reiterados de otorgamiento de contrato simulado, en grado de consumados y en calidad de autor, del art. 471 Nº 2 del Código Penal, y sin perjuicio de la calificación jurídica que en definitiva se haga de los hechos, todo ello de acuerdo a los antecedentes de hecho y de derecho que se han expuesto, declararla admisible y remitir los antecedentes al Ministerio Público, a fin que disponga el inicio de la investigación, lo formalice, acuse y en definitiva, sea condenado al máximo de las penas que establece la ley.

   **PRIMER OTROSÍ:** Sírvase SS. tener por acompañado los siguientes documentos:

- Copia digital de escritura pública otorgada con fecha 03 de julio de 2023 por doña **MARISOL BURGOS CONCHA**, en la Notaría de Santiago de don Patricio Raby Benavente; y

- Copia digital de escritura pública otorgada con fecha 20 de enero de 2023 ante Gonzalo Layseca, Cónsul de Chile en Bélgica, en la cual consta mi personería para actuar en representación de don **JUAN CARLOS PETERSEN WIDMER**.

   **SEGUNDO OTROSÍ:** De acuerdo a lo dispuesto por el art. 113 del CPP, vengo en solicitar que el Ministerio Público disponga la realización de las siguientes diligencias de investigación:

1.- Se despache una orden de investigar a la BRIDEC de la Policía de Investigaciones de Chile, a fin que proceda a recopilar todos los antecedentes, documentales y testimoniales, sobre el hecho punible y su autoría; y

2.- Se disponga que la BRIDEC proceda a requerir la entrega voluntaria por parte de SMU SA, Retail Holding III SpA, Inversiones SAMS SpA, COPESA SA, Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) y Corp Group Interhold SpA (INTERHOLD), de los siguientes antecedentes:

(i) EEFF de los años 2015 a 2021;
(ii) Balance General al 31.12 de los años 2015 a 2021;
(iii) Libros mayores y diarios de los años 2015 a 2021;
(iv) Auditorías de los años 2015 a 2021; y
(v) Cartolas de cuentas bancarias de los años 2015 a 2021.

   **TERCER OTROSÍ:** Sírvase SS. tener presente, de acuerdo a instrucciones en tal sentido expresas dadas por mis mandantes, que a nombre de mis representados vengo en <u>renunciar al ejercicio de acciones civiles por indemnización de perjuicios por los hechos que motivan esta querella</u>. En resumen, se viene en ejercer la acción penal pública, sin pretensión indemnizatoria.

   Sin perjuicio de lo cual, esta renuncia es parcial, ya que dice relación única y exclusivamente con las sociedades Inversiones CG Financial Chile Dos SpA, Compañía Inmobiliaria y de Inversiones Saga SpA, CG Financial Chile SpA, y Corp Group Banking S.A., y

sus ejecutivos, es decir, todas aquellos que directa o indirectamente concurrieron ante la Corte de Quiebras de Distrito de Delaware, Estados Unidos de Norteamérica, a fin que se aprobase un procedimiento de acuerdo al Chapter XI por dicha jurisdicción.

**CUARTO OTROSÍ:** Sírvase SS. tener presente que, en mi calidad de abogado habilitado para el ejercicio de la profesión, asumo personalmente el patrocinio y poder en esta investigación.

# Exhibit B

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.


### DUE PROCESS JUDGE OF SANTIAGO (4th)

I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and
<u>solely</u> on behalf of CRISTIÁN PINTO MARINOVICH, plaintiff, already identified in the
record, appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:

**Background.**

My client filed a criminal complaint that is currently being examined in this
proceeding, requesting an investigation into facts that presumably constitute crimes.

The United States Bankruptcy Court for the District of Delaware, at a hearing held on
October 17, 2023, the translation of which was added to the record, determined that the claims
set forth in the criminal complaint filed by MBI Servicios Financieros Limitada, another
plaintiff, were inconsistent with the decision of that court because such claims included the
possibility of obtaining damages, all based on the agreement reached in the so-called Chapter
11 proceeding of Corp Group Banking SA et al., and therefore ordered it to withdraw the
criminal complaint filed by such company within a non-extendable term and to pay
reasonable fees and expenses related to that motion.

Such "reasonable fees and expenses" are higher than the amount of my client's total
investment in the bond that gave rise to the conduct alleged as criminal in the complaint, at
least those mentioned for MBI Servicios Financieros Limitada.

Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is
included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United
States Bankruptcy Court for the District of Delaware; and, even though it does not have a
residence or domicile in the United States, it may be adversely impacted in that country by
the decisions of the aforementioned foreign court.

Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper
(owned by one of the defendants), their attorneys stated as follows:

" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and
the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds
for the complaints and the wrongful attempt to receive an unjust financial benefit through
their filing." After MBI's filing, other creditors filed complaints under the same argument as
MBI, in response to which the attorneys stated that "we are preparing actions to be filed in*

1

*the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move to terminate the criminal case, given that their actions have been the same as MBI's and, therefore, these same precedents are applicable to them".... ."*

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, **under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing**. A copy is attached. The deadline is set for [December] 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, which demonstrates the seriousness of the threat and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

**Involuntary dismissal**.

In the circumstances outlined above and **in order to avoid being sanctioned by the aforementioned foreign court**, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

**Reservation of its status as a victim of a crime.**

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity**.

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28 of the current year, referred to in the main part [sic].

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio Rodríguez Oro

Digitally signed by Sergio Rodríguez Oro
Date: 2023.12.05 10:31:44 -03'00'

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Pinto Marinovich

Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit B-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y

**EN EL OTROSI:** acompaña documento.

**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de CRISTIÁN PINTO MARINOVICH, querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

**<u>Antecedentes.</u>**

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son superiores al monto de la inversión total de mi representado en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos referidos para MBI Servicios Financieros Limitada.

Mi representado, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.;  y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" *…Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores*

1

*presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de dirime are de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, lo que demuestra la seriedad de la amenaza y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representado recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**Desistimiento no voluntario**.

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representado -ya individualizado en este escrito- me han instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**Reserva de su calidad de víctima penal.**

De manera adicional y por expresa solicitud de mi representado, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por los art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería**.

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, fecha el 28 de noviembre en curso, referida en lo principal.

**SÍRVASE SS.:** tenerla por acompañada.

# Exhibit C

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.

**DUE PROCESS JUDGE OF SANTIAGO** (4th)

I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and <u>solely</u> on behalf of TRAYENKO INVESTMENTS LP, plaintiff, already identified in the record, appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:

**<u>Background.</u>**

My client filed a criminal complaint that is currently being examined in this proceeding, requesting an investigation into facts that presumably constitute crimes.

In a civil judgment, the United States Bankruptcy Court for the District of Delaware, at a hearing held on October 17, 2023, the translation of which was added to the record, determined that the claims set forth in the criminal complaint filed by MBI Servicios Financieros Limitada, another plaintiff, were inconsistent with the decision of that commercial court because such claims included the possibility of obtaining damages, all based on the agreement reached in the so-called Chapter 11 proceeding of Corp Group Banking SA et al., and therefore ordered it to withdraw the criminal complaint within a non-extendable term and to pay reasonable fees and expenses related to that motion.

Such "reasonable fees and expenses" are extremely high relative to the amount of my client's total investment in the bond that gave rise to the conduct alleged as criminal in the complaint, at least the amounts mentioned for MBI Servicios Financieros Limitada.

Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United States Bankruptcy Court for the District of Delaware; and, even though it does not have a residence or domicile in the United States, it may be adversely impacted in that country by the decisions of the aforementioned foreign court.

Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper (owned by one of the defendants), their attorneys stated as follows:

" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds for the complaints and the wrongful attempt to receive an unjust financial benefit through*

*their filing." After MBI's filing, other creditors filed complaints under the same argument as MBI, in response to which the attorneys stated that "we are preparing actions to be filed in the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move to terminate the criminal case, given that their actions have been the same as MBI's and, therefore, these same precedents are applicable to them".... ."*

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, **under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing**. A copy is attached. The deadline is set for December 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, <u>which demonstrates the seriousness of the threat</u> and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

**Involuntary dismissal**.

In the circumstances outlined above and **in order to avoid being sanctioned by the aforementioned foreign court**, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

**Reservation of its status as a victim of a crime.**

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

All of the foregoing is with the express exception of claiming damages, as it is not consistent with the agreement reached by the parties and subsequently approved by the United States Bankruptcy Court for the District of Delaware.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity.**

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28, 2023.

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio Rodríguez Oro

Digitally signed by Sergio Rodríguez Oro
Date: 2023.12.29 11:41:04 -03'00'

**MAGNA**
**LEGAL SERVICES**

## <u>TRANSLATION CERTIFICATION</u>

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Trayenko Investments

American Translators Association
ata
Leonardo Duran
Spanish into English
Certification #488876
Certified Translator

Verify at www.atanet.org/verify

_Leonardo Duran_

Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit C-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y
**EN EL OTROSI:** acompaña documento.

**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de TRAYENKO INVESTMENTS LP, querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

<u>**Antecedentes**</u>.

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, en sentencia civil estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción comercial, ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son extremadamente elevados en relación al monto de la inversión total de mi representada en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos montos referidos para MBI Servicios Financieros Limitada.

Mi representada, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.; y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" …*Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico*

*indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de diciembre de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, lo que demuestra la seriedad de la amenaza y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representada recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**Desistimiento no voluntario.**

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representada -ya individualizada en este escrito- me ha instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**Reserva de su calidad de víctima penal.**

De manera adicional y por expresa solicitud de mi representada, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por los art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Todo ello con la expresa excepción de demandar indemnización de perjuicios, por ser incompatible con lo acordado por las partes y posteriormente aprobado por la Corte de Quiebras del Distrito de Delaware, EEUU.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería**.

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, fecha el 28 de noviembre de 2023.

**SÍRVASE SS.:** tenerla por acompañada.

3

# Exhibit D

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.


### DUE PROCESS JUDGE OF SANTIAGO (4th)

I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and <u>solely</u> on behalf of ZERMAT BUSSINES INC., plaintiff, already identified in the record, appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:

**Background.**

My client filed a criminal complaint that is currently being examined in this proceeding, requesting an investigation into facts that presumably constitute crimes.

The United States Bankruptcy Court for the District of Delaware, at a hearing held on October 17, 2023, the translation of which was added to the record, determined that the claims set forth in the criminal complaint filed by MBI Servicios Financieros Limitada, another plaintiff, were inconsistent with the decision of that court because such claims included the possibility of obtaining damages, all based on the agreement reached in the so-called Chapter 11 proceeding of Corp Group Banking SA et al., and therefore ordered it to withdraw the criminal complaint filed by such company within a non-extendable term and to pay reasonable fees and expenses related to that motion.

Such "reasonable fees and expenses" are higher than the amount of my client's total investment in the bond that gave rise to the conduct alleged as criminal in the complaint, at least those mentioned for MBI Servicios Financieros Limitada.

Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United States Bankruptcy Court for the District of Delaware; and, even though it does not have a residence or domicile in the United States, it may be adversely impacted in that country by the decisions of the aforementioned foreign court.

Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper (owned by one of the defendants), their attorneys stated as follows:

" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds for the complaints and the wrongful attempt to receive an unjust financial benefit through their filing." After MBI's filing, other creditors filed complaints under the same argument as*

*MBI, in response to which the attorneys stated that "we are preparing actions to be filed in the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move to terminate the criminal case, given that their actions have been the same as MBI's and, therefore, these same precedents are applicable to them".... ."*

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, __under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing__.  A copy is attached.  The deadline is set for December 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, which demonstrates the seriousness of the threat and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

__Involuntary dismissal__.

In the circumstances outlined above and __in order to avoid being sanctioned by the aforementioned foreign court__, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

__Reservation of its status as a victim of a crime.__

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity.**

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28, 2023.

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio Rodríguez Oro

Digitally signed by Sergio Rodríguez Oro
Date: 2023.12.07 17:09:28 -03'00'

3

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Zermat Business

Leonardo Duran
Spanish into English
Certification #488876

Verify at www.atanet.org/verify

Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit D-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y

**EN EL OTROSI:** acompaña documento.

**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de ZERMAT BUSSINES INC., querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

**<u>Antecedentes</u>.**

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son superiores al monto de la inversión total de mi representado en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos referidos para MBI Servicios Financieros Limitada.

Mi representado, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.;  y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" …*Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores*

1

*presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de diciembre de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, lo que demuestra la seriedad de la amenaza y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representado recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**Desistimiento no voluntario**.

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representado -ya individualizado en este escrito- me han instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**Reserva de su calidad de víctima penal.**

De manera adicional y por expresa solicitud de mi representado, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por los art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería**.

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, de fecha   28 de noviembre de 2023.

**SÍRVASE SS.:** tenerla por acompañada.

3

# Exhibit E

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.


### DUE PROCESS JUDGE OF SANTIAGO (4th)


I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and
<u>solely</u> on behalf of CB INVESTMENTS SpA, plaintiff, already identified in the record,
appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:


**Background.**


My client filed a criminal complaint that is currently being examined in this
proceeding, requesting an investigation into facts that presumably constitute crimes.


In a civil judgment, the United States Bankruptcy Court for the District of Delaware,
at a hearing held on October 17, 2023, the translation of which was added to the record,
determined that the claims set forth in the criminal complaint filed by MBI Servicios
Financieros Limitada, another plaintiff, were inconsistent with the decision of that
commercial court because such claims included the possibility of obtaining damages, all
based on the agreement reached in the so-called Chapter 11 proceeding of Corp Group
Banking SA et al., and therefore ordered it to withdraw the criminal complaint within a non-
extendable term and to pay reasonable fees and expenses related to that motion.


Such "reasonable fees and expenses" are extremely high relative to the amount of my
client's total investment in the bond that gave rise to the conduct alleged as criminal in the
complaint, at least the amounts mentioned for MBI Servicios Financieros Limitada.


Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is
included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United
States Bankruptcy Court for the District of Delaware; and, even though it does not have a
residence or domicile in the United States, it may be adversely impacted in that country by
the decisions of the aforementioned foreign court.


Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper
(owned by one of the defendants), their attorneys stated as follows:


" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and
the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds
for the complaints and the wrongful attempt to receive an unjust financial benefit through
their filing." After MBI's filing, other creditors filed complaints under the same argument
as MBI, in response to which the attorneys stated that "we are preparing actions to be filed
in the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move
to terminate the criminal case, given that their actions have been the same as MBI's and,
therefore, these same precedents are applicable to them"…. .*"

1

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, **under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing**. A copy is attached. The deadline is set for December 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, <u>which demonstrates the seriousness of the threat</u> and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

**Involuntary dismissal**.

In the circumstances outlined above and **in order to avoid being sanctioned by the aforementioned foreign court**, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

**Reservation of its status as a victim of a crime.**

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

All of the foregoing is with the express exception of claiming damages, as it is not consistent with the agreement reached by the parties and subsequently approved by the United States Bankruptcy Court for the District of Delaware.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity.**

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28, 2023.

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio Rodríguez Oro

Digitally signed by Sergio Rodríguez Oro
Date: 2023.12.11 14:45:29 -03'00'

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

cb investments

Leonardo Duran

June 10, 2024

Date

Verify at www.atanet.org/verify

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit E-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y
**EN EL OTROSI:** acompaña documento.

**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de CB INVESTMENTS SpA, querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

**Antecedentes.**

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, en sentencia civil estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción comercial, ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son extremadamente elevados en relación al monto de la inversión total de mi representada en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos montos referidos para MBI Servicios Financieros Limitada.

Mi representada, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.; y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" *…Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores*

*presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de diciembre de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, <u>lo que demuestra la seriedad de la amenaza</u> y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representada recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**<u>Desistimiento no voluntario</u>**.

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representada -ya individualizada en este escrito- me ha instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**<u>Reserva de su calidad de víctima penal.</u>**

De manera adicional y por expresa solicitud de mi representada, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por los art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Todo ello con la expresa excepción de demandar indemnización de perjuicios, por ser incompatible con lo acordado por las partes y posteriormente aprobado por la Corte de Quiebras del Distrito de Delaware, EEUU.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería**.

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, fecha el 28 de noviembre de 2023.

**SÍRVASE SS.:** tenerla por acompañada.

# Exhibit F

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.


### DUE PROCESS JUDGE OF SANTIAGO (4th)

I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and solely on behalf of INVERSIONES GV S. A., plaintiff, already identified in the record, appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:

**Background.**

My client filed a criminal complaint that is currently being examined in this proceeding, requesting an investigation into facts that presumably constitute crimes.

The United States Bankruptcy Court for the District of Delaware, at a hearing held on October 17, 2023, the translation of which was added to the record, determined that the claims set forth in the criminal complaint filed by MBI Servicios Financieros Limitada, another plaintiff, were inconsistent with the decision of that court because such claims included the possibility of obtaining damages, all based on the agreement reached in the so-called Chapter 11 proceeding of Corp Group Banking SA et al., and therefore ordered it to withdraw the criminal complaint filed by such company within a non-extendable term and to pay reasonable fees and expenses related to that motion.

Such "reasonable fees and expenses" are higher than the amount of my client's total investment in the bond that gave rise to the conduct alleged as criminal in the complaint, at least those mentioned for MBI Servicios Financieros Limitada.

Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United States Bankruptcy Court for the District of Delaware; and, even though it does not have a residence or domicile in the United States, it may be adversely impacted in that country by the decisions of the aforementioned foreign court.

Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper (owned by one of the defendants), their attorneys stated as follows:

" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds for the complaints and the wrongful attempt to receive an unjust financial benefit through their filing." After MBI's filing, other creditors filed complaints under the same argument as MBI, in response to which the attorneys stated that "we are preparing actions to be filed in*

1

*the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move to terminate the criminal case, given that their actions have been the same as MBI's and, therefore, these same precedents are applicable to them"....."*

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, **under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing**. A copy is attached. The deadline is set for December 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, <u>which demonstrates the seriousness of the threat</u> and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

**<u>Involuntary dismissal</u>**.

In the circumstances outlined above and **in order to avoid being sanctioned by the aforementioned foreign court**, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

**<u>Reservation of its status as a victim of a crime.</u>**

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

The foregoing is with the exception of not being able to sue for damages, as this is not consistent with the agreement, subsequently approved, of the Plan of Reorganization of CGB SA.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity.**

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28, 2023.

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio
Rodríguez
Oro

Digitally
signed by
Sergio Rodríguez Oro
Date: 2023.12.12
14:51:27 -03'00'

3

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

inversiones GV

Leonardo Duran

June 10, 2024

Date

Verify at www.atanet.org/verify

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit F-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y
**EN EL OTROSI:** acompaña documento.


**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de INVERSIONES GV S. A., querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

**<u>Antecedentes.</u>**

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son superiores al monto de la inversión total de mi representado en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos referidos para MBI Servicios Financieros Limitada.

Mi representado, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.;  y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" *…Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados*

1

*indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de diciembre de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, <u>lo que demuestra la seriedad de la amenaza</u> y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representado recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**Desistimiento no voluntario**.

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representado -ya individualizado en este escrito- me han instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**Reserva de su calidad de víctima penal.**

De manera adicional y por expresa solicitud de mi representado, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por los art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Lo anterior con la excepción de no poder demandar indemnización de perjuicios, por ser ello incompatible con el acuerdo, posteriormente aprobado, del Plan de Reorganización de CGB SA.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería.**

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, fecha el 28 de noviembre de 2023.

**SÍRVASE SS.:** tenerla por acompañada.

# Exhibit G

**MAIN OBJECT:** involuntary dismissal of criminal complaint; and
**ADDITIONAL PRAYER FOR RELIEF:** document attached.


### DUE PROCESS JUDGE OF SANTIAGO (4th)


I, **SERGIO G. RODRIGUEZ ORO**, attorney, acting as legal representative for and <u>solely</u> on behalf of JUAN CARLOS TALI-HAMIDEH, plaintiff, already identified in the record, appear before Your Honor in Case **RIT No. O-379-2023** and respectfully state:


**<u>Background.</u>**


My client filed a criminal complaint that is currently being examined in this proceeding, requesting an investigation into facts that presumably constitute crimes.


The United States Bankruptcy Court for the District of Delaware, at a hearing held on October 17, 2023, the translation of which was added to the record, determined that the claims set forth in the criminal complaint filed by MBI Servicios Financieros Limitada, another plaintiff, were inconsistent with the decision of that court because such claims included the possibility of obtaining damages, all based on the agreement reached in the so-called Chapter 11 proceeding of Corp Group Banking SA et al., and therefore ordered it to withdraw the criminal complaint filed by such company within a non-extendable term and to pay reasonable fees and expenses related to that motion.


Such "reasonable fees and expenses" are higher than the amount of my client's total investment in the bond that gave rise to the conduct alleged as criminal in the complaint, at least those mentioned for MBI Servicios Financieros Limitada.


Like MBI Servicios Financieros Limitada, my client is a creditor and, therefore, is included in the Chapter 11 proceeding of Corp Group Banking S.A. pending in the United States Bankruptcy Court for the District of Delaware; and, even though it does not have a residence or domicile in the United States, it may be adversely impacted in that country by the decisions of the aforementioned foreign court.


Aware of this situation, on October 17, 2023, in the *Diario La Tercera* newspaper (owned by one of the defendants), their attorneys stated as follows:


" … *Following the decision, Samuel Donoso and Gonzalo Cisternas, counsel for Saieh and the other directors of CGB, stated that "the decision clearly shows the utter lack of grounds for the complaints and the wrongful attempt to receive an unjust financial benefit through their filing." After MBI's filing, other creditors filed complaints under the same argument as MBI, in response to which the attorneys stated that "we are preparing actions to be filed in*

*the Delaware Court against the other plaintiffs, unless they proceed to withdraw and move to terminate the criminal case, given that their actions have been the same as MBI's and, therefore, these same precedents are applicable to them".... ."*

Continuing with the (non-criminal) threats to the plaintiffs, on November 28, 2023, through the undersigned and Mr. Carlos Cortés Guzmán, attorney of record, a letter was received from the American lawyers of the respondents (Selendy Gay PLLC) urging them to drop the criminal complaint, **under the explicit threat of filing an action similar to the one already filed with the Delaware Bankruptcy Court against MBI Servicios Financieros Limitada and a warning that they would be required to pay reasonable fees and costs associated with such filing**. A copy is attached. The deadline is set for December 12, 2023.

Subsequently, in an email dated November 30, 2023, the same attorney at Selendy Gay PLLC (NY), Mr. David S. Flugman, stated his decision to contact the victims directly and not their attorneys, which demonstrates the seriousness of the threat and, furthermore, is a direct violation of Article 107 of the Code of Professional Ethics.

Finally, on December 4, 2023, my client received written correspondence from the same attorneys, with identical statements and warnings.

**Involuntary dismissal**.

In the circumstances outlined above and **in order to avoid being sanctioned by the aforementioned foreign court**, and without having changed its opinion that the investigated facts constitute crimes under Chilean criminal law, my client —already identified herein— has instructed me to involuntarily dismiss the criminal complaint filed in this case.

Accordingly, pursuant to the provisions of article 118 of the Code of Criminal Procedure, in my above-stated capacity, I hereby involuntarily withdraw, in its entirety, the criminal complaint filed in this case.

**Reservation of its status as a victim of a crime.**

Additionally and at the express request of my client, I hereby state that it will exercise its procedural rights as a victim of the acts that are the object of the complaint, in accordance with the provisions of articles 6, 12, 59, 108 et seq., 155, 183, 231, 237, 241, 253, 352 et seq., inter alia, of the Code of Criminal Procedure.

The foregoing is with the exception of not being able to sue for damages, as this is not consistent with the agreement, subsequently approved, of the Plan of Reorganization of CGB SA.

Similarly, this involuntary dismissal should not be construed as a statement of its intention to close the investigation carried out by the Public Prosecutor's Office.

**Legal Capacity.**

Lastly, I wish to point out that the judicial power of attorney granted to me —submitted with the complaint— includes the powers provided for in both paragraphs of art. 7 of the Code of Civil Procedure, among them, the right to dismiss the action in the first instance.

**THEREFORE**, in accordance with the provisions of art. 118 of the Code of Criminal Procedure;

**I REQUEST THAT THE COURT** take into account the involuntary dismissal of the case.

**ADDITIONAL PRAYER FOR RELIEF:** I have enclosed the letter referred to in the main part, dated November 28, 2023.

**I ASK YOUR HONOR**: to please acknowledge it as having been submitted.

Sergio
Rodríguez Oro

Digitally
signed by
Sergio Rodríguez Oro
Date: 2023.12.12
15:14:44 -03'00'

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

juan carlos tali-hamideh

Leonardo Duran

June 10, 2024

Date

Verify at www.atanet.org/verify

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit G-1

**EN LO PRINCIPAL:** desistimiento no voluntario de querella criminal; y
**EN EL OTROSI:** acompaña documento.

**JUEZ DE GARANTÍA DE SANTIAGO** (4º)

**SERGIO G. RODRIGUEZ ORO**, abogado, actuando como mandatario judicial y en representación <u>únicamente</u> de JUAN CARLOS TALIHAMIDEH BITAR, querellante, ya individualizado en autos, en la carpeta judicial **RIT Nº O-379-2023**, a SS. respetuosamente digo:

**Antecedentes.**

Mi representado interpuso querella criminal que se tramita en este proceso, requiriendo la investigación de hechos que presumiblemente constituirían delitos.

La Corte de Quiebras del Distrito de Delaware, Estados Unidos, en audiencia del 17 de octubre de 2023, cuya traducción se acompañó a los autos, estableció que las pretensiones vertidas en la querella criminal interpuesta por MBI Servicios Financieros Limitada, otro querellante, eran incompatibles con lo resuelto ante esa jurisdicción ya que implicaban la posibilidad de obtener indemnizaciones de perjuicios, todo ello en razón del acuerdo alcanzado en el llamado Chapter 11 de Corp Group Banking SA y otros, por lo que le ordenó retirar la querella presentada por esa sociedad en un plazo perentorio y hacerse cargo de los honorarios y gastos razonables referidos a esa moción.

Tales "honorarios y gastos razonables" son superiores al monto de la inversión total de mi representado en el bono que ha dado origen a las conductas imputadas como delictuales en la querella de autos, el menos aquellos referidos para MBI Servicios Financieros Limitada.

Mi representado, al igual que MBI Servicios Financieros Limitada, es acreedor y, por ende, están incluido en el Chapter XI seguido ante la Corte de Quiebras del Distrito de Delaware, Estados Unidos de Norteamérica, de Corp Group Banking S. A.;  y, aunque no tiene residencia ni domicilio en Estados Unidos, se puede ver afectado en ese país con las decisiones del referido tribunal extranjero.

Conocedores de esta situación, con fecha 17 de octubre de 2023, en el Diario La Tercera (de propiedad de uno de los imputados) sus abogados manifestaron lo siguiente:

" …*Tras el dictamen, los abogados de Saieh y demás directivos de CGB, Samuel Donoso y Gonzalo Cisternas, manifestaron que "el fallo da clara cuenta de la absoluta falta de fundamento de las querellas y del intento injusto de obtener un beneficio económico indebido mediante su ejercicio". Tras la presentación de MBI, otros acreedores*

1

*presentaron querellas bajo el mismo argumento de MBI, razón por la cual los abogados indicaron que "estamos preparando las acciones a presentar en la Corte de Delaware en contra de los demás querellantes, salvo que ellos procedan a desistirse e insten por el término de la causa penal, dado que su actuar ha sido el mismo de MBI y, por ende, les son aplicables estos mismos precedentes"….".*

Siguiendo con las amenazas (no delictuales) para con los querellantes, con fecha 28 de noviembre de 2023, a través del suscrito y de don Carlos Cortés Guzmán, abogado patrocinante, se recibió una comunicación de los abogados americanos de los querellados (SelendyGay PLLC) en la cual se le insta a desistirse de la querella criminal interpuesta, **bajo la explicita amenaza de efectuar una presentación similar a la ya efectuada ante la Corte de Quiebras de Delaware en contra de MBI Servicios Financieros Limitada y sujeto a ser apercibidos a pagar los honorarios y costos razonables asociados a esa presentación**. Se acompaña copia. Se señala como fecha tope el 12 de diciembre de 2023.

Posteriormente, por correo electrónico, de fecha 30 de noviembre de 2023, el mismo abogado de SelendyGay PLLC (NY), Sr. David S. Flugman, ha manifestado su decisión de contactar directamente a las víctimas y no a sus abogados, lo que demuestra la seriedad de la amenaza y, de paso, infringiendo derechamente el art. 107 del Código de Ética Profesional.

Por último, el día 04 de diciembre de 2023 mi representado recibió comunicación escrita de los mismos abogados, con idénticas expresiones y apercibimientos.

**Desistimiento no voluntario**.

En esas circunstancias y **a fin de evitar ser objeto de sanciones por el referido tribunal extranjero**, y sin que se haya modificado su convicción en orden a que los hechos investigados constituyen delitos de acuerdo a la legislación penal chilena, mi representado -ya individualizado en este escrito- me han instruido el desistimiento no voluntario de la querella criminal presentada en esta carpeta judicial.

Por ello, de acuerdo a lo dispuesto por el artículo 118 del Código Procesal Penal, en la representación invocada, me desisto no voluntariamente, en todas sus partes, de la querella criminal presentada en autos.

**Reserva de su calidad de víctima penal.**

De manera adicional y por expresa solicitud de mi representado, hago presente que ejercerá sus facultades procesales como víctima de los hechos objeto de la querella, de acuerdo a lo dispuesto por el art. 6, 12, 59, 108 y siguientes, 155, 183, 231, 237, 241, 253, 352 y siguientes, entre otras, del CPP.

Lo anterior con la excepción de no poder demandar indemnización de perjuicios, por ser ello incompatible con el acuerdo, posteriormente aprobado, del Plan de Reorganización de CGB SA.

Asimismo, este desistimiento no voluntario no debe entenderse una manifestación de su intención que se cierre la investigación llevada a cabo por el Ministerio Público.

**Personería**.

Por último, hago presente que en el mandato judicial que me fue otorgado -acompañado al momento de presentar dicha querella- se incluyen las facultades de ambos incisos del art. 7 del CPC, entre ellas, desistirse en primera instancia de la acción deducida.

**POR TANTO**, de acuerdo a lo dispuesto por el art. 118 del CPP;

**RUEGO A SS.** tener presente el desistimiento no voluntario.

**OTROSI:** Adjunto carta referida en lo principal, fecha el 28 de noviembre de 2023.

**SÍRVASE SS.:** tenerla por acompañada.

# Exhibit H

[Logo: PROSECUTOR'S OFFICE, PUBLIC PROSECUTOR'S OFFICE OF CHILE]

## Application Details

**Applicant Data**

| | |
|---|---|
| Applicant Name | SERGIO RODRIGUEZ ORO |
| Taxpayer Identification Number (RUT, according to its Spanish acronym) | 9909965-8 |
| Address | APOQUINDO, N° 3721, 33, Block null, LAS CONDES |
| Application Date | 01/26/2024 |
| E-mail | sro@cortesyrodriguez.cl |
| Telephone | 2632673 |
| Cell Phone | 997480074 |
| Relationship to the Case | PROSECUTING ATTORNEY |
| Type of Communication | EMAIL |

**Case Data**

| | |
|---|---|
| Date of Complaint | 01/20/2023 |
| Case Identification | 0    Institution    null |
| Unique Case Role (RUC, according to its Spanish acronym) | 2310003145-0 |
| Case Name | CELEBRACIÓN DE CONTRATO SIMULADO. ART. 471 N° 2. [CELEBRATION OF SIMULATED CONTRACT. ART. 471 No 2] |
| Prosecutor's Office | LAS CONDES |
| Prosecutor/Resolving Officer | FELIPE ANDRES SEPULVEDA ARAYA |
| Represented Name | EXPORTADORA LOS LIRIOS S.A. |
| Represented Type | VICTIM |

**Petition Data**

| | |
|---|---|
| Folio Number | 150137282737 |
| Application Number | 7488134 |
| Request | Providing background information associated with a case |
| Status | Approved for implementation |

1

[Logo: PROSECUTOR'S OFFICE, PUBLIC PROSECUTOR'S OFFICE OF CHILE]

**Application Record**

| Date | Official | Official Name | Status | Observation | Document |
|------|----------|---------------|--------|-------------|----------|
| 01/26/2024 | 9909965-8 | | Submitted | Portal Request Submission. Dear Prosecutor, on behalf of Mr. Petersen, I am enclosing an accounting expert's report. Regards | |
| 26/01/2024 | 9909965-8 | | Submitted | File attached. | \\fnfileshare02\SIAU\1706289840_INFORMEPERICIALCGB.pdf |
| 26/01/2024 | 12907354-3 | JULIO AHUMADA ACEITUNO | Referred for Resolution | Referral. What is indicated. | |
| 01/29/2024 | 12861710-8 | FELIPE ANDRES SEPULVEDA ARAYA | Approved for Implementation | Approval. Add to folder | |

# ACCOUNTING EXPERT REPORT

## CGB GROUP AND SUBSIDIARIES.

## PURCHASE AND/OR
## SUBSCRIPTION OF SHARES OF
## AFFILIATED COMPANIES

## RUC No. 2310003145-0
## PROSECUTOR MR. FELIPE SEPÚLVEDA ARAYA

**LEONARDO QUINTANILLA ESPINOZA**

**ACCOUNTANT AUDITOR - LEGAL EXPERT**

**CHILEAN FINANCIAL MARKET COMMISSION (CMF, according to its Spanish acronym) REGISTRATION No. 973**

**JANUARY 2024**

<u>**ACCOUNTING EXPERT REPORT**</u>

<u>**CORP GROUP BANKING S.A. AND AFFILIATED COMPANIES**</u>

**LEONARDO QUINTANILLA ESPINOZA**, Accountant Auditor, Expert Witness, registered in the General List of Experts of the Court of Appeals of Santiago, issues a private accounting expert report, related to the facts investigated in judicial file RUC No. 2310003145-0, Roll No. (RIT, according to its Spanish acronym) 379-2023 of the 4th District Court of Santiago, for the crime of granting a simulated contract, related to operations of CORP GROUP BANKING S.A., and affiliated companies.

<u>**BACKGROUND OF THE REPORTING EXPERT**</u>

Accountant and Auditor, with 30 years of professional experience in consulting and forensic auditing. Since 1995, he has been registered in the General List of Experts of the Supreme Court, in the specialty of Auditing, for the Jurisdictions of all the Courts of Appeals of the country, currently in force for the biennium 2022-2023. He is a Certified Public Accountant and Auditor from the Universidad de Santiago.

Since 1995, he has developed his profession independently, providing professional services in financial accounting and tax advisory services to various companies. In addition, he provides permanent advice to liquidators and overseers in insolvency proceedings of liquidation and reorganization.

In his work as Court Assistant, for more than twenty-five years he has accumulated extensive experience in the field, participating in more than one thousand court cases, issuing expert reports at the request of the various Criminal, Civil, Labor, Labor, Family, Tax and Customs Courts, participating in various trials in Criminal Oral Trial Courts.

He is also registered in the Register of Account Inspectors and External Auditors maintained by the Financial Market Commission (CMF).

Domiciled for these purposes at calle Carmencita Nº110, Oficina 11, comuna de Las Condes, Santiago; telephone 2 2502 8590; cell phone +569 9220 6534; e-mail leoquintanillae@gmail.com.

1

## I.- **OBJECTIVE AND SCOPE OF THE EXPERT OPINION**

The Law Firm "Cortés & Rodríguez Abogados" has requested me an accounting report related to the investigation RUC No. 2310003145-0, which is being followed by the Prosecutor Felipe Sepúlveda Araya. According to the request, the objective of this particular expert report should be oriented to examine the documentation provided with the purpose of investigating and verifying the following aspects:

1. The existence of purchase and/or subscription operations of shares of companies affiliated to Corp Group Banking S.A. (CGB), all between the years 2015 to 2020, in which case, to identify them and indicate the background of them in the documents presented.
2. In the event that the existence of such operations can be determined, to inquire about the possible origin of the resources involved in the whole and/or payment of the shares subscribed and/or purchased.
3. In the event that the existence of such operations can be determined, to inquire about the possible destination of the resources involved in the whole and/or payment of the shares subscribed and/or purchased.
4. To perform an analysis of the referred operations and, in particular, aspects such as global amounts, evolution over time and equivalence in US dollars.

Once the necessary documentation, background and information had been gathered, the previously planned audit program was developed, aimed at gathering valid and sufficient evidence to provide clear and objective information on the matter consulted.

## II.- **BACKGROUND EXAMINED**

In the preparation of this report, documents, accounting records and other background information have been examined, as follows:

1 - Subscription Contracts of Shares of Compañía Inmobiliaria y de Inversiones SAGA SpA, by Corp Group Banking S.A.

2 - Subscription Contracts of Shares of Compañía Inmobiliaria y de Inversiones SAGA SpA, by Inversiones GASA SpA.

3 - Sale and Purchase and Transfer Contracts of Shares of Compañía Inmobiliaria y de Inversiones SAGA SpA.

4 - Sale and Purchase and Transfer Contracts of Shares of the company Inversiones CG Financial Chile Dos SpA.

2

5 - General Ledger of Compañía Inmobiliaria y de Inversiones SAGA SpA, fiscal years 2016 to 2020.

6 - General Ledger of Inversiones GASA Limitada, fiscal years 2016 to 2020.

7 - General Ledger of Corp Group Banking S.A., fiscal years 2016 to 2020.

8 - Financial Statements of Corp Group Banking S.A., fiscal years 2015 to 2020 with Independent Auditors Report Deloitte Auditores y Consultores Limitada.

9 - Corp Group Banking S.A. Financial Statements, consolidated interim fiscal period 03/31/2021 - 12/31/20202020, unaudited.

10 - Investigation file RUC No. 2310003145-0.

11 - CORP GROUP BANKING RELATED TRANSACTIONS report, dated 02/28/2021, subscribed by Herman Bennett C. and Juan Andrés Fontaine T.

12 - Prospectus of Updated Issuance of Payment Shares SMU SA, dated January 18, 2017- addressed to Mr. Carlos Pavez Tolosa, Superintendent of Securities and Insurance.

13 - Financial Statements SMU SA, as of December 31, 2017 and 2018.

14 - Minutes of the Ordinary Shareholders' Meeting of April 09, 2020 of SMU SA.

15 - Based on the detailed documentation, this report was prepared.

## III.- **DETAILED EXPERT REPORT**

## III.I.- **CONTEXT**

The investigated facts refer to the investigation RUC No. 2310003145-0, in which there are a series of criminal complaints filed by about forty different people and sponsored by several lawyers, among them those of the law firm "Cortés & Rodríguez Abogados".

In these submissions, in relation to the context in which the events under investigation took place, the following is stated:

*"Corp Group Banking S. A. issued in May 2013 a bond (ISIN USP3192525AD54 and name Corp Grp Banking 13/23) in the amount of US$ 500,000,000.-, with an interest rate of 6.750% maturing on March 15, 2023. Interest would be paid in March and September of each year. The possibility of redeeming the bonds on March 15, 2018 was established."*

The bond was called Bond 13/23 6.75.

It is noted that negative covenants were established, among which are the so-called *payment limitations*: "No dividends may be paid or distributions made in respect of Corp Group Shares or its

3

Restricted Subsidiaries, subject to certain exceptions; no purchases or acquisitions (in any manner) of Equity Shares of Corp Group or its Restricted Subsidiaries may be made; no payment of subordinated debt or incurrence of additional debt may be made, nor restricted payments, or creation of liens, or related party transactions, prior to any scheduled final maturity of any debt, prior to the scheduled repayment or scheduled sinking fund payment, as the case may be."

*Limitations on transactions with Affiliates* were also established: "No related transactions (neither purchase nor sale nor lease, etc.) may be entered into for the benefit of any Affiliate of Corp Group, unless: The terms of such transaction is more favorable to Corp Group than to third parties; the transaction involves payments of more than US$10.- million, must be approved by the members of Corp Group's Board of Directors; and the transaction involves payments of more than US$20.- million, a favorable opinion as to fairness must be given by an independent financial advisor."

*"Between 2016 and 2020, the defendant arranged for CGB to execute with its affiliated companies SAGA and GASA a series of contracts for the subscription and purchase and sale of SAGA shares, all of which are simulated, since the real intention of the controller was to withdraw liquidity (money) from CGB and in no case to acquire the aforementioned shares. Then said resources, once in SAGA's assets, were used by the defendant for his own benefit or for the benefit of one of his family companies. This involved the execution of a series of share transfer contracts for a total amount of approximately $164,735,000,000,000. It meant an emptying of CGB's assets to the detriment of the bondholders. That is to say, the creditors of the CGB 13/23 Bond. In conclusion, the issuer of the bond emptied its entire assets."*

*"As a result of such transactions, CGB assets were emptied, suffering an asset damage derived from the acquisition of shares at a purchase price higher than the economic value that such investment represents."*

In this regard, in particular the performance of operations with affiliated companies, we find in the investigation file the statement of Alejandro Zavala Destefani, Assistant Manager of Accounting since 2011 of CGB, who states the following:

*". . . Also in 2014, I remember seeing for the first time the use of the mechanism that allowed the bond, in the sense of investing in certain financial assets such as the purchase of bank shares. . . .*

*. . . In 2016, the merger of Banco Corp Banca and Itaú Chile finally took place, but the market situation still did not allow the release of the bond restriction, therefore, CorpGroup Banking S.A. began to acquire shares of Compañía Inmobiliaria y de Inversiones SAGA SpA..., affiliated company that within*

4

*its assets held shares of Banco Itaú Corp Banca, which I understand maintains compliance with the restriction, since although it buys shares of a company, the latter holds shares of the bank, a situation that was permitted.*

*. . . since the minimum number of shares required for the bond had been reached, Corp Group Banking S.A. was prevented from selling, and therefore resorted to Compañía Inmobiliaria y de Inversiones SAGA SpA. . . .*

*. . . All this triggered several operations of purchase and sale of shares of Compañía Inmobiliaria y de Inversiones SAGA SpA, by Corp Group Banking S.A. to justify the transfer of funds to Corp Group Interhold SpA, related to the dividends withheld by the custodian, they were not considered a breach of the restrictions of the bond. . . .*

*I recall that these operations were repeated until 2020, the last time dividends were received from the bank before entering the Chapter 11 process in the United States."*

Likewise, there is the statement of Fabián Salinas Díaz, Chief Accountant of Holding Corp Group, who states the following:

*"Regarding the purchase and sale of shares made by Corp Group Banking to GASA for SAGA shares, I can state that I remember that they could have started in 2016, and received the purchase and sale contracts and registered them in the Banking accounting, increasing the investment in SAGA against bank, and in GASA in turn, receiving money in bank account and lowering the SAGA investment.*

*Then, the money lodged in GASA's account went to SAGA by way of a capital increase, which was also carried out by Corp Group Banking as a shareholder of SAGA. After making some payments to its own obligations, money was transferred to Corp Group Inversiones Limitada, a company that in turn transferred money downstream to Corp Group Financial SpA, and this to Corp Group Inversiones Limitada CPA and this to Interhold, the latter being the one who made the respective payments to its obligations, mainly in the payment of the Itaú Nassau line, which was guaranteed with shares of the Bank and which were owned by Banking and SAGA.*

*These operations were carried out each time SAGA's shares were bought and sold and its capital was increased."*

The investigation for the repeated offense of granting a simulated contract is being pursued against:

i) Álvaro José Saieh Bendeck

ii) Jorge Andrés Saieh Guzmán

iii) María Catalina Saieh Guzmán

iv) Cristóbal Alejandro Cerda Meneses

v) María Pilar Dañobeitia Estades

According to what was indicated by said witnesses, the operations of subscription and/or purchase of shares would have been developed between the years 2014 to 2020, being denominated as a *mechanism* by the referred executives.

Likewise, the operations (or the mechanism) would involve a set of companies, all of them affiliated to Corp Group Holding, such as Corp Group Banking S.A. (CGB), Compañía Inmobiliaria y de Inversiones SAGA SpA (SAGA), Inversiones GASA Limitada (GASA), Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) and Corp Group Interhold SpA (INTERHOLD).

The following is the background of the development of the operations investigated according to the documentation, accounting records and other information obtained during the course of the expert investigation.

### III.II.- <u>GENERAL BACKGROUND.</u>

According to the information on the control relationships between the companies, based on the data submitted by Mr. Álvaro Saieh Bendeck to the U.S. Securities and Exchange Commission 7 ("SEC"), dated November 27, 2020, the corporate structure is as follows:

**CGBK - Saieh Group Organizational Structure (November 2020)**
**Source: Annual Financial Statements - Internal Development**



Although the information gathered does not allow determining the exact percentages of control, the specific relationships are as follows:

- CorpGroup Interhold SpA (Interhold) is the majority shareholder of Corp Group Banking S.A. (CGB).

- CorpGroup Holding Inversiones Limitada Sociedad en Comandita por Acciones (CGHIL) is the majority shareholder of INTERHOLD.

- CorpGroup Financial S.A. (CGF) is the controlling shareholder of CGHIL.

- Inversiones GASA Limitada (GASA) is the sole shareholder of Compañía de Inversiones SAGA SpA (SAGA).

- CorpGroup Inversiones Limitada (INVERSIONES) is the majority shareholder of FINANCIAL and GASA.

- CGHI is the majority shareholder of INVERSIONES.

- Mr. Álvaro Saieh Bendeck is the Chairman and Controlling Person of CGHI and director of CGF.

The context of the investigated facts has its origin in the issuance of the bond called CGB 13/23 issued by CORPGROUP BANKING S.A., in the month of May 2013 for the amount of US$500,000,000.- with an interest rate of 6.75% maturing on 03/15/2023, with interest payments in March and September of each year.

In this regard, a number of plaintiff bondholders have observed and questioned a series of operations carried out by CGB, related to the purchase and sale of shares of the affiliated company SAGA, which would have caused the emptying of assets, which was ultimately prevented from being made effective by the obligation assumed with the bondholders.

According to what was referred to by the executives Mr. Zavala Destefani and Mr. Salinas Díaz, the operations that were part of the mechanism developed almost from the beginning of the issuance of the CGB 13/23 bond.

## III.III. TRANSACTIONS FOR THE PURCHASE OF SHARES OF CG FINANCIAL CHILE DOS SPA.

### III.III.I DETAILS OF THE TRANSACTIONS

The following points of this report analyze and set forth the background of the transactions for the purchase of shares of affiliated companies carried out by CORPGROUP BANKING S.A. starting with the shares of CG Financial Chile DOS SpA (FINANCIAL DOS).

**TRANSACTION NO. I.- PURCHASE AND SALE DATED 12/03/2015.**

In NOTE 11 of the Interim Consolidated Interim Financial Statements of CorpGroup Banking S.A., for the six-month periods as of June 30, 2015 and 2014, with report of independent auditors Deloitte Auditores y Consultores Limitada, the following is reported:

11. INVESTMENTS ACCOUNTED FOR USING THE EQUITY METHOD

a. The detail of the associated investment as of June 30, 2015 is as follows:

| Tax ID No. | Company | Country of origin | Currency | Equity % | Corporate property $T (in thousands of Chilean pesos) | Result of period $T | Accrued income $T | Asset value $T |
|---|---|---|---|---|---|---|---|---|
| 96751830-1 | Corp Group Vida Chile S.A. | Chile | CLP | 22.72% | 214,308,869 | 20,946,998 | 4,758,362 | 48,682,827 |
| 76257538-81 | FIP Corp Life | Chile | CLP | 42.53% | 67,906,231 | 1,838,411 | 781,949 | 28,883,204 |
| 76413808-2 | Inversiones CG Financial Chile Dos SpA (1) | Chile | CLP | 47.71% | 63,118,511 | (1,045,852) | (435,498) | 30,115,987 |
| Total | | | | | | | 5,104,813 | 107,682,018 |

1. On March 12, 2015, April 9, 2015 and June 15, 2015, the Company purchased from Inversiones CorpGroup Interhold Ltda. a total of 27,996,378,975 shares of Inversiones CG Financial Chile Dos S.p.A. As a result of this transaction, the Company acquired a 3.952% indirect interest in CorpBanca Colombia. The effect of this transaction was recorded with a credit to other reserves in shareholders' equity as it corresponds to a transaction between entities under common control (see Note 16 on the financial statements).

According to a purchase and sale agreement and transfer of shares, CGB purchases 24,484,877,154 shares of INVERSIONES CG FINANCIAL CHILE DOS SpA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $36,362,000,000, which the buyer would pay no later than 3/31/2015 in cash, the seller declaring to receive them in full conformity.

The purchase corresponds to 24.56% of CG Financial Chile Dos SpA from Inversiones CorpGroup Interhold, shares of the underlying asset CorpBanca Colombia with a pledge, guarantee and joint and several co-debt in favor of Itau for financing Inversiones CorpGroup Interhold.

Date: 03/31/2015

Shares: 24,484,877,154

Buyer CGB

Seller: INTERHOLD

Price: $36,362,000,000

**OPERATION NO. II.        SALE AND PURCHASE DATED 09/04/2015**

A stock sale and purchase agreement is presented.

According to the share purchase and sale and transfer agreement, CGB purchases 416,899,653 shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $600,000,000, which the buyer pays in cash at that time, and which the seller declares to receive in full conformity.

The purchase corresponds to 3.95% of CG Financial Chile Dos SpA from Inversiones Corpgroup Interhold, shares of the underlying asset Corpbanca Colombia with pledge, guarantee and joint and several co-debt in favor of Itau for financing Inversiones Corpgroup Interhold.

Date: 04/09/2015

Shares: 416,899,653

Buyer CGB

Seller: INTERHOLD

Price: $600,000,000

**OPERATION NO. III.          SALE AND PURCHASE DATED 07/31/2015**

A stock purchase and sale agreement is presented.

According to the share purchase and sale and transfer agreement, CGB purchases 24,282,498,681 shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $38,200,000,000, which the buyer pays in cash at that time, and which the seller declares to receive in full conformity.

The purchase corresponds to 24.4% of CG Financial Chile Dos SpA from Inversiones Corpgroup Interhold, shares of the underlying asset Corpbanca Colombia with pledge, guarantee and joint and several co-debt in favor of Itau for financing Inversiones Corpgroup Interhold.

Date: 07/31/2015

Shares: 24,282,498,681

Buyer CGB

Seller: INTERHOLD

Price: $38,200,000,000

**OPERATION NO. IV.          SALE AND PURCHASE DATED 11/01//2015**

According to the share purchase and sale and transfer agreement, CGB purchases shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $14,430,000,000, which the buyer pays in cash at that time, and which the seller declares to receive in full conformity.

The purchase corresponds to 9.78% of CG Financial Chile Dos SpA from Inversiones Corpgroup Interhold Limitada, shares of the underlying asset Corpbanca Colombia with pledge, guarantee and joint and several co-debt in favor of Itau for financing Inversiones Corpgroup Interhold.

Date: 11/01/2015

Shares: *

Buyer CGB

Seller: INTERHOLD

Price: $14,430,000,000

10

With respect to this transaction, the contract and/or document evidencing the transfer of shares has not been available, and the information obtained from the Company's financial statements shows that the transaction was carried out during Q3, and therefore the date indicated corresponds to the beginning of the fourth quarter.

**OPERATION NO. V.          SALE AND PURCHASE DATED 03/16/2015**

According to the share purchase and sale and transfer agreement, CGB purchases 16,206,938,723 shares of INVERSIONES CG FINANCIAL CHILE DOS SPA, owned by Inversiones CorpGroup Interhold Limitada, for a price of $26,141,676,000, which the buyer pays in cash at that time, and which the seller declares to receive in full conformity.

The purchase corresponds to 17.22% of CG Financial Chile Dos SpA (it reaches 100%) from Inversiones Corpgroup Interhold Limitada, shares of the underlying asset Corpbanca Colombia with pledge, guarantee and joint and several co-debt in favor of Itau for financing Inversiones Corpgroup Interhold.

Date: 03/16/2015

Shares: 16,206,938,723

Buyer CGB

Seller: INTERHOLD

Price: $26,141,676,000

**III.III.II.          SUMMARY OF FINANCIAL DOS SHARES OPERATIONS**

Consequently, from the review carried out, it is verified that during the period from March 2015 to March 2016, the company CORP GROUP BANKING S.A., acquires shares from the affiliated company CG FINANCIAL CHILE DOS SPA, for a total amount of **$115,733,676,000**, as detailed as follows:

| NO. | DETAIL | DATE | NO. OF SHARES | VALUES |
|---|---|---|---|---|
| **SHARES PURCHASE INVERSIONS CG FINANCIAL CHILE DOS SPA** | | | | |
| I | Inversiones CorpGroup Interhold Limitada | 03-12-2015 | 24,484,877,154 | 36,362,000,000 |
| II | Inversiones CorpGroup Interhold Limitada | 04-09-2015 | 416,899,653 | 600,000,000 |

| III | Inversiones CorpGroup Interhold Limitada | 07-31-2015- | 22,282,498,681 | 38,200,000,000 |
|-----|------------------------------------------|-------------|----------------|----------------|
| IV | Inversiones CorpGroup Interhold Limitada | 11-01-2015 | | 14,430,000,000 |
| V | Inversiones CorpGroup Interhold Limitada | 03-16-2016 | 16,206,938,723 | 26,141,676,000 |
| | **TOTAL AMOUNT** | | | **115,733,676,000** |

## SAGA SHARES PURCHASE TRANSACTION

### III.IV.I.        OPERATION DETAILS

From the background information examined, it appears that during the period from January 2016 to December 2020, the company CORP GROUP BANKING S.A., carried out several transactions related to the affiliated company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SpA, both of first issue shares and purchases from other affiliated companies.

### III.IV.I.II.        SUBSCRIPTION OF SHARES FROM THE REAL ESTATE AND INVESTMENT COMPANY SAGA SpA.

### II.IV.I.II.I.        SUMMARY

The documents examined verify the existence of transactions whereby Corp Group Banking S.A. subscribes shares of the affiliated company Compañía Inmobiliaria y de Inversiones SAGA SpA, as follows:

| DATE | NO. OF SHARES | AMOUNT $ | PRICE PER SHARE | SAGA INCOME ACCOUNT | DESTINATION IN SAGA |
|------|---------------|----------|-----------------|---------------------|---------------------|
| 04-11-2016 | 720,762,604 | 1,841,832,001 | 2.56 | Book Account 2.0.18.02 Current Account Financial Statements Indexation Unit (UF) | NO ACTUAL INCOME |
| 11-04-2016 | 2,363,628,387 | 6,040,000,380 | 2.56 | Book Account 2.0.18.02 Current Account Financial Statements Indexation Unit (UF) | NO ACTUAL INCOME |
| 06-06-2016 | 15,667,199,683 | 40,035,858,666 | 2.56 | Book Account 2.0.11.03 Obligation Banco Estado Pesos | LOAN USD TO SMU S.A. |

12

| 06-13-2016 | 352.196.261 | 900,000,001 | 2.56 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO GASA |
|---|---|---|---|---|---|
| 07-01-2016 | 23.479,751 | 60,000,001 | 2.56 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO INV GASA LTDA |
| 07-25-2016 | 5,098,147,058 | 13,027,771,344 | 2.56 | Book account 1.0.11.10 Banco Corpbanca $01 | 2414 TRANSFER TO GASA |
| 08-01-2016 | 2,389,486,164 | 5,900,000,000 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | 2471 CG INVERSIONES LTDA |
| 10-27-2016 | 6,863,968,363 | 16,948,168,170 | 2,47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 11-09-2016 | 2,024,988,274 | 4,999,999,999 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 11-28-2016 | 3,239,981,239 | 8,000,000,000 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 12-13-2016 | 809,995,310 | 2,000,000,001 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 12-16-2016 | 2,429,985,929 | 6,000,000,000 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 12-29-2016 | 1,073,243,785 | 2,649,999,999 | 2.47 | Book account 1.0.11.10 Banco Corpbanca $01 | TRANSFER TO CG INVERSIONES LTDA |
| 02-13-2018 | 628,098,004 | 1,380,804,999 | 2.20 | Current account receivable current financial statements | NO ACTUAL INCOME |
| 02-15-2018 | 461,392,901 | 1,014,322,001 | 2.20 | Current account receivable current financial statements | NO ACTUAL INCOME |
| 02-19-2018 | 472,169,191 | 1,038,012,500 | 2.20 | Current account receivable current financial statements | NO ACTUAL INCOME |
| 04-13-2018 | 4,076,860,267 | 8,962,532,919 | 2.20 | Banco Itaú-Corpbanca Pesos 01 | TRANSFER TO CG Inversiones LTDA |
| 04-01-2019 | 1,005,064,520 | 2,000,000,000 | 1.99 | Banco Itaú-Corpbanca Pesos 01 | TRANSFER to Corp Group Inversiones Ltda. |
| **TOTAL AMOUNT** | **49,700,647,691** | **122,799,302,981** | | | |

**-CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca US$" in the amount of $1,841,832,001. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**Receives 3,000,000 USD as COMP**" in the amount of $7,257,668,400, recorded on 03/15/2016.

In this case there is an inconsistency in the accounting record, since CGB records the outflow from the bank current account while, in SAGA, the income is not recorded but is instead accounted for as current account in the income statement.

## OPERATION NO. VII: SUBSCRIPTION DATED 04/11/2016. TITLE NO. 8

According to the share subscription agreement, CGB subscribes 2,363,628,387 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 04/11/2016, for the value of $2.5553934 each, so that the value of the shares subscribed amounts to the sum of $6,040,000,380, which the subscriber pays in cash.

- **SAGA accounting record**

In accounting terms, the transaction is recorded in SAGA in the "Income statement (EERR) Current Account" account, that is, there is no actual cash inflow recorded through the bank accounts.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $6,040,000,380. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as **"Settled agreement at 3 days rate [cut-off text]"** for the amount of $6,601,518,000, recorded on 04/11/2016.

In this case there is an inconsistency in the accounting record, since CGB records the outflow from the bank current account while, in SAGA, the income is not recorded but is instead accounted for as current account in the income statement.

## OPERATION NO. VIII: SUBSCRIPTION DATED 06/06/2016. TITLE NO. 10

According to the share subscription agreement, CGB subscribes 15,667,199,683 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 04/11/2016, for the value of $2.5553934 each, so that the value of the shares subscribed amounts to the sum of $40,035,858,666, which the subscriber pays in cash.

14

- **SAGA accounting record**

For accounting purposes, the transaction is recorded in SAGA in the book account "Obligation Banco Estado Pesos" whereby a loan granted by BECH to SAGA in the amount of $40,000,000,000,000 is paid. With the proceeds of the BECH loan, a loan granted by SAGA to SMU is recorded with the entry "**USD LOAN TO SMU S.A.**" in the amount of $37,000,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Estado $" in the amount of $40,035,858,666. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**SALE OF SHARES [cut-off text]**" in the amount of $40,572,107,438.

**OPERATION NO. IX: SUBSCRIPTION DATED 06/13/2016. TITLE NO. 11**

According to the share subscription agreement, CGB subscribes 352,196,261 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 04/11/2016, for the value of $2.5553934 each, so that the value of the shares subscribed amounts to the sum of $900,000,001, which the subscriber pays in cash.

- **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $900,000,001. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO GASA**" in the amount of $900,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $900,000,001. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**SETTLED AGREEMENT AT 3 DAYS RATE [cut-off text]**" in the amount of $950,209,000.

**OPERATION NO. X: SUBSCRIPTION DATED 07/01/2016. TITLE NO. 12**

According to the share subscription agreement, CGB subscribes 23,479,751 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on

04/11/2016, for the value of $2.5553934 each, so that the value of the shares subscribed amounts to the sum of $60,000,001, which the subscriber pays in cash.

-   **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $60,000,001. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO INV GASA**" in the amount of $118,000,000.

-   **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $60,000,001. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**Settled agreement at 3 days rate [cut-off text]**" in the amount of $950,209,000.

### OPERATION NO. XI: SUBSCRIPTION DATED 07/25/2016. TITLE NO. 13

According to the share subscription agreement, CGB subscribes 5,098,147,058 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 04/11/2016, for the value of $2.5553934 each, so that the value of the shares subscribed amounts to the sum of $13,027,771,344, which the subscriber pays in cash.

-   **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $13,027,771,344. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO INV GASA LTDA.**" in the amount of $13,027,000,000.

-   **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $13,027,771,344. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**SANTANDER CREDIT**" in the amount of $19,125,893,200.

### OPERATION NO. XII: SUBSCRIPTION DATED 08/01/2016. TITLE NO. 20

According to the share subscription agreement, CGB subscribes 2,389,486,164 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $5,900,000,000, which the subscriber pays in cash.

- **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $5,900,000,000. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO CG INVERSIONES LTDA.**" in the amount of $5,900,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $5,900,000,000. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**Santander Credit**" in the amount of $19,125,893,200 (the same case as before).

**OPERATION NO. XIII: SUBSCRIPTION DATED 10/27/2016. TITLE NO. 18**

According to the share subscription agreement, CGB subscribes 6,863,968,363 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $16,948,168,170, which the subscriber pays in cash.

- **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $16,948,168,170. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO CG INVERSIONES LTDA.**" in the amount of $16,948,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $16,948,168,170. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**SETTLED AGREEMENT AT 1 DAY RATE**" in the amount of $60,004,600,000.

17

**OPERATION NO. XIV: SUBSCRIPTION DATED 11/09/2016. TITLE NO. 14**

According to the share subscription agreement, CGB subscribes 2,024,988,274 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $4,999,999,999, which the subscriber pays in cash.

- **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $5,000,000,000. With the amount available as a result of this income, an outflow is recorded as "TRANSFER TO CG INVERSIONES LTDA." in the amount of $6,010,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $5,000,000,000. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "SETTLED AGREEMENT AT 1 DAY RATE" in the amount of $13,701,141,666.

**OPERATION NO. XV: SUBSCRIPTION DATED 11/28/2016. TITLE NO. 21**

According to the share subscription agreement, CGB subscribes 3,239,981,239 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $8,000,000,000, which the subscriber pays in cash.

- **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $8,000,000,000. With the amount available as a result of this income, an outflow is recorded as "TRANSFER TO CG INVERSIONES LTDA." in the amount of $8,000,000,000.

- **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $8,000,000,000. The origin of the funds available in

18

the bank current account to carry out the transaction corresponds to an income recorded as "**SETTLED AGREEMENT AT 3 DAY RATE**" in the amount of $18.754.687.500.

## OPERATION NO. XVI: SUBSCRIPTION DATED 12/13/2016. TITLE NO. 22

According to the share subscription agreement, CGB subscribes 809,995,310 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $2,000,000,001, which the subscriber pays in cash.

-   **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $2,000,000,000. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO CG INVERSIONES LTDA.**" in the amount of $2,000,000,000.

-   **CGB accounting record**

For accounting purposes, the transaction is recorded in CGB with an outflow from the book account "Banco Corpbanca 01 $" in the amount of $2,000,000,000. The origin of the funds available in the bank current account to carry out the transaction corresponds to an income recorded as "**SETTLED AGREEMENT AT 1 DAY RATE**" in the amount of $10,800,900,000.

## OPERATION NO. XVII: SUBSCRIPTION DATED 12/16/2016. TITLE NO. 23

According to the share subscription agreement, CGB subscribes 2,429,985,929 shares of SAGA, corresponding to the capital increase agreed at the Extraordinary Shareholders' Meeting held on 07/27/2016, for the value of $2.4691501 each, so that the value of the shares subscribed amounts to the sum of $6,000,000,000, which the subscriber pays in cash.

-   **SAGA accounting record**

For accounting purposes, the operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with income in the bank current account in the amount of $6,000,000,000. With the amount available as a result of this income, an outflow is recorded as "**TRANSFER TO CG INVERSIONES LTDA.**" in the amount of $6,000,000,000.

-   **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca 01 $" for the amount of $6,000,000,000. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"LIQUIDA PACTO 1 DIA TASA" [SETTLED AGREEMENT AT 1 DAY RATE]** for the amount of $8,800,733,333.

**TRANSACTION NO. XVIII — SUBSCRIPTION DATED 12/29/2016. TITLE No. 25.**

According to the share subscription contract, CGB subscribes to 1,073,243,785 SAGA shares, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 07/27/2016, at a value of $2.4691501 each. Therefore, the value of the subscribed shares amounts to $2,649,999,999, which the subscriber pays in cash.

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Banco Corpbanca 01 $" with an income in the bank checking account for the amount of $2,650,000,000. With the amount available from this income, an expenditure is recorded with the description **"TO CG INVERSIONES LTDA."** for the sum of $2,650,000,000.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca 01 $" for the amount of $2,650,000,000. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"LIQUIDA PACTO 1 DIA TASA" [SETTLED AGREEMENT AT 1 DAY RATE]** for the amount of $2,800,700,000.

**TRANSACTION No. XIX — SUBSCRIPTION DATED 02/13/2018. TITLE No. 30.**

According to the share subscription contract, CGB subscribes to 628,098,004 SAGA shares, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 02/13/2018, at a value of $2.198391 each. Therefore, the value of the subscribed shares amounts to $1,380,804,999, which the subscriber pays in cash.

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Cuenta Corriente por Cobrar EERR Corrientes" [Current Account Receivable in the Income Statements and Profitability Currents], meaning no effective income of money is recorded through the bank accounts.

- **Accounting Record in CGB**

20

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca USD 01" for the amount of $1,380,804,999. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"INGRESO DIVISA OPCION CAL" [FOREIGN CURRENCY INCOME OPTION]** for the amount of $3,522,040,210.

In this case, there is an inconsistency in the accounting record since CGB records the expenditure from the bank checking account while SAGA does not record the income but rather accounts for it as a current account in the Income Statements and Profitability (EERR). The destination of the funds withdrawn in CGB for this operation is unknown.

**TRANSACTION No. XX - SUBSCRIPTION DATED 02/15/2018.**

According to the share subscription contract, CGB subscribes to 461,392,901 SAGA shares, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 02/13/2018, at a value of $2.198391 each. Therefore, the value of the subscribed shares amounts to $1,014,322,001, which the subscriber pays in cash

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Cuenta Corriente por Cobrar EERR Corrientes" [Current Account Receivable in the Income Statements and Profitability Currents] meaning no effective income of money is recorded through the bank accounts.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca USD 01" for the amount of $1,014,322,001. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"INGRESO DIVISA OPCION CAL" [FOREIGN CURRENCY INCOME OPTION]** for the amount of $2,732,675,200.

In this case, there is an inconsistency in the accounting record since CGB records the expenditure from the bank checking account while SAGA does not record the income, but rather it is accounted for as a current account in the Income Statements and Profitability (EERR). The destination of the funds withdrawn in CGB for this operation is unknown.

**TRANSACTION No. XXI — SUBSCRIPTION DATED 02/19/2018. TITLE No. 32.**

According to the share subscription contract, CGB subscribes to 472,169,191 SAGA shares, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 02/13/2018, at a value of $2.198391 each. Therefore, the value of the subscribed shares amounts to $1,038,012,500, which the subscriber pays in cash.

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Current Account Receivable in the Income Statements and Profitability (EERR) Currents," meaning no actual income of money is recorded through the bank accounts.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca USD 01" for the amount of $1,038,012,500. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"INGRESO DIVISA OPCION CAL"** **[FOREIGN CURRENCY INCOME OPTION]** for the amount of $2,732,675,200 (same as the previous case).

In this case, there is an inconsistency in the accounting record since CGB records the expenditure from the bank checking account while SAGA does not record the income, but rather it is accounted for as a current account in the Income Statements and Profitability (EERR). The destination of the funds withdrawn in CGB for this operation is unknown.

**TRANSACTION No. XXII — SUBSCRIPTION DATED 04/13/2018. TITLE No. 41.**

According to the share subscription contract, CGB subscribes to 4,076,860,267 SAGA, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 03/13/2018, at a value of $2.198391 each. Therefore, the value of the subscribed shares amounts to $8,962,532,919, which the subscriber pays in cash

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Banco Itau-Corpbanca Pesos 01" with an income in the bank checking account for the amount of $8,400,000,000 on 04/13/2018 and $562,532,917 on 04/20/2018. With the available amount from this income, an expenditure is recorded with the description **"TO CG INVERSIONES LTDA."** for the sum of $8,400,000,000 on 04/13/2018 and $565,000,000 on 04/20/2018.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca Pesos 02" for the amount of $8,400,000,000 on 04/13/2018 and $562,532,917 on 04/20/2018. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"BTG PACTUAL CHILE S.A PESOS"** for the amount of $9,000,000,000.

**TRANSACTION No. XXIII — SUBSCRIPTION DATED 04/01/2019. TITLE No. 46.**

According to the share subscription agreement, CGB subscribes to 1,005,064,520 SAGA shares, corresponding to the capital increase agreed upon at the Extraordinary Shareholders' Meeting on 04/04/2019, at a value of $1.989922 each. Therefore, the value of the subscribed shares amounts to $2,000,000,000, which the subscriber pays in cash.

- **Accounting Record in SAGA**

The operation is recorded in SAGA in the book account "Banco Itau-Corpbanca Pesos 01" with an income in the bank checking account for the amount of $2,000,000,000. With the available amount from this income, an expenditure is recorded with the description **"TO CG INVERSIONES LTDA."** for the sum of $2,000,000,000.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca Pesos 01" for the amount of $2,000,000,000. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"LIQUIDA PACTO 3 DIAS TASA 0.20" [SETTLED AGREEMENT AT 1 DAY 0.20 RATE]** for the amount of $12,002,400,000.

In this regard, a copy of the SAGA Share Subscription Agreements is attached to this report as **Annex No. 1.**

**III.IV.II.- SUMMARY.**

Consequently, the review carried out verifies that during the period from April 2016 to April 2019, the company CORP GROUP BANKING S.A. subscribed to a total of **49,700,647,691** shares of the related company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, for a total of **$122,799,302,981**. This is detailed as follows:

23

| OPERATION No. | DATE | SHARE AMOUNT | SUBSCRIPTION AMOUNT | DESTINATION AT SAGA | DESTINATION AT SAGA AMOUNT |
|---|---|---|---|---|---|
| VI | 04/11/2016 | 720,762,604 | 1,841,832,001 | NO ACTUAL INCOME | 0 |
| VII | 04/11/2016 | 2,363,628,387 | 6,040,000,380 | NO ACTUAL INCOME | 0 |
| VIII | 06/06/2016 | 15,667,199,683 | 40,035,858,666 | PTMO USD A SMU S.A. | 37,000,000,000 |
| IX | 06/13/2016 | 352,196,261 | 900,000,001 | TRASPASO A GASA [TRANSFER TO GASA] | 900,000,000 |
| X | 07/01/2016 | 23,479,751 | 60,000,001 | TO A INV GASA LTDA. [TRANSFER TO INV GASA LTDA] | 118,000,000 |
| XI | 07/25/2016 | 5,098,147,058 | 13,027,771,344 | TO A INV GASA LTDA. [TRANSFER TO INV GASA LTDA] | 13,027,000,000 |
| XII | 08/01/2016 | 2,389,486,164 | 5,900,000,000 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 5,900,000,000 |
| XIII | 10/27/2016 | 6,863,968,363 | 16,948,168,170 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 16,948,000,000 |
| XIV | 11/09/2016 | 2,024,988,274 | 4,999,999,999 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 6,010,000,000 |
| XV | 11/28/2016 | 3,239,981,239 | 8,000,000,000 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 8,000,000,000 |
| XVI | 12/13/2016 | 809,995,310 | 2,000,000,001 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 2,000,000,000 |
| XVII | 12/16/2016 | 2,429,985,929 | 6,000,000,000 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 6,000,000,000 |
| XVIII | 12/29/2016 | 1,073,243,785 | 2,649,999,999 | TO A CG INVERSIONES LTDA [TRANSFER TO CG INVERSIONES LTDA] | 2,650,000,000 |
| XIX | 02/13/2018 | 628,098,004 | 1,380,804,999 | NO ACTUAL INCOME | 0 |
| XX | 02/15/2018 | 461,392,901 | 1,014,322,001 | NO ACTUAL INCOME | 0 |
| XXI | 02/19/2018 | 472,169,191 | 1,038,012,500 | NO ACTUAL INCOME | 0 |
| XXII | 04/13/2018 | 4,076,860,267 | 8,962,532,919 | TO A CG Inversiones LTDA. [TRANSFER TO CG Inversiones LTDA] | 8,400,000,000 |
| | | | | TO A CG Inversiones LTDA. [TRANSFER TO CG Inversiones LTDA] | 565,000,000 |
| XXIII | 04/01/2019 | 1,005,064,520 | 2,000,000,000 | TO CorpGroup Inversiones Ltda. [TRANSFER TO CorpGroup Inversiones Ltda.] | 2,000,000,000 |
| TOTAL | | 49,700,647,691 | 122,799,302,981 | | 109,518,000,000 |

Additionally, it was verified that the source of funds in CORP GROUP BANKING S.A. to finance the share subscription transactions corresponds to the following details:

| No. | DATE | SHARE AMOUNT | VALUES | SOURCE AT CGB | SOURCE AT CGB AMOUNT |
|---|---|---|---|---|---|
| VI | 04/11/2016 | 720,762,604 | 1,841,832,001 | RECIBE 3.000.000 USD COMP [3,000,000 USD COMP RECEPTION] | 7,257,668,400 |
| VII | 04/11/2016 | 2,363,628,387 | 6,040,000,380 | LIQUIDA PACTO A 3 DIAS TA [SETTLED AGREEMENT AT 3 DAYS RATE] | 6,601,518,000 |
| VII | 06/06/2016 | 15,667,199,683 | 40,035,858,666 | VENTA DE ACCIONES DE CONF [SALE OF CONF. SHARES] | 40,572,107,438 |
| IX | 06/13/2016 | 352,196,261 | 900,000,001 | LIQUIDA PACTO A 3 DIAS TA [SETTLED AGREEMENT AT 3 DAYS RATE] | 950,209,000 |
| X | 07/01/2016 | 23,479,751 | 60,000,001 | LIQUIDA PACTO A 3 DIAS TA [SETTLED AGREEMENT AT 3 DAYS RATE] | 950,209,001 |
| XI | 07/25/2016 | 5,098,147,058 | 13,027,771,344 | CREDITO SANTANDER [SANTANDER CREDIT] | 19,125,893,200 |
| XII | 08/01/2016 | 2,389,486,164 | 5,900,000,000 | CREDITO SANTANDER [SANTANDER CREDIT] | 19,125,893,201 |
| XIII | 10/27/2016 | 6,863,968,363 | 16,948,168,170 | LIQUIDA PACTO 1 DIA TASA [SETTLED AGREEMENT AT 1 DAY RATE] | 60,004,600,000 |
| XIV | 11/09/2016 | 2,024,988,274 | 4,999,999,999 | LIQUIDA PACTO 1 DIA TASA [SETTLED AGREEMENT AT 1 DAY RATE] | 13,701,141,666 |
| XV | 11/28/2016 | 3,239,981,239 | 8,000,000,000 | LIQUIDA PACTO 3 DIAS TASA [SETTLED AGREEMENT AT 3 DAYS RATE] | 18,754,687,500 |
| XVI | 12/13/2016 | 809,995,310 | 2,000,000,001 | LIQUIDA PACTO 1 DIA TASA [SETTLED AGREEMENT AT 1 DAY RATE] | 10,800,900,000 |

24

| XVII | 12/16/2016 | 2,429,985,929 | 6,000,000,000 | LIQUIDA PACTO 1 DIA TASA [SETTLED AGREEMENT AT 1 DAY RATE] | 8,800,733,333 |
| XVIII | 12/29/2016 | 1,073,243,785 | 2,649,999,999 | LIQUIDA PACTO 1 DIA TASA [SETTLED AGREEMENT AT 1 DAY RATE] | 2,800,700,000 |
| XIX | 02/13/2018 | 628,098,004 | 1,380,804,999 | INGRESO DIVISA OPCIÓN CAL [FOREIGN CURRENCY INCOME OPTION] | 3,522,040,210 |
| XX | 02/15/2018 | 461,392,901 | 1,014,322,001 | INGRESO DIVISA OPCIÓN CAL [FOREIGN CURRENCY INCOME OPTION] | 2,732,675,200 |
| XXI | 02/19/2018 | 472,169,191 | 1,038,012,500 | INGRESO DIVISA OPCIÓN CAL [FOREIGN CURRENCY INCOME OPTION] | 2,732,675,200 |
| XXII | 04/13/2018 | 4,076,860,267 | 8,962,532,919 | BTG PACTUAL CHILE S.A. PESOS 01 | 9,000,000,000 |
| XXIII | 04/01/2019 | 1,005,064,520 | 2,000,000,000 | LIQUIDA PACTO 3 DIAS TASA 0.20 [SETTLED AGREEMENT AT 3 DAYS 0.20 RATE] | 12,002,400,000 |
| | **TOTAL** | **49,700,647,691** | **122,799,302,981** | | **239,436,051,349** |

## III.V.- PURCHASE AND SALE AND TRANSFER OF SAGA SHARES SPA,   REAL ESTATE AND INVESTMENT COMPANY

### III.VI.- SUMMARY.

The documents examined verify the existence of purchase and sale transactions and transfer of shares through which Corp Group Banking S.A. acquires shares of the related company Compañía Inmobiliaria y de Inversiones SAGA SpA, as follows:

| No. | VENDOR | BUYER | DATE | No. of SHARES | AMOUNT | P X ACC |
|---|---|---|---|---|---|---|
| XXIV | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 09/22/2017 | 5,077,050,166 | 11,161,341,391 | 2.20 |
| XXV | CORPGROUP INTERHOLD SPA | CORP.GROUP BANKING SPA | 04/09/2019 | 533,094,262 | 1,060,816,000 | 1.99 |
| XXVI | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/19/2020 | 381,250,453 | 670,000,000 | 1.76 |
| XXVII | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/24/2020 | 706,362,318 | 1,220,000,000 | 1.73 |
| XXVIII | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/25/2020 | 11,996,410,362 | 20,988,647,011 | 1.75 |
| XXIX | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/26/2020 | 283,154,177 | 500,000,000 | 1.77 |
| XXX | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/27/2020 | 4,278,635,828 | 7,524,450,000 | 1.76 |
| XXXI | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/27/2020 | 1,370,400,806 | 2,410,000,000 | 1.76 |
| XXXII | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 03/30/2020 | 199,455,688 | 350,000,000 | 1.75 |
| XXXIII | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 04/02/2020 | 88,572,259 | 156,000,000 | 1.76 |
| XXXIV | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 04/09/2020 | 830,098,980 | 1,465,268,000 | 1.77 |
| XXXV | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 05/19/2020 | 977,471,934 | 1,700,000,000 | 1.74 |
| XXXVI | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 06/26/2020 | 813,405,522 | 1,446,000,000 | 1.78 |
| XXXVII | GASA INVESTMENTS LIMITED | CORP.GROUP BANKING SPA | 07/21/2020 | 1,433,295,569 | 2,560,000,000 | 1.79 |
| | | TOTAL | | 28,968,658,324 | 53,212,522,402 | |

### III.V.II.- DETAIL OF TRANSACTIONS.

The analytical detail of the transactions, based on the companies' General Ledger accounting records, is as follows:

### TRANSACTION No. XXIV — PURCHASE AND SALE DATED 09/22/2017. TITLE No. 28.

According to the share purchase and transfer agreement, CGB purchases 5,077,050,166 SAGA shares from the seller Inversiones GASA Ltda. at a value of $2.198391 each. Therefore, the value of the purchased shares amounts to $11,161,341,391, which the buyer pays in cash.

- **Accounting Record in GASA**

The operation is recorded in GASA in the book account "Banco Corpbanca Pesos 01," with an income in the bank checking account for the sum of $11,161,341,391. With the available amount from this income, an expenditure is recorded with the description "TO CORP GROUP INVERSIÓN" [TRANSFER TO CORP GROUP INVESTMENT] for the sum of $11,950,000,000.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca Pesos 01" for the sum of $11,161,341,391. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as "LIQUIDA PACTO 1 DIA AL 0.2" [SETTLED AGREEMENT AT 1 DAY 0.2 RATE] for the sum of $11,750,705,000.

### TRANSACTION No. XXV — PURCHASE AND SALE DATED 04/09/2019. TITLE No. 50.

According to the share purchase and transfer agreement, CGB purchases 533,094,262 shares of SAGA from the seller CorpGroup Interhold SpA at a value of $1.989922 each. Therefore, the value of the purchased shares amounts to $1,060,816,000, which the subscriber pays in cash.

- **Accounting Record in CorpGroup Interhold SpA**

The accounting records of CorpGroup Interhold SpA were not available to verify the income and destination of the funds.

- **Accounting Record in CGB**

The operation is recorded in CGB charged to the book account "Investments in Related Companies" for the sum of $1,060,816,000. These shares are transferred on the same day and for the same value to Inversiones GASA Ltda. In this case, no movement of funds is recorded.

**TRANSACTION No. XXVI — PURCHASE AND SALE DATED 03/19/2020. TITLE No. 53.**

According to the share purchase and transfer agreement, CGB purchases 381,250,453 SAGA shares from the seller Inversiones GASA Ltda. at a value of $1.757374 each. Therefore, the value of the purchased shares amounts to $670,000,000, which the buyer pays in cash.

- **Accounting Record in GASA**

The operation is recorded in GASA in the book account "Banco Corpbanca Pesos 01," with an income in the bank checking account for the sum of $670,000,000. With the available amount from this income, an expenditure is recorded with the description "TO GRUPO COPESA S.A." [TRANSFER TO GRUPO COPESA S.A.] for the sum of $850,000,000.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca Pesos 01" for the sum of $670,000,000. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as "**DIVIDENDO RECIBIDO DE ITAU CORPBANCA**" [DIVIDEND RECEIVED FROM ITAU CORPBANCA] for the sum of $12,741,289,932.

**TRANSACTION No. XXVII — PURCHASE AND SALE DATED 09/24/2020. TITLE No. 54**

According to the share purchase and transfer agreement, CGB purchases 706,363,318 SAGA shares from the seller Inversiones GASA Ltda. at a value of $1.72715874 each. Therefore, the value of the purchased shares amounts to $1,220,000,000, which the buyer pays in cash.

- **Accounting Record in GASA**

The operation is recorded in GASA in the book account "Banco Corpbanca Pesos 01," with an income in the bank checking account for the sum of $1,220,000,000. With the available amount from this income, an expenditure is recorded with the description "TO CORPGROUP INVERSIONES LIMITADA" for the sum of $1,220,000,000.

- **Accounting Record in CGB**

The operation is recorded in CGB with an expenditure from the book account "Banco Corpbanca Pesos 01" for the sum of $1,220,000,000. The source of the funds available in the bank checking account for the transaction corresponds to an income recorded as **"DIVIDENDO RECIBIDO DE ITAU CORPBANCA"** [DIVIDEND RECEIVED FROM ITAU CORPBANCA] for the sum of $12,741,289,932 (same as the previous case).

**TRANSACTION NO. XXVIII SALES AND PURCHASE DATED 03/25/2020, TITLE NO. 55**

27

According to the Shares Sale, Purchase and Transfer Agreement, CGB bought 11,996,410,362 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.749577 each share. Therefore, the value of the purchased shares amounts to $20,988,647,011 in total. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records under the account called "Current Account Receivable: Current Income Statements" for $20,988,647,011. That is, there is no effective income of money via the Bank accounts.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records under the account called "Deposit in Transit" for $20,988,647,011. This transaction was triggered by the transaction with the heading **"RECEIPT OF DIVIDENDS FROM ITAU"** for $20,988,647,011.

**TRANSACTION NO. XXIX SALES AND PURCHASE DATED 03/26/2020. TITLE NO. 56**

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 283,154,177 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.765822 each share. Therefore, the value of the purchased shares amounts to $500,000,000 in total. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Itau Corpbanca Bank, Pesos 01" in the bank checking account for $500,000,000. Then, with the available funds from this income, there was a disbursement with the heading "**TRANSFER TO CORP GROUP INVERSIONES LIMITADA**" for $500,000,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Corpbanca Bank Pesos 01" for $500,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**AGREEMENT**" for $11,000,000,000 dated 03/23/2020.

**TRANSACTION NO. XXX SALES AND PURCHASE DATED 03/27/2020. TITLE NO. 58**

28

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 4,278,635,828 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.758609 each share. Therefore, the value of the purchased shares amounts to $7,524,450,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Corpbanca Bank USD 01" in the bank checking account of $7,524,450,000. Then, with the available funds from this income, there was a disbursement with the heading "**TRANSFER TO CORP GROUP INVESTMENT**" for $7,524,450,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Itau-Corpbanca Bank USD 01" for $7,524,450,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**USD PURCHASE FROM BANCO DEL ESTADO DE CHILE (BECH)**" for $7,583,300,000.

**TRANSACTION NO. XXXI SALES AND PURCHASE DATED 03/27/2020. TITLE NO. 57**

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 1,370,400,806 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.758609 each share. Therefore, the value of the purchased shares amounts to $2,410,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Itau-Corpbanca Bank Pesos 01" in the bank checking account for $2,410,000,000. Then, with the available funds from this income, there was a disbursement with the heading "**TRANSFER TO CORP GROUP INVERSIONES LIMITADA**" for $2,410,000,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Corpbanca Bank Pesos 01" for $2,410,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**AGREEMENT**" for $11,000,000,000 dated 03/23/2020.

**TRANSACTION NO. XXXII  SALES AND PURCHASE DATED 03/30/2020. TITLE NO. 59**

29

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 199,455,688 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.754775 each share. Therefore, the value of the purchased shares amounts to $350,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records under the account called "Current Account Payable: Current Income Statements" for $350,000,000. There is no effective income of money via any bank account.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records under the account called "Itau-Corpbanca Bank Pesos 01" for $350,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**AGREEMENT**" for $11,000,000,000 dated 03/23/2020.

In this case, there is an inconsistency in the accounting records: while CGB recorded the disbursement from the bank checking account, in GASA's accounting records the income is not recorded as such but under the current accounts for income statements. The destination of the funds sent by GCB in this transaction is unknown.

## TRANSACTION NO. XXXIII SALES AND PURCHASE DATED 04/02/2020. TITLE NO. 60

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 88,572,259 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.761273 each share. Therefore, the value of the purchased shares amounts to $156,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records under the account called "Current Account Payable: Current Income Statements" for $156,000,000. There is no effective income of money via any bank account.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records under the account called "Itau-Corpbanca Bank Pesos 01" for $156,000,000. The source of the funds available in the bank checking account to

perform this transaction corresponds to an income recorded as "**USD BANK TRANSFER**" for $155,841,000 dated 04/02/2020.

In this case, there is an inconsistency in the accounting records: while CGB records the disbursement from the bank checking account, in GASA's accounting records the income is not recorded as such but under the current accounts for income statements. The destination of the funds sent by GCB in this transaction is unknown.

### TRANSACTION NO. XXXIV SALES AND PURCHASE DATED 04/09/2020. TITLE NO. 61

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 830,098,980 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.765172 each share. Therefore, the value of the purchased shares amounts to $1,465,268,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records under the account called "Current Account Payable: Current Income Statements" for $ 1,465,268,000. There is no effective income of money via any bank account.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records under the account called "Itau-Corpbanca Bank USD 01" for $1,465,268,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**USD BANK TRANSFER**" for $6,754,022,414 dated 04/02/2020.

In this case, there is an inconsistency in the accounting records: while CGB records the disbursement from the bank checking account, in GASA's accounting records the income is not recorded as such but under the current accounts for income statements. The destination of the funds sent by GCB in this transaction is unknown.

### TRANSACTION NO. XXXV SALES AND PURCHASE DATED 05/19/2020. TITLE NO. 62

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 977,471,934 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.739180 each share. Therefore, the value of the purchased shares amounts to $1,700,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Corpbanca Bank, Pesos 01" in the bank checking account of $1,700,000,000. Then, with the available funds from this income, there are two disbursements with the following headings: "**TRANSFER TO CORP GROUP INVERSIONES LIMITADA**" for $1,449,000,000 and "**TRANSFER TO GRUPO COPESA S.A.**" for $250,000,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Itau-Corpbanca Bank, Pesos 01" for $1,700,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**RETURN OF READJUSTED PAYMENTS PER ABSORBED PROFITS (PPUA)**" for $1,698,425,061.

**TRANSACTION NO. XXXVI SALES AND PURCHASE DATED 06/26/2020. TITLE NO. 63**

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 813,405,522 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.777711 each share. Therefore, the value of the purchased shares amounts to $1,446,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Corpbanca Bank Pesos 01" in the bank checking account of $1,700,000,000. Then, with the available funds from this income, there are two disbursements with the following headings: "**TRANSFER TO CORP GROUP INVERSIONES LIMITADA**" for $1,296,000,000 and "**TRANSFER TO GRUPO COPESA S.A.**" for $150,000,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Itau-Corpbanca Bank Pesos 01" for $1,446,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**PARTIAL RETURN OF PAYMENTS PER ABSORBED PROFITS (PPUA) (50%) FOR TAX YEAR 2020**" for $2,571,276,301 dated 06/25/2020.

**TRANSACTION NO. XXXVII SALES AND PURCHASE DATED 07/21/2020. TITLE NO. 64**

According to the Shares Sale, Purchase and Transfer Agreement, GCB bought 1,433,295,569 SAGA's shares from the seller Inversiones GASA Ltda. for a value of $1.786993 each share. Therefore, the value of the purchased shares amounts to $2,560,000,000. The buyer paid in cash and in full.

- **GASA's accounting records**

This transaction was entered in GASA's accounting records as an income under the account called "Corpbanca Bank Pesos 01" in the bank checking account of $2,560,000,000. Then, with the available funds from this income, there is a disbursement with the following heading: "**TRANSFER TO CORP GROUP INVERSIONES LIMITADA**" for $2,560,000,000.

- **CGB's accounting records**

This transaction was entered in CGB's accounting records as a disbursement under the account called "Itau-Corpbanca Bank Pesos 01" for $2,560,000,000. The source of the funds available in the bank checking account to perform this transaction corresponds to an income recorded as "**RETURN OF PAYMENTS PER ABSORBED PROFITS (PPUA) (50%) FOR TAX YEAR 2020**" for $ $2,568,740,527 dated 07/13/2020.

To support these observations, we attach hereto as Annex No. 1 a copy of SAGA's Shares Sale, Purchase and Transfer Agreements. We also attach hereto as Annex No. 2 a copy of the General Accounting Ledger with SAGA's bank accounts from 2016 to 2020, and as Annex No. 3 a copy of the General Accounting Ledger with CGB's bank accounts from 2016 to 2020.

## III.V.III.    CONCLUSION

As a consequence of the review performed, it was verified that during the period from September 2017 to October 2020 the company CORP GROUP BANKING S.A. bought from other affiliated companies (mainly from Inversiones GASA Limitada) a total of **28,968,658,324** shares from the affiliated company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, amounting to **$53,212,522,402.**

## III.VI.  ORIGIN AND DESTINATION OF FUNDS

### III.VI.I.    ORIGIN OF THE FUNDS

33

It was proved that the origin of the resources in CORP GROUP BANKING S.A. used to finance the purchase of shares can be seen in the following report:

| TRANSACTION NO. | DATE | NUMBER OF SHARES | AMOUNT | ORIGIN IN CGB | AMOUNT IN $ ORIGIN IN CGB |
|---|---|---|---|---|---|
| **PURCHASE OF INVERSIONES CG FINANCIAL CHILE DOS S.P.A. SHARES** | | | | | |
| I | 03/12/2015 | 24,484,877,154 | 36,362,000,000 | NO INFO | |
| II | 04/09/2015 | 416,899,653 | 600,000,000 | NO INFO | |
| III | 07/31/2015 | 22,282,498,681 | 38,200,000,000 | NO INFO | |
| IV | 11/01/2015 | | 14,430,000,000 | NO INFO | |
| V | 03/16/2016 | 16,206,938,723 | 26,141,676,000 | NO INFO | |
| | **TOTAL** | | **115,733,676,000** | | |
| **SUBSCRIPTION OF SAGA SHARES** | | | | | |
| VI | 04/11/2016 | 720,762,604 | 1,841,832,001 | RECEIVED 3,000,000 USD COMP | 7,257,668,400 |
| VII | 04/11/2016 | 2,363,628,387 | 6,040,000,380 | SETTLED AGREEMENT 3-DAY RATE | 6,601,518,000 |
| VIII | 06/06/2016 | 15,667,199,683 | 40,035,858,666 | SALE OF SHARES [cut-off text] | 40,572,107,438 |
| IX | 06/13/2016 | 352,196,261 | 900,000,001 | SETTLED AGREEMENT 3-DAY RATE | 950,209,000 |
| X | 07/01/2016 | 23,479,751 | 60,000,001 | SETTLED AGREEMENT 3-DAY RATE | 950,209,000 |
| XI | 07/25/2016 | 5,098,147,058 | 13,027,771,344 | SANTANDER LOAN | 19,125,893,201 |
| XII | 08/01/2016 | 2,389,486,164 | 5,900,000,000 | SANTANDER LOAN | 19,125,893,201 |
| XIII | 10/27/2016 | 6,863,968,363 | 16,948,168,170 | SETTLED AGREEMENT 1-DAY RATE | 60,004,600,000 |
| XIV | 11/09/2016 | 2,024,988,274 | 4,999,999,999 | SETTLED AGREEMENT 1-DAY RATE | 13,701,141,666 |
| XV | 11/28/2016 | 3,239,981,239 | 8,000,000,000 | SETTLED AGREEMENT 3-DAY RATE | 18,754,687,500 |
| XVI | 12/13/2016 | 809,995,310 | 2,000,000,001 | SETTLED AGREEMENT 1-DAY RATE | 10,800,900,000 |
| XVII | 12/16/2016 | 2,429,985,929 | 6,000,000,000 | SETTLED AGREEMENT 1-DAY RATE | 8,800,733,333 |
| XVIII | 12/29/2016 | 1,073,243,785 | 2,649,999,999 | SETTLED AGREEMENT 1-DAY RATE | 2,800,700,000 |
| XIX | 02/13/2018 | 628,098,004 | 1,380,804,999 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 3,522,040,210 |
| XX | 02/15/2018 | 461,392,901 | 1,014,322,001 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 2,732,675,200 |
| XXI | 02/19/2018 | 472,169,191 | 1,038,012,500 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 2,732,675,200 |
| XXII | 04/13/2018 | 4,076,860,267 | 8,962,532,919 | BTG PACTUAL CHILE S,A, PESOS 01 | 9,000,000,000 |
| XXIII | 04/01/2019 | 1,005,064,520 | 2,000,000,000 | SETTLED AGREEMENT 3-DAY RATE 0,20 | 12,002,400,000 |
| | **TOTAL** | **49,700,647,691** | **122,799,302,981** | | **239,436,051,349** |
| **PURCHASE OF SAGA SHARES** | | | | | |
| XXIV | 09/22/2017 | 5,077,050,166 | 11,161,341,391 | SETTLED AGREEMENT 1-DAY RATE 0 | 11,750,705,000 |
| XXV | 04/09/2019 | 533,094,262 | 1,060,816,000 | NO INFO | 0 |
| XXVI | 03/19/2020 | 381,250,453 | 670,000,000 | Dividends received from Itaú Corpbanca | 12,741,989,932 |
| XXVII | 03/24/2020 | 706,362,318 | 1,220,000,000 | | |
| XXVIII | 03/05/2020 | 11,996,410,362 | 20,988,647,011 | Dividends received from Itau | 20,988,647,081 |
| XXIX | 03/26/2020 | 283,154,177 | 500,000,000 | AGREEMENT | 11,000,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| XXX | 03/27/2020 | 4,278,635,828 | 7,524,450,000 | USD purchase from Banco Del Estado De Chile (BECH) | 7,583,300,000 |
| XXXI | 03/27/2020 | 1,370,400,806 | 2.410.000.000 | AGREEMENT | 0 |
| XXXII | 03/30/2020 | 199,455,688 | 350.000.000 | | |
| XXXIII | 04/02/2020 | 88,572,259 | 156.000.000 | USD bank transfer | 155,841,000 |
| XXXIV | 04/09/2020 | 830,098,980 | 1.465.268.000 | USD bank transfer | 6,754,022,413 |
| XXXV | 05/19/2020 | 977,471,934 | 1.700.000.000 | Return of readjusted payments per absorbed profits (PPUA) | 1,698,425,061 |
| XXXVI | 06/26/2020 | 813,405,522 | 1.446.000.000 | Partial return of payments per absorbed profits (PPUA) for the tax year 2020 | 2,571,276,301 |
| XXXVII | 07/21/2020 | 1,433,295,569 | 2.560.000.000 | Partial return of payments per absorbed profits (PPUA) for the tax year 2020 | 2,568,740,527 |
| | TOTAL | 28,968,658,324 | 53,212,522,402 | | |

## III.VI.II. FUNDS TRANSFERRED TO SMU SA

### YEAR 2015

From the information available it is not possible to determine with certainty the final destination of the funds transferred to INTERHOLD, as follows:

| NO. | DESCRIPTION | DATE | VALUES |
|---|---|---|---|
| PURCHASE OF INV CG FINANCIAL CHILE DOS SPA SHARES | | | |
| I | Corpgroup Interhold Limitada Shares | 03/12/2015 | 36,362,000,000 |
| II | Corpgroup Interhold Limitada Shares | 04/09/2015 | 600,000,000 |
| III | Corpgroup Interhold Limitada Shares | 07/31/2015 | 38,200,000,000 |
| IV | Corpgroup Interhold Limitada Shares | 11/01/2015 | 14,430,000,000 |
| V | Corpgroup Interhold Limitada Shares | 03/16/2016 | 26,141,676,000 |
| | TOTAL | | 115,733,676,000 |

At the dollar exchange rate for the dates July 31 and April 1, 2015, transfers of funds amounted to USD $56,829,170 and USD $ 20,903,349, respectively.

In view of the above, a study was made of the existence of transfers of funds between companies of the Saieh Group made during 2015 and 2016 and, in particular, resources deposited in SMU SA in 2015.

According to what is referred to in SMU SA's Income Statement as of December 31, 2016, the company Inversiones SAMS SpA loaned USD $55,913,620 to SMU, "debt acquired in November 2015, expressed in USD and accrues a fixed yearly interest rate of 11.6% subordinated in capital and interest to the syndicated bank loan due in June 2020. No collateral."

The SMU Group is controlled by the following companies: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Inversiones Épsilon II S.A. and Fondo de Inversión Privado Alpha with a total interest share of 57.98%.

The main shareholder in SMU Group is the Saieh family with a total interest share of 50.29% with investments in the following companies: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Inversiones Épsilon II S.A. and Fondo de Inversión Privado Alpha.

Inversiones SAMS SpA, with tax ID (RUT) No. 76.483.633-2, has been since 2017 one of the largest shareholders of SMU, with a 19,19% interest in 2017, a 23.23% SMU SA share interest in September 2018 and a 23.34% interest in March 2020.

Inversiones SAMS SpA has increased their SMU interest of 700,262,114 shares in 2017 to 1,347,798,788 SMU shares on April 9, 2020.

**YEAR 2016.**

On the other hand, <u>there are some past events that allow us to determine part of the destination of the money transferred to SAGA.</u>

Indeed, according to the past events described above, SAGA's accounting records show that there was a loan to SMU S.A. of $37,000,000 on June 6, 2016. According to the USD exchange rate for that day ($683.27), that amount equals USD $54,151,360.36.

On the document "Updated Prospectus for the Issue of SMU SA Cash Shares" dated January 18, 2017 addressed to Carlos Pavez Tolosa, the head of the Securities and Insurance Superintendency (SVS), which states the following:

"On May 31, 2019, the Company executed a promissory note for USD $53,602,213.63 in favor of Compañía Inmobiliaria e Inversiones SAGA SpA, a company affiliated to the company's controller, to fulfil their obligation to provide partial funds to this company to pay for the ordinary payment of class A shares issued by SMU SA covered by the bond issuance registered on May 26, 2011, at the SVS Securities

36

Registry under no. 667 for a total share capital of 2,000,000 indexation units (UF) due on June 1, 2016. The maturity date of the loan executed by the Company will be canceled in a single installment due on December 26, 2018. As for its interests, the outstanding balance will accrue a yearly fixed interest rate equal to 11.6%."

Moreover, the following accounts payable to affiliated companies appear in SMU's Financial Statement dated December 31, 2017:

**b. Accounts Payable to Affiliated Companies**

| | | | | | Current | | Non-current | |
|---|---|---|---|---|---|---|---|---|
| Tax ID (RUT) | Company | Relationship nature | Country | Currency | 12/31/2017 (In thousands of Chilean pesos) | 12/31/2016 (In thousands of Chilean pesos) | 12/31/2017 (In thousands of Chilean pesos) | 12/31/2016 (In thousands of Chilean pesos) |
| 65034895-8 | Fundación Descúbreme | Controller affiliate | Chile | CLP | 8,921 | 17,814 | - | - |
| 76001408-7 | Retail Holding SA (1) (7) | Common controller | Chile | UF | - | 3,175,529 | - | 16,821,619 |
| 76002124-5 | SR Inmobiliaria SA | Common controller | Chile | UF | 57,058 | - | - | - |
| 76025301-4 | Gestora Omega Ltda. Holding y CPA (1) (7) | Shareholder/Common Partner | Chile | UF | - | 203,886 | - | 1,081,480 |
| 76054952-5 | Corp Group Inversiones Ltda. (2) | Common controller | Chile | UF | - | 13,361,000 | - | - |
| 76058352-9 | Vivo Corp SpA. | Common controller | Chile | CLP | 181,257 | 143,598 | - | - |
| 76063653-3 | Unired SA | Associated company | Chile | CLP | 2,954,745 | - | - | - |
| 76086272-K | Unicard SA (8) | Associated company | Chile | CLP | 24,008 | - | - | - |
| 76094904-3 | Funky Films SA | Controller affiliate | Chile | CLP | 63,272 | 33,844 | - | - |
| 76116213-6 | Desarrollos Comerciales SA | Controller affiliate | Chile | CLP | 3,787 | - | - | - |
| 76118395-8 | Corp Imagen y Diseño SA | Common controller | Chile | CLP | 2,411 | 14,256 | - | - |
| 76170725-6 | Copesa SA | Common controller | Chile | CLP | 17,898 | - | - | - |
| 76199415-8 | Retail Holding III SpA (3) (7) | Common controller | Chile | UF | - | 295,598 | - | 1,492,470 |
| 76483633-2 | Inversiones SAMS SpA (4) (7) | Common controller | Chile | USD | - | - | - | 55,913,620 |
| 88202600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (6) (7) | Common controller | Chile | UF | - | 162,523 | - | 866,143 |
| 88202600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (5) (7) | Common controller | Chile | USD | - | 4,787 | - | 2,878,502 |
| 96646430-5 | Distribución y Servicios Meta SA | Common controller | Chile | CLP | 24,621 | 26,068 | - | - |
| 96763040-3 | Inmobiliaria Rio Lluta SA | Common controller | Chile | CLP | 19,009 | - | - | - |
| | **Totals** | | | | 3,356,987 | 17,438,903 | - | 79,053,834 |

(1) This debt was originated in September 2014 with the transfer of syndicated bank loan amounts, it's expressed in UF and accrues a yearly interest of the 90-day UF Active Bank Rate (TAB) + 1.60%, such percentage to be paid quarterly, and with a yearly interest payment plan due on June 2020, with No collateral.
(2) This debt is expressed in UF and accrues a yearly interest rate of 10.60%, to be paid quarterly, due in September 2016 and May 2017 extendable to an additional year. Prepaid debt and with No collateral. This debt was canceled during the second quarter of 2017.
(3) Debt acquired in December 2013 and that was initially part of the syndicated bank loan. It's expressed in UF and accrues a 90-day yearly TAB interest + 1.60% for $467,776 (in thousands of Chilean pesos) and the balance of $1,320,292 (in thousands of Chilean pesos) is expressed in UF and accrues a fixed interest rate of 4.81%. It pays quarterly interest and a yearly interest payment plan according to the syndicated bank loan development table due in June 2020. No collateral.
(4) Debt acquired in November 2015, expressed in USD and accrues a fixed yearly interest rate of 11.6% subordinated in capital and interest to the syndicated bank loan due in June 2020. No collateral.
(5) Debt acquired in May 2016 that is expressed in USD and accrues a fixed yearly interest rate of 11.6% to be paid quarterly and due in December 2018. Prepaid debt. No collateral.
(6) This debt originated on February 2015 after the transfer of some bank funds from the syndicated bank loan, it is expressed in UF and accrues a 90-day TAB UF yearly interest + 1.60%, such percentage to be paid quarterly, and with a yearly interest payment plan subordinated to Bice Bank due in June 2020. No collateral.
(7) Canceled in January 2017.
(8) Dated May 3, 2017, SMU Corp SA changed their corporate name to Unicard SA.

The following appears in this document "On December 31, 2017, all the debt claims with affiliated companies were already canceled with the funds coming from the share capital increase."

In this regard, page 139 of the Financial Statement dated December 2017 states the following:

**"d. Share capital increase.**
**On December 31, 2016:**

In an Extraordinary Shareholders Meeting held on December 30, 2015, it was agreed to increase the Company's share capital in $230,000,000 (in thousands of Chilean pesos) to reach a share capital of $1,217,072,711 (in thousands of Chilean pesos) through the issue of 2,486,486,486 shares from the same and single series, without par value. In addition, the capital increase which had been approved during the

Extraordinary Shareholder's Meeting held on October 2, 2023, is rendered ineffective. Said increase was later ratified by the Extraordinary Shareholder's Meeting dated April 30, 2014, and amounted to $111,333,333,333, taking into account that the 622,300,722 shares representing said capital increase at the time of the Meeting had not been paid or subscribed by the shareholders. In 2016, there was no share subscription or payment of said capital increase.

**As of December 31, 2017**

On January 24, 2017, in the Santiago Stock Exchange, 1,150,000,000 company cash shares were allotted. The overall demand increased to $113 per share through the mechanism called auction of an Order Book. The total amount of the share allotment reached $129,950,00 thousand Chilean pesos (T$).

On November 16, 2017, in the Santiago Stock Exchange, a total of 575,000,000 payment shares of the Company were allotted at a price of $165 per share, through the mechanism called auction of an Order Book. The total amount of the share allotment reached the sum of T$94,875,000.

As of December 31, 2017, there is a balance of 761,486,486 shares pending placement on the market resulting from the capital increase authorized at the Extraordinary Shareholders' Meeting held on December 30, 2015.

In turn, the Financial Statements (FS) as of June 30, 2018, indicate the following:

"On January 29, 2015, the Rendic family sold its entire interest in SMU S.A. amounting to 13.88% to Corp Group Holding Inversiones Limitada [Limited Company] ("Corp Group"), an entity related to the current controlling shareholder. As a result of this sale, Corp Group, together with other entities controlled by Corp Group, held 78.59% of the shares issued by SMU at that date.

The Shareholders' Meeting held on December 30, 2015, reached an agreement to increase the Company's capital in the amount of T$230,000,000 through the issuance of 2,486,486,486 shares of a single series. On January 24, 2017, 1,150,000,000 payment shares were allotted, raising T$129,950,000, subsequently on November 16, 2017, 575,000,000 shares were allotted, raising T$94,875,000 and, finally, on January 22, 2018, 400,000,000 payment shares of the Company were allotted, raising T$74,000,000, all through the mechanism called auction of an order book in the Santiago Stock Exchange, Securities Exchange. Considering the foregoing and given the waiver of the total number of preemptive subscription rights linked to the capital increases set during the Extraordinary Shareholder's Meeting dated December 2, 2016, the SMU shares of the controlling shareholder group decreased."

As of June 30, 2018, the FS reflect the payment of obligations with affiliated companies:

**b. Accounts payable to affiliated companies**

| Taxpayer No. (RUT) | Company | Nature of the relationship | Country | Currency | Current | | Non-current | |
|---|---|---|---|---|---|---|---|---|
| | | | | | 06-30-2018 Non-audited | 12-31-2017 | 06-30-2018 Non-audited | 12-31-2017 |
| | | | | | T$ | T$ | T$ | T$ |
| 65.034.895-8 | Fundación Descúbreme | Affiliated to Controlling Shareholder | Chile | CLP | 2,977 | 8,921 | - | - |
| 76.002.124-5 | SR Inmobiliaria S.A. | Common Control | Chile | UF | 2,608 | 57,058 | - | - |
| 76.058.352-9 | Vivo Corp S.A. (2) | Common Control | Chile | CLP | 106,576 | 181,257 | - | - |
| 76.063.653-3 | Unired S.A. | Associated | Chile | CLP | 2,380,886 | 2,954,745 | - | - |
| 76.086.272-K | Unicard S.A. (1) | Associated | Chile | CLP | 25,245 | 24,008 | - | - |
| 76.094.904-3 | Funky Films S.A. | Affiliated to Controlling Shareholder | Chile | CLP | - | 63,272 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S.A. | Affiliated to Controlling Shareholder | Chile | CLP | 2,416 | 3,787 | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S.A. | Common Control | Chile | CLP | 749 | 2,411 | - | - |
| 76.170.725-6 | Copesa S.A. | Common Control | Chile | CLP | - | 17,898 | - | - |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Common Control | Chile | CLP | 3,466 | 24,621 | - | - |
| 96.763.040-3 | Inmobiliaria Rio Lluta S.A. | Common Control | Chile | CLP | 19,271 | 19,009 | - | - |
| | Total | | | | 2,544,194 | 3,356,987 | - | - |

(1)  On May 3, 2017, SMU Corp S.A. changed its company name to Unicard S.A.

(2)  On July 28, 2018, Vivo Corp SpA changed its company name to Vivo Corp S.A.

As can be observed above, the obligations due to the companies specified below are not listed (and thus have been paid off):

76.199.415-8 Retail Holding III S.p.A.

76.483.633-2 Inversiones SAMS SpA

88.202.600-0 Cía. Inmobiliaria y de Inversiones SAGA SpA

### SAGA ACCOUNTING RECORDS

With respect to the review of SAGA's General Ledger for 2017, it is verified that on 09-09-2016 an accounting entry was recorded whose note or detail is "TRANSFER OF SMU AGREEMENT DEBT and a [cut-off text]" whereby an entry (charge) is recorded under the account "Banco Corpbanca US$" in the amount of $29,691,257,750, and a credit has been logged under "Foreign Currency Current Account Income Statement."

The following images display the accounting records for the book accounts as entered in SAGA's 2016 General Ledger.

| Book Account 1.0.11.22 Banco Corpbanca US$ | | | | | | | | | | | | Prior Balance | | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09-09-2016 | 2556 | I | DEBT TRANSFER FROM AGREEMENT SMU | 0 | 0 | 1-100 | 000000000000/000 | 9092016 | 09-09-2016 | 09-09-2016 | 29,691,,257,750 | 0 | 29,691,257,750 |
| 09-12-2016 | 2557 | I | DEBT TRANSFER FROM AGREEMENT SMU | 0 | 0 | 1-100 | 000000000000/000 | 12092016 | 09-12-2016 | 09-12-2016 | 1,516,905,000 | 0 | 31,208,162,750 |
| 09-12-2016 | 2562 | T | TRANSFER TO CG INVERSIONES LDTA | 0 | 0 | 1-100 | 000000000000/000 | 12092016 | 09-12-2016 | | 0 | 1,280,942,000 | 29,927,220,750 |
| 09-13-2016 | 2558 | I | DEBT TRANSFER FROM AGREEMENT SMU | 0 | 0 | 1-100 | 000000000000/000 | 13092016 | 09-13-2016 | 09-13-2016 | 1,850,667,500 | 0 | 31,777,888,250 |
| 09-13-2016 | 2559 | E | TRANSFER TO CG INVERSIONES LDTA | 0 | 0 | 1-100 | 000000000000/000 | 13092016 | 09-13-2016 | 09-13-2016 | 0 | 15,478,310,000 | 16,299,578,250 |
| 09-14-2016 | 2560 | E | TRANSFER TO CG INVERSIONES LDTA | 0 | 0 | 1-100 | 000000000000/000 | 14092016 | 09-14-2016 | 09-14-2016 | 0 | 6,749,300,000 | 9,550,278,250 |
| 09-29-2016 | 2576 | T | TRANSFER TO CG INVERSIONES LDTA | 0 | 0 | 1-100 | 000000000000/000 | 29092016 | 09-29-2016 | | 0 | 9,474,275,000 | 76,003,250 |
| 09-30-2016 | 2577 | T | COPRBANC CURRENT ACCOUNT READJUSTMENT | 0 | 0 | 1-100 | 000000000000/000 | 30092016 | 09-30-2016 | | 0 | 76,003,250 | 0 |
| | | | | | | | | | | | 33,058,830,250 | 33,058,830,250 | 0 |

| Book Account 1.0.17.04 Current Account Income Statement, Foreign Currency | | | | | | | | | | | | Prior Balance | | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05-31-2016 | 2208 | E | USD LOAN TO SMU S.A. | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 31052016 | 05-31-2016 | 37,000,000,000 | 0 | 37,000,000,000 |
| 06-30-2016 | 2311 | T | INT. RETURN LOAN SMU S.A. | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30062016 | 06-30-2016 | 342,691,995 | 0 | 37,342,691,995 |
| 06-30-2016 | 2312 | T | SMU LOANS EXCHANGE DIFFERENCE | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30062016 | 06-30-2016 | 0 | 1,549,103,974 | 35,793,588,021 |
| 06-30-2016 | 2322 | T | INT. RETURN LOAN SMU S.A. | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30062016 | 06-30-2016 | 0 | 342,691,995 | 35,450,896,026 |
| 06-30-2016 | 2323 | T | SMU LOANS EXCHANGE DIFFERENCE | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30062016 | 06-30-2016 | 1,549,103,974 | 0 | 37,000,000,000 |
| 09-08-2016 | 2565 | T | ACCRUED INTERESTS | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 8092016 | 09-08-2016 | 1,131,841,133 | 0 | 38,131,841,133 |
| 09-09-2016 | 2552 | I | INTEREST PAYMENT RECEIVED [Cut-off text] | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 9092016 | 09-09-2016 | 0 | 1,131,841,333 | 36,999,999,800 |
| 09-09-2016 | 2556 | I | DEBT TRANSFER FROM SMU AGREEMENT | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 9092016 | 09-09-2016 | 0 | 29,691,257,750 | 7,308,742,050 |
| 09-09-2016 | 2566 | T | EXCHANGE DIFFERENCE AT 09-09-20[Cut-off text] | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 9092016 | 09-09-2016 | 0 | 1,053,819,520 | 6,254,922,530 |
| 09-12-2016 | 2557 | I | DEBT TRANSFER FROM SMU AGREEMENT | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 12092016 | 09-12-2016 | 0 | 1,516,905,000 | 4,738,017,530 |
| 09-12-2016 | 2567 | T | ACCRUED INTEREST 09-12 | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 12092016 | 09-12-2016 | 6,078,614 | 0 | 4,744,096,144 |
| 09-12-2016 | 2567 | T | EXCHANGE DIFFERENCE AT 09-12-2016 | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 12092016 | 09-12-2016 | 33,298,153 | 0 | 4,777,394,297 |
| 09-13-2016 | 2558 | I | DEBT TRANSFER FROM SMU AGREEMENT | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 13092016 | 09-13-2016 | 0 | 1,850,667,500 | 2,928,726,797 |
| 09-13-2016 | 2568 | T | INTERESTS AT 09-13-2016 | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 13092016 | 09-13-2016 | 1,534,665 | 0 | 2,928,261,462 |
| 09-13-2016 | 2568 | T | EXCHANGE DIFFERENCE AT 09-13-2016 | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 13092016 | 09-13-2016 | 0 | 8,563,428 | 2,919,698,034 |
| 09-30-2016 | 2569 | T | INTERESTS | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30092016 | 09-30-2016 | 15,597,387 | 0 | 2,935,295,421 |
| 09-30-2016 | 2569 | T | EXCHANGE DIFFERENCE | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30092016 | 09-30-2016 | 0 | 64,691,844 | 2,870,603,577 |
| 10-01-2016 | 2658 | T | INTERESTS | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30092016 | 09-30-2016 | 0 | 15,597,387 | 2,855,006,190 |
| 10-01-2016 | 2658 | T | EXCHANGE DIFFERENCE | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 30092016 | 09-30-2016 | 64,691,844 | 0 | 2,919,689,034 |
| 12-31-2016 | 2776 | T | SMU Current Account Readjustment (Bon[Cut-off text]) | 0 | 0 | 0 | 0-0 | 000076012676-4/00 | 31122016 | 12-31-2016 | 86,601,712 | 0 | 3,006,299,746 |
| | | | Total Book Account | | | | | | | | 40,231,439,477 | 37,225,139,731 | 3,006,299,746 |

There is no further information regarding the details and conditions of this transfer transaction or of the companies participating in it.

**III.VI.IV.- MONEY TRANSFERRED TO SAGA SpA.**

The review conducted showed that the funds received by SAGA as a result of these capital increases were mainly used for the transfer of funds to affiliated companies, as follows:

| TRANSA CTION No. | DATE | SHARE No. | $ AMOUNT | SAGA INCOME ACCOUNT | SAGA CATEGORY |
|---|---|---|---|---|---|
| VI | 04-11-2016 | 720,762,604 | 1,841,832,001 | Book Account 2.0.18.02 Current Account UF. Income Statement | NO ACTUAL INCOME |
| VII | 04-11-2016 | 2,363,628,387 | 6,040,000,380 | Book Account 2.0.18.02 Current Account UF. Income Statement | NO ACTUAL INCOME |
| VIII | 06-06-2016 | 15,667,199,683 | 40,035,858,666 | Book Account 2.0.11.03 Bank State Obligation in Pesos | USD LOAN TO SMU S.A. |
| IX | 06-13-2016 | 352,196,261 | 900,000,001 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO GASA |
| X | 07-01-2016 | 23,479,751 | 60,000,001 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO INV GASA LTDA |
| XI | 07-25-2016 | 5,098,147,058 | 13,027,771,344 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | 2414 TRANSFER GASA |
| II | 08-01-2016 | 2,389,486,164 | 5,900,000,000 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | 2471 CG INVERSIONES LTDA |
| XIII | 10-27-2016 | 6,863,968,363 | 16,948,168,170 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XIV | 11-09-2016 | 2,024,988,274 | 4,999,999,999 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XV | 11-28-2016 | 3,239,981,239 | 8,000,000,000 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XVI | 12-13-2016 | 809,995,310 | 2,000,000,001 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XVII | 12-16-2016 | 2,429,985,929 | 6,000,000,000 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XVIII | 12-29-2016 | 1,073,243,785 | 2,649,999,999 | Book Account 1.0.11.10 Banco Corpbanca 01 $ | TRANSFER TO CG INVERSIONES LTDA |
| XIX | 02-13-2018 | 628,098,004 | 1,380,804,999 | Current Account Receivable current Income Statement | NO ACTUAL INCOME |
| XX | 02-15-2018 | 461,392,901 | 1,014,322,001 | Current Account Receivable current Income Statement | NO ACTUAL INCOME |
| XXI | 02-19-2018 | 472,169,191 | 1,038,012,500 | Current Account Receivable current Income Statement | NO ACTUAL INCOME |
| XXII | 04-13-2018 | 4,076,860,267 | 8,962,532,919 | Banco Itaú-Corpbanca Pesos 01 | TRANSFER to CG Inversiones LTDA. |
| XXIII | 04-01-2019 | 1,005,064,520 | 2,000,000,000 | Banco Itaú-Corpbanca Pesos 01 | TRANSFER Corp Group Inversiones Ltda. |
| | TOTAL | 49,700,647,691 | 122,799,302,981 | | |

### III.VI.V.- MONEY TRANSFERRED TO GASA LIMITADA.

It has been verified that the funds received by GASA as a result of share purchase and sale agreements were mainly used to transfer funds to affiliated companies, as follows:

| TRANSA CTION No. | SELLER | DATE | SHARE No. | AMOUNT | GASA CATEGORY | $ AMOUNT |
|---|---|---|---|---|---|---|
| | | | | | | |

41

| | | | | | | |
|---|---|---|---|---|---|---|
| XXIV | INVERSIONES GASA LTDA. | 22-09-2017 | 5,077,050,166 | 11,161,341,391 | TRANSFER TO CORPGROUP INVERSION | 11,950,000,000 |
| XXV | CORPGROUP INTERHOLD SPA | 09-04-2019 | 533,094,262 | 1,060,816,000 | NO INFO | 0 |
| XXVI | INVERSIONES GASA LTDA | 03-19-2020 | 381,250,453 | 670,000,000 | TRANSFER TO GRUPO COPESA S.A. | 850,000,000 |
| XXVII | INVERSIONES GASA LTDA. | 03-24-2020 | 706,362,318 | 1,220,000,000 | TRANSFER CORPGROUP INVERSION | 1,220,000,000 |
| XXVIII | INVERSIONES GASA LTDA. | 03-25-2020 | 11,996,410,362 | 20,988,647,011 | CURRENT ACCOUNT RECEIVABLE INCOME STATEMENT | 20,988,647,011 |
| XXIX | INVERSIONES GASA LTDA. | 03-26-2020 | 283,154,177 | 500,000,000 | TRANSFER CORPGROUP INVERSION | 500,000,000 |
| XXX | INVERSIONES GASA LTDA. | 03-27-2020 | 4,278,635,828 | 7,524,450,000 | TRANSFER CORPGROUP INVERSION | 7,524,450,000 |
| XXXI | INVERSIONES GASA LTDA. | 03-27-2020 | 1,370,400,806 | 2,410,000,000 | TRANSFER CORPGROUP INVERSION | 2,410,000,000 |
| XXXII | INVERSIONES GASA LTDA. | 03-30-2020 | 199,455,688 | 350,000,000 | CURRENT ACCOUNT PAYABLE INCOME STATEMENT | 350,000,000 |
| XXXIII | INVERSIONES GASA LTDA. | 04-02-2020 | 88,572,259 | 156,000,000 | CURRENT ACCOUNT PAYABLE INCOME STATEMENT | 156,000,000 |
| XXXIV | INVERSIONES GASA LTDA. | 04-09-2020 | 830,098,980 | 1,465,268,000 | CURRENT ACCOUNT PAYABLE INCOME STATEMENT | 1,465,000,000 |
| XXXV | INVERSIONES GASA LTDA. | 05-19-2020 | 977,471,934 | 1,700,000,000 | TRANSFER CORPGROUP INV, LTDA. | 1,449,000,000 |
| | | | | | TRANSFER GRUPO COPESA S.A. | 250,00,00 |
| XXXVII | INVERSIONES GASA LTDA. | 06-26-2020 | 813,405,522 | 1,446,000,000 | TRANSFER CORPGROUP INV. LTDA. | 1,296,000,000 |
| | | | | | TRANSFER CORPGROUP INV. LTDA. | 150,000,000 |
| XXXVIII | INVERSIONES GASA LTDA. | 21-07-2020 | 1,433,295,569 | 2,560,000,000 | TRANSFER CORPGROUP INV. LTDA. | 2,560,000,000 |
| TOTAL | | | 28,968,658,324 | 53,212,522,402 | | 53,119,097,011 |

### III.VI.VI.- **CONCLUSIONS.**

In accordance with the aforementioned records, the main categories where these resources were used were:

| RESOURCE INITIAL RECIPIENT | AMOUNT | TOTAL % |
|---|---|---|
| SMU | $37,000,000,000 | 12.68 |
| COPESA | $1,250,000,000 | 0.43 |

| INVESTMENTS | $87,382,450,000 | 29.95 |
| GASA | $14,045,000,000 | 4.81 |
| AFFILIATED COMPANIES | $22,959,647,011 | 7.87 |
| UNKNOWN | $129,108,404,372 | 44.25 |

### III.VII. **EVOLUTION OF THE PARTICIPATION IN CG FINANCIAL CHILE DOS AND SAGA.**

As described in the foregoing sections, the acquisition of shares of CG FINANCIAL CHILE DOS SPA by CGB, both first-issue shares and purchases from other affiliated companies, corresponds to the following detail:

| Transaction No. | DETAIL | DATE | SHARE No. | AMOUNT |
|---|---|---|---|---|
| SHARE PURCHASE INV CG FINANCIAL CHILE DOS SPA | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 03-12-2015 | 24,484,877,154 | 36,362,000,000 |
| II | Inversiones Corpgroup Interhold Limitada | 04-09-2015 | 416,899,653 | 600,000,000 |
| III | Inversiones Corpgroup Interhold Limitada | 07-31-2015 | 22,282,498,681 | 38,200,000,000 |
| IV | Inversiones Corpgroup Interhold Limitada | 11-01-2015 | | 14,430,000,000 |
| V | Inversiones Corpgroup Interhold Limitada | 03-31-2016 | 16,206,938,723 | 26,141,676,000 |
| | TOTAL | | | 115,733,676,000 |

According to the aforementioned items, the acquisition of SAGA shares by CGB, whether it be first-issue shares or purchases from other affiliated companies, corresponds to the following detail:

| No. | TRANSACTION | DATE | SHARE No. | AMOUNT | Price per SHARE |
|---|---|---|---|---|---|
| 1 | Subscription | 04-11-2016 | 720,762,604 | 1,841,832,001 | 2.555393 |
| 2 | Subscription | 04-11-2016 | 2,363,628,387 | 6,040,000,380 | 2.555393 |
| 3 | Subscription | 06-06-2016 | 15,667,199,683 | 40,035,858,666 | 2.555393 |
| 4 | Subscription | 06-13-2016 | 352,196,261 | 900,000,001 | 2.555393 |
| 5 | Subscription | 07-01-2016 | 23,479,751 | 60,000,001 | 2.555393 |
| 6 | Subscription | 07-25-2016 | 5,098,147,058 | 13,027,771,344 | 2.555393 |
| 7 | Subscription | 08-01-2016 | 2,389,486,164 | 5,900,000,000 | 2.469150 |
| 8 | Subscription | 10-27-2016 | 6,863,968,363 | 16,948,168,170 | 2.469150 |

43

| | | | | | |
|---|---|---|---|---|---|
| 9 | Subscription | 11-09-2016 | 2,024,988,274 | 4,999,999,999 | 2.469150 |
| 10 | Subscription | 11-28-2016 | 3,239,981,239 | 8,000,000,000 | 2.469150 |
| 11 | Subscription | 12-13-2016 | 809,995,310 | 2,000,000,001 | 2.469150 |
| 12 | Subscription | 12-16-2016 | 2,429,985,929 | 6,000,000,000 | 2.469150 |
| 13 | Subscription | 12-29-2016 | 1,073,243,785 | 2,649,999,999 | 2.469150 |
| | | **Total 2016** | **43.057.062.808** | **108,403,630,562** | |
| 1 | Purchase | 09-22-2017 | 5,077,050,166 | 11,161,341,391 | 2.198391 |
| | | **Total 2017** | **5.077.050.166** | **11,161,341,391** | |
| 1 | Subscription | 02-13-2018 | 628,098,004 | 1,380,804,999 | 2.198391 |
| 2 | Subscription | 02-15-2018 | 461,392,901 | 1,014,322,001 | 2.198391 |
| 3 | Subscription | 02-19-2018 | 472,169,191 | 1,038,012,500 | 2.198391 |
| 4 | Subscription | 04-13-2018 | 4,076,860,267 | 8,962,532,919 | 2.198391 |
| 5 | Sale | 09-14-2018 | 5,098,147,058 | 13,381,501,384 | 2.624777 |
| 6 | Sale | 09-14-2018 | 126,333,391 | 318,498,617 | 2.521096 |
| | | **Total 2018** | **414.039.914** | **1,304,327,582** | |
| 1 | Subscription | 04-01-2019 | 1,005,064,520 | 2,000,000,000 | 1.989922 |
| 2 | Purchase | 04-09-2019 | 533,094,262 | 1,060,816,000 | 1.989922 |
| | | **Total 2019** | **1.538.158.782** | **3,060,816,000** | |
| 1 | Purchase | 03-19-2020 | 381,250,453 | 670,000,000 | 1.757375 |
| 2 | Purchase | 03-24-2020 | 706,362,318 | 1,220,000,000 | 1.727159 |
| 3 | Purchase | 03-25-2020 | 11,996,410,362 | 20,988,647,011 | 1.749577 |
| 4 | Purchase | 03-26-2020 | 283,154,177 | 500,000,000 | 1.765822 |
| 5 | Purchase | 03-27-2020 | 4,278,635,828 | 7,524,450,000 | 1.758610 |
| 6 | Purchase | 03-27-2020 | 1,370,400,806 | 2,410,000,000 | 1.758610 |
| 7 | Purchase | 03-30-2020 | 199,455,688 | 350,000,000 | 1.754776 |
| 8 | Purchase | 04-02-2020 | 88,572,259 | 156,000,000 | 1.761274 |
| 9 | Purchase | 04-09-2020 | 830,098,980 | 1,465,268,000 | 1.765173 |
| 10 | Purchase | 05-19-2020 | 977,471,934 | 1,700,000,000 | 1.739180 |
| 11 | Purchase | 06-26-2020 | 813,405,522 | 1,446,000,000 | 1.777711 |
| 12 | Purchase | 07-21-2020 | 1,433,295,569 | 2,560,000,000 | 1.786094 |
| | **Total 2020** | | **23.358.513.896** | **40,990,365,011** | |
| | **Overall Total** | | **73.444.825.566** | **162,311,825,382** | |

44

*Note: This table encompasses two share sale transactions conducted by CGB.*

**IV.- FINAL CONCLUSIONS.**

Given all which has been previously stated in this report, the studies and analyses conducted based on the documentation at hand, the undersigned expert can conclude the following:

**IV.I. Existence of purchase and/or subscription transactions for shares of companies affiliated to Corp Group Banking S.A. (CGB), all taking place between 2015 and 2020.**

As a result of the review conducted, it was found that during the period spanning from 2015 to 2020, the company CORP GROUP BANKING S.A., subscribed shares of the affiliated company INVERSIONES CG FINANCIAL CHILE DOS SpA, totaling **$115,733,676,000.-**

| No. | DETAIL | DETAIL | SHARE No. | AMOUNT |
|---|---|---|---|---|
| SHARE PURCHASE INV CG FINANCIAL CHILE DOS SPA | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 03-12-2015 | 24,484,877,154 | 36,362,000,000 |
| II | Inversiones Corpgroup Interhold Limitada | 04-09-2015 | 416,899,653 | 600,000,000 |
| III | Inversiones Corpgroup Interhold Limitada | 07-31-2015 | 22,282,498,681 | 38,200,000,000 |
| IV | Inversiones Corpgroup Interhold Limitada | 11-01-2015 | | 14,430,000,000 |
| V | Inversiones Corpgroup Interhold Limitada | 03-16-2016 | 16,206,938,723 | 26,141,676,000 |
| | TOTAL | | | 115,733,676,000 |

As a result of the review conducted, it was found that during the period spanning from 2015 to 2020, the company CORP GROUP BANKING S.A. subscribed a total of 49,700,647,691 shares of the affiliated company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, totaling **$122,799,302,981.-**

| No. | DATE | SHARE No. | $ AMOUNT |
|---|---|---|---|
| VI | 04-11-2016 | 720,762,604 | 1,841,832,001 |
| VII | 04-11-2016 | 2,363,628,387 | 6,040,000,380 |
| VIII | 06-06-2016 | 15,667,199,683 | 40,035,858,666 |
| IX | 06-13-2016 | 352,196,261 | 900,000,001 |
| X | 07-01-2016 | 23,479,751 | 60,000,001 |
| XI | 07-25-2016 | 5,098,147,058 | 13,027,771,344 |
| XII | 08-01-2016 | 2,389,486,164 | 5,900,000,000 |

| | | | |
|---|---|---|---|
| XIII | 10-27-2016 | 6,863,968,363 | 16,948,168,170 |
| XIV | 11-09-2016 | 2,024,988,274 | 4,999,999,999 |
| XV | 11-28-2016 | 3,239,981,239 | 8,000,000,000 |
| XVI | 12-13-2016 | 809,995,310 | 2,000,000,001 |
| XVII | 12-16-2016 | 2,429,985,929 | 6,000,000,000 |
| XVIII | 12-29-2016 | 1,073,243,785 | 2,649,999,999 |
| XIX | 02-13-2018 | 628,098,004 | 1,380,804,999 |
| XX | 02-15-2018 | 461,392,901 | 1,014,322,001 |
| XXI | 02-19-2018 | 472,169,191 | 1,038,012,500 |
| XXII | 04-13-2018 | 4,076,860,267 | 8,962,532,919 |
| XXIII | 04-01-2019 | 1,005,064,520 | 2,000,000,000 |
| | **Total** | | **122,799,302,981** |

As a result of the review carried out, it was found that during the period spanning from 2015 to 2020, the company CORP GROUP BANKING S.A., acquired a total of 28,968,658,324 shares of the affiliated company COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, for a total of **$53,212,522,402.-**, which were the property of INVERSIONES GASA LIMITADA.

| No. | SELLER | DATE | SHARE No. | $ AMOUNT |
|---|---|---|---|---|
| XXIV | INVERSIONES GASA LIMITADA | 09-22-2017 | 5,077,050,166 | 11,161,341,391 |
| XXV | CORPGROUP INTERHOLD SPA | 04-09-2019 | 533,094,262 | 1,060,816,000 |
| XXVI | INVERSIONES GASA LIMITADA | 03-19-2020 | 381,250,453 | 670,000,000 |
| XXVII | INVERSIONES GASA LIMITADA | 03-24-2020 | 706,362,318 | 1,220,000,000 |
| XXVIII | INVERSIONES GASA LIMITADA | 03-25-2020 | 11,996,410,362 | 20,988,647,011 |

| | | | | |
|---|---|---|---|---|
| XXIX | INVERSIONES GASA LIMITADA | 03/26/2020 | 283,154,177 | 500,000,000 |
| XXX | INVERSIONES GASA LIMITADA | 03/27/2020 | 4,278,635,828 | 7,524,450,000 |
| XXXI | INVERSIONES GASA LIMITADA | 03/27/2020 | 1,370,400,806 | 2,410,000,000 |
| XXXII | INVERSIONES GASA LIMITADA | 03/30/2020 | 199,455,688 | 350,000,000 |
| XXXIII | INVERSIONES GASA LIMITADA | 04/02/2020 | 88,572,259 | 156,000,000 |
| XXXIV | INVERSIONES GASA LIMITADA | 04/09/2020 | 830,098,980 | 1,465,268,000 |
| XXXV | INVERSIONES GASA LIMITADA | 05/19/2020 | 977,471,934 | 1,700,000,000 |
| XXXVI | INVERSIONES GASA LIMITADA | 06/26/2020 | 813,405,522 | 1,446,000,000 |
| XXXVII | INVERSIONES GASA LIMITADA | 07/21/2020 | 1,433,295,569 | 2,560,000,000 |
| | TOTAL | | | 53,212,522,402 |

There is a total of thirty-seven (37) transactions in accordance with the following data

| Trans.No. | DESCRIPTION | DATE | NUMBER OF SHARES | VALUE (CLP) |
|---|---|---|---|---|
| **PURCHASE OF INVERSIONES CG FINANCIAL CHILE DOS SPA SHARES** | | | | |
| I | Inversiones Corpgroup Interhold Limitada | 03/12/2015 | 24,484,877,154 | $36,362,000,000 |
| II | Inversiones Corpgroup Interhold Limitada | 04/09/2015 | 416,899,653 | $600,000,000 |
| III | Inversiones Corpgroup Interhold Limitada | 07/31/2015 | 22,282,498,681 | $38,200,000,000 |
| IV | Inversiones Corpgroup Interhold Limitada | 11/01/2015 | | $14,430,000,000 |
| V | Inversiones Corpgroup Interhold Limitada | 03/16/2016 | 16,206-938,723 [sic] | $26,141,676,000 |
| | **SUBTOTAL** | | | **$115,733,676,000** |
| **SUBSCRIPTION TO SAGA SHARES** | | | | |
| VI | SAGA shares subscription | 04/11/2016 | 720,762,604 | $1,841,832,001 |
| VII | SAGA shares subscription | 04/11/2016 | 2,363,628,387 | $6,040,000,380 |
| VII [sic] | SAGA shares subscription | 06/06/2016 | 15,667,199,683 | $40,035,858,666 |
| IX | SAGA shares subscription | 06/13/2016 | 352,196,261 | $900,000,001 |
| X | SAGA shares subscription | 07/01/2016 | 23,479,751 | $60,000,001 |
| XI | SAGA shares subscription | 07/25/2016 | 5,098,147,058 | $13,027,771,344 |
| XII | SAGA shares subscription | 08/01/2016 | 2,389,486,164 | $5,900,000,000 |
| XIII | SAGA shares subscription | 10/27/2016 | 6,863,968,363 | $16,948,168,170 |
| XIV | SAGA shares subscription | 11/09/2016 | 2,024,988,274 | $4,999,999,999 |
| XV | SAGA shares subscription | 11/28/2016 | 3,239,981,239 | $8,000,000,000 |
| XVI | SAGA shares subscription | 12/13/2016 | 809,995,310 | $2,000,000,001 |
| XVII | SAGA shares subscription | 12/16/2016 | 2,429,985,929 | $6,000,000,000 |
| XVIII | SAGA shares subscription | 12/29/2016 | 1,073,243,785 | $2,649,999,999 |
| XIX | SAGA shares subscription | 02/13/2018 | 628,098,004 | $1,380,804,999 |
| XX | SAGA shares subscription | 02/15/2018 | 461,392,901 | $1,014,322,001 |
| XXI | SAGA shares subscription | 02/19/2018 | 472,169,191 | $1,038,012,500 |
| XXII | SAGA shares subscription | 04/13/2018 | 4,076,860,267 | $8,962,532,919 |

| XXIII | SAGA shares subscription | 04/01/2019 | 1,005,064,520 | $2,000,000,000 |
|---|---|---|---|---|
| | **SUBTOTAL** | | **49,700,647,691** | **$122,799,302,981** |
| **PURCHASE OF SAGA SHARES** | | | | |
| XXIV | INVERSIONES GASA LIMITADA | 09/22/2017 | 5,077,050,166 | $11,161,341,391 |
| XXV | CORPGROUP INTERHOLD SPA | 04/09/2019 | 533,094,262 | $1,060,816,000 |
| XXVI | INVERSIONES GASA LIMITADA | 03/19/2020 | 381,250,453 | $670,000,000 |
| XXVII | INVERSIONES GASA LIMITADA | 03/24/2020 | 706,362,318 | $1,220,000,000 |
| XXVIII | INVERSIONES GASA LIMITADA | 03/25/2020 | 11,996,410,362 | $20,988,647,,011 |
| XXIX | INVERSIONES GASA LIMITADA | 03/26/2020 | 283,154,177 | $500,000,000 |
| XXX | INVERSIONES GASA LIMITADA | 03/27/2020 | 4,278,635,828 | $7,524,450,000 |
| XXXI | INVERSIONES GASA LIMITADA | 03/27/2020 | 1,370,400,806 | $2,410,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| XXXII | INVERSIONES GASA LIMITADA | 03/30/2020 | 199,455,688 | $350,000,000 |
| XXXIII | INVERSIONES GASA LIMITADA | 04/02/2020 | 88,572,259 | $156,000,000 |
| XXXIV | INVERSIONES GASA LIMITADA | 04/09/2020 | 830,098,980 | $1,465,268,000 |
| XXXV | INVERSIONES GASA LIMITADA | 05/19/2020 | 977,471,934 | $1,700,000,000 |
| XXXVI | INVERSIONES GASA LIMITADA | 06/26/2020 | 813,405,522 | $1,446,000,000 |
| XXXVII | INVERSIONES GASA LIMITADA | 07/21/2020 | 1,433,295,569 | $2,560,000,000 |
| | **SUBTOTAL** | | **28,968,658,324** | **$53,212,522,402** |
| | **TOTAL** | | | **$291,745,501,383** |

## IV.II    Source of the resources involved in the subscription and/or payment of subscribed and/or purchased shares.

| Trans. No. | DATE | NUMBER OF SHARES | VALUE (CLP) | SOURCE IN CGB | AMOUNT IN CLP CGB SOURCE |
|---|---|---|---|---|---|
| **PURCHASE OF INVERSIONES CG FINANCIAL CHILE DOS SPA SHARES** | | | | | |
| I | 03/12/2015 | 24,484,877,154 | 36,362,000,000 | NO INFO | |
| II | 04/09/2015 | 416,899,653 | 600,000,000 | NO INFO | |
| III | 07/31/2015 | 22,282,498,681 | 38,200,000,000 | NO INFO | |
| IV | 11/01/2015 | | 14,430.000.000 | NO INFO | |
| V | 03/16/2016 | 16,206,938,723 | 26,141,676,000 | NO INFO | |
| | **TOTAL** | | **115,733,676,00 0** | | |
| **SUBSCRIPTION TO SAGA SHARES** | | | | | |
| VI | 04/11/2016 | 720,762,604 | 1,841,832,001 | RECEIVED 3,000,000 USD [cut-off text] | 7,257,668,400 |
| VII | 04/11/2016 | 2,363,628,387 | 6,040,000,380 | SETTLED AGREEMENT AT 3 DAYS RATE [cut-off text] | 6,601,518,000 |
| VII [sic] | 06/06/2016 | 15,667,199,683 | 40,035,858,666 | SALE OF SHARES [cut-off text] | 40,572,107,438 |
| IX | 06/13/2016 | 352,196,261 | 900,000,000 | SETTLED AGREEMENT AT 3 DAYS [cut-off text] | 950,209,000 |
| X | 07/01/2016 | 23,479,751 | 60,000,001 | SETTLED AGREEMENT AT 3 DAYS [cut-off text] | 950,209,001 |

| | | | | | |
|---|---|---|---|---|---|
| XI | 07/25/2016 | 5,098,147,058 | 13,027,771,344 | SANTANDER CREDIT | 19,125,893,200 |
| XII | 08/01/2016 | 2,389,486,164 | 5,900,000,000 | SANTANDER CREDIT | 19,125,893,201 |
| XIII | 10/27/2016 | 6,863,968,363 | 16,948,168,170 | SETTLED AGREEMENT AT 1 DAY RATE [cut-off text] | 60,004,600,000 |
| XIV | 11/09/2016 | 2,024,988,274 | 4,999,999,999 | SETTLED AGREEMENT AT 1 DAY RATE [cut-off text] | 13.701.141,666 |
| XV | 11/28/2016 | 3,239,981,239 | 8,000,000,000 | SETTLED AGREEMENT AT 3 DAYS RATE [cut-off text] | 18,754,687,500 |
| XVI | 12/13/2016 | 809,995,310 | 2,000,000,001 | SETTLED AGREEMENT AT 1 DAY RATE [cut-off text] | 10,800,900,000 |
| XVII | 12/16/2016 | 2,429,985,929 | 6,000,000,000 | SETTLED AGREEMENT AT 1 DAY RATE [cut-off text] | 8,800,733,333 |
| XVIII | 12/29/2016 | 1,073,243,785 | 2,649,999,999 | SETTLED AGREEMENT AT 1 DAY RATE [cut-off text] | 2,800,700,000 |

| | | | | | |
|---|---|---|---|---|---|
| XIX | 02/13/2018 | 628,098,004 | 1,380,804,999 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 3,522,040,210 |
| XX | 02/15/2018 | 461,392,901 | 1,014,322,001 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 2,732,675,200 |
| XXI | 02/19/2018 | 472,169,191 | 1,038,012,500 | FOREIGN CURRENCY INCOME OPTION [cut-off text] | 2,732,675,200 |
| XXII | 04/13/2018 | 4,076,860,267 | 8,962,532,919 | BTG PACTUAL CHILE S.A. PESOS 01 | 9,000,000,000 |
| XXIII | 04/01/2019 | 1,005,064,520 | 2,000,000,000 | SETTLED AGREEMENT AT 3 DAYS RATE 0.20 | 12,002,400,000 |
| | **TOTAL** | **49,700,647,691** | **122,799,302,981** | | 239,436,051,349 |
| **PURCHASE OF SAGA SHARES** | | | | | |
| XXIV | 09/22/2017 | 5,077,050,166 | 11,161,341,391 | SETTLED AGREEMENT AT 1 DAY RATE 0. [cut-off text] | 11,750,705,000 |
| XXV | 04/09/2019 | 533,094,262 | 1,060,816,000 | NO INFO | 0 |
| XXVI | 03/19/2020 | 381,250,453 | 670,000,000 | Dividend received from Itaú Corpbanca | |
| XXVII | 03/24/2020 | 706,362,318 | 1,220,000,000 | | 12,741,989,932 |
| XXVIII | 03/25/2020 | 11,996,410,362 | 20,988,647,011 | Dividend received from Itau | 20,988,647,081 |
| XXIX | 03/26/2020 | 283,154,177 | 500,000,000 | AGREEMENT | 11,000,000,000 |
| XXX | 03/27/2020 | 4,278,635,828 | 7,524,450,000 | Purchase of USD from BECH | 7,583,300,000 |
| XXXI | 03/27/2020 | 1,370,400,806 | 2,410,000,000 | AGREEMENT | 0 |
| XXXII | 03/30/2020 | 199,455,688 | 350,000,000 | | |
| XXXIII | 04/02/2020 | 88,572,259 | 156,000,000 | Transfer of dollars | 155,841,000 |
| XXXIV | 04/11/2020 | 830,098,980 | 1,465,268,000 | Transfer of dollars | 6,754,022,413 |
| XXXV | 05/19/2020 | 977,471,934 | 1,700,000,000 | Return of readjusted payments per absorbed profits (PPUA) | 1,698,425,061 |
| XXXVI | 06/26/2020 | 813,405,522 | 1,446,000,000 | Partial return of payments per absorbed profits (PPUA) (50%) for tax year 2020 | 2,571,276,301 |
| XXXVII | 07/21/2020 | 1,433,295,569 | 2,560,000,000 | Partial return of payments per absorbed profits (PPUA) (50%) for tax year 2020 | 2,568,740,527 |
| | **TOTAL** | **28,968,658,324** | **53,212,522,402** | | |

## IV.III   Destination of the resources involved in the subscription and/or payment of subscribed and/or purchased shares.

| Trans. No. | DATE | TRANSACTION AMOUNT IN CLP | DESTINATION | AMOUNT IN CLP |
|---|---|---|---|---|
| I | 03/12/2015 | 36,362,000,000 | NO INFO | |
| II | 04/09/2015 | 600,000,000 | NO INFO | |
| III | 07/31/2015 | 38,200,000,000 | NO INFO | |

| | | | | |
|---|---|---|---|---|
| IV | 11/01/2015 | 14,430,000,000 | NO INFO | |
| V | 03/31/2016 | 26,141,676,000 | NO INFO | |
| VI | 04/11/2016 | 1,841,832,001 | NO ACTUAL INCOME | 0 |
| VII | 04/11/2016 | 6,040,000,380 | NO ACTUAL INCOME | 0 |
| VIII | 06/06/2016 | 40,035,858,666 | USD LOAN TO SMU S.A. | 37,000,000,000 |
| IX | 06/13/2016 | 900,000,001 | TRANSFER TO GASA | 900,000,000 |
| X | 07/01/2016 | 60,000,001 | TRANSFER TO INV GASA LTDA. | 118,000,000 |
| XI | 07/25/2016 | 13,027,771,344 | TRANSFER TO INV GASA LTDA. | 13,027,000,000 |
| XII | 08/01/2016 | 5,900,000,000 | TRANSFER TO CG INVERSIONES LTDA | 5,900,000,000 |

| XIII | 10/27/2016 | 16,948,168,170 | TRANSFER TO CG INVERSIONES LTDA | 16,948,000,000 |
| XIV | 11/09/2016 | 4,999,999,999 | TRANSFER TO CG INVERSIONES LTDA | 6,010,000,000 |
| XV | 11/28/2016 | 8,000,000,000 | TRANSFER TO CG INVERSIONES LTDA | 8,000,000,000 |
| XVI | 12/13/2016 | 2,000,000,001 | TRANSFER TO CG INVERSIONES LTDA | 2,000,000,000 |
| XVII | 12/16/2016 | 6,000,000,000 | TRANSFER TO CG INVERSIONES LTDA | 6,000,000,000 |
| XVIII | 12/29/2016 | 2,649,999,999 | TRANSFER TO CG INVERSIONES LTDA | 2,650,000,000 |
| XIX | 02/13/2018 | 1,380,804,999 | NO ACTUAL INCOME | 0 |
| XX | 02/15/2018 | 1,014,322,001 | NO ACTUAL INCOME | 0 |
| XXI | 02/19/2018 | 1,038,012,500 | NO ACTUAL INCOME | 0 |
| XXII | 04/13/2018 | 8,962,532,919 | TRANSFER TO CG INVERSIONES LTDA | 8,400,000,000 |
| | | | TRANSFER TO CG INVERSIONES LTDA | 565,000,000 |
| XXIII | 04/01/2019 | 2,000,000,000 | TRANSFER TO CorpGroup Inversiones Ltda. | 2,000,000,000 |
| XXIV | 09/22/2017 | 11,161,341,391 | TRANSFER TO CORPGROUP INVERSION | 11,950,000,000 |
| XXV | 04/09/2019 | 1,060,816,000 | NO INFO | 0 |
| XXVI | 03/19/2020 | 670,000,000 | TRANSFER TO GRUPO COPESA S.A. | 850,000,000 |
| XXVII | 03/24/2020 | 1,220,000,000 | TRANSFER TO CORPGROUP INVERSION | 1,220,000,000 |
| XXVIII | 03/25/2020 | 20,988,647,011 | CURRENT ACCOUNTS RECEIVABLE INCOME STATEMENT | 20,988,647,011 |
| XXIX | 03/26/2020 | 500,000,000 | TRANSFER TO CORPGROUP INVERSION | 500,000,000 |
| XXX | 03/27/2020 | 7,524,450,000 | TRANSFER TO CORPGROUP INVERSION | 7,524,450,000 |
| XXXI | 03/27/2020 | 2,410,000,000 | TRANSFER TO CORPGROUP INVERSION | 2,410,000,000 |
| XXXII | 03/30/2020 | 350,000,000 | CURRENT ACCOUNTS RECEIVABLE INCOME STATEMENT | 350,000,000 |
| XXXIII | 04/02/2020 | 156,000,000 | CURRENT ACCOUNTS RECEIVABLE INCOME STATEMENT | 156,000,000 |
| XXXIV | 04/09/2020 | 1,465,268,000 | CURRENT ACCOUNTS RECEIVABLE INCOME STATEMENT | 1,465,000,000 |
| XXXV | 05/19/2020 | 1,700,000,000 | TRANSFER TO CORPGROUP INV. LTDA. | 1,449,000,000 |
| | | | TRANSFER TO GRUPO COPESA S.A. | 250,000,000 |
| XXXVI | 06/26/2020 | 1,446,000,000 | TRANSFER TO CORPGROUP INV. LTDA. | 1,296,000,000 |
| | | | TRANSFER TO GRUPO COPESA S.A. | 150,000,000 |
| XXXVII | 07/21/2020 | 2,560,000,000 | TRANSFER TO CORPGROUP INV. LTDA. | 2,560,000,000 |

**IV.IV   Perform an analysis of these transactions and, in particular, of aspects such as   total amounts, evolution over time, and equivalence in U.S. dollars.**

**A)       ASSESSMENT.**

CGB issued the Bond 13/23 under certain covenants or obligations not to do.

The effectiveness of the statements made by executives Mr. Zavala Destefani and Mr. Salinas Díaz could be verified, in that thirty-seven (37) transactions—a part of a mechanism—were carried out from the beginning of the issuance of Bond CGB 13/23 6.75 until the year 2020, which aimed to

dispose of almost all of CGB's funds.

According to the above-mentioned background, transactions were carried out between affiliated companies between 2015 and 2020 amounting to a total of CLP 291,745,501,383.

The purpose of these transactions was the acquisition of shares of FINANCIAL CHILE DOS and SAGA by CGB.

On an annual basis, these operations are broken down as follows:

| YEAR | AMOUNT (CLP) | % OVER TOTAL |
|---|---|---|
| 2015 | $89,592,000,000 | 30.71 |
| 2016 | $134,545,306,562 | 46.12 |
| 2017 | $11,161,341,391 | 0.04 |
| 2018 | $12,395,672,419 | 4.25 |
| 2019 | $3,060,816,000 | 1.05 |
| 2020 | $40,990,365,011 | 14.05 |
| TOTAL | $291,745,501,383 | |

According to the observed dollar value on the last banking business day of each year, the relevant amounts total $425,992,555 and it is broken down as follows:

| YEAR | AMOUNT IN CLP | OBSERVED DOLLAR | AMOUNT IN USD |
|---|---|---|---|
| 2015 | $89,592,000,000 | 707.34 | $126,660,446 |
| 2016 | $134,545,306,562 | 667.29 | $201,629,436 |
| 2017 | $11,161,341,391 | 615.22 | $18,142,033 |
| 2018 | $12,395,672,419 | 695.69 | $17,817,810 |
| 2019 | $3,060,816,000 | 744.62 | $4,110,575 |
| 2020 | $40,990,365,011 | 711.24 | $57,632,255 |
| | $291,745,501,383 | | $425,992,555 |

Bond 13/23 6.75, issued by CGB amounted to $500,000,000.

The funds disposed of through these thirty-seven (37) transactions, part of the mechanism to acquire shares of the affiliated companies FINANCIAL and SAGA, corresponded to 85.19% of the capital of Bond 13/23 6.75.

**B)**    **DESTINATION OF CGB RESOURCES.**

Based on the foregoing, resources were initially transferred from CGB to the following companies:

| INITIAL RECIPIENT OF RESOURCES | AMOUNT | % OVER TOTAL |
|---|---|---|
| SMU | $37,000,000,000 | 12.68 |
| COPESA | $1,250,000,000 | 0.43 |
| INVERSIONES | $87,382,450,000 | 29.95 |
| GASA | $14,045,000,000 | 4.81 |
| AFFILIATED COMPANIES | $22,959,647,011 | 7.87 |
| UNKNOWN | $129,108,404,372 | 44.25 |

To determine the final destination of these resources, that is, to whom they were transferred or for what they were used, by SMU SA, Retail Holding III SpA, Inversiones SAMS SpA, COPESA SA, Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) and Corp Group Interhold SpA (INTERHOLD), it is necessary to complement this forensic accounting report with the following background of these companies:

(i)      Financial Statements for the years 2015 to 2021;

(ii)     Balance Sheet as of December 31, 2015 to 2021;

(iii)    General ledgers and journals for the years 2015 to 2021;

(iv)     Audits for the years 2015 to 2021; and

(v)      Bank account statements for the years 2015 to 2021.

### THEREFORE

This is all I can report in relation to the facts investigated and on the basis of the documentation before me.

### LEONARDO QUINTANILLA ESPINOZA

**Digitally signed by LEONARDO QUINTANILLA ESPINOZA**

**Distinguished name (DN): c=CL, st=METROPOLITANA DE SANTIAGO, l=SANTIAGO, o=LEONARDO QUINTANILLA ESPINOZA, ou=*, cn=LEONARDO QUINTANILLA ESPINOZA,**

**email=leoquintanillae@gmail.com**

**Date: 01/26/2024 1:06:55 PM -03'00'**

**LEONARDO QUINTANILLA ESPINOZA AUDITING ACCOUNTANT - LEGAL EXPERT**

**CMF REGISTRY No. 973**

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Informe Los Lirios

Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit H-1





## Detalle de Solicitud

### Datos Solicitante

| | |
|---|---|
| Nombre Solicitante | SERGIO RODRIGUEZ ORO |
| RUT | 9909965-8 |
| Domicilio | APOQUINDO, N° 3721, 33, Block null, LAS CONDES |
| Fecha Solicitud | 26/01/2024 |
| E-mail | sro@cortesyrodriguez.cl |
| Teléfono Fijo | 2632673 |
| Teléfono Movil | 997480074 |
| Relación con la Causa | ABOGADO QUERELLANTE |
| Tipo Comunicación | EMAIL |

### Datos Causa

| | | | |
|---|---|---|---|
| Fecha Denuncia | 20/01/2023 | | |
| N° Identificación Caso | 0 | Institución | null |
| RUC | 2310003145-0 | | |
| Nombre Caso | CELEBRACIÄN DE CONTRATO SIMULADO. ART. 471 Nª 2. | | |
| Fiscalia | LAS CONDES | | |
| Fiscal / Encargado Resolver | FELIPE ANDRES SEPULVEDA ARAYA | | |
| Nombre Representado | EXPORTADORA LOS LIRIOS S.A. | | |
| Tipo Representado | VICTIMA | | |

### Datos Requerimiento

| | |
|---|---|
| Número de Folio | 150137282737 |
| Número de Solicitud | 7488134 |
| Requerimiento | Aporte de antecedentes asociados a una causa |
| Estado | Aprobado para EjecuciÃ³n |



Fiscalía de Chile cada día más cerca de usted



**Historial Solicitud**

| Fecha | Funcionario | Nombre Funcionario | Estado | Observación | Documento |
|-------|-------------|--------------------|--------|-------------|-----------|
| 26/01/24 | 9909965-8 | | Ingresado | Ingreso Solicitud Portal. Estimado Fiscal, a nombre del querellante Sr. Petersen, acompaño pericia contable. Saludos | |
| 26/01/24 | 9909965-8 | | Ingresado | Adjunta Documento. | \\fnfileshare02\SIAU\1706289840_INFORMEPERICIALCGB.pdf |
| 26/01/24 | 12907354-3 | JULIO AHUMADA ACEITUNO | Derivado para Resolver | Derivación. Lo que indica. | |
| 29/01/24 | 12861710-8 | FELIPE ANDRES SEPULVEDA ARAYA | Aprobado para Ejecución | Aprobación. Agregar a la carpeta | |



sistema de información
y atención a usuarios

Fiscalía de Chile cada día más cerca de usted

# INFORME PERICIAL CONTABLE

**GRUPO CGB Y FILIALES**.

**OPERACIONES DE COMPRA Y/O SUSCRIPCIÓN DE ACCIONES DE SOCIEDADES RELACIONADAS**

**RUC Nº 2310003145-0**
**FISCAL SR. FELIPE SEPÚLVEDA ARAYA**

**LEONARDO QUINTANILLA ESPINOZA**
**CONTADOR AUDITOR – PERITO JUDICIAL**
**REGISTRO CMF N°973**

**ENERO 2024**

# INFORME PERICIAL CONTABLE
# CORP GROUP BANKING S.A. Y RELACIONADAS

**LEONARDO QUINTANILLA ESPINOZA,** Contador Auditor, Perito Judicial, inscrito en la Lista General de Peritos de I. Corte de Apelaciones de Santiago, emite informe pericial contable privado, relativo a los hechos investigados en carpeta judicial RUC Nº 2310003145-0, RIT N° 379-2023 del 4° Juzgado de Garantía de Santiago, por el delito de otorgamiento de contrato simulado, relacionado con operaciones de CORP GROUP BANKING S.A., y sociedades relacionadas.

## ANTECEDENTES DEL PERITO INFORMANTE

Contador Auditor, con 30 años de experiencia profesional en consultoría y auditoría forense. Desde el año 1995 inscrito en la Lista General de Peritos de la Excma. Corte Suprema, en la especialidad de Auditoría, para las Jurisdicciones de todas las Cortes de Apelaciones del país, actualmente vigente para el bienio 2022-2023. Es Contador Público y Auditor de la Universidad de Santiago.

Desde el año 1995, desarrolla la profesión en forma independiente, prestando servicios profesionales en asesorías contables financieras y tributarias a diversas empresas. Además, realiza asesoría permanente a Liquidadores y Veedores en Procedimientos Concursales de Liquidación y Reorganización.

En su labor como Auxiliar de Justicia, durante más de veinticinco años acumula amplia experiencia en la materia, participando en más de mil causas judiciales, emitiendo informes periciales a requerimiento de los diversos Juzgados del Crimen, Civiles, Laborales, del Trabajo, de Familia y Tribunales Tributarios y Aduaneros, participando en diversos juicios en Tribunales de Juicio Oral en lo Penal.

Además se encuentra inscrito en el Registro de Inspectores de Cuentas y Auditores Externos que lleva la Comisión para el Mercado Financiero (CMF).

Domiciliado para estos efectos en calle Carmencita Nº110, Oficina 11, comuna de Las Condes, Santiago; teléfono 2 2502 8590; celular +569 9220 6534; correo electrónico leoquintanillae@gmail.com

1

### I.-    OBJETIVO Y ALCANCE DE LA PERICIA

El Estudio Jurídico "Cortés & Rodríguez Abogados" me ha solicitado un informe contable relacionado con la investigación RUC Nº 2310003145-0, que se sigue por el Fiscal Sr. Felipe Sepúlveda Araya. De acuerdo a lo pedido el objetivo del presente informe pericial particular se debe orientar a examinar la documentación proporcionada con la finalidad indagar y verificar los siguientes aspectos:

1. La existencia de operaciones de compra y/o suscripción de acciones de sociedades relacionadas a Corp Group Banking S.A. (CGB), todo ello entre los años 2015 a 2020, debiendo en tal caso identificarlas y señalar los antecedentes que de ellas consten en los documentos tenidos la vista;
2. Para el caso que se pueda determinar la existencia de operaciones de ese tipo, indagar sobre el posible origen de los recursos involucrados en el entero y/o pago de las acciones suscritas y/o compradas;
3. Para el caso que se pueda determinar la existencia de operaciones de ese tipo, indagar sobre el posible destino de los recursos involucrados en el entero y/o pago de las acciones suscritas y/o compradas; y
4. Realizar un análisis de las referidas operaciones y, en especial, aspectos tales como montos globales, evolución en el tiempo y equivalencia en dólares de los Estados Unidos de Norteamérica.

Reunida la documentación, antecedentes e información necesaria, se procedió a desarrollar el programa de auditoría previamente planificado, tendiente a reunir evidencia válida y suficiente que permitiera informar clara y objetivamente, respecto de la materia consultada.

### II.-    ANTECEDENTES EXAMINADOS.

En la elaboración del presente informe se han tenido a la vista documentos, registros contables y otros antecedentes, según el siguiente detalle:

1.- Contratos de Suscripción de Acciones de Compañía Inmobiliaria y de Inversiones SAGA SpA, por Corp Group Banking S.A.
2.- Contratos de Suscripción de Acciones de Compañía Inmobiliaria y de Inversiones SAGA SpA, por Inversiones GASA SpA.
3.- Contratos de Compraventa y Traspaso de Acciones de Compañía Inmobiliaria y de Inversiones SAGA SpA.

2

4.- Contratos de Compraventa y Traspaso de Acciones de la sociedad Inversiones CG Financial Chile Dos SpA.

5.- Libro Mayor de Compañía Inmobiliaria y de Inversiones SAGA SpA, ejercicios comerciales 2016 a 2020.

6.- Libro Mayor de Inversiones GASA Limitada, ejercicios comerciales 2016 a 2020.

7.- Libro Mayor de Corp Group Banking S.A., ejercicios comerciales 2016 a 2020.

8.- Estado Financieros Corp Group Banking S.A., ejercicios 2015 A 2020 con Informe Auditores Independientes Deloitte Auditores y Consultores Limitada.

9.- Estado Financieros Corp Group Banking S.A., consolidados intermedios ejercicios 31/03/2021 – 31/12/20202020, no auditados.

10.- Carpeta de investigación RUC Nº 2310003145-0.

12.- Informe TRANSACCIONES RELACIONADAS DE CORP GROUP BANKING, de fecha 28/02/2021, suscrito por Herman Bennett C. y Juan Andrés Fontaine T.

13. Prospecto de Actualizado Emisión de Acciones de pago SMU SA, de fecha 18 de enero de 2017- dirigido a don Carlos Pavez Tolosa, Superintendente de Valores y Seguros.

14. Estados Financieros SMU SA, al 31 de diciembre de 2017 y 2018.

15. Acta de Junta Ordinaria de Accionistas de 09 de abril de 2020 de SMU SA.

Sobre la base de la documentación detallada se procedió a confeccionar el presente informe.

**III.-**    **INFORME PERICIAL DETALLADO**

**III.I.- CONTEXTO.**

Los hechos investigados se refieren a la investigación RUC Nº 2310003145-0, en la cual se encuentran una serie de querellas criminales presentadas por alrededor de cuarenta personas distintas y patrocinadas por diversos abogados, entre ellos los del Estudio "Cortés & Rodríguez Abogados".

En dichas presentaciones -en lo que dice relación con el contexto que se desarrollaron los hechos investigados- se sostiene lo siguiente:

*"Corp Group Banking S. A. emitió en mayo de 2013 un bono (ISIN USP31925AD54 y nombre Corp Grp Banking 13/23) por la suma de US$ 500.000.000.-, con un interés del 6,750% con vencimiento para el día 15 de marzo de 2023. Los intereses se pagarían en*

3

*marzo y septiembre de cada año. Se estableció la posibilidad de rescatar los bonos  con fecha 15 de marzo de 2018".*

El referido bono se denominó Bono 13/23 6,75.

Se señala que se establecieron covenants u obligaciones de no hacer, entre las que se encuentran las denominadas *limitaciones de pago*: "No se puede pagar dividendos o hacer distribuciones respecto a las Acciones de Corp Group o sus Subsidiarias Restringidas, salvo algunas excepciones; No se puede comprar o adquirir (de cualquier modo) Acciones de Capital de Corp Group o de sus Subsidiarias Restringidas; No se puede pagar deuda subordinada o incurrir en una deuda adicional, ni realizar pagos restringido, ni crear gravámenes, ni transacciones con partes relacionadas, antes de cualquier vencimiento final programado de cualquier deuda, antes del reembolso programado o pago programado de fondo de amortización, según sea el caso".

Asimismo, se establecieron *limitaciones de operaciones con los Afiliados:* "No se permite celebrar ningunas operaciones relacionadas (ni compra ni venta ni arrendamiento, etc.), en beneficio de cualquier afiliado de Corp Group, a menos que: Los términos de dicha operación sea mas favorable para Corp Group que para terceros; La operación implique pagos de más de US$10.- millones, deberá ser aprobado por los miembros del Consejo de Administración de Corp Group; y La operación implique pagos de más de US$20.- millones, deberá darse una opinión favorable en cuanto a la equidad por parte de un asesor financiero independiente".

"*Entre los años 2016 y 2020 el querellado dispuso que CGB ejecutara con sus relacionadas SAGA y GASA una serie de contratos de suscripción y compraventa de acciones de SAGA, todos los cuales son simulados, ya que la real voluntad del controlador fue sacar la liquidez (dinero) de CGB y en ningún caso adquirir las referidas acciones. Luego dichos recursos -ya una vez en el patrimonio de SAGA- fueron dispuestos por el querellado en su beneficio o de alguna de las sociedades de su familia. Se trató de la celebración de una serie de contratos de traspasos de acciones por un monto total aproximado a los $164.735.000.000.-. Significó un vaciamiento del patrimonio de CGB realizado en perjuicio de los bonistas. Es decir, de los acreedores del Bono CGB 13/23. En conclusión, el emisor del bono fue despojándose de toda su caja".*

"*Como resultado de dichas transacciones, CGB vació su caja, sufriendo un daño patrimonial derivado de la adquisición de acciones a un precio de compra superior al valor económico que dicha inversión representa para ésta".*

4

Sobre el particular, en especial la realización de operaciones con sociedades relacionadas, nos encontramos en la carpeta de investigación con la declaración de Alejandro Zavala Destefani, Subgerente de Contabilidad desde el año 2011 de CGB, quien señala lo siguiente:

*"... También en el año 2014, recuerdo haber visto primera vez el empleo del mecanismo que permitía el bono, en el sentido de invertir en ciertos activos financieros como lo es la compra de acciones de bancos. ...*

*... Ya en el año 2016, finalmente se concreta la fusión del Banco Corp Banca e Itaú Chile, pero la situación de mercado aún no permitía liberar la restricción del bono, por ello, fue que CorpGroup Banking S.A., empezó a adquirir acciones de la Compañía Inmobiliaria y de Inversiones SAGA SpA., sociedad relacionada que dentro de su patrimonio mantenía acciones de Banco Itaú Corp Banca, lo que entiendo mantiene el cumplimiento de la restricción, ya que si bien compra acciones de una sociedad, esta última es tenedora acciones del banco, situación que estaba permitida.*

*... ya que como se había llegado al mínimo de acciones de requeridos por el bono, Corp Group Banking S.A., se encontraba impedido de vender, por eso se recurrió a la Compañía Inmobiliaria y de Inversiones SAGA SpA....*

*... Todo esto, desencadenó realizar diversas operaciones de compra y venta de acciones de la Compañía Inmobiliaria y de Inversiones SAGA SpA, por parte de Corp Group Banking S.A. para justificar el traspaso de fondos hacia Corp Group Internold SpA., relacionados con los dividendos retenidos por el custodio, no fueran considerados un incumplimiento de las restricciones del bono. ....*

*Estas operaciones comentadas, recuerdo que se repitieron hasta el año 2020, momento en que fue la última vez que se recibió dividendos del banco, antes de entrar al proceso de Chapter 11, de Estados Unidos"*

Asimismo, se encuentra la declaración de Fabián Salinas Díaz, Jefe de Contabilidad del Holding Corp Group, quien señala lo siguiente:

*"Respecto a la compraventa de acciones que hizo Corp Group Banking a GASA por acciones de SAGA, puedo indicar que recuerdo que pudieron haber empezado en el año 2016, y haber recibido los contratos de compraventa y haberlos registrado en la contabilidad Banking, aumentando la inversión en SAGA contra banco, y en GASA a su vez, recibiendo plata en cuenta banco y rebajando la inversión SAGA.*

*Luego, esos dineros alojados en la cuenta de GASA, fueron a parar a SAGA por concepto de aumento de capital, que también realizó Corp Group Banking como accionista de SAGA. Luego de realizar algunos pagos propios a sus obligaciones, se realizaron*

5

*traspaso de dinero a Corp Group Inversiones Limitada, sociedad que a su vez traspasó dineros aguas abajo a Corp Group Financial SpA, y esta a Corp Group Inversiones Limitada CPA y esta a Interhold, siento esta última quien realizó los respectivos pagos a sus obligaciones, principalmente en el pago de la línea del Itaú Nassau, la cual se encontraba garantizada con acciones del Banco y que eran dueños Banking y SAGA.*

*Estos operaciones se llevaron a acabo cada vez que se realizaban las compraventas de acciones de SAGA y aumentos de capital de la misma."*

La investigación por el delito reiterado de otorgamiento de contrato simulado se sigue en contra de:

i)   Álvaro José Saieh Bendeck;

ii)  Jorge Andrés Saieh Guzmán;

iii) María Catalina Saieh Guzmán;

iv)  Cristóbal Alejandro Cerda Meneses; y

v)   María Pilar Dañobeitia Estades.

De acuerdo a lo señalado por dichos testigos, las operaciones de suscripción y/o compra de acciones se habrían desarrollado entre los años 2014 a 2020, siendo denominadas como un *mecanismo* por parte de los referidos ejecutivos.

Asimismo, las operaciones (o el mecanismo) involucraría a un conjunto de sociedades, todas ellas relacionadas con Corp Group Holding, tales como Corp Group Banking S.A. (CGB), Compañía Inmobiliaria y de Inversiones SAGA SpA (SAGA), Inversiones GASA Limitada (GASA), Corp Group Inversiones Limitada (INVERSIONES), CG Financial Chile Dos SpA (FINANCIAL DOS) y Corp Group Interhold SpA (INTERHOLD).

A continuación se exponen los antecedentes del desarrollo de las operaciones investigadas según la documentación, registros contables y demás antecedentes obtenidos en el curso de la investigación pericial.

## III.II.- <u>ANTECEDENTES GENERALES.</u>

La información sobre las relaciones de control entre las sociedades, según los datos presentados por el Sr. Álvaro Saieh Bendeck a la U.S. Securities and Exchange Commission

6

("SEC"), (U.S. Comisión Nacional del Mercado de Valores), con fecha 27 de noviembre de 2020, la malla societaria es la siguiente:

**CGBK – Malla Organizacional del Grupo Saieh (Noviembre de 2020)**

**Fuente: EEFF Anuales – Desarrollo Interno**



Aun cuando la información recabada no permite determinar los porcentajes de control exactos, las relaciones específicas son las siguientes:

- CorpGroup Interhold SpA (Interhold) es el accionista mayoritario de Corp Group Banking S.A. (CGB).
- CorpGroup Holding Inversiones Limitada Sociedad en Comandita por Acciones (CGHIL) es el accionista mayoritario de INTERHOLD.
- CorpGroup Financial S.A. (CGF) es la controladora de CGHIL.
- Inversiones GASA Limitada (GASA) es el único accionista de Compañía de Inversiones SAGA SpA (SAGA).
- CorpGroup Inversiones Limitada (INVERSIONES) es el accionista mayoritario de FINANCIAL y GASA.
- CGHI es el accionista mayoritario de INVERSIONES.

- El Sr. Álvaro Saieh Bendeck es el presidente y persona controladora de CGHI y director de CGF.

El contexto de los hechos investigados tiene su origen en la emisión del bono denominado CGB 13/23 emitido por CORPGROUP BANKING S.A., en el mes de mayo de 2013 por la suma de US$500.000.000.- con un interés de 6,75% con vencimiento al 15/03/2023, con pago de intereses en marzo y septiembre de cada año.

Al respecto, una serie de bonistas querellantes de autos, han observado y cuestionado una serie de operaciones realizadas por CGB, relativas a la compraventa de acciones de la sociedad relacionada SAGA, que habría provocado el vaciamiento patrimonial, que en definitiva la impidió hacer efectiva la obligación asumida con los bonistas.

De acuerdo a lo referido por los ejecutivos Sres. Zavala Destefani y Salinas Díaz las operaciones parte del *mecanismo* se habrían desarrollado casi desde el inicio de la emisión del bono CGB 13/23.

### III.III. TRANSACCIONES DE COMPRA DE ACCIONES DE CG FINANCIAL CHILE DOS SPA.

### III.III.I    DETALLE DE LAS OPERACIONES.

En los puntos siguientes de este informe se analizan y exponen los antecedentes de las operaciones de compra de acciones de empresas relacionadas realizadas por CORPGROUP BANKING S.A. comenzando por las acciones de CG Financial Chile DOS SpA (FINANCIAL DOS).

**OPERACIÓN N° I.- COMPRAVENTA DE FECHA 12/03/2015.**

En la NOTA 11 de los Estados Financieros consolidados intermedios de CorpGroup Banking S.A., por los periodos de seis meses al 30 de junio de 2015 y 2014, con informe de auditores independientes Deloitte Auditores y Consultores Limitada, se informa lo siguiente:

11. INVERSIONES CONTABILIZADAS UTILIZANDO EL METODO DE LA PARTICIPACION

a.   El detalle de la inversión en asociada al 30 de junio de 2015, es el siguiente:

| Rut | Sociedad | País Origen | Moneda Control | Participación % | Patrimonio Sociedad M$ | Resultado Periodo M$ | Resultado Devengado M$ | Valor Patrimonial M$ |
|---|---|---|---|---|---|---|---|---|
| 96.751.830-1 | Corp Group Vida Chile S.A. | Chile | CLP | 22,72% | 214.308.869 | 20.946.998 | 4.758.362 | 48.682.827 |
| 76.257.538-8 | FIP Corp Life | Chile | CLP | 42,53% | 67.906.231 | 1.838.411 | 781.949 | 28.883.204 |
| 76.413.608-2 | Inversiones CG Financial Chile Dos SpA. (1) | Chile | CLP | 47,71% | 63.118.511 | (1.045.852) | (435.498) | 30.115.987 |
| | Totales | | | | | | 5.104.813 | 107.682.018 |

1.   Con fecha 12 de marzo de 2015, 9 de abril de 2015 y 15 de junio de 2015, la Sociedad compró a Inversiones CorpGroup Interhold Ltda., un total de 27.996.378.975 acciones de Inversiones CG Financial Chile Dos S.p.A. Producto de esta operación, la Sociedad adquirió un 3,952% de participación indirecta en CorpBanca Colombia. El efecto de esta operación fue registrado con abono a otras reservas en el patrimonio en atención a que corresponde a una transacción entre entidades bajo control común (ver Nota 16 a los estados financieros).

Según contrato de compraventa y traspaso de acciones, CGB compra 24.484.877.154 acciones de INVERSIONES CG FINANCIAL CHILE DOS SpA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $36.362.000.000.- que el comprador pagaría a más tardar el 31/3/2015 en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

Compra corresponde a un 24,56% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

Fecha: 31.03.2015

Acciones: 24.484.877.154

Comprador: CGB

Vendedor: INTERHOLD

Precio: $36.362.000.000.-

**OPERACIÓN N° II.-          COMPRAVENTA DE FECHA 09/04/2015.**

Se tiene a la vista contrato de compraventa de acciones.

Según contrato de compraventa y traspaso de acciones, CGB compra 416.899.653 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $600.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

9

Compra corresponde a un 3,95% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

Fecha: 09.04.2015

Acciones: 416.899.653

Comprador: CGB

Vendedor: INTERHOLD

Precio: $600.000.000.-

**OPERACIÓN Nº III.- COMPRAVENTA DE FECHA 31/07/2015.**

Se tiene a la vista contrato de compraventa de acciones.

Según contrato de compraventa y traspaso de acciones, CGB compra 24.282.498.681 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $38.200.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

Compra corresponde a un 24,4% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold Limitada, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

Fecha: 31.07.2015

Acciones: 24.282.498.681

Comprador: CGB

Vendedor: INTERHOLD

Precio: $38.200.000.000.-

**OPERACIÓN Nº IV.- COMPRAVENTA DE FECHA 01/11/2015.**

Según contrato de compraventa y traspaso de acciones, CGB compra acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $14.430.000.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

10

Compra corresponde a un 9,78% de CG Financial Chile Dos SpA a Inversiones Corpgroup Interhold Limitada, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

Fecha: 01.11.2015
Acciones: *
Comprador: CGB
Vendedor: INTERHOLD
Precio: $14.430.000.000.-

Respecto de esta operación no se ha tenido a la vista el contrato y/o documento en que conste la cesión de acciones, siendo la información obtenida de los EEFF de la compañía, en los cuales se da cuenta que se realizó la misma durante el 3Q, por lo que la fecha indicada corresponde al inicio del cuarto trimestre.

**OPERACIÓN N° V.-    COMPRAVENTA DE FECHA 16/03/2016.**

Según contrato de compraventa y traspaso de acciones, CGB compra 16.206.938.723 acciones de INVERSIONES CG FINANCIAL CHILE DOS SPA, de propiedad de Inversiones CorpGroup Interhold Limitada, por precio de $26.141.676.000.- que el comprador paga en ese acto en dinero en efectivo, declarando el vendedor recibirlos a su entera conformidad.

Compra corresponde a un 17,22% de CG Financial Chile Dos SpA (alcanza 100%) a Inversiones Corpgroup Interhold, acciones de activo subyacente Corpbanca Colombia con prenda, fianza y codeuda solidaria a favor de Itau por financiamiento a Inversiones Corpgroup Interhold.

Fecha: 16.03.2016
Acciones: 16.206.938.723
Comprador: CGB
Vendedor: INTERHOLD
Precio: $26.141.676.000.-

**III.III.II.-    RESUMEN DE LAS OPERACIONES ACCIONES FINANCIAL DOS**

En consecuencia, de la revisión practicada se verifica que durante el periodo marzo de 2015 a marzo de 2016, la sociedad CORP GROUP BANKING S.A., adquiere acciones

11

de la sociedad relacionada CG FINANCIAL CHILE DOS SPA, por un total de **$115.733.676.000.-**, según el siguiente detalle:

| N° | DETALLE | FECHA | N°. ACCIONES | VALORES |
|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 13-06-2016 | 352.196.261 | 900.000.001 | 2,56 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TRASPASO A GASA |
| 01-07-2016 | 23.479.751 | 60.000.001 | 2,56 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A INV GASA LTDA |
| 25-07-2016 | 5.098.147.058 | 13.027.771.344 | 2,56 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | 2414 TRANS GASA |
| 01-08-2016 | 2.389.486.164 | 5.900.000.000 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | 2471 CG INVERSIONES LTDA |
| 27-10-2016 | 6.863.968.363 | 16.948.168.170 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 09-11-2016 | 2.024.988.274 | 4.999.999.999 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 28-11-2016 | 3.239.981.239 | 8.000.000.000 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 13-12-2016 | 809.995.310 | 2.000.000.001 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 16-12-2016 | 2.429.985.929 | 6.000.000.000 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 29-12-2016 | 1.073.243.785 | 2.649.999.999 | 2,47 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | TO A CG INVERSIONES LTDA |
| 13-02-2018 | 628.098.004 | 1.380.804.999 | 2,20 | Cuenta Corriente por cobrar EERR corrientes | SIN INGRESO EFECTIVO |
| 15-02-2018 | 461.392.901 | 1.014.322.001 | 2,20 | Cuenta Corriente por cobrar EERR corrientes | SIN INGRESO EFECTIVO |
| 19-02-2018 | 472.169.191 | 1.038.012.500 | 2,20 | Cuenta Corriente por cobrar EERR corrientes | SIN INGRESO EFECTIVO |
| 13-04-2018 | 4.076.860.267 | 8.962.532.919 | 2,20 | Banco Itaú-Corpbanca Pesos 01 | TO a CG Inversiones LTDA. |
| 01-04-2019 | 1.005.064.520 | 2.000.000.000 | 1,99 | Banco Itaú-Corpbanca Pesos 01 | TO Corp Group Inversiones Ltda. |
| **TOTAL** | **49.700.647.691** | **122.799.302.981** | | | |

13

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca US$" por la suma de $1.841.832.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"Recibe 3.000.000 USD COMP"** por la suma de $7.257.668.400.-, registrado con fecha 15/03/2016.

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria mientras que en SAGA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR.

**OPERACIÓN N° VII SUSCRIPCIÓN DE FECHA 11/04/2016. TITULO N°8.**

Según contrato de suscripción de acciones, CGB suscribe 2.363.628.387 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $6.040.000.380.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente EERR", es decir no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $6.040.000.380.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"Liquida Pacto a 3 días TA"** por la suma de $6.601.518.000.-, registrado con fecha 11/04/2016.

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria mientras que en SAGA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR

**OPERACIÓN N° VIII SUSCRIPCIÓN DE FECHA 06/06/2016. TITULO N°10.**

Según contrato de suscripción de acciones, CGB suscribe 15.667.199.683 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor

14

de las acciones suscritas asciende a la suma de $40.035.858.666.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Obligación Banco Estado Pesos", mediante lo cual se paga un crédito otorgado por BECH a SAGA por la suma de $40.000.000.000.- Ahora bien con el producto del crédito BECH, se registra crédito otorgado por SAGA a SMU con glosa **"PTMO USD A SMU S.A."** por la suma de $37.000.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Estado $" por la suma de $40.035.858.666.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"VENTA ACCIONES DE CONF"** por la suma de $40.572.107.438.

## OPERACIÓN N° IX SUSCRIPCIÓN DE FECHA 13/06/2016. TITULO N°11.

Según contrato de suscripción de acciones, CGB suscribe 352.196.261 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2,5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $900.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $900.000.001.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso por **"TRASPASO A GASA"** por la suma de $900.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $900.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO A 3 DÍAS TA"** por la suma de $950.209.000.

## OPERACIÓN N° X  SUSCRIPCIÓN DE FECHA 01/07/2016. TITULO N°12.

Según contrato de suscripción de acciones, CGB suscribe 23.479.751 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de

Accionistas de fecha 11/04/2016, por el valor de $2,5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $60.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $60.000.001.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso por **"TO A INV A GASA"** por la suma de $118.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $60.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"Liquida Pacto a 3 días TA"** por la suma de $950.209.000. (mismo de la transacción anterior)

**OPERACIÓN Nº XI  SUSCRIPCIÓN DE FECHA 25/07/2016. TITULO N°13.**

Según contrato de suscripción de acciones, CGB suscribe 5.098.147.058 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 11/04/2016, por el valor de $2.5553934 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $13.027.771.344.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $13.027.771.344.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO A INV GASA LTDA."** por la suma de $13.027.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $13.027.771.344.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"CRÉDITO SANTANDER"** por la suma de $19.125.893.200.-

16

**OPERACIÓN N° XII      SUSCRIPCIÓN DE FECHA 01/08/2016. TITULO N°20.**

Según contrato de suscripción de acciones, CGB suscribe 2.389.486.164 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $5.900.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $5.900.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $5.900.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $5.900.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"Crédito Santander"** por la suma de $19.125.893.200.- (mismo que el caso anterior).

**OPERACIÓN N° XIII-      SUSCRIPCIÓN DE FECHA 27/10/2016. TITULO N°18.**

Según contrato de suscripción de acciones, CGB suscribe 6.863.968.363 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $16.948.168.170.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $16.948.168.170.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $16.948.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $16.948.168.170.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un

ingreso que se registra como **"LIQUIDA PACTO 1 DIA TASA"** por la suma de $60.004.600.000.-

**OPERACIÓN N° XIV        SUSCRIPCIÓN DE FECHA 09/11/2016. TITULO N°14.**

Según contrato de suscripción de acciones, CGB suscribe 2.024.988.274 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $4.999.999.999.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $5.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $6.010.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $5.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 1 DIA TASA"** por la suma de $13.701.141.666.-

**OPERACIÓN N° XV        SUSCRIPCIÓN DE FECHA 28/11/2016. TITULO N°21.**

Según contrato de suscripción de acciones, CGB suscribe 3.239.981.239 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $8.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $8.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  **"TO CG INVERSIONES LTDA."** por la suma de $8.000.000.000.-

- **Registro contable en CGB**

18

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $8.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 3 DIAS TASA"** por la suma de $18.754.687.500.-

**OPERACIÓN N° XVI       SUSCRIPCIÓN DE FECHA 13/12/2016. TITULO N°22.**

Según contrato de suscripción de acciones, CGB suscribe 809.995.310 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $2.000.000.001.- que el suscriptor paga al contado y en dinero en efectivo.

-   **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $2.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $2.000.000.000.-

-   **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $2.000.000.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 1 DIA TASA"** por la suma de $10.800.900.000.-

**OPERACIÓN N° XVII       SUSCRIPCIÓN DE FECHA 16/12/2016. TITULO N°23.**

Según contrato de suscripción de acciones, CGB suscribe 2.429.985.929 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $6.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

-   **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $6.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $6.000.000.000.-

19

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $6.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 1 DIA TASA"** por la suma de $8.800.733.333.-

**OPERACIÓN N° XVIII-    SUSCRIPCIÓN DE FECHA 29/12/2016. TITULO N°25.**

Según contrato de suscripción de acciones, CGB suscribe 1.073.243.785 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 27/07/2016, por el valor de $2,4691501 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $2.649.999.999.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Corpbanca 01 $" con ingreso en la cuenta corriente bancaria por la suma de $2.650.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $2.650.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca 01 $" por la suma de $2.650.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 1 DIA TASA"** por la suma de $2.800.700.000.-

**OPERACIÓN N° XIX        SUSCRIPCIÓN DE FECHA 13/02/2018. TITULO N°30.**

Según contrato de suscripción de acciones, CGB suscribe 628.098.004 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.380.804.999.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

20

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.380.804.999.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"INGRESO DIVISA OPCION CAL"** por la suma de $3.522.040.210.-

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria mientras que en SAGA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

**OPERACIÓN N° XX        SUSCRIPCIÓN DE FECHA 15/02/2018.**

Según contrato de suscripción de acciones, CGB suscribe 461.392.901 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.014.322.001.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.014.322.001.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"INGRESO DIVISA OPCION CAL"** por la suma de $2.732.675.200.-

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria mientras que en SAGA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

21

**OPERACIÓN N° XXI       SUSCRIPCIÓN DE FECHA 19/02/2018. TITULO N°32.**

Según contrato de suscripción de acciones, CGB suscribe 472.169.191 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $1.038.012.500.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca USD 01" por la suma de $1.038.012.500.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"INGRESO DIVISA OPCION CAL"** por la suma de $2.732.675.200.- (misma del caso anterior)

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria mientras que en SAGA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

**OPERACIÓN N° XXII       SUSCRIPCIÓN DE FECHA 13/04/2018. TITULO N°41.**

Según contrato de suscripción de acciones, CGB suscribe 4.076.860.267 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 13/02/2018, por el valor de $2,198391 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $8.962.532.919.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Itau-Corpbanca Pesos 01 con ingreso en la cuenta corriente bancaria por la suma de $8.400.000.000.- con fecha 13/04/2018 y $562.532.917.- con fecha 20/04/2018. Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $8.400.000.000.- con fecha 13/04/2018 y $565.000.000.- con fecha 20/04/2018.

22

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 02" por la suma de $8.400.000.000.- con fecha 13/04/2018 y $562.532.917.- con fecha 20/04/2018. El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"BTG PACTUAL CHILE S.A PESOS"** por la suma de $9.000.000.000.-

**OPERACIÓN N° XXIII    SUSCRIPCIÓN DE FECHA 01/04/2019. TITULO N°46.**

Según contrato de suscripción de acciones, CGB suscribe 1.005.064.520 acciones de SAGA, correspondiente al aumento de capital acordado en Junta Extraordinaria de Accionistas de fecha 01/04/2019, por el valor de $1,989922 cada una, por lo que el valor de las acciones suscritas asciende a la suma de $2.000.000.000.- que el suscriptor paga al contado y en dinero en efectivo.

- **Registro contable en SAGA**

Contablemente la operación se registra en SAGA en la cuenta contable "Banco Itau-Corpbanca Pesos 01 con ingreso en la cuenta corriente bancaria por la suma de $2.000.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CG INVERSIONES LTDA."** por la suma de $2.000.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $2.000.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 3 DIAS TASA 0,20"** por la suma de $12.002.400.000.-

Al respecto se acompaña al presente informe signado como **Anexo N°1**, copia de Contratos de Suscripción de Acciones de SAGA.

**III.IV.II.- RESUMEN.**

En consecuencia, de la revisión practicada se verifica que durante el periodo abril de 2016 a abril de 2019, la sociedad CORP GROUP BANKING S.A., suscribe un total de **49.700.647.691** acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, por un total de **$122.799.302.981.-** Lo anterior de acuerdo al siguiente detalle:

| N° OP | FECHA | N°. ACCIONES | MONTO $ SUSCRIPCIÓN | DESTINO EN SAGA | MONTO $ DESTINO SAGA |
|---|---|---|---|---|---|

| XIV | 09-11-2016 | 2.024.988.274 | 4.999.999.999 | LIQUIDA PACTO 1 DIA TASA | 13.701.141.666 |
| XV | 28-11-2016 | 3.239.981.239 | 8.000.000.000 | LIQUIDA PACTO 3 DIAS TASA | 18.754.687.500 |
| XVI | 13-12-2016 | 809.995.310 | 2.000.000.001 | LIQUIDA PACTO 1 DIA TASA | 10.800.900.000 |
| XVII | 16-12-2016 | 2.429.985.929 | 6.000.000.000 | LIQUIDA PACTO 1 DIA TASA | 8.800.733.333 |
| XVIII | 29-12-2016 | 1.073.243.785 | 2.649.999.999 | LIQUIDA PACTO 1 DIA TASA | 2.800.700.000 |
| XIX | 13-02-2018 | 628.098.004 | 1.380.804.999 | INGRESO DIVISA OPCIÓN CAL | 3.522.040.210 |
| XX | 15-02-2018 | 461.392.901 | 1.014.322.001 | INGRESO DIVISA OPCIÓN CAL | 2.732.675.200 |
| XXI | 19-02-2018 | 472.169.191 | 1.038.012.500 | INGRESO DIVISA OPCIÓN CAL | 2.732.675.200 |
| XXII | 13-04-2018 | 4.076.860.267 | 8.962.532.919 | BTG PACTUAL CHILE S.A. PESOS 01 | 9.000.000.000 |
| XXIII | 01-04-2019 | 1.005.064.520 | 2.000.000.000 | LIQUIDA PACTO 3 DIAS TASA 0,20 | 12.002.400.000 |
| | TOTAL | 49.700.647.691 | 122.799.302.981 | | 239.436.051.349 |

**III.V.II.- DETALLE DE OPERACIONES.**

El detalle analítico de las transacciones, sobre la base de los registros contable de Mayor de las empresas, es el siguiente:

**OPERACIÓN N° XXIV   COMPRAVENTA DE FECHA 22/09/2017. TITULO N°28.**

Según contrato de compraventa y traspaso de acciones, CGB compra 5.077.050.166 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $2,198391 cada una, por lo que el valor de las acciones compradas asciende a la suma de $11.161.341.391.- que el comprador paga al contado y en dinero en efectivo.

-   **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $11.161.341.391.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es   **"TO CORP GROUP INVERSIÓN"** por la suma de $11.950.000.000.-

-   **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $11.161.341.391.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"LIQUIDA PACTO 1 DIA AL 0,2"** por la suma de $11.750.705.000.-

**OPERACIÓN N° XXV  COMPRAVENTA DE FECHA 09/04/2019. TITULO N°50.**

Según contrato de compraventa y traspaso de acciones, CGB compra 533.094.262 acciones de SAGA, al vendedor CorpGroup Interhold SpA, por el valor de $1,989922 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.060.816.000.- que el suscriptor paga al contado y en dinero en efectivo.

-   **Registro contable en CorpGroup Interhold SpA**

No se dispuso de los registros contables de la sociedad CorpGroup Interhold SpA que permitiera verificar el ingreso y destino de los fondos.

-   **Registro contable en CGB**

Contablemente la operación se registra en CGB con cargo a la cuenta contable "Inversiones en empresas relacionadas" por la suma de $1.060.816.000.- Estas acciones son

26

traspasadas en el mismo día y por el mismo valor a Inversiones GASA Ltda. En este caso no se registra movimiento de fondos.

**OPERACIÓN N° XXVI  COMPRAVENTA DE FECHA 19/03/2020. TITULO N°53.**

Según contrato de compraventa y traspaso de acciones, CGB compra 381.250.453 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,757374 cada una, por lo que el valor de las acciones compradas asciende a la suma de $670.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $670.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO GRUPO COPESA S.A."** por la suma de $850.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $670.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"DIVIDENDO RECIBIDO DE ITAU CORPBANCA"** por la suma de $12.741.289.932.-

**OPERACIÓN N° XXVII   COMPRAVENTA DE FECHA 24/09/2020. TITULO N°54**

Según contrato de compraventa y traspaso de acciones, CGB compra 706.363.318 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,72715874 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.220.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.220.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CORPGROUP INVERSIONES LIMITADA"** por la suma de $1.220.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $1.220.000.000.- El origen de los fondos

disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"DIVIDENDO RECIBIDO DE ITAU CORPBANCA"** por la suma de $12.741.289.932.- (mismo del caso anterior)

**OPERACIÓN N° XXVIII COMPRAVENTA DE FECHA 25/03/2020. TITULO N°55**

Según contrato de compraventa y traspaso de acciones, CGB compra 11.996.410.362 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,749577 cada una, por lo que el valor de las acciones compradas asciende a la suma de $20.988.647.011.- que el comprador paga al contado y en dinero en efectivo.

-   **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Cobrar EERR Corrientes", por la suma de $20.988.647.011.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

-   **Registro contable en CGB**

Contablemente la operación se registra en CGB con cargo a  la cuenta contable "Depósito en Tránsito" por la suma de $20.988.647.011.- El origen de la operación corresponde la transacción con glosa **"RECIBE DIVIDENDO DE ITAU"** por la suma de $20.988.647.011.-

**OPERACIÓN N° XXIX    COMPRAVENTA DE FECHA 26/03/2020. TITULO N°56**

Según contrato de compraventa y traspaso de acciones, CGB compra 283.154.177 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,765822 cada una, por lo que el valor de las acciones compradas asciende a la suma de $500.000.000.- que el comprador paga al contado y en dinero en efectivo.

-   **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Itau-Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $500.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es  **"TO CORP GROUP INVERSIONES LIMITADA"** por la suma de $500.000.000.-

-   **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $500.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un

28

ingreso que se registra como **"PACTO"** por la suma de $11.000.000.000.- de fecha 23/03/2020,

**OPERACIÓN N° XXX     COMPRAVENTA DE FECHA 27/03/2020. TITULO N°58**

Según contrato de compraventa y traspaso de acciones, CGB compra 4.278.635.828 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,758609 cada una, por lo que el valor de las acciones compradas asciende a la suma de $7.524.450.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca USD 01", con ingreso en la cuenta corriente bancaria por la suma de $7.524.450.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CORP GROUP INVERSIÓN"** por la suma de $7.524.450.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca USD 01" por la suma de $7.524.450.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"COMPRA USD BECH"** por la suma de $7.583.300.000.-

**OPERACIÓN N° XXXI   COMPRAVENTA DE FECHA 27/03/2020. TITULO N°57.**

Según contrato de compraventa y traspaso de acciones, CGB compra 1.370.400.806 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,758609 cada una, por lo que el valor de las acciones compradas asciende a la suma de $2.410.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Itau-Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $2.410.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registra egreso cuya glosa es **"TO CORP GROUP INVERSIONES LIMITADA"** por la suma de $2.410.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Corpbanca Pesos 01" por la suma de $2.410.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un

29

ingreso que se registra como **"PACTO"** por la suma de $11.000.000.000.- de fecha 23/03/2020.

### OPERACIÓN N° XXXII COMPRAVENTA DE FECHA 30/03/2020. TITULO N°59.

Según contrato de compraventa y traspaso de acciones, CGB compra 199.455.688 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,754775 cada una, por lo que el valor de las acciones compradas asciende a la suma de $350.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $350.000.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con cargo a  la cuenta contable "Banco Itau-Corpbanca  Pesos 01" por la suma de $350.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"PACTO"** por la suma de $11.000.000.000.- de fecha 23/03/2020,

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria, mientras que en GASA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

### OPERACIÓN N° XXXIII COMPRAVENTA DE FECHA 02/04/2020. TITULO N°60.

Según contrato de compraventa y traspaso de acciones, CGB compra 88.572.259 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,761273 cada una, por lo que el valor de las acciones compradas asciende a la suma de $156.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $156.000.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con cargo a la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $156.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"TRANSFERENCIA DE DOLARES"** por la suma de $155.841.000.- de fecha 02/04/2020.

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria, mientras que en GASA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

### OPERACIÓN Nº XXXIV COMPRAVENTA DE FECHA 09/04/2020. TITULO N°61

Según contrato de compraventa y traspaso de acciones, CGB compra 830.098.980 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,765172 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.465.268.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Cuenta Corriente por Pagar EERR Corrientes", por la suma de $1.465.268.000.- es decir, no se registra un ingreso efectivo de dinero a través de las cuentas de Banco.

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con cargo a la cuenta contable "Banco Itau-Corpbanca USD 01" por la suma de $1.465.268.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"TRANSFERENCIA DE DOLARES"** por la suma de $6.754.022.414.- de fecha 02/04/2020.

En este caso existe una inconsistencia en el registro contable, ya que CGB registra el egreso de la cuenta corriente bancaria, mientras que en GASA no se registra el ingreso, sino que se contabiliza como cuenta corriente EERR. Se ignora el destino de los fondos girados en CGB por esta operación.

### OPERACIÓN Nº XXXV COMPRAVENTA DE FECHA 19/05/2020. TITULO N°62

Según contrato de compraventa y traspaso de acciones, CGB compra 977.471.934 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,739180 cada

31

una, por lo que el valor de las acciones compradas asciende a la suma de $1.700.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.700.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registran egresos cuya glosa es **"TO CORP GROUP INVERSINES LIMITADA"** por la suma de $1.449.000.000.- y **"TO GRUPO COPESA S.A."** por la suma de 250.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $1.700.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"DEVOLUCIÓN CON REAJUSTES PPUA"** por la suma de $1.698.425.061.-

**OPERACIÓN N° XXXVI COMPRAVENTA DE FECHA 26/06/2020. TITULO N°63.**

Según contrato de compraventa y traspaso de acciones, CGB compra 813.405.522 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,777711 cada una, por lo que el valor de las acciones compradas asciende a la suma de $1.446.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $1.700.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registran egresos cuya glosa es **"TO CORP GROUP INVERSINES LIMITADA"** por la suma de $1.296.000.000.- y **"TO GRUPO COPESA S.A."** por la suma de 150.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $1.446.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"DEVOLUCIÓN PARCIAL PPUA (50%) AT 2020"** por la suma de $2,571.276.301.- de fecha 25/06/2020.

32

**OPERACIÓN Nº XXXVII COMPRAVENTA DE FECHA 21/07/2020. TITULO N°64.**

Según contrato de compraventa y traspaso de acciones, CGB compra 1.433.295.569 acciones de SAGA, al vendedor Inversiones GASA Ltda., por el valor de $1,786993 cada una, por lo que el valor de las acciones compradas asciende a la suma de $2.560.000.000.- que el comprador paga al contado y en dinero en efectivo.

- **Registro contable en GASA**

Contablemente la operación se registra en GASA en la cuenta contable "Banco Corpbanca Pesos 01", con ingreso en la cuenta corriente bancaria por la suma de $2.560.000.000.- Ahora bien, con el monto disponible producto de este ingreso, se registran egresos cuya glosa es **"TO CORP GROUP INVERSINES LIMITADA"** por la suma de $2.560.000.000.-

- **Registro contable en CGB**

Contablemente la operación se registra en CGB con egreso de la cuenta contable "Banco Itau-Corpbanca Pesos 01" por la suma de $2.560.000.000.- El origen de los fondos disponibles en cuenta corriente bancaria para realizar la transacción, corresponde a un ingreso que se registra como **"DEVOLUCIÓN PPUA (50%) AT 2020"** por la suma de $2.568.740.527.- de fecha 13/07/2020.

Al respecto se acompaña al presente informe signado como **Anexo N°1**, copia de los Contratos de Compraventa y Traspaso de Acciones de SAGA.

Además se adjunta signado como **Anexo N°2**, copia del Libro Mayor de las cuentas de Banco de SAGA años 2106 a 2020; y signado como **Anexo N°3**, copia del Libro Mayor de las cuentas de Banco de CGB años 2106 a 2020.

**III.V.III.-    CONCLUSIÓN.**

En consecuencia, de la revisión practicada se verifica que durante el periodo septiembre de 2017 a octubre de 2020, la sociedad CORP GROUP BANKING S.A., compra a otras empresas relacionadas, (principalmente a Inversiones GASA Limitada) un total de **28.968.658.324** acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, por un total de **$53.212.522.402.-**

33

**III.VI.-**　　　**ORIGEN Y DESTINO DE LOS RECURSOS.**

**III.VI.I.-**　　　**ORIGEN DE LOS DINEROS.**

Se comprobó que el origen de los recursos en CORP GROUP BANKING S.A., para financiar las transacciones de compra de acciones corresponde al siguiente detalle:

| Nº OP | FECHA | Nº. ACCIONES | VALORES | ORIGEN EN CGB | MONTO $ ORIGEN CGB |
|---|---|---|---|---|---|
| COMPRA ACC INV CG FINANCIAL CHILE DOS SPA | | | | | |
| I | 12-03-2015 | 24.484.877.154 | 36.362.000.000 | SIN INFO | |
| II | 09-04-2015 | 416.899.653 | 600.000.000 | SIN INFO | |
| III | 31-07-2015 | 22.282.498.681 | 38.200.000.000 | SIN INFO | |
| IV | 01-11-2015 | | 14.430.000.000 | SIN INFO | |
| V | 16-03-2016 | 16.206.938.723 | 26.141.676.000 | SIN INFO | |
| | TOTAL | | 115.733.676.000 | | |

34

| XXX | 27-03-2020 | 4.278.635.828 | 7.524.450.000 | Compra USD BECH | 7.583.300.000 |
| XXXI | 27-03-2020 | 1.370.400.806 | 2.410.000.000 | PACTO | 0 |
| XXXII | 30-03-2020 | 199.455.688 | 350.000.000 | | |
| XXXIII | 02-04-2020 | 88.572.259 | 156.000.000 | Transferencia de dólares | 155.841.000 |
| XXXIV | 09-04-2020 | 830.098.980 | 1.465.268.000 | Transferencia de dólares | 6.754.022.413 |
| XXXV | 19-05-2020 | 977.471.934 | 1.700.000.000 | Devolución con reajuste PPUA | 1.698.425.061 |
| XXXVI | 26-06-2020 | 813.405.522 | 1.446.000.000 | Devolución parcial PPUA (50%) AT 2020 | 2.571.276.301 |
| XXXVII | 21-07-2020 | 1.433.295.569 | 2.560.000.000 | Devolución parcial PPUA (50%) AT 2020 | 2.568.740.527 |
| | **TOTAL** | **28.968.658.324** | **53.212.522.402** | | |

El Grupo SMU es controlado por las siguientes sociedades: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Inversiones Épsilon II S.A. y Fondo de Inversión Privado Alpha con una participación total del 57,98%.

El principal accionista del Grupo SMU, es la familia Saieh con un 50.29% de participación, a través de las inversiones que ésta posee en las siguientes sociedades: Inversiones SMU Matriz Ltda., CorpGroup Holding Inversiones Ltda., Inversiones SAMS SpA, Fondo de Inversión Privado Gamma, Fondo de Inversión Privado Épsilon, Inversiones Épsilon II S.A. y Fondo de Inversión Privado Alpha.

Inversiones SAMS SpA, RUT Nº 76.483.633-2, ha sido desde 2017 en adelante uno de los mayores accionistas de SMU, con un 19,19% en el año 2017, en septiembre de 2018 un 23,23% de las acciones de SMU SA y a marzo de 2020 el 23,34%.

Inversiones SAMS SpA aumentó su propiedad de 700.262.114 acciones en el año 2017 a 1.347.798.788 acciones de SMU el día 09 de abril de 2020.

**AÑO 2016.**

Por otro lado, <u>si existen antecedentes que permiten determinar parte del destino de los dineros transferidos a SAGA</u>.

En efecto, de acuerdo a los antecedentes expuestos, se registra en la contabilidad de SAGA un préstamo a SMU S.A. por la suma de $ 37.000.000 con fecha 06 de junio de 2016. De acuerdo al valor del dólar observado de ese día ($ 683,27), su equivalente en dólares de los Estados Unidos asciende a la cantidad de USD $ 54.151.360,36.-.

Sobre el particular -se tiene a la vista "Prospecto de Actualizado Emisión de Acciones de pago SMU SA", de fecha 18 de enero de 2017- dirigido a don Carlos Pavez Tolosa, Superintendente de Valores y Seguros, en la cual se señala lo siguiente:

"Con fecha 31 de mayo de 2016, la Sociedad suscribió, en favor de la Compañía Inmobiliaria e Inversiones SAGA SpA, una sociedad relacionada al controlador de la Compañía, un pagaré por la suma de USD $ 53.602.213,63.-, con el fin de proveer parcialmente de fondos a ésta para servir de su obligación de pago de la amortización ordinaria de los bonos serie A, emitidos por SMU SA, al amparo de la línea de bonos inscrita con fecha 26 de mato de 2011 en el Registro de Valores de la SVS, bajo el Nº 667, por un monto de capital de 2.000.000

36

de Unidades de Fomento, con vencimiento 1 de junio de 2016. El vencimiento del crédito suscrito por la Sociedad será en una sola cuota pagadera con fecha 26 de Diciembre de 2018 y en cuanto a los intereses, el capital adeudado devengará una tasa de interés fija equivalente al 11,6% anual".

Asimismo en el Estados Financiero (EEFF) al 31 de Diciembre de 2017 de SMU se indica la siguiente deuda por pagar a empresa relacionadas:

| b. | Cuentas por pagar a entidades relacionadas | | | | Corrientes | | No corrientes | |
|---|---|---|---|---|---|---|---|---|
| Rut | Sociedad | Naturaleza de la relación | País | Moneda | 31.12.2017 M$ | 31.12.2016 M$ | 31.12.2017 M$ | 31.12.2016 M$ |
| 65.034.895-8 | Fundacion Descúbreme | Relacionada con Controlador | Chile | CLP | 8.921 | 17.814 | - | - |
| 76.001.408-7 | Retail Holding S.A. (1) (7) | Controlador Común | Chile | UF | - | 3.175.529 | - | 16.821.619 |
| 76.002.124-5 | SR Inmobiliaria S.A. | Controlador Común | Chile | UF | 57.058 | - | - | - |
| 76.025.301-4 | Gestora Omega Ltda. Holding y CPA (1) (7) | Accionista/ Socio Común | Chile | UF | - | 203.886 | - | 1.081.480 |
| 76.054.952-5 | Corp Group Inversiones Lida. (2) | Controlador Común | Chile | UF | - | 13.361.000 | - | - |
| 76.058.352-9 | Vivo Corp SpA. | Controlador Común | Chile | CLP | 181.257 | 143.598 | - | - |
| 76.063.653-3 | Unired S.A. | Asociada | Chile | CLP | 2.954.745 | - | - | - |
| 76.086.272-K | Unicard S.A. (8) | Asociada | Chile | CLP | 24.008 | - | - | - |
| 76.094.904-3 | Funky Films S.A. | Relacionada con Controlador | Chile | CLP | 63.272 | 33.844 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S.A. | Controlador Común | Chile | CLP | 3.787 | - | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S.A. | Controlador Común | Chile | CLP | 2.411 | 14.256 | - | - |
| 76.170.725-6 | Copesa S.A. | Controlador Común | Chile | CLP | 17.898 | - | - | - |
| 76.199.415-8 | Retail Holding III S.p.A. (3) (7) | Controlador Común | Chile | UF | - | 295.598 | - | 1.492.470 |
| 76.483.633-2 | Inversiones SAMS SpA (4) (7) | Controlador Común | Chile | CLP | - | - | - | 55.913.620 |
| 88.202.600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (6) (7) | Controlador Común | Chile | UF | - | 162.523 | - | 866.143 |
| 88.202.600-0 | Cia. Inmobiliaria y de Inversiones SAGA SpA (5) (7) | Controlador Común | Chile | USD | - | 4.787 | - | 2.878.502 |
| 96.646.430-5 | Distribución y Servicios Meta S.A. | Controlador Común | Chile | CLP | 24.621 | 26.068 | - | - |
| 96.763.040-3 | Inmobiliaria Río Lluta S.A. | Controlador Común | Chile | CLP | 19.009 | - | - | - |
| | Totales | | | | 3.356.987 | 17.438.903 | - | 79.053.834 |

(1) Esta deuda se origina a partir de septiembre de 2014, por el traspaso de algunos montos bancarios del crédito sindicado, está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60%, % pagados trimestralmente, amortización anual con vencimiento en junio de 2020, sin garantías.
(2) La deuda expresada en UF y devenga un interés anual de 10,60%, pagados trimestralmente, con vencimientos en septiembre 2016 y mayo 2017 prorrogables por un año adicional. Deuda prepagable y sin garantías. Esta deuda se canceló durante el segundo trimestre de 2017.
(3) Deuda obtenida en diciembre de 2013 y que formó parte inicial del crédito sindicado, está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60 por M$467.776 y el saldo de M$1.320.292 está expresada en UF y devenga un interés anual de 4,81%. Pago de intereses trimestrales y amortizaciones anuales según la tabla de desarrollo del crédito con vencimiento en junio de 2020. Sin garantías.
(4) La deuda obtenida en noviembre de 2015, está expresada en USD y devenga una tasa fija anual de 11,6% subordinado en capital e intereses al crédito sindicado con vencimiento en junio de 2020. Sin garantías.
(5) La deuda, obtenida en mayo de 2016, está expresada en USD y devenga una tasa anual de 11,6%, pagados semestralmente con vencimiento en diciembre de 2018. Deuda prepagable. Sin garantías.
(6) Esta deuda se origina a partir de febrero de 2015, por el traspaso de algunos montos bancarios del crédito sindicado, está expresada en UF y devenga un interés anual de TAB UF 90 días + 1,60%, % pagados trimestralmente, amortización subordinada al crédito Banco Bice con vencimiento en junio de 2020, sin garantías.
(7) Cancelados enero 2017.
(8) Con fecha 03 de mayo de 2017, SMU Corp S.A., cambio su razón social a Unicard S.A.

Se señala en dicho documento lo siguiente: "Al 31 de diciembre de 2017, todos los créditos con empresas relacionadas ya están pagados con los fondos provenientes del aumento de Capital".

Al respecto, en la página 139 de los EEFF al 31 de diciembre de 2017 se indica lo siguiente:

**"d. Aumento de capital.**

**Al 31 de diciembre de 2016:**

En Junta Extraordinaria de Accionistas efectuada el 30 de diciembre de 2015, se acordó aumentar el capital de la Sociedad en la suma de M$230.000.000 llegando a un capital de M$1.217.072.711, mediante la emisión de 2.486.486.486 acciones de una misma y única

37

serie, sin valor nominal. Asimismo se deja sin efecto el aumento de capital aprobado por la Junta Extraordinaria de Accionistas de fecha 2 de octubre de 2013, ratificado luego por la por la Junta Extraordinaria de Accionistas de fecha 30 de abril de 2014 ascendente a $111.333.333.333 habida consideración que las 622.300.722 acciones representativas de dicho aumento de capital a la fecha de la Junta no habían sido suscritas ni pagadas por los accionistas. Durante el año 2016, no hubo suscripción ni pago de acciones de dicho aumento de capital.

**Al 31 de diciembre de 2017**

Con fecha 24 de enero de 2017, en la Bolsa de Comercio de Santiago, se realizó la colocación de 1.150.000.000 acciones de pago de la sociedad. La demanda total ascendió a un precio de $113 por acción, a través del mecanismo denominado subasta de un Libro de Órdenes. El monto total de la colocación de acciones alcanzó la suma de M$129.950.000.

Con fecha 16 de noviembre de 2017, en la Bolsa de Comercio de Santiago, Bolsa de valores, por medio del mecanismo denominado subasta de un Libro de Órdenes, se colocaron un total de 575.000.000 acciones de pago de la Sociedad, a un precio de $165 por acción. El monto total de la colocación de acciones alcanzó la suma de M$94.875.000.

Al 31 de diciembre de 2017 existe un saldo de 761.486.486 acciones pendientes de colocar en el mercado del aumento de capital autorizado en la Junta Extraordinaria de Accionistas efectuada el 30 de diciembre de 2015."

A su turno, en los EEFF al 30 de junio de 2018 se indica lo siguiente:

"El 29 de enero del año 2015, la familia Rendic vendió a Corp Group Holding Inversiones Limitada ("Corp Group"), entidad relacionada al actual controlador, toda su participación en SMU S.A., equivalente a un 13,88%. En virtud de dicha enajenación, Corp Group, conjuntamente con otros vehículos controlados por Corp Group, alcanzó en esa fecha el 78,59% de las acciones emitidas por SMU.

En Junta de Accionistas efectuada el 30 de diciembre de 2015, se acordó aumentar el capital de la Sociedad en la suma de M$ 230.000.000, mediante una emisión de 2.486.486.486 acciones de una misma y única serie. Con fecha 24 de enero de 2017, se realizó la colocación de 1.150.000.000 acciones de pago, recaudando M$129.950.000, posteriormente con fecha 16 de noviembre de 2017, se colocaron 575.000.000 acciones, recaudando M$94.875.000 y finalmente el 22 de enero de 2018 se colocaron 400.000.000 de acciones de pago de la

38

Sociedad, recaudando M$74.000.000, todas a través del mecanismo denominado subasta de un libro de órdenes en la Bolsa de Comercio de Santiago, Bolsa de valores.

Dado lo anterior y debido a la renuncia de la totalidad de los derechos de suscripción preferente asociados a los aumentos de capital manifestados en Junta Extraordinaria de Accionistas realizada el 02 de diciembre de 2016, disminuyó la participación del grupo controlador en SMU".

En el EEFF al 30 de junio de 2018 se refleja el pago de las obligaciones para con empresas relacionadas:

**b.  Cuentas por pagar a entidades relacionadas**

| Rut | Sociedad | Naturaleza de la relación | País | Moneda | Corrientes | | No corrientes | |
|---|---|---|---|---|---|---|---|---|
| | | | | | 30.06.2018 No auditado | 31.12.2017 | 30.06.2018 No auditado | 31.12.2017 |
| | | | | | M$ | M$ | M$ | M$ |
| 65.034.895-8 | Fundación Descúbreme | Relacionada con Controlador | Chile | CLP | 2.977 | 8.921 | - | - |
| 76.002.124-5 | SR Inmobiliaria S.A. | Controlador Común | Chile | UF | 2.608 | 57.058 | - | - |
| 76.058.352-9 | Vivo Corp S.A. (2) | Controlador Común | Chile | CLP | 106.576 | 181.257 | - | - |
| 76.063.653-3 | Unired S.A. | Asociada | Chile | CLP | 2.380.886 | 2.954.745 | - | - |
| 76.086.272-K | Unicard  S.A. (1) | Asociada | Chile | CLP | 25.245 | 24.008 | - | - |
| 78.094.904-3 | Funky Films S.A. | Relacionada con Controlador | Chile | CLP | - | 63.272 | - | - |
| 76.116.213-6 | Desarrollos Comerciales S.A. | Relacionada con Controlador | Chile | CLP | 2.416 | 3.787 | - | - |
| 76.118.395-8 | Corp Imagen y Diseño S.A. | Controlador Común | Chile | CLP | 749 | 2.411 | - | - |
| 76.170.725-6 | Copesa S.A. | Controlador Común | Chile | CLP | - | 17.898 | - | - |
| 96.646.430-0 | Distribución y Servicios Meta S.A. | Controlador Común | Chile | CLP | 3.466 | 24.621 | - | - |
| 96.763.040-3 | Inmobiliaria Río Lluta S.A. | Controlador Común | Chile | CLP | 19.271 | 19.009 | - | - |
| | Totales | | | | 2.544.194 | 3.356.987 | - | - |

(1)  Con fecha 03 de mayo de 2017, SMU Corp S.A., cambio su razón social a Unicard S.A.
(2)  Con fecha 28 de julio de 20017, Vivo Corp SpA, cambio su razón social a Vivo Corp S.A.

Como se puede apreciar, no aparecen (por ende fueron pagadas) las obligaciones para con las siguientes sociedades:

76.199.415-8 Retail Holding III S.p.A.

76.483.633-2 Inversiones SAMS SpA

88.202.600-0 Cía. Inmobiliaria y de Inversiones SAGA SpA

**REGISTRO CONTABLE EN SAGA**

Al respecto de la revisión practicada al Libro Mayor de SAGA del ejercicio comercial 2017, se verifica que con fecha 09/09/2016 se registra un asiento contable cuya glosa o detalle es "CESION DE DEUDA DE SMU PO y un ", mediante el cual se registra ingreso (cargo) a la cuenta "Banco Corpbanca US$" por la suma de $29.691.257.750.- y un abono a la cuenta "Cuenta Corriente EERR M/E".

En las imágenes siguientes se presenta el registro contable señalado en las cuentas contables, indicadas del Libro Mayor 2016 de SAGA.

No se tiene mayor información sobre los detalles y condiciones de esta operación de cesión, ni de las sociedades que comparecen en ella.

**III.VI.IV.-    DINEROS TRANSFERIDOS  A SAGA SpA.**

De la revisión practicada se comprobó que los recursos percibidos por SAGA producto de estos aumentos de capital fueron destinados principalmente a traspaso de fondos a empresas relacionadas, según el siguiente detalle:

| N° OP | FECHA | N°. ACCIONES | MONTO $ | CUENTA INGRESO SAGA | DESTINO EN SAGA |
|---|---|---|---|---|---|

| XII | 01-08-2016 | 2.389.486.164 | 5.900.000.000 | Cta. Contable 1.0.11.10 Banco Corpbanca 01 $ | 2471 CG INVERSIONES LTDA |

| | | | | | | |
|---|---|---|---|---|---|---|
| XXXIII | INVERSIONES GASA LTDA | 02-04-2020 | 88.572.259 | 156.000.000 | CTA CTE POR PAGAR EERR | 156.000.000 |
| XXXIV | INVERSIONES GASA LTDA | 09-04-2020 | 830.098.980 | 1.465.268.000 | CTA CTE POR PAGAR EERR | 1.465.000.000 |

| | | | | |
|---|---|---|---|---|
| III | Inversiones Corpgroup Interhold Limitada | 31-07-2015 | 22.282.498.681 | 38.200.000.000 |
| IV | Inversiones Corpgroup Interhold Limitada | 01-11-2015 | | 14.430.000.000 |
| V | Inversiones Corpgroup Interhold Limitada | 31-03-2016 | 16.206.938.723 | 26.141.676.000 |
| | **TOTAL** | | | **115.733.676.000** |

43

| 3 | Compra | 25-03-2020 | 11.996.410.362 | 20.988.647.011 | 1,749577 |
| 4 | Compra | 26-03-2020 | 283.154.177 | 500.000.000 | 1,765822 |
| 5 | Compra | 27-03-2020 | 4.278.635.828 | 7.524.450.000 | 1,758610 |
| 6 | Compra | 27-03-2020 | 1.370.400.806 | 2.410.000.000 | 1,758610 |
| 7 | Compra | 30-03-2020 | 199.455.688 | 350.000.000 | 1,754776 |
| 8 | Compra | 02-04-2020 | 88.572.259 | 156.000.000 | 1,761274 |
| 9 | Compra | 09-04-2020 | 830.098.980 | 1.465.268.000 | 1,765173 |
| 10 | Compra | 19-05-2020 | 977.471.934 | 1.700.000.000 | 1,739180 |
| 11 | Compra | 26-06-2020 | 813.405.522 | 1.446.000.000 | 1,777711 |
| 12 | Compra | 21-07-2020 | 1.433.295.569 | 2.560.000.000 | 1,786094 |
| **Total año 2020** | | | **23.358.513.896** | **40.990.365.011** | |

De la revisión practicada se comprobó que durante el periodo 2015 a 2020 la sociedad CORP GROUP BANKING S.A., suscribe un total de 49.700.647.691 acciones de la sociedad relacionada COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA SPA, por un total de **$122.799.302.981.-**

| N° | FECHA | N° ACCIONES | MONTO $ |
|----|-------|-------------|---------|
| VI | 11-04-2016 | 720.762.604 | 1.841.832.001 |

| XXIX | INVERSIONES GASA LIMITADA | 26-03-2020 | 283.154.177 | 500.000.000 |
| XXX | INVERSIONES GASA LIMITADA | 27-03-2020 | 4.278.635.828 | 7.524.450.000 |
| XXXI | INVERSIONES GASA LIMITADA | 27-03-2020 | 1.370.400.806 | 2.410.000.000 |
| XXXII | INVERSIONES GASA LIMITADA | 30-03-2020 | 199.455.688 | 350.000.000 |
| XXXIII | INVERSIONES GASA LIMITADA | 02-04-2020 | 88.572.259 | 156.000.000 |
| XXXIV | INVERSIONES GASA LIMITADA | 09-04-2020 | 830.098.980 | 1.465.268.000 |
| XXXV | INVERSIONES GASA LIMITADA | 19-05-2020 | 977.471.934 | 1.700.000.000 |
| XXXVI | INVERSIONES GASA LIMITADA | 26-06-2020 | 813.405.522 | 1.446.000.000 |
| XXXVII | INVERSIONES GASA LIMITADA | 21-07-2020 | 1.433.295.569 | 2.560.000.000 |
| | **TOTAL** | | | **53.212.522.402** |

| XXIII | Suscripción Acc. SAGA | 01-04-2019 | 1.005.064.520 | $2.000.000.000 |
|-------|----------------------|------------|---------------|----------------|
|       | **SUBTOTAL**         |            | **49.700.647.691** | **$122.799.302.981** |

| XI | 25-07-2016 | 5.098.147.058 | 13.027.771.344 | CREDITO SANTANDER | 19.125.893.200 |
|---|---|---|---|---|---|
| XII | 01-08-2016 | 2.389.486.164 | 5.900.000.000 | CREDITO SANTANDER | 19.125.893.201 |
| XIII | 27-10-2016 | 6.863.968.363 | 16.948.168.170 | LIQUIDA PACTO 1 DIA TASA | 60.004.600.000 |
| XIV | 09-11-2016 | 2.024.988.274 | 4.999.999.999 | LIQUIDA PACTO 1 DIA TASA | 13.701.141.666 |
| XV | 28-11-2016 | 3.239.981.239 | 8.000.000.000 | LIQUIDA PACTO 3 DIAS TASA | 18.754.687.500 |
| XVI | 13-12-2016 | 809.995.310 | 2.000.000.001 | LIQUIDA PACTO 1 DIA TASA | 10.800.900.000 |
| XVII | 16-12-2016 | 2.429.985.929 | 6.000.000.000 | LIQUIDA PACTO 1 DIA TASA | 8.800.733.333 |
| XVIII | 29-12-2016 | 1.073.243.785 | 2.649.999.999 | LIQUIDA PACTO 1 DIA TASA | 2.800.700.000 |
| XIX | 13-02-2018 | 628.098.004 | 1.380.804.999 | INGRESO DIVISA OPCIÓN CAL | 3.522.040.210 |
| XX | 15-02-2018 | 461.392.901 | 1.014.322.001 | INGRESO DIVISA OPCIÓN CAL | 2.732.675.200 |
| XXI | 19-02-2018 | 472.169.191 | 1.038.012.500 | INGRESO DIVISA OPCIÓN CAL | 2.732.675.200 |
| XXII | 13-04-2018 | 4.076.860.267 | 8.962.532.919 | BTG PACTUAL CHILE S.A. PESOS 01 | 9.000.000.000 |
| XXIII | 01-04-2019 | 1.005.064.520 | 2.000.000.000 | LIQUIDA PACTO 3 DIAS TASA 0,20 | 12.002.400.000 |
| | **TOTAL** | **49.700.647.691** | **122.799.302.981** | | 239.436.051.349 |

48

| IV | 01-11-2015 | 14.430.000.000 | SIN INFO | |
| V | 31-03-2016 | 26.141.676.000 | SIN INFO | |
| VI | 11-04-2016 | 1.841.832.001 | SIN INGRESO EFECTIVO | 0 |
| VII | 11-04-2016 | 6.040.000.380 | SIN INGRESO EFECTIVO | 0 |
| VIII | 06-06-2016 | 40.035.858.666 | PTMO USD A SMU S.A. | 37.000.000.000 |
| IX | 13-06-2016 | 900.000.001 | TRASPASO A GASA | 900.000.000 |
| X | 01-07-2016 | 60.000.001 | TO A INV GASA LTDA. | 118.000.000 |
| XI | 25-07-2016 | 13.027.771.344 | TO A INV GASA LTDA. | 13.027.000.000 |
| XII | 01-08-2016 | 5.900.000.000 | TO A CG INVERSIONES LTDA | 5.900.000.000 |
| XIII | 27-10-2016 | 16.948.168.170 | TO A CG INVERSIONES LTDA | 16.948.000.000 |
| XIV | 09-11-2016 | 4.999.999.999 | TO A CG INVERSIONES LTDA | 6.010.000.000 |
| XV | 28-11-2016 | 8.000.000.000 | TO A CG INVERSIONES LTDA | 8.000.000.000 |
| XVI | 13-12-2016 | 2.000.000.001 | TO A CG INVERSIONES LTDA | 2.000.000.000 |
| XVII | 16-12-2016 | 6.000.000.000 | TO A CG INVERSIONES LTDA | 6.000.000.000 |
| XVIII | 29-12-2016 | 2.649.999.999 | TO A CG INVERSIONES LTDA | 2.650.000.000 |
| XIX | 13-02-2018 | 1.380.804.999 | SIN INGRESO EFECTIVO | 0 |
| XX | 15-02-2018 | 1.014.322.001 | SIN INGRESO EFECTIVO | 0 |
| XXI | 19-02-2018 | 1.038.012.500 | SIN INGRESO EFECTIVO | 0 |
| XXII | 13-04-2018 | 8.962.532.919 | TO a CG Inversiones LTDA. | 8.400.000.000 |
| | | | TO a CG Inversiones LTDA. | 565.000.000 |
| XXIII | 01-04-2019 | 2.000.000.000 | TO CorpGroup Inversiones Ltda. | 2.000.000.000 |
| XXIV | 22-09-2017 | 11.161.341.391 | TO CORPGROUP INVERSION | 11.950.000.000 |
| XXV | 09-04-2019 | 1.060.816.000 | SIN INFO | 0 |
| XXVI | 19-03-2020 | 670.000.000 | TO GRUPO COPESA S.A. | 850.000.000 |
| XXVII | 24-03-2020 | 1.220.000.000 | TO CORPGROUP INVERSION | 1.220.000.000 |
| XXVIII | 25-03-2020 | 20.988.647.011 | CTA CTE POR COBRAR EERR | 20.988.647.011 |
| XXIX | 26-03-2020 | 500.000.000 | TO CORPGROUP INVERSION | 500.000.000 |
| XXX | 27-03-2020 | 7.524.450.000 | TO CORPGROUP INVERSION | 7.524.450.000 |
| XXXI | 27-03-2020 | 2.410.000.000 | TO CORPGROUP INVERSION | 2.410.000.000 |
| XXXII | 30-03-2020 | 350.000.000 | CTA CTE POR PAGAR EERR | 350.000.000 |
| XXXIII | 02-04-2020 | 156.000.000 | CTA CTE POR PAGAR EERR | 156.000.000 |
| XXXIV | 09-04-2020 | 1.465.268.000 | CTA CTE POR PAGAR EERR | 1.465.000.000 |
| XXXV | 19-05-2020 | 1.700.000.000 | TO CORPGROUP INV, LTDA. | 1.449.000.000 |
| | | | TO GRUPO COPESA S.A. | 250.000.000 |
| XXXVI | 26-06-2020 | 1.446.000.000 | TO CORPGROUP INV. LTDA. | 1.296.000.000 |
| | | | TO GRUPO COPESA S.A. | 150.000.000 |
| XXXVII | 21-07-2020 | 2.560.000.000 | TO CORPGROUP INV. LTDA. | 2.560.000.000 |

**IV.IV Realizar un análisis de las referidas operaciones y, en especial, en especial, aspectos tales como montos globales, evolución en el tiempo y equivalencia el dólares de los Estados Unidos de Norteamérica.**

**A) APRECIACIÓN.**

CGB emitió el denominado Bono 13/23 bajo ciertos covenants u obligaciones de no hacer.

Se pudo comprobar la efectividad de lo referido por los ejecutivos Sres. Zavala Destefani y Salinas Díaz, en cuanto a que se realizaron treinta y siete (37) operaciones -parte de un mecanismo- desde el inicio de la emisión del Bono CGB 13/23 6,75 y hasta el año 2020, que tuvieron por objeto disponer de la casi totalidad de los dineros de CGB.

De acuerdo a los antecedentes expuestos, se realizaron operaciones entre sociedades relacionadas entre los años 2015 a 2020 ascendieron a un total de $ 291.745.501.383.-.

Dichas operaciones tuvieron por objeto la adquisición de acciones de FINANCIAL CHILE DOS y SAGA por parte de CGB.

Dichas operaciones de manera anual se descomponen de la siguiente manera:

| AÑO | MONTO | % DEL TOTAL |
|-----|-------|-------------|
|     |       |             |

| AÑO | MONTO $ | DOLAR OBSERVADO | MONTO US$ |
|-----|---------|-----------------|-----------|

(i)      EEFF de los años 2015 a 2021;

(ii)     Balance General al 31.12 de los años 2015 a 2021;

(iii)    Libros mayores y diarios de los años 2015 a 2021;

(iv)     Auditorías de los años 2015 a 2021; y

(v)      Cartolas de cuentas bancarias de los años 2015 a 2021.


**POR TANTO**

Es todo cuanto puedo informar en relación a los hechos investigados y sobre la base de la documentación tenida a la vista.

LEONARDO
QUINTANILLA
ESPINOZA

Firmado digitalmente por LEONARDO QUINTANILLA
ESPINOZA
Nombre de reconocimiento (DN): c=CL,
st=METROPOLITANA DE SANTIAGO, l=SANTIAGO,
la=LEONARDO QUINTANILLA ESPINOZA, ou="",
cn=LEONARDO QUINTANILLA ESPINOZA,
email=leoquintanilla@gmail.com
Fecha: 2024.01.26 13:06:55 -03'00'

**LEONARDO QUINTANILLA ESPINOZA**

**CONTADOR AUDITOR – PERITO JUDICIAL**

**REGISTRO CMF N° 973**

# Exhibit I

Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Selendy|Gay

David S. Flugman
Partner
212.390.9052
dflugman@selendygay.com

March 8, 2024

**Via Federal Express & E-Mail**

Rachel Jaffe Mauceri
Robinson & Cole LLP
1650 Market Street, Suite 3030
Philadelphia, Pennsylvania 19103
rmauceri@rc.com

**Re:    Request to Voluntarily Suspend Litigation Trust Distributions to Certain Holders of Class 7B Claims in *In re* Corp Group Banking S.A., et al. (Chapter 11 Case No. 21-10969 (JKS))**

Dear Ms. Mauceri:

We are litigation counsel to Álvaro Saieh Bendeck, Jorge Andrés Saieh Guzmán, Maria Catalina Saieh Guzmán, Pilar Dañobeitía Estades, and Andrés Winter Salgado (together, our "Clients"). We write to respectfully request that your client, Steven D. Sass LLC in its capacity as Litigation Trustee (the "Litigation Trustee"), and pursuant to Section 3.03 of the Litigation Trust Agreement, which vests the Litigation Trustee with the authority to "perform all actions . . . necessary to implement the Plan as it pertains to the Litigation Trust, the Litigation Trust Assets and Litigation Trust Claims," voluntarily suspend distributions to certain holders of Class 7B claims (the "Class 7B Querellantes") in the *In re Corp Group Banking, S.A., et al.*, Chapter 11 proceedings pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

### A.    The Proposed UCC Claims, Settlement, and Plan Confirmation

As you are no doubt aware, on December 23, 2021, the Unsecured Creditors Committee (the "UCC") sought leave of the Bankruptcy Court to bring claims on behalf of the Debtors against several individuals and entities affiliated with the Debtors, including our Clients, including fraudulent transfer claims pursuant to section 548 of the Bankruptcy Code and "simulated contract" claims pursuant to Article 1707 of the Chilean Civil Code (which are analogous to fraudulent transfer claims under U.S. federal law. *See* Dkt. No. 392 ¶¶ 94, 101. The UCC alleged,

Ms. Rachel Jaffe Mauceri
March 8, 2024

among other things, that our Clients caused the Debtor entities to engage in transactions with an affiliate that rendered the Debtors insolvent, thereby harming the Class 7B creditors.

Ultimately, the UCC did not need to pursue these claims because, with the Bankruptcy Court's approval, the Debtors settled and released these claims as an integral part of the Plan.  As part of the settlement agreement (the "SP Settlement"), Jorge Andrés Saieh Guzman (one of our Clients) issued an unsecured note (the "Short Term Note"), which was distributed to the newly-formed Litigation Trust (of which your client is the Trustee).  The Litigation Trustee is responsible for distributing the proceeds funded pursuant to the Short Term Note to CGB's unsecured creditors.  At the same time, in recognition of the releases granted to our Clients in the Plan, the Bankruptcy Court entered a permanent injunction, broadly prohibiting "any person or entity" (as that term is defined in section 101(15) of the Bankruptcy Code) from "commencing … any action or other proceeding of any kind on account of or in connection with or with respect to any [Estate] Causes of Action" (the "Permanent Injunction").  Confirmation Order ¶ 11. The term "Estate Causes of Action" is defined, in turn to include any Cause of Action that was property of the Debtors or the Debtors' Estates, or that could have been brought on behalf of the Debtors of the Debtors' Estates.  Plan at Art. I.B § 1.69.

The first payment due under the Short Term Note was made to the Litigation Trust on time on July 14, 2023.  The next payment, in the amount of $500,000, is due to be paid on July 14, 2024.

### B.    The MBI Servicios Litigation

On August 23, 2023, our Clients filed a motion (the "Motion") before the Bankruptcy Court to enforce the Confirmation Order against MBI Servicios Limitada ("MBI Servicios"), a Class 7B creditor who had served on the UCC and is currently serving as a member of the Litigation Trust Committee.  In the Motion, our Clients argued that MBI Servicios violated the Permanent Injunction by filing a "querella"—a pleading in which a private party (the "querellante") requests that the Chilean public prosecutorial authorities investigate and prosecute certain alleged crimes.

The Motion argued that the claims asserted in MBI Servicios' querella were substantively identical to those the UCC had sought to bring on behalf of the Debtors and that were settled as part of the SP Settlement and that, by filing its querella, MBI Servicios was attempting to obtain more than its ratable share of settlement payments distributed by the Litigation Trust. That is because where a querella results in an indictment, the querellante can file an additional complaint, within the same proceeding, to obtain monetary damages suffered as a result of the alleged crime.

Ms. Rachel Jaffe Mauceri
March 8, 2024

On October 17, 2023, the Bankruptcy Court issued an oral opinion, confirmed in an order dated October 30, 2023, granting the Motion and finding that the querella filed by MBI Servicios violated the Permanent Injunction. Specifically, the Bankruptcy Court found that "[t]he Querella asserts generalized harm against all bondholders and describes derivative harms to all holders of relevant financing instruments." As a result, the Bankruptcy Court held that "the claims the Querella brings thus belong to the Estate and are Estate Causes of Action that were settled against Movants." The Bankruptcy Court ordered MBI Servicios to withdraw its querella and pay the reasonable fees and expenses incurred by our Clients in bringing the Motion. MBI Servicios has done both.

### C.    Other Querellantes' Continuing Violations of the Permanent Injunction

MBI Servicios is not the only Class 7B creditor to have filed a querella in violation of the Permanent Injunction: 73 other Class 7B creditors filed substantively-identical querellas with the prosecutorial authorities in Santiago, the majority of which were represented by the same Chilean law firm. Like MBI Servicios, these other querellantes alleged that our Clients, along with other individuals and entities affiliated with the Debtors, committed the crime of granting "simulated contracts" by divesting the Debtors' assets through a series of intercompany transactions, thereby allegedly defrauding the Debtor's creditors— *e.g.*, the holders of Class 7B claims. And like MBI Servicios, through these querellas the holders sought to recover additional money beyond their ratable share of the settlement proceeds distributed by the Litigation Trust.

In the wake of the Bankruptcy Court's decision on the Motion, most of the other querellantes voluntarily withdrew their querellas. However, several individuals and entities continue to engage in proceedings in Chile that violate the Permanent Injunction.

*First*, one individual, **Juan Carlos Petersen Widmer**, has not withdrawn his querella. Moreover, both he and a new querellante, **Marisol Burgos Concha**, have recently filed new querellas. There can be no doubt that these individuals are in breach of the Permanent Injunction and that the reasoning in the Bankruptcy Court's resolution of the Motion is equally applicable to Mr. Petersen and Ms. Burgos. Indeed, Mr. Petersen and Ms. Burgos's intent to obtain monetary compensation above and beyond that to which they are entitled under the SP Settlement is apparent from the fact that they each granted a power of attorney to their Chilean counsel, Carlos Cortéz, which expressly includes the ability to collect money on their behalf.

*Second*, two individuals—**Cristian Pablo Pinto Marinovich** and **Juan Carlos Tali-Hamideh Bitar**—and five entities—**Inversiones don Lorenzo S.A.**, **Inversiones GV S.A.**, **Trayenco Investments LP**, **Zermat Business Inc.**, and **CB Investments SpA**—withdrew their querellas, but did so subject to a reservation of rights to act as a victim in the criminal proceedings in order to

Ms. Rachel Jaffe Mauceri
March 8, 2024

obtain additional monetary compensation in the event of any future conviction. Put differently, these Class 7B Holders reserved the right to file civil actions within the criminal proceeding, thereby mooting the purpose behind the initial withdrawal of their querellas.

By withdrawing their querellas subject to a reservation of rights to bring civil actions to receive monetary compensation within the criminal proceedings, these Class 7B Querellantes are also in breach of the Permanent Injunction. That is because the Permanent Injunction includes not just commencing a proceeding, but also "continuing in any manner" a proceeding that is an Estate Cause of Action, and "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such Causes of Action." Confirmation Order ¶ 11. These Class 7B Querellantes' reservation of rights violate both of these prongs of the Permanent Injunction.

*Third*, on February 5, 2024, one entity—***Exportadora Los Lirios S.A.***— through its legal counsel filed an expert report in the criminal proceedings initiated by the filing of the various querellas, despite having withdrawn its own querella. The report describes alleged damages purportedly suffered by CGB's bondholders through the related-party transactions that materialized after the issuance of CGB's 144A note and the filing of the chapter 11 proceedings. The filing of this expert report also amounts to a breach of the Permanent Injunction. The broad language of the Injunction encompasses the prohibition to "continu[e] in any manner any action . . . in connection with or with respect to any" Estate Causes of Action settled under the Plan. By filing an expert report in the criminal proceedings, Exportadora Los Lirios S.A. is essentially advancing the proceedings commenced after the filing of its Querella even though it withdrew it.

## D.    Demand for Suspension of Litigation Trust Payments to the Class 7B Querellantes

As the Litigation Trustee, your client is vested with broad discretion over how and when to make distributions to beneficiaries (including holders of Class 7B claims), and to exercise such powers as may be necessary, proper, and appropriate to carry out the provisions of the Plan and the Litigation Trust Agreement. *See* Litigation Trust Agreement § 3.03. It would be fundamentally inconsistent with the purpose of the Plan, and the SP Settlement that was critical to the compromises that led to Plan confirmation and the creation of the Litigation Trust, for creditors who are actively and knowingly violating the terms of the Plan, including the Permanent Injunction, to reap the benefits of the SP Settlement by continuing to collect distributions from the Litigation Trust.

As such, our Clients respectfully request that the Litigation Trustee take action to prevent any funds sourced from the Short Term Note and/or the SP Settlement from being distributed to each of the Class 7B Querellantes identified in Section C above unless and until that querellante fully and irrevocably

Ms. Rachel Jaffe Mauceri
March 8, 2024

withdraws their querella, without reservation, and confirms as much in writing to my clients.  While we are fully prepared to bring a motion before the Bankruptcy Court seeking this same relief, we hope that the Litigation Trustee, as an officer of the Court, will voluntarily agree to take these reasonable steps in order to ensure that all holders of Class 7B claims are treated equally and in accordance with the orders of the Bankruptcy Court.

We kindly ask that you please confirm your client's position in writing no later than March 18, 2024.

On behalf of our Clients, we reserve all rights.

Sincerely yours,

David S. Flugman
Partner

cc:    Andrés Winter Salgado, Esq.
       David Zylberberg, Esq.
       Chip Cummins, RPA Advisors
       Laura Davis Jones, Esq.

# Exhibit J

| | |
|---|---|
| **From:** | David Flugman |
| **To:** | Manuel Valderrama |
| **Subject:** | Fwd: In re Corp Group Banking, S.A., Case No. 21-10969 (JKS) (Bankr. D. Del.) |
| **Date:** | Thursday, May 16, 2024 9:11:46 PM |

**David S. Flugman**
Partner  [Email | Bio]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------------

+1 212.390.9052 [O]

+1 516.835.5803 [M]


Begin forwarded message:


> **From:** "Mauceri, Rachel Jaffe" <rmauceri@rc.com>
> **Date:** April 28, 2024 at 4:42:00 PM EDT
> **To:** David Flugman <dflugman@selendygay.com>
> **Cc:** Laura Davis Jones <ljones@pszjlaw.com>, David Zylberberg
> <David.Zylberberg@stblaw.com>, ccummins@rpaadvisors.com
> **Subject: RE: In re Corp Group Banking, S.A., Case No. 21-10969 (JKS)
> (Bankr. D. Del.)**
>
>
> David,
>
> Thank you very much for your message. I apologize for the delay in a writing.  As you
> have correctly noted, we do not read the Trust Agreement as vesting the Trustee with
> discretion or authority to make distributions selectively as requested in your letter.
>
> The Trustee does not object to your clients seeking instruction or direction from the
> Bankruptcy Court with respect to forthcoming distributions, and does not take a
> position with respect to the merits of such relief, if requested.
>
> Please let me know if you would like to discuss further.
>
> Many thanks.
>
> Rachel
>
> ---
>
> **From:** David Flugman <dflugman@selendygay.com>
> **Sent:** Friday, April 26, 2024 11:29 AM
> **To:** Mauceri, Rachel Jaffe <rmauceri@rc.com>

**Cc:** Laura Davis Jones <ljones@pszjlaw.com>; David Zylberberg
<David.Zylberberg@stblaw.com>; ccummins@rpaadvisors.com
**Subject:** RE: In re Corp Group Banking, S.A., Case No. 21-10969 (JKS) (Bankr. D. Del.)

**CAUTION:**  **EXTERNAL EMAIL**

---

Rachel,

I'm following up on our recent conversation in respect to the letter we sent you in your capacity as counsel to the Litigation Trustee in the above-referenced litigation.   On that call you informed me that the Litigation Trustee did not believe that it had the independent authority to suspend payments to individual Class 7B creditors without Court sanction, but that the Litigation Trustee did not object to my clients seeking such sanction from the Court and would take no position on the merits of any such application.  You indicated to me that you would be following up in writing to confirm, but we have not yet heard from you.  Would you please be so kind as to confirm your client's position?

Thank you, and kind regards,
David

**David S. Flugman**
Partner  [Email] | [Bio]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
--------------------------------------------
+1 212.390.9052 [O]
+1 516.835.5803 [M]

---

**From:** Mauceri, Rachel Jaffe <rmauceri@rc.com>
**Sent:** Monday, March 18, 2024 1:28 PM
**To:** David Flugman <dflugman@selendygay.com>
**Cc:** Laura Davis Jones <ljones@pszjlaw.com>; David Zylberberg
<David.Zylberberg@stblaw.com>; ccummins@rpaadvisors.com
**Subject:** RE: In re Corp Group Banking, S.A., Case No. 21-10969 (JKS) (Bankr. D. Del.)

David,

It was good to speak with you this morning. As discussed, we are in receipt of your letter dated March 8, 2024, and the Trustee is reviewing the information and the request set forth therein. We anticipate responding within the next week or so. Many thanks for your consideration.

Best regards,

Rachel

**From:** David Flugman <dflugman@selendygay.com>
**Sent:** Friday, March 8, 2024 4:40 PM
**To:** Mauceri, Rachel Jaffe <rmauceri@rc.com>
**Cc:** Laura Davis Jones <ljones@pszjlaw.com>; David Zylberberg <David.Zylberberg@stblaw.com>; ccummins@rpaadvisors.com
**Subject:** In re Corp Group Banking, S.A., Case No. 21-10969 (JKS) (Bankr. D. Del.)

| **CAUTION:** | EXTERNAL EMAIL |
|---|---|

Ms. Mauceri, good afternoon.

Please see the attached letter directed to your client, Steven D. Sass LLC in its capacity as the Litigation Trustee of the Litigation Trust in the above-referenced chapter 11 case.  Please do not hesitate to reach out to me with any questions you may have.

Kind regards,
David Flugman

**David S. Flugman**
Partner  [Email] | [Bio]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
--------------------------------------------
+1 212.390.9052 [O]
+1 516.835.5803 [M]

This transmittal may be a confidential R+C attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it-admin@rc.com, and immediately delete this message and all its attachments.

# Exhibit K

Consulate of Chile is Brussels
Government of Chile

/[stamp] (illegible) IN BELGIUM/

### JUDICIAL POWER OF ATTORNEY

### JUAN CARLOS PETERSEN WIDMER

### GRANTED TO

### CARLOS CORTÉS GUZMÁN AND ANOTHER INDIVIDUAL

In Brussels, Belgium, on the twentieth day of January of the year two thousand twenty-three, before me, Gonzalo Layseca, Consul of Chile in this city, **APPEARS**: **Mr. JUAN CARLOS PETERSEN WIDMER**, national identity card number twelve million nine hundred nineteen thousand two hundred nine dash seven, of legal age, who provides proof of identity with the aforementioned identity card and who resides at Avenue de la Colombie 3, Brussels, Belgium, and states: That through this instrument he hereby grants a judicial power of attorney to **Mr. CARLOS CORTÉS GUZMÁN**, Esq., Chilean national identity card number ten million sixty-eight thousand eight hundred three dash four, and **Mr. SERGIO RODRÍGUEZ ORO**, Esq., Chilean national identity card number nine million nine hundred nine thousand nine hundred sixty-five dash eight, to act on his behalf and represent him, jointly or separately, before the Public Prosecutor's Office, the District Courts, Appellate Court,  Supreme Court and Constitutional Court, to file criminal actions directly or indirectly in connection with the issuance by Corp Group Banking S. A. of bond ISIN USP three one nine two five AD five four, titled "Corp Grp Banking thirteen dash twenty-three." They may intervene in existing criminal proceedings as representatives of the victim, exercising all applicable rights, including, in particular, the right to file criminal complaints. They are granted all of the powers set forth in the first and second paragraphs of article seven of the Code of Civil Procedure. Accordingly, the attorneys-in-fact are specifically granted the power to file criminal complaints, to sue, settle, approve agreements and collect. The attorneys-in-fact may delegate all or part of the powers hereby conferred upon them and resume the power of attorney as often as they deem appropriate, to enter into restitution agreements on behalf of the principals and to accept sums of money on behalf of the principals whether through a restitution agreement or conditional suspension of the proceeding, all for immediate and direct transfer

/[stamp] CHILEAN EMBASSY IN BELGIUM –
CONSULAR SECTION/

/[stamp] EMBA(illegible)
CONSU(illegible) SECTION/

Consulate of Chile is Brussels          /[stamp] (illegible) OF CHILE IN BELGIUM/

Government of Chile

to the principals themselves. All of the foregoing is subject to the special limitation of barring them from answering new lawsuits or being summoned in any court proceeding by their principals, without prior personal notice of the appearing parties.  In witness whereof and after reading this instrument, the appearing party hereby signs.- A copy is provided. - I certify the foregoing.

[*illegible signature*] [fingerprint]

**JUAN CARLOS PETERSEN WIDMER**

It is hereby stated for the record that this Notarial Instrument is recorded in the Record Book under number eight on page sixteen and in the Book of Notarial Acts on page eight, both dated January 20, 2023.

|  | [*signature*] |  |
|---|---|---|
| **SIGNED BEFORE ME** | **Gonzalo Layseca** | /[stamp] CHILEAN EMBASSY IN BELGIUM |
|  | **Consul of Chile** | CONSULAR SECTION/ |

|  | [*signature*] |  |
|---|---|---|
| I HEREBY SIGN AND SEAL THIS | **Gonzalo Layseca** |  |
| COPY, WHICH IS A TRUE COPY | Consul of Chile |  |
| OF THE ORIGINAL |  | /[stamp] CHILEAN EMBASSY IN BELGIUM |
|  |  | CONSULAR SECTION/ |

No. 51 THE SIGNATURE OF Mr. Gonzalo Layseca [illegible] IS AUTHENTICATED AT THE MINISTRY OF FOREIGN AFFAIRS OF CHILE

FEB. 15, 2023. [illegible]

**Laura Castro Velásquez**
Authentication Officer

/[stamp] CHILEAN EMBASSY
(illegible) SECTION/

/[stamp] IN BELGIUM
(illegible)

| IDENTITY CARD | **REPUBLIC OF CHILE** | |
| --- | --- | --- |
| | VITAL RECORDS AND IDENTIFICATION SERVICE | |
| | LAST NAMES | |
| | PETERSEN | |
| | WIDMER | |
| [photo] | FIRST NAMES | |
| | JUAN CARLOS | |
| | NATIONALITY | SEX |
| | CHILEAN | M |
| | DATE OF BIRTH | DOCUMENT NUMBER\ |
| | NOV 26, 1975 | 520 700 937 |
| | DATE ISSUED | EXPIRATION DATE |
| | NOV 28, 2019 | NOV 26, 2025 |
| CITIZEN ID NUMBER **12.919.209-7** | SIGNATURE OF HOLDER | |
| | [*illegible signature*] | |

[QR Code]                                                    [fingerprint]

Born in: CONCEPCIÓN                                          [illegible]
Profession: Not reported

```
INCHL5207009379L46<<<<<<<<<<<<
7511264M2511269CHL12919209<7<9
PETERSEN<WIDMER<<JUAN<CARLOS<<
```

[*signature*]
Gonzalo Layseca        /[stamp] CHILEAN EMBASSY IN BELGIUM
Consul of Chile                        CONSULAR SECTION/

/[stamp] (illegible) EMBASSY OF
(illegible) SECTION/

/[stamp] Ministry of Foreign Affairs
Government of Chile/

/[stamp] (illegible) IN BELGIUM (illegible)/

**Republic of Chile
BRUSSELS, CONSULAR SECTION**

**Electronic Payment Voucher
e-Voucher**

[QR Code]

**Online Verification**

The authenticity of this electronic document can be verified at:

**https://tramites.minrel.gov.cl/validacionevoucher**

| | |
|---|---|
| Case Number | 85, 86 |
| Date | 01/20/2023 11:59:51 |
| Consular Fee Schedule | 5/6/3 – 5/6/6 |
| Application Number | 3100889 |
| e-Voucher Number | SCBRUSELAS-20012023-3100889-78 |
| Total USD | 35 |
| 10% Surcharge (USD) | 3.5 |
| Amount in Domestic Currency | 39 |

C=CL,ST = METROPOLITAN – METROPOLITAN REGION, L=Santiago, O= Office of the Deputy Ministry of Foreign Affairs, OU=Terms of Use at www.esign-la.com/acuerdoterceros, T=GENERAL DIRECTOR OF CONSULAR AFFAIRS, CN=Cristian Rodrigo Antonio Donoso Maluf

/[stamp] (illegible) EMBASSY OF
(illegible) /

## TRANSLATION CERTIFICATION

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

Mandato Petersen

Leonardo Duran

June 10, 2024

Date

# Exhibit K-1



# MANDATO JUDICIAL

## JUAN CARLOS PETERSEN WIDMER

## A

## CARLOS CORTÉS GUZMÁN Y OTRO

En Bruselas, Bélgica a veinte días del mes de enero del año dos mil veintitrés, ante mí, Gonzalo Layseca, Cónsul de Chile en esta ciudad, Comparecen: **don JUAN CARLOS PETERSEN WIDMER**, cédula nacional de identidad número doce millones novecientos diecinueve mil doscientos nueve guión siete , mayor de edad, quien acredita su identidad con la cédula recién citada y domiciliado en Avenue de la Colombie 3, Bruselas, Bélgica, expone: Que por el presente instrumento viene en otorgar mandato judicial a los señores abogados **don CARLOS CORTÉS GUZMÁN**, cédula nacional de identidad número diez millones sesenta y ocho mil ochocientos tres guión cuatro, y **don SERGIO RODRÍGUEZ ORO**, cédula nacional de identidad número nueve millones novecientos nueve mil novecientos sesenta y cinco guión ocho, para que intervengan, en sus nombres y representación, conjunta o separadamente, a fin que la representen ante el Ministerio Público, Juzgados de Garantía, Corte de Apelaciones, Corte Suprema y Tribunal Constitucional, en el ejercicio de acciones penales en relación, directa o indirectamente, con la emisión por parte de Corp Group Banking S. A. del bono ISIN USP tres uno nueve dos cinco AD cinco cuatro, denominado "Corp Grp Banking trece guión veintitrés". Podrán intervenir en los procedimientos penales actualmente existentes como representantes de la víctima, ejerciendo todos los derechos de tales y, entre ellos especialmente, presentar querellas criminales. Se les otorgan todas las facultades indicadas en los incisos primero y segundo del artículo séptimo del Código de Procedimiento Civil. De este modo, se confiere a los mandatarios especialmente la facultad de interponer querella, demandar, transigir, aprobar convenios y percibir. Los mandatarios podrán delegar total o parcialmente las facultades que por el presente instrumento se les confieren y reasumir el poder cuantas veces lo estimen conveniente, para suscribir acuerdos reparatorios en nombre de los mandantes y para aceptar sumas de dinero en nombre de los mandantes ya sea a título de acuerdo reparatorio o de suspensión condicional del procedimiento, todo ello para su inmediata y directa transferencia

 

a los propios mandantes. Todo lo anterior con la especial limitación de no poder contestar nuevas demandas ni ser emplazado en gestión judicial alguna, por sus mandantes, sin previa notificación personal de los comparecientes. En comprobante y previa lectura firma el compareciente. - Se da copia. - Doy fe.



JUAN CARLOS PETERSEN WIDMER

Se deja constancia que la presente Escritura Pública, figura anotada en el Libro de Repertorio bajo el número ocho a fojas número dieciséis y en el Libro de Actos Notariales a fojas ocho ambos de fecha veinte del mes de enero del año dos mil veintitrés.

FIRMÓ ANTE MÍ



Gonzalo Layseca
Cónsul de Chile

FIRMO Y SELLO LA PRESENTE
COPIA QUE ES TESTIMONIO
FIEL DEL ORIGINAL

Gonzalo Layseca
Cónsul de Chile

N° 51 LEGALIZADA EN EL MINISTERIO
DE RELACIONES EXTERIORES DE CHILE
FIRMA DEL Sr (a)

15 FEB 2023

Laura Castro Velásquez
Oficial de Legalizaciones








Nació en: **CONCEPCIÓN**
Profesión: **No informada**



```
INCHL5207009379L46<<<<<<<<<<<<
7511264M2511269CHL12919209<7<9
PETERSEN<WIDMER<<JUAN<CARLOS<<
```



Gonzalo Layseca
Cónsul de Chile





## República de Chile
## BRUSELAS, SECCION CONSULAR





### Comprobante de pago electronico
### e-Voucher



**VERIFICACIÓN EN LINEA / On-line verification**

La autenticidad de este comprobante de pago electrónico puede ser verificada en: / The authenticity of this electronic document can be verified at:

**https://tramites.minrel.gov.cl/validacionevoucher**

| | |
|---|---|
| Número de Actuación | 85, 86 |
| Fecha | 20/01/2023 11:59:51 |
| Arancel Consular | 5/6/3 - 5/6/6 |
| Número de Solicitud | 3100889 |
| Número de e-Voucher | SCBRUSELAS-20012023-3100889-78 |
| Valor US$ | 35 |
| Recargo 10% (US$) | 3,5 |
| Valor moneda local | 39 |

C=CL,ST=METROPOLITANA - REGION METROPOLITANA,L=Santiago,O=Subsecretaria del Ministerio de Relaciones Exteriores,OU=Terminos de uso en www.esign-la.com/acuerdoterceros,T=DIRECTOR GENERAL DE ASUNTOS CONSULARES,CN=Cristian Rodrigo Antonio Donoso Maluf



# Exhibit L

/[seal] ASSOCIATION OF NOTARIES AND REGISTRARS  * CHILE */

**Santiago Notary Patricio Raby Benavente**

I certify that this electronic document is a true and complete copy of the JUDICIAL POWER OF ATTORNEY GRANTED BY MARISOL DE LOS ANGELES BURGOS CONCHA TO CARLOS CORTÉS GUZMÁN AND ANOTHER INDIVIDUAL on July 03, 2023, and reproduced on the following pages.

Santiago Notary Patricio Raby Benavente.-

Gertrudis Echenique 30 Office 32, Las Condes Santiago.-

Notarial Journal No.: 6472 - 2023.-

Santiago, July 03, 2023.-

[QR code]
[bar code]
123456883356
**www.fojas.cl**

I issue this document with advanced electronic signature (Law No. 19.799 of 2002), in accordance with the procedure established by the Procedural Order of 10/13/2006 of the Supreme Court.
Certificate No. 123456883356.- Validate at
http://fojas.cl/d.php?cod=not71patricrabybenavent&ndoc=123456883356.-
Unique Code (CUR) No.: F110-123456883356.-

**Page 1/5**

Digitally signed by: PATRICIO RABY BENAVENTE
Date: 07.03.2023 17:00 Reason: Notary
Location: Santiago

*Page 1/1*

**PATRICIO RABY BENAVENTE**
NOTARY PUBLIC
GERTRUDIS ECHENIQUE 30 OFF. 32, LAS CONDES
225992453
EMAIL: notariaraby@notariaraby.cl

## NOTARIAL JOURNAL No. 6472-2023.-

## JUDICIAL POWER OF ATTORNEY

## MARISOL DE LOS ANGELES BURGOS CONCHA

## GRANTED TO

## CARLOS CORTÉS GUZMÁN AND ANOTHER INDIVIDUAL

In Santiago, Chile, on the third day of July of the year two thousand twenty-three, before me, **PATRICIO RABY BENAVENTE**, Attorney, Notary Public, Incumbent of the Fifth Notary Office of Santiago, with address at Gertrudis Echenique number thirty, Office thirty-two, Las Condes, Santiago, **APPEARS**: Mrs. **MARISOL DE LOS ANGELES BURGOS CONCHA**, Chilean, married, retired, Chilean national identity card number five million seven hundred forty-six thousand eight hundred ninety-two dash zero; residing for these purposes at Avenida Apoquindo three thousand seven hundred twenty-one, office thirty-three, district of Las Condes, Santiago, Chile, who provides proof of identity with the aforementioned identity card and states: That through this instrument she hereby grants a judicial power of attorney to Mr. **CARLOS CORTÉS GUZMÁN**, Esq., Chilean national identity card number ten million sixty-eight thousand eight hundred three dash four, and Mr. **SERGIO RODRÍGUEZ ORO**, Esq., Chilean national identity card number nine million nine hundred nine thousand nine hundred sixty-five dash eight, residing at Avenida Apoquindo number three thousand seven hundred twenty-one, office thirty-three, district of Las Condes, Santiago, Chile, to act on her behalf and represent her before the Public Prosecutor's Office, the District Courts, Appellate Court,

Page 2/5
[QR Code]
Certificate No.
123456883356
Validate at
http://www.fojas.cl

1

L:\c\MJ. BURGOS (556073) 6-23.doc

/[stamp] PATRICIO RABY BENAVENTE
NOTARY  NO. 5
Santiago, Chile/

Supreme Court and Constitutional Court, to file criminal actions directly or indirectly in connection with the issuance by Corp Group Banking S. A. of bond ISIN USP three one nine two five AD five four, titled "Corp Grp Banking thirteen dash twenty-three." They may intervene in existing criminal proceedings as representatives of the victim, exercising all applicable rights, including, in particular, the right to file criminal complaints. They are granted all of the powers set forth in the first and second paragraphs of article seven of the Code of Civil Procedure. Accordingly, the attorneys-in-fact are specifically granted the power to file criminal complaints, to sue, settle, approve agreements and collect. The attorneys-in-fact may delegate all or part of the powers hereby conferred upon them and resume the power of attorney as often as they deem appropriate, to enter into restitution agreements on behalf of the principals and to accept sums of money on behalf of the principals whether through a restitution agreement or conditional suspension of the proceeding, all for immediate and direct transfer to the principals themselves. All of the foregoing is subject to the special limitation of barring them from answering new lawsuits or being summoned in any court proceeding by their principals, without prior personal notice of the appearing parties." In witness whereof and after reading this instrument, the appearing party hereby signs.- I certify the foregoing.-

Page 3/5

[QR Code]
Certificate
123456883356
Validate at
http://www.fojas.

2

**PATRICIO RABY BENAVENTE**
NOTARY PUBLIC
GERTRUDIS ECHENIQUE 30 OFF. 32, LAS CONDES
225992453
EMAIL: notariaraby@notariaraby.cl

/[fingerprint]/

/[handwritten] Marisol Burgos C.    5.746.892-0/
MARISOL DE LOS ANGELES BURGOS CONCHA

[*illegible signature*]

NOTARY

THIS IS THE FINAL PAGE OF THE JUDICIAL POWER OF ATTORNEY GRANTED BY MARISOL DE LOS ANGELES BURGOS CONCHA TO CARLOS CORTES GUZMAN AND ANOTHER INDIVIDUAL.

[*illegible signature*]

NOTARY

Page 4/5

[QR Code]

Certificate No.
123456883356
Validate at
http://www.fojas.cl

3

L:\c\MJ. BURGOS (556073) 6-23.doc                      [*illegible signature*]

/[stamp] PATRICIO RABY BENAVENTE
            NOTARY  NO. 5
            Santiago, Chile

BLANK PAGE
ART. 404 JUDICIARY CODE

[*illegible signature*]

/[stamp] PATRICIO RABY BENAVENTE
NOTARY  NO. 5
Santiago, Chile

Page 5/5

[QR Code]
Certificate
123456883356
Validate at
http://www.fojas.

## <u>TRANSLATION CERTIFICATION</u>

I, Leonardo Duran, am a qualified professional translator certified by the American Translators Association in Spanish to English translation.

I hereby certify that the attached translation is, to the best of my knowledge and belief, a true, accurate and complete translation from Spanish to English of the attached document:

mandato Marisol Burgos



American Translators Association

ata

Leonardo Duran
Spanish into English
Certification #488876

Certified Translator

Verify at www.atanet.org/verify

_Leonardo Duran_

Leonardo Duran

June 10, 2024

Date

**Magna Legal Services**
Language Services Division
1635 Market Street | 7 Penn Center, 8th Floor | Philadelphia, PA 19103
**Phone:** 866-624-6221 x 303 | **Fax:** 866-579-0819
**Email:** LanguageServices@magnals.com | **Web:** www.magnals.com

# Exhibit L-1



**Notario Santiago Patricio Raby Benavente**

Certifico que el presente documento electrónico es copia fiel e íntegra de MANDATO JUDICIAL MARISOL DE LOS ANGELES BURGOS CONCHA A CARLOS CORTÉS GUZMÁN Y OTRO  otorgado el 03 de Julio de 2023 reproducido en las siguientes páginas.

Notario Santiago Patricio Raby Benavente.-

Gertrudis Echenique 30 oficina 32, Las Condes Santiago.-

Repertorio  Nro: 6472 - 2023.-

Santiago, 03 de Julio de 2023.-



123456883356

www.fojas.cl

Emito el presente documento con firma electrónica avanzada (ley No19.799, de 2002), conforme al procedimiento establecido por Auto Acordado de 13/10/2006 de la Excma. Corte Suprema.-

Certificado Nro 123456883356.- Verifique validez en

http://fojas.cl/d.php?cod=not71patricrabybenavent&ndoc=123456883356.- .-

CUR Nro: F110-123456883356.-

Firmado digitalmente por:PATRICIO RABY BENAVENTE
Fecha: 03.07.2023 17:00 Razón: Notario Titular
Ubicación: Santiago

**PATRICIO RABY BENAVENTE**
NOTARIO PUBLICO
GERTRUDIS ECHENIQUE 30 OF. 32, LAS CONDES
225992453
EMAIL: notariaraby@notariaraby.cl

**REPERTORIO N°6472-2023.-**

**MANDATO JUDICIAL**

**MARISOL DE LOS ANGELES BURGOS CONCHA**

**A**

**CARLOS CORTÉS GUZMÁN Y OTRO**

En Santiago de Chile, a tres de Julio del año dos mil veintitrés, ante mí, **PATRICIO RABY BENAVENTE**, Abogado, Notario Público, Titular de la Quinta Notaría de Santiago, con domicilio en Gertrudis Echenique número treinta, Oficina treinta y dos, Las Condes, Santiago, **COMPARECE:** doña **MARISOL DE LOS ANGELES BURGOS CONCHA**, chilena, casada, jubilada, cédula nacional de identidad chilena número cinco millones setecientos cuarenta y seis mil ochocientos noventa y dos guión cero; domiciliada para estos efectos en Avenida Apoquindo tres mil setecientos veintiuno, oficina treinta y tres, comuna de Las Condes, Santiago, Chile, quien acredita su identidad con la cédula citada y expone: Que por el presente instrumento viene en otorgar mandato judicial a los señores abogados don **CARLOS CORTÉS GUZMÁN**, cédula nacional de identidad chilena número diez millones sesenta y ocho mil ochocientos tres guión cuatro, y don **SERGIO RODRÍGUEZ ORO**, cédula nacional de identidad chilena número nueve millones novecientos nueve mil novecientos sesenta y cinco guión ocho, domiciliados en Avenida Apoquindo número tres mil setecientos veintiuno, oficina treinta y tres, comuna de Las Condes, Santiago, Chile, para que intervengan, en su nombre y representación, a fin que la representen ante el Ministerio Público, Juzgados de Garantía, Corte

Pag: 2/5

Certificado          N°
123456883356
Verifique validez en
http://www.fojas.cl

1

L:\c\MJ. BURGOS(556073)6-23.doc

de Apelaciones, Corte Suprema y Tribunal Constitucional, en el ejercicio de acciones penales en relación, directa o indirectamente, con la emisión por parte de Corp Group Banking S. A. del bono ISIN USP tres uno nueve dos cinco AD cinco cuatro, denominado "Corp Grp Banking trece guión veintitrés". Podrán intervenir en los procedimientos penales actualmente existentes como representantes de la víctima, ejerciendo todos los derechos de tales y, entre ellos especialmente, presentar querellas criminales. Se les otorgan todas las facultades indicadas en los incisos primero y segundo del artículo séptimo del Código de Procedimiento Civil. De este modo, se confiere a los mandatarios especialmente la facultad de interponer querella, demandar, transigir, aprobar convenios y percibir. Los mandatarios podrán delegar total o parcialmente las facultades que por el presente instrumento se les confieren y reasumir el poder cuantas veces lo estimen conveniente, para suscribir acuerdos reparatorios en nombre de los mandantes y para aceptar sumas de dinero en nombre de los mandantes ya sea a título de acuerdo reparatorio o de suspensión condicional del procedimiento, todo ello para su inmediata y directa transferencia a los propios mandantes. Todo lo anterior con la especial limitación de no poder contestar nuevas demandas ni ser emplazado en gestión judicial alguna, por sus mandantes, sin previa notificación personal de los comparecientes". En comprobante y previa lectura firma la compareciente.- Doy fe.-

Pag: 3/5



Certificado
123456883356
Verifique validez
http://www.fojas.

**PATRICIO RABY BENAVENTE**
NOTARIO PUBLICO
GERTRUDIS ECHENIQUE 30 OF. 32, LAS CONDES
225992453
EMAIL: notariaraby@notariaraby.cl





5.746.892-0

MARISOL DE LOS ANGELES BURGOS CONCHA



NOTARIO

ESTA HOJA CORRESPONDE A LA TERMINACIÓN DE LA ESCRITURA DE MANDATO JUDICIAL MARISOL DE LOS ANGELES BURGOS CONCHA A CARLOS CORTÉS GUZMÁN Y OTRO.-

NOTARIO

Pag: 4/5



Certificado          N°
123456883356
Verifique validez en
http://www.fojas.cl

3

L:\c\MJ. BURGOS(556073)6-23.doc



INUTILIZADA
ART. 404 C.O.T.

PATRICIO RUBY BENAVENTE
QUINTA NOTARIA
Santiago - Chile

Pag: 5/5



Certificado
123456883356
Verifique validez
http://www.fojas.